UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- x

ANDREA TANTAROS,                                  :
                                                  :
                        Plaintiff,                :
                                                  :
            - against -                           :        17 Civ. 2958 (GBD)
                                                  :
FOX NEWS NETWORK, LLC, ROGER AILES, WILLIAM       :        **ECF CASE**
SHINE, IRENA BRIGANTI, PETER A. SNYDER,           :
DISRUPTOR, INC., and JOHN DOES 1-50,              :
                                                  :
                        Defendants.               :
                                                  :
------------------------------------------------- x

<br>

## MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANTS FOX NEWS NETWORK, LLC, WILLIAM SHINE AND IRENA BRIGANTI FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11(C)

<br>

Andrew J. Levander
Linda C. Goldstein
Nicolle L. Jacoby
Benjamin M. Rose
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500

*Attorneys for Defendants Fox News
Network, LLC, William Shine and
Irena Briganti*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 4

    A.    Tantaros And Burstein's Prior Abuse Of The Judicial System ............................ 4

    B.    The Complaint's False Allegations About The
           So-Called "Sockpuppet" Account ........................................................................ 7

    C.    The Complaint's Other Phony Allegations ........................................................ 13

    D.    The Fox News Defendants' Compliance With The
           Safe Harbor Requirement .................................................................................. 16

ARGUMENT ...................................................................................................................... 16

I.    Sanctions Are Warranted For Pursuing Unfounded Factual Allegations ...................... 17

II.    Sanctions Are Warranted For Pursuing Legally Meritless Claims And For
      Flouting Justice Cohen's Order Compelling Tantaros To Arbitrate Her
      Retaliation Claims ............................................................................................... 18

III.    Sanctions Are Warranted For Filing The Complaint For Improper Purposes ................ 21

IV.    The Requested Sanctions Are Necessary To Prevent Further Misconduct .................... 23

CONCLUSION .................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdelhamid v. Altria Grp., Inc.*,
 515 F. Supp. 2d 384 (S.D.N.Y. 2007).......................................................................23

*Abner Realty, Inc. v. Adm'r of Gen. Serv. Admin.*,
 No. 97 Civ. 3075, 1998 WL 410958 (S.D.N.Y. July 22, 1998) .......................................17, 21

*Edmonds v. Seavey*,
 No. 08 Civ 5646, 2009 WL 4404815 (S.D.N.Y. Dec. 2, 2009).............................................23

*Galonsky v. Williams*,
 No. 96 Civ. 6207, 1997 WL 759445 (S.D.N.Y. Dec. 10, 1997)...........................................22

*Gambello v. Time Warner Commc'ns, Inc.*,
 186 F. Supp. 2d 209 (E.D.N.Y. 2002) ...................................................................17

*Garcia v. City of Laredo*,
 702 F.3d 788 (5th Cir. 2012) ...........................................................................19

*Howard v. Klynveld Peat Marwick Goerdeler*,
 977 F. Supp. 654 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 844 (2d Cir. 1999)................................21

*In re DoubleClick Inc. Privacy Litig.*,
 154 F. Supp. 2d 497 (S.D.N.Y. 2001)....................................................................19

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
 806 F.3d 125 (3d Cir. 2015), *cert. denied sub nom.*, *Gourley v. Google, Inc.*,
 137 S. Ct. 36 (2016).......................................................................................19

*In re Nickelodeon Consumer Privacy Litig.*,
 827 F.3d 262 (3d Cir. 2016), *cert. denied sub nom.*, *C. A. F. v. Viacom Inc.*,
 137 S. Ct. 624 (2017)......................................................................................19

*In re Zynga Privacy Litig.*,
 750 F.3d 1098 (9th Cir. 2014) ...........................................................................19

*International Shipping Co., S.A. v. Hydra Offshore, Inc.*,
 875 F.2d 388 (2d Cir. 1989)...........................................................................16, 20

*Jimenez v. Madison Area Tech. Coll.*,
 321 F.3d 652 (7th Cir. 2003) ...........................................................................23

*Lipin v. Nat'l Union Fire Ins. Co. of Pitt.*,
 202 F. Supp. 2d 126 (S.D.N.Y. 2002)....................................................................23

*Molefe v. Verizon N.Y., Inc.*,
    No. 14-CV-1835, 2015 WL 1312262 (S.D.N.Y. Mar. 24, 2015) ...........................................18

*O'Malley v. N.Y.C. Transit Auth.*,
    896 F.2d 704 (2d Cir. 1990) .................................................................................................16, 19

*Revson v. Cinque & Cinque, P.C.*,
    49 F. Supp. 2d 686 (S.D.N.Y. 1999), *rev'd*, 221 F.3d 71 (2d Cir. 2000) ............................3, 4

*Safir v. U.S. Lines Inc.*,
    792 F.2d 19 (2d Cir. 1986) ........................................................................................................23

*Saltz v. City of N.Y.*,
    129 F. Supp. 2d 642 (S.D.N.Y. 2001) .......................................................................................17

*Silberman v. Innovation Luggage, Inc.*,
    No. 01 Civ. 7109, 2003 WL 1787123 (S.D.N.Y. Apr. 3, 2003) ...............................................21

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*,
    682 F.3d 170 (2d Cir. 2012) ......................................................................................................16

*United States v. Steiger*,
    318 F.3d 1039 (11th Cir. 2003) .................................................................................................19

**Statutes/Rules**

18 U.S.C. § 2510 ...............................................................................................................................18

18 U.S.C. § 2701 ...........................................................................................................................3, 18

Fed. R. Civ. P. 11 .....................................................................................................................1, 13, 16

Fed. R. Civ. P. 11(b)(1) ......................................................................................................................4

Fed. R. Civ. P. 11(b)(2) ......................................................................................................................3

Fed. R. Civ. P. 11(b)(3) ......................................................................................................................3

Fed. R. Civ. P. 11(c) ........................................................................................................................24

Fed. R. Civ. P. 11(c)(2) .....................................................................................................................16

Fed. R. Civ. P. 11(c)(4) .....................................................................................................................23

Rule 3.1 of the New York Rules of Professional Conduct ...........................................................24

**PRELIMINARY STATEMENT**[1]

The allegations of the Complaint read like the plot of a television drama: Plaintiff

Andrea Tantaros claims that her then-employer, Fox News Network, LLC ("Fox News"), hacked

her laptop computer, tapped her telephone, and then tortured her with the information gathered

from those acts by sending her coded messages through a "sockpuppet" social media

account. But pleadings in federal court are not supposed to be works of fiction; they must be

grounded in fact. The allegations in the Complaint are not just false, they are outrageously and

flagrantly so. Nevertheless, on the very first page of the Complaint, Burstein falsely accuses Fox

News of engaging in criminal conduct. This sensational allegation, broadcast in bold-faced type,

was made solely to generate negative headlines for, and inflict maximum damage on, Fox News.

Had Burstein conducted even a minimal factual investigation before filing the Complaint, he

would have immediately known that Tantaros' allegations were an outright hoax. There are only

two possibilities: Burstein either knew this and filed the Complaint maliciously or, if he did not,

he failed to fulfill his basic professional obligations under Fed. R. Civ. P. 11 to investigate his

client's claims. This motion, brought on behalf of Fox News, William Shine and Irena Briganti

(the "Fox News Defendants"), seeks sanctions against both Burstein and his client Tantaros for

filing the Complaint in violation of his professional obligations.

The linchpin of the Complaint is a Twitter account in the name of one "Daniel Wayne

Block," said to be "one of Defendants' sockpuppet" accounts. Compl. ¶ 8(a). As alleged in the

Complaint, "sockpuppet" accounts "by definition operate under a fictitious identity." Compl.

¶ 38.[2] The Complaint annexes nine tweets from the Daniel Wayne Block Twitter account

---

[1]    The exhibits cited in this Motion are submitted in the accompanying Declaration of Benjamin M. Rose (the "Rose Decl.").

[2]    The Complaint elaborates that "sockpuppet" accounts are "accounts that appear to be normal accounts but which are in fact operated by third parties (individuals and commercial/for-profit entities) for the purpose of influencing others (positive or negative) and, or manipulating online discussions." Compl. ¶ 38.

(Compl. Exs. A, C-E, CC-GG), which purportedly were "designed to make it clear to Ms. Tantaros that she was being illegally surveilled" by making references to things that Tantaros had said in her private telephone calls.  Compl. ¶ 47.  But the "Daniel Wayne Block" Twitter account does not "operate under a fictitious identity" and does not tweet on anyone else's behalf. Mr. Block is a real person living in Gainesville, Florida who maintains the account in his own name.  That fact could have been determined in minutes by looking at an on-line directory. Moreover, a review of other contemporaneous tweets in Mr. Block's Twitter account— something that could have been done in a few hours—would have shown that the bunny, lion, elk and other images that Tantaros believed to be targeted at her were images and themes that Mr. Block tweeted repeatedly, including *before* Tantaros purportedly had the telephone conversations that she fears were monitored.  Had Burstein bothered to pick up his own telephone to call Mr. Block, he would have learned that Mr. Block was not paid to tweet by Fox News or anyone else; he tweeted about images and themes that were "meaningful" to him.[3]  But Burstein chose not to contact Mr. Block before filing the Complaint.  *Id*. ¶ 14.

Burstein's dereliction of a lawyer's most basic responsibilities would be striking enough if the Complaint had been thrown together in a matter of days.  But Burstein is on record telling a reporter that he began his investigation of Tantaros' claims of electronic surveillance back in August 2016, *eight months* before the Complaint was filed.[4]  He has no excuse for failing to uncover facts that counsel to the Fox News Defendants found within hours after the Complaint

---

[3]     Declaration of Daniel Wayne Block, dated April 26, 2017 ("Block Decl.") ¶ 9, attached to Rose Decl. as Ex. 1.

[4]     Erik Wemple, *Tantaros' lawyer: Sexual harassment suit was 'only the beginning,'* THE WASHINGTON POST, Aug. 24, 2016, https://www.washingtonpost.com/ blogs/erik-wemple/wp/2016/08/24/tantaros-lawyer-sexual-harassment-suit-was-only-the-beginning/?utm_term=.3122df5aaf51 (quoting Burstein's statement that he expected to conclude his investigation "[i]n the next few weeks").

was filed.  Signing a Complaint with bogus "evidentiary support" violates Burstein's obligations under Fed. R. Civ. P. 11(b)(3).

Without the linchpin of the Daniel Wayne Block Twitter account, the entire Complaint falls apart.  Simply put, the remaining allegations and the inferences that fairly can be drawn from them fail to state any legal claim.  And even if the Daniel Wayne Block allegations were not a wholesale fabrication, there would be no legal basis for Tantaros' "Second Claim for Relief," brought under the Stored Communications Act, 18 U.S.C. § 2701.  As four Courts of Appeals and this Court have already held, that statute does not apply to laptops or other personal devices.  The assertion of the "Second Claim for Relief" ignores settled law, in blatant violation of Fed. R. Civ. P. 11(b)(2).

To add insult to injury, Burstein improperly filed the Complaint in the public forum of this Court, rather than the private arbitration forum mandated in Tantaros' employment agreement (the "Agreement"), even though the New York Supreme Court has already directed Tantaros (represented by Burstein) to arbitrate her spurious claims of harassment and retaliation by, among other things, media blogs and "sockpuppet" accounts.  Indeed, in that prior proceeding, Justice David Cohen held that the media circus created by Tantaros' and Burstein's interviews with the press violated her Agreement.[5]  Filing a Complaint with these known and fundamental legal defects also violates Burstein's obligations under Fed. R. Civ. P. 11(b)(2).

Burstein has spent his entire career wielding publicity as a weapon against his litigation adversaries.  Then-District Judge Chin sanctioned Burstein for his "Rambo lawyering" nearly two decades ago.[6]  The Second Circuit rebuked Burstein's threat of pursuing the "legal

---

[5]     Feb. 15, 2017 Tr. at 22:4-8, 38:4-6, attached to Rose Decl. as Ex. 2.
[6]     *Revson v. Cinque & Cinque, P.C.*, 49 F. Supp. 2d 686, 686 (S.D.N.Y. 1999), *rev'd*, 221 F.3d 71 (2d Cir. 2000).

equivalent of 'proctology exam'" as "offensive and distinctly lacking in grace and civility," but nonetheless vacated the sanctions because, in that case, Burstein was "entitled to warn the opposing party of his intention to assert colorable claims, as well as to speculate about the likely effect of those claims being brought."[7]  By contrast, in this case, Burstein's threats of generating adverse publicity for Fox News are sanctionable because the claims he first threatened to assert, and then did assert, are not close to "colorable."  They are a sham.  The litigation history between Tantaros and Fox News confirms that the headline-generating Complaint, which was both fundamentally defective and could properly be filed only in a confidential arbitral forum, was "presented for an improper purpose," in violation of Burstein's obligations under Fed. R. Civ. P. 11(b)(1).

In this motion, the Fox News Defendants seek sanctions in the form of (a) a monetary award against both Burstein and Tantaros for the Fox News Defendants' fees and costs associated with litigating this Motion, and other related expenses; (b) dismissal of the Complaint with prejudice; (c) an injunction requiring Tantaros to bring any future claims related to her employment in confidential arbitration, as per the terms of the Agreement; and (d) a referral of this matter to disciplinary authorities.  Nothing less will deter Burstein's chronic abuse of the judicial system.

## STATEMENT OF FACTS

### A.  Tantaros And Burstein's Prior Abuse Of The Judicial System

Tantaros formerly worked for Fox News as a co-host on the ensemble talk show, *Outnumbered*.  Compl. ¶ 14.  In late April 2016, Fox News exercised its right under the Agreement to remove her from the air because she had published a book, *Tied Up in Knots*,

---

[7]     *Revson*, 221 F.3d at 79-80, 83.

without complying with the book guidelines in the Agreement.  *Id.* ¶ 26 & Ex. I.  Tantaros

asserted the move was in retaliation for allegations of "inappropriate male behavior" made in a

letter sent to Fox News by her previous counsel.  *Id.* Ex. G.  Soon afterward, Burstein made his

first threat to unleash a "media event" if Fox News did not bend to Tantaros' settlement demand:

> At this point in time, and given this conduct, [Tantaros'] best hope
> of spurring book sales is turning all of her allegations into a media
> event.  Accordingly, she has instructed me to go public unless you
> confirm by 3 [p.m. that same day] that [the proposed settlement
> terms are accepted].  Literally, I just need to push 'send' on an
> already detailed email to a certain reporter, and a story will likely
> be out there 20 minutes later.[8]

No settlement was reached and Fox News, pursuant to the arbitration clause in the Agreement,

filed a demand for confidential arbitration with the American Arbitration Association on May 11,

2016.  Compl. Ex. F ¶ 67.

Two months later, a former Fox News anchor accused Roger Ailes, then Chairman of

Fox News, of sexual harassment.  The lawsuit resulted in Ailes's departure from Fox News on

July 21, 2016.  Ailes had not been named in the letter from Tantaros' counsel complaining of

"inappropriate male behavior," *see id.* Ex. G, but Burstein took advantage of this turn of events

to make good on his earlier threat to unleash a media event.  He gave an interview to *New York*

*Magazine* in which he claimed for the first time that Tantaros had also been sexually harassed by

Ailes.[9]  Burstein acknowledged that his interview likely put Tantaros in breach of the

Agreement, which required her to keep her allegations confidential.  *Id.*

On August 22, 2016, Burstein filed a lawsuit on Tantaros' behalf in the New York

County Supreme Court.  Compl. Ex. F.  The state court complaint included allegations that Fox

---

[8]     May 4, 2016 email from Burstein to Asen, attached to Rose Decl. as Ex. 3.

[9]     Gabriel Sherman, *Fox News Host Andrea Tantaros Says  She Was Taken Off the Air After Making Sexual-Harassment Claims Against Roger Ailes*, N.Y. MAG., Aug 8, 2016, http://nymag.com/daily/intelligencer/2016/08/andrea-tantaros-made-harassment-claims-against-roger-ailes.html.

News had retaliated against her by, among other things, "crafting and placing insulting stories" about Tantaros on media blogs, *id.* Ex. F ¶ 6(b)(v), and "directing the posting of, numerous negative comments about Tantaros from 'sock puppet' social media accounts," *id.* ¶ 6(b)(vi); *see also* ¶¶ 30, 48, 50–51, 53.  All of Tantaros' claims of sexual harassment and retaliation under Section 296(1) of the New York Human Rights Law and Section 8-107 of the New York City Human Rights Law were expressly predicated on the employer/employee relationship and therefore—as Justice Cohen later held—fell squarely within the scope of the Agreement's confidential arbitration provision.  Ex. 2 at 36:14-37:5.  Justice Cohen also held that Burstein and Tantaros had violated the Agreement's confidentiality provisions by speaking to the press.  *Id.* at 22:4-8; 38:4-6.  After Fox News had prevailed in compelling Tantaros to arbitrate her discrimination claims, and ignoring the ruling made by Justice Cohen just minutes earlier that such press communications violated the Agreement, Burstein held a news conference in the courthouse and bragged to reporters that he had never expected the case to remain in court.[10]

At the hearing on Fox News's motion to compel, Burstein exploited the public forum of the courtroom to again breach the Agreement's confidentiality provisions.  After Justice Cohen's questioning signaled that the court was likely to compel arbitration, Burstein requested "the opportunity to amend based upon new information."  Ex. 2 at 27:16-17.  One of his claims, which he purported to be based on "confidential sources," was that Fox News had electronically surveilled Tantaros' private communications in violation of a federal criminal statute.  *Id.* at 28:20-23.  Although (as we now know) this statement was a fabrication, Burstein repeated the allegations to an eager cadre of reporters outside of the courtroom, generating another blast of

---

[10]       *See* Lyons Decl. ¶¶ 4-5, attached to Rose Decl. as Ex. 4.

negative headlines for Fox News.[11]  Afterwards, Burstein sent an email to Fox News's counsel falsely claiming to have "compelling evidence of Fox News's illegal electronic surveillance" of Tantaros, and threatening to file "a complaint against [Fox News] within the next two weeks"— unless, of course, Fox News "want[ed] to put an eight-figure initial offer on the table."[12]

In addition to this case, Tantaros has brought another lawsuit against one of the Fox News Defendants, Irena Briganti, in New York State Supreme Court.[13]  That case asserts a libel claim based upon the very same facts alleged in paragraph 80 of the Complaint here, and is yet another breach of the Agreement's confidentiality and arbitration clauses.

### B. The Complaint's False Allegations About The So-Called "Sockpuppet" Account

On April 24, 2017, Burstein filed the Complaint in this action, which asserts frivolous claims for electronic surveillance, hacking and cyberstalking.  The Complaint generated an additional round of press reporting on the bogus accusation of electronic surveillance.[14]  Notwithstanding Justice Cohen's ruling two months earlier that such conversations violated the Agreement, Burstein spoke to a reporter about the Complaint, accusing the Fox News

---

[11]     *See e.g.*, Brian Selter, *Andrea Tantaros lawsuit puts Fox News P.R. operation in spotlight*, CNNMONEY, Aug. 23, 2017, http://money.cnn.com/2016/08/23/media/andrea-tantaros-fox-news-pr/; Ted Johnson, *Attorney for Roger Ailes Accuser Says That U.S. Attorney Is Investigating Fox News*, VARIETY, Feb. 15, 2017, http://variety.com/2017/biz/ news/fox-news-roger-ailes-andrea-tantaros-1201989609/; Jim Dwyer, *Andrea Tantaros of Fox News Claims Retaliation for Sex Harassment Complaints*, N.Y. TIMES, Aug. 23, 2016, at B3; Jeffrey A. Trachtenberg, *Another Former Fox News Host Files Harassment Suit Against Roger Ailes*, WALL ST. J., Aug. 24, 2016, at B4.

[12]     Email from J. Burstein to A. Levander, March 3, 2017, attached to Rose Decl. as Ex. 5.

[13]     Complaint in *Tantaros v. Konst and Briganti*, attached to Rose Decl. as Ex. 6.

[14]     *See, e.g.*, Tom Kludt, *Former Fox News Host Accuses Network of Illegal Electronic Surveillance*, CNN, Apr. 24, 2017, http://money.cnn.com/ 2017/04/24/media/andrea-tantaros-fox-news-electronic-surveillance-lawsuit/; Ted Johnson, *Andrea Tantaros Claims Fox News Targeted Her With 'Digital Weapons,' Online Harassment*, VARIETY, Apr. 24, 2017, http://variety.com/2017/biz/news/andrea-tantaros-lawsuit-fox-news-1202394031/; David Ng, *Andrea Tantaros Brings New Accusations Against Fox News, Claiming Digital Hacking*, LOS ANGELES TIMES, Apr. 24, 2017, http://www.latimes.com/business/hollywood/la-fi-ct-andrea-tantaros-fox-news-20170424-story.html.

Defendants of "cyberstalking on steroids."[15]  But any reasonable pre-filing inquiry would have made clear to Burstein that the Complaint's principal factual allegations about the key Daniel Wayne Block Twitter account are, at best, a paranoid fantasy, and at worst, a deliberate hoax.

It would have taken no more than a few minutes to figure out that Daniel Wayne Block is not a "sockpuppet" who maintained a Twitter account "operating under a fictitious identity." Compl. ¶ 38.  The Complaint itself attaches a LinkedIn profile page in which Daniel Wayne Block describes himself as "retired and living in Gainesville, FL."  *Id.* Ex. Y.  A basic Internet search readily reveals public websites listing Mr. Block's home address in Gainesville, as well as his telephone number and other personal information.[16]  One phone call would have proven that Mr. Block is alive and well and has no connection to Fox News, other than as a fan.

Indeed, less than 48 hours after the Complaint was filed, counsel for Fox News found Mr. Block and obtained his sworn statement.  In it, Mr. Block attests that he (i) created and uses his account for his personal use, and not as a "sockpuppet" for anyone else, Ex. 1 ¶ 2; (ii) has never shared his Twitter account or password with any other person, *id.* ¶ 2; (iii) has never been asked to send a tweet on someone else's behalf or been paid to send any tweet, *id.* ¶ 3; (iv) has never met anyone who works for, or on behalf of, Fox News or any of its affiliates, *id.* ¶ 4; and (v) has never been contacted by Burstein or anyone affiliated with that firm, *id.* ¶ 14.

If Burstein had reviewed Mr. Block's Twitter account, he would have seen that it does not support any inference that the tweets attached to the Complaint contain information gleaned from monitoring Tantaros' computer or phone calls.  It is indisputable, for example, that Mr.

---

[15]    *See* David Folkenflik, *Ailes Accuser Says Fox News Execs Ordered Eavesdropping On Her Digital Devices*, NPR, April 24, 2017, http://www.npr.org/sections/thetwo-way/2017/04/ 24/525421649/ailes-accuser-says-fox-news-execs-ordered-eavesdropping-on-her-digital-devices.

[16]    *See, e.g.*, Block BeenVerified listing, attached to Rose Decl. as Ex. 7; Block Alachua County Public Records, attached to Rose Decl. as Ex. 8.

Block often sent the same or similar purportedly threatening images *before* the allegedly monitored telephone calls:

- The Complaint alleges Tantaros had a conversation with a friend on June 17, 2016, about moving to Aspen, Colorado, and the next day, the Block account displayed a picture of an elk with the message "Elk in Colorado…"  Compl. 59 & Ex. FF.  But Mr. Block tweeted many pictures of elk, including the *exact same image* with *precisely the same message* on May 22, 2016, a month *before* Tantaros' alleged June 17 conversation.[17]

- The Complaint alleges that, on June 23, 2013, one day after Tantaros talked to her brother's children while they were visiting Disneyland, the Block account tweeted a picture of two children being hugged by Mickey Mouse with the message: "Mickey Mouse and 'new friends'…"  Compl. ¶¶ 8c, 61 & Ex. D.  But Mr. Block posted the *exact same image* with a *nearly identical message* on May 24, 2016, again almost a month *before* the allegedly surveilled telephone conversation.[18]

- The Complaint alleges that a tweet of the "Blue Angels" flight squadron on June 13, 2016, was intended to convey knowledge of Tantaros' June 12, 2016 purported telephone conversation with a friend about the squad.  Compl. ¶ 57 & Ex. DD.  But the same or similar images of the "Blue Angels" were posted on April 2, 14, 23, 26, 30, May 1, 16, 18, 29 and June 4, 2016, a period of months *before* the allegedly monitored telephone conversation.[19]

---

[17]    *See* Block Elk Tweets, attached to Rose Decl. as Ex. 9 at pp. 2.  Mr. Block's son lives in Colorado and is "an avid hunter who hunts, among other things, elk."  Ex. 1 ¶ 8(i).

[18]    *See* Block Disney Tweets, attached to Rose Decl. as Ex. 10 at p. 24.  Other Disney-related tweets appear throughout the months of April, May and June 2016.  *Id.* pp. 1-30.

[19]    *See* Block Blue Angel Tweets, attached to Rose Decl. as Ex. 11 at pp. 1-18.  Mr. Block, who is a military veteran, tweeted numerous pictures of military aircraft.

- The Complaint alleges that on July 29, 2016, a tweet of an Egypt-related image appeared on the Block account because, in late July, Tantaros had purportedly spoken to a friend in the military about his unit's dog, named "Egypt."  Compl. ¶¶ 8d, 62 & Ex. E.  But the Block account contains many Egypt-related images, including throughout May and June of 2016, months *before* Tantaros' alleged conversations.[20]

- The Complaint alleges that in May and June of 2016, the Block account tweeted pictures of rabbits while Tantaros claims she was regularly speaking on the phone with a friend who calls her "'Baby Bunny.'"  Compl. ¶ 58 & Ex. EE.  But the Block account displays many bunny images, including *the same* picture of leaping rabbits attached to the Complaint in April, *a month before* any purported May and June conversations.[21]

- The Complaint alleges that Tantaros spoke with a friend on June 8, 2016 about a trip to Charleston, South Carolina, and the next day there was a Block account tweet about an "Angel Oak Charleston, S.C."  Compl. ¶ 55 & Ex. CC.  But the Block account displays *the exact same image*, with *identical or similar messages* on May 19 and 31, 2016, *weeks before* Tantaros' purported conversation.[22]

Nor is there anything remarkable about the timing of Block's tweet about the death of Tantaros' brother Daniel.  Mr. Block posted the tweet after learning of the death of Daniel Tantaros from Internet research; that fact moved him because Mr. Block's son, also named Daniel, had taken

---

[20]     *See* Block Egyptian Tweets, attached to Rose Decl. as Ex. 12 at pp. 1-13.  Mr. Block explains that he sent tweets with an Egyptian theme "in recognition of the Shriner Temple to which [he] belong[s], in Tampa, Florida," which is "called the Egypt Shrine."  Ex. 1 ¶ 8(d).

[21]     *See* Block Bunny Tweets, attached to Rose Decl. as Ex. 13 at pp. 2-3.

[22]     *See* Block Angel Oak Tweets, attached to Rose Decl. as Ex. 14 at pp. 1-2.  Mr. Block explains that he tweeted about the Angel Oak because he "wanted to share it with others, including [his] niece . . . who lives in a suburb of Charleston."  Ex. 1 ¶ 8(f).

his own life two years earlier.[23]  Information about Tantaros' brother's death was widely available when Mr. Block sent the June 19, 2016 tweet, including in Tantaros' book (delivered to Mr. Block on May 22, 2016), in Tantaros' on-air eulogy (available on YouTube), in articles about Tantaros, and on her own Facebook page.[24]

Another telltale sign that the allegedly threatening tweets were not directed at Tantaros— apart from the fact that her Twitter name, or "handle," does not appear in a single one of them— is the fact that the same generic themes appear throughout the Block Twitter account:

- The Complaint alleges that on June 10, 2016, the Block account tweeted an image of the DVD cover for the movie, "The Black Scorpion," because Tantaros purportedly spoke in early June to a friend who had been stung by a scorpion. Compl. ¶¶ 8(a), 56 & Ex. A.  But Mr. Block sent many similar tweets about other classic science fiction movies and shows.[25]

- The Complaint alleges that on July 27, 2016, the Block account posted "a message including the words 'Be strong and courageous,'" a phrase that Tantaros and her mother allegedly use when they end telephone conversations with each other.  Compl. ¶ 63 & Ex. GG.  But these words are part of a longer Bible quotation superimposed on a photo of a lion, and the Block account is littered with images of lions, with this or other inspirational sayings.[26]

---

[23]   Ex. 1 ¶ 8(f).

[24]   *See, e.g.*, Andrea Tantaros, TIED UP IN KNOTS: HOW GETTING WHAT WE WANTED MADE WOMEN MISERABLE 99-107, 240 (HarperCollins 2016) ("TIED UP IN KNOTS"); *Andrea Tantaros' Tribute to Her Late Special Needs Brother*, YOUTUBE, Aug. 28, 2013, https://www.youtube.com/watch?v=Fvit1BqJpBA; Andrea Tantaros Facebook Post, Aug. 20, 2015, https://www.facebook.com/AndreaTantaros/posts/983222561698965; Compl. Exs. C & Z; Block Bookplate Tweets, attached to Rose Decl. as Ex. 18 at p. 2.

[25]   *See* Block SciFi Tweets, attached to Rose Decl. as Ex. 15 at pp. 1-15.  Mr. Block likes to send such tweets because his brother "is a fan of classic science fiction films."  Ex. 1 ¶ 8(a).

[26]   *See* Block Lion Tweets, attached to Rose Decl. as Ex. 16, *passim*.  Mr. Block collects representations of lions "owing to [his] name's resonance with the Biblical Daniel."  Ex. 1 ¶ 8(j).

Plaintiff sensationally asserts that the Daniel Wayne Block account is a "sockpuppet" account designed to "emotionally torture" her by means of "cruel social media posts."  Compl. ¶¶ 4, 8.  But that malicious fiction is also squarely refuted by even a brief examination of the account.  It is clearly the outlet of a self-avowed fan, who tweeted publicity photos of Tantaros in which he chirped, "Good morning, have a great week!," or "Sweet dreams, 'Sunshine.'"[27]  He also opined that Tantaros is "beautiful," his "favorite" host on *Outnumbered*, and that she "deserves a show of her own!"  *Id.*

Indeed, on May 21, 2016, Mr. Block tweeted that he had bought a copy of Tantaros' book, *Tied Up in Knots*, and mailed a "bookplate[28] to [her] to sign."  Compl. ¶ 47 & Ex. Z.[29]  The next day, May 22, Mr. Block tweeted "I just received my hardcover edition [] & am now waiting for Andrea to sign my bookplate…"[30]  The Complaint willfully distorts these tweets by claiming that Mr. Block had sent Tantaros a book, rather than a bookplate, suggesting that she received the book at her home address, and then implying that Mr. Block's supposed transmission of a book was nefarious because "there is no possible way that he could have known Ms. Tantaros' home address."  Compl. ¶ 48.  But even if—contrary to the facts stated in ¶ 8(e) of Mr. Block's declaration, Ex. 1—Mr. Block did send Tantaros a book (rather than a bookplate), and even if he did send it to her home address (rather than in care of Fox News), there can be no inference that Mr. Block had any access to illicit electronic surveillance because Tantaros' home address was readily available on the Internet.[31]  This is another fact that Burstein

---

27   *See* Block Tantaros Tweets, attached to Rose Decl. as Ex. 17, *passim*.
28   A bookplate is "a book owner's identification label that is usually pasted to the inside front cover of a book."  MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 131 (10th ed. 2000).
29   The Complaint unaccountably alleges that the May 21, 2016 tweet has "disappeared from the Block Twitter account."  *Id.* ¶ 49.  But the tweet is *still visible* in the account.  *See* Ex. 18 at p. 1.  The Complaint's tortured account of a purported cover-up, Compl. ¶¶ 49-52, has no foundation.
30   *See* Ex. 18 at p. 2.  The Block account *still* displays the May 22 tweet inquiring about the bookplate he had sent to Tantaros, further discrediting the notion of a cover-up.
31   *See* Spokeo Name Report for Andrea Tantaros, attached to Rose Decl. as Ex. 19.

could and should have easily verified in the eight months that he supposedly took to "investigate" the Complaint.

Finally, the Complaint also asserts as proof of its delusional hacking conspiracy that TweetDeck, a website used to identify the geographical location of Twitter and other social media accounts, shows that tweets from the Block Twitter account originated in London, England, rather than Gainesville, Florida.  Compl. ¶¶ 42, 53 & Ex. BB.  Again, even a cursory investigation would have debunked this myth.  If the London location were the mark of a "sockpuppet," then Burstein himself must be a "sockpuppet" too, because TweetDeck shows that his Twitter account (jburstein05) is also based in London, England, even though Burstein is a Manhattan lawyer.[32]  In fact, London appears to be a default setting for TweetDeck—a company founded in London before being bought by Twitter.[33]

In sum, the core allegations in the Complaint, all based on the Daniel Wayne Block Twitter account, are a complete fiction.  Those allegations provide no support whatsoever for the Complaint's claims of electronic surveillance.  If Burstein did not know that Mr. Block was a real person and that his tweets showed no signs of access to Tantaros' telephone conversations, he failed to perform the minimal factual investigation that Fed. R. Civ. P. 11 requires of counsel who sign a federal pleading.

### C.  The Complaint's Other Phony Allegations

No other factual allegation in the Complaint even purports to provide any support for the notion that the Fox News Defendants hacked Tantaros' computer or tapped her phone.

---

[32]     jburstein05 TweetDeck Location, attached to Rose Decl. as Ex. 20.
[33]     *See* Josh Halliday, *Twitter Buys UK's TweetDeck for £25m*, THE GUARDIAN, May 27, 2011, https://www.theguardian.com/business/2011/may/27/twitter-buys-tweetdeck.

**Other Twitter Accounts.**  The Complaint mentions three other Twitter accounts that are purportedly "sockpuppets"—@realNASCARman, @dycin55, and @AveryDovven.  Compl. ¶¶ 42–43.  But even if these accounts were the work of fictitious "sockpuppets," the tweets from these accounts attached to the Complaint do not imply access to any of Tantaros' private information.  The "@realNASCARman" account retweeted tweets from Mr. Block, or sent messages to him.  *Id.* ¶¶ 50-51.  The "@dycin55" account tweeted "can't wait to see my Greek goddess on the tv at noon," which shows only that the author knew that *Outnumbered* is broadcast at noon and that Tantaros' surname appears to be of Greek origin.  *Id.* ¶ 43(a) & Ex. U. The "@AveryDovven" account sent a tweet to "a person rumored to be involved" with Tantaros, asking if he was "still dating @AndreaTantaros?  If not [direct message] me!  Just a Quickie." *Id.* ¶ 43(c) & Ex. W.  Tantaros' love-life was the subject of gossip columns well before "AveryDovven" sent a tweet to the "rumored" boyfriend;[34]  this tweet does not evidence any electronic surveillance.

Nor do these plain vanilla tweets from these other accounts represent an "uptick in overtly sexual and offensive posts," as the Complaint alleges.  Compl. ¶ 43.  Compare them to other tweets—ostensibly not from "sockpuppets"—that Tantaros discusses in her book:

> I get tweeted disgusting things every single day.  'You give me boners.'  'I want to hump you.'  One guy asked if he could eat my butt with ketchup.'  (I suppose it's better than hot sauce.)  Another wanted to eat pasta off my rear.  (Are we talking rigatoni or bowtie?)  Other guys like to describe what they're doing while they watch *Outnumbered*.[35]

---

[34]    *See*, *e.g.*, *This just in! Rocker Dave Navarro, 47, is Dating Fox News Anchor Andrea Tantaros, 36 . . . After Meeting Through Mutual Friends*, DAILY MAIL, Apr. 27, 2015, http://www.dailymail.co.uk/tvshowbiz/ article-3058419/Dave-Navarro-47-dating-Fox-News-anchor-Andrea-Tantaros-36-meeting-mutual-friends.html.

[35]    TIED UP IN KNOTS at 218.

***"Unique Surveillance Viruses."***  Tantaros asserts that a forensic analysis of her computer conducted between late April and "mid-May of 2016" revealed "unique surveillance viruses."  Compl. ¶¶ 45-46.  Even if this allegation were accepted as true—an assumption that is hardly justified in the context of the Complaint's other demonstrable lies—the Complaint does not identify any particular virus, explain how it operated, what made it "unique," or, critically, how it could be linked to the Fox News Defendants.  Equally important, the Complaint is internally inconsistent, because any "unique surveillance virus" discovered—and presumably disabled—by "mid-May of 2016" could not possibly have fed information about Tantaros' communications in June and July 2016 to Mr. Block's Twitter account.  *Id.* ¶¶ 54-63.

***The Cable Game.***  A blog called "The Cable Game" reported on the rumors circulating among media watchers when Tantaros stopped appearing on *Outnumbered*.  *Id.* ¶ 34 & Ex. L. Nothing in this blog post indicates any access to Tantaros' private communications.

***Allegations Not Related to Tantaros.***  The reproduction of old news reports about alleged investigations of journalists thought to be hostile to Fox News—plainly asserted to add shock value to Tantaros' smear campaign—have no bearing on the conduct alleged to have been directed at Tantaros.  *Id.* ¶¶ 66-71.  These stories do not mention Tantaros, electronic surveillance or cyberstalking.  Nor does the alleged work of New Media Strategies in "'market[ing] women who worked as hosts or correspondents [for Fox News] in a manner that can only be described as overtly sexist'" have anything to do either with surveillance or with Tantaros, since that work allegedly ended in 2007—years before Tantaros became an employee of Fox News in 2011.  *Id.* ¶ 72 (citation omitted).

*          *          *          *

In sum, none of the Complaint's other allegations remotely supports an inference of electronic surveillance of Tantaros by anyone, much less the Fox News Defendants.  And

certainly none of these assertions can justify the falsehoods promoted by Burstein and his client based on the *real* Block Twitter account.

### D.  The Fox News Defendants' Compliance With The Safe Harbor Requirement

On May 2, 2017, the Fox News Defendants emailed Burstein their Notice of Motion, along with a letter, setting forth the grounds and facts upon which sanctions would be sought should the Complaint not be withdrawn within twenty-one days.[36]  The letter spelled out the publicly available evidence demonstrating that Daniel Wayne Block was not a "sockpuppet," and analyzed the Twitter account.  By letter dated May 23, 2017, Burstein refused to withdraw or correct the Complaint.  This Motion followed on May 24, 2017.  Thus, the Fox News Defendants have fully complied with Rule 11's safe harbor provision before filing the Motion.  *See* Fed. R. Civ. P. 11(c)(2); *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170 (2d Cir. 2012).

### ARGUMENT

Fed. R. Civ. P. 11 imposes an affirmative duty on an attorney who signs a pleading to first conduct a reasonable inquiry into its viability.  "[A] violation of rule 11 is triggered in either of two situations:  when it appears that a pleading has been interposed for an improper purpose *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law."  *O'Malley v. N.Y.C. Transit Auth.*, 896 F.2d 704, 707-09 (2d Cir. 1990) (internal citations and quotations omitted); *see International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390-93 (2d Cir. 1989).  The standard is an objective one, so that a lawyer cannot ignore evidence in plain sight that an allegation is false.

---

[36]     *See* May 2, 2017 Letter and Attachments to J. Burstein, attached to Rose Decl. as Ex. 21.

*Gambello v. Time Warner Commc'ns, Inc.*, 186 F. Supp. 2d 209, 229 (E.D.N.Y. 2002) (Rule 11

embodies "an objective, not a subjective, standard 'intended to eliminate any "empty-head pure-

heart" justification for patently frivolous arguments'").  Burstein's investigation of the

Complaint utterly fails to meet this standard in three key respects.

## I.  Sanctions Are Warranted For Pursuing Unfounded Factual Allegations

Readily available public sources here would have revealed the Complaint's factual

deficiencies.  Basic Internet searching and review of the Block Twitter account itself were all

that were needed to establish that Daniel Wayne Block was not a "sockpuppet," and that his

tweets did not reflect illicit surveillance or harassment of Tantaros.  Similar facts resulted in

sanctions in *Abner Realty, Inc. v. Adm'r of Gen. Serv. Admin.*, No. 97 Civ. 3075, 1998 WL

410958, at *4 (S.D.N.Y. July 22, 1998), where plaintiff and his counsel filed claims mistaking

the ownership, corporate form and membership of a defendant.  There, plaintiff's erroneous

factual allegations "could easily have [been] determined . . . by accessing the LEXIS/NEXIS

database, the Internet, or by obtaining a copy of the current deed to the property from the

[registrar] for a modest fee," and the corporate certificates were public records.  *Id.* at *4-5.

There, as here, defendants had made plaintiff and his counsel aware of these factual inaccuracies

in prior court filings, but they prosecuted the baseless claims anyway.  *Id.*  "[T]he egregious and

unjustified neglect to the 'reasonable inquiry' requirement of Rule 11 [gave] rise to the inference

that the action was filed for improper purposes" and led to the imposition of legal fees on both

counsel and plaintiff, as well as a letter of apology.  *Id.* at *7, 9.

Because Burstein has been considering the claims asserted in the Complaint since at least

August 2016, *see* above note 4, above, he does not have the excuse that time constraints

prevented him from conducting a proper investigation, *Saltz v. City of N.Y.*, 129 F. Supp. 2d 642,

646-47 (S.D.N.Y. 2001) (failure to investigate claims for over a year before filing). Under these circumstances, there can be no question Burstein failed to make an objectively reasonable pre-filing inquiry, especially since he has not withdrawn the Complaint after receiving notice of its defects.

## II. Sanctions Are Warranted For Pursuing Legally Meritless Claims And For Flouting Justice Cohen's Order Compelling Tantaros To Arbitrate Her Retaliation Claims

The Complaint alleges three causes of action, (1) a private right of action under the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*, (the "Wiretap Act"), (2) a private right of action under the Stored Wire Electronic Communications Act, 18 U.S.C. § 2701 *et seq.,* (the "Stored Communications Act") and (3) a common law claim for intentional infliction of emotional distress.

Without the foundation of the Daniel Wayne Block tweets, each of these causes of action is patently frivolous. Under the Wiretap Act, the plaintiff must provide a sufficient factual basis to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[37] The only facts alleged in the Complaint that purport to provide the inference that Tantaros' telephone calls were intercepted are the tweets from the Block account. But, as demonstrated above, Burstein knew or could easily have learned that those tweets, far from indicating illegal activity by Fox News, are the friendly outpourings of a real person who considers himself a fan of Tantaros. The Complaint does not plead a single fact to support its conclusory allegations that Fox News directed an unidentified person to hack Tantaros' personal computer in violation of the Stored Communications Act. *Id.* ¶ 87. And, since there can be no

---

[37]     *Molefe v. Verizon N.Y., Inc.*, No. 14-CV-1835, 2015 WL 1312262, at *3-4 (S.D.N.Y. Mar. 24, 2015).

inference that the tweets in the Block account were intended to cause Tantaros "severe emotional distress," that claim too is baseless.

The pursuit of litigation without the necessary factual allegations needed to state a claim merits sanctions.  In *O'Malley*, the Second Circuit reviewed a complaint alleging three RICO violations, not one of which "could even remotely constitute a federal claim."  *See* 896 F.2d at 706.  These "preposterous" and "incredible" claims were based in part on letters that "[n]o competent attorney, after even a cursory reading . . . in conjunction with the statute, could assert a mail fraud claim in good conscience."  *See id.* at 707-08.  It was "perhaps the most 'baseless' RICO claim ever encountered by [the] court," and the decision "to press an obviously meritless lawsuit [tended] to indicate bad faith and further support[ed] the imposition of a rule 11 sanction."  *Id.* at 709.  The Second Circuit reversed the district court's denial of sanctions, and on remand, urged the imposition of sanctions on both counsel and his client.  *See* 896 F.2d at 709-10. The Complaint here is equally "preposterous" and "incredible," with zero factual support.

In addition to this fundamental defect, the Stored Communications Act applies as a matter of law only to communications storage facilities such as service providers and third party services that maintain stored information, and not to individuals' computers and devices.  This limitation has been recognized by no less than four federal Courts of Appeals, as well as by the Southern District of New York.[38]  The Stored Communications Act cannot apply here because

---

[38]    *See In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 277 (3d Cir. 2016) (personal computing devices are not protected facilities under the statute), *cert. denied sub nom.*, *C. A. F. v. Viacom Inc.*, 137 S. Ct. 624 (2017); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 147 (3d Cir. 2015) ("facility" is a term of art denoting where network service providers store private communications, and does not include home computers), *cert. denied sub nom.*, *Gourley v. Google, Inc.*, 137 S. Ct. 36 (2016); *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014) (Stored Communications Act covers access to electronic information stored in "third party computers"); *Garcia v. City of Laredo*, 702 F.3d 788, 790 (5th Cir. 2012) ("[Stored Communications Act] . . . does not apply to data stored in a personal cell phone"); *United States v. Steiger*, 318 F.3d 1039, 1049 (11th Cir. 2003) ("the SCA clearly applies, for example, to information stored with a phone company, Internet Service Provider (ISP), or electronic bulletin board system (BBS)" – it "does not appear to apply to the [the plaintiff's personal]

the Complaint alleges (albeit falsely) improper access only to Tantaros' personal devices—

namely, her personal computer and Blackberry—and not a third-party "facility."  Compl. ¶ 45.

The Second Circuit has explained that "Rule 11 requires that members of the bar avoid

haphazard, superficial research."  *International Shipping*, 875 F.2d at 393.  Accordingly, the

Second Circuit affirmed sanctions against an attorney who improperly invoked federal

jurisdiction where "'a cursory review of a hornbook or digest would have revealed the

jurisdictional defect to appellants' counsel.'" *See id.* at 391 (internal alterations omitted); *see*

*also Galasso*, 310 F. Supp. 2d at 577 ("There can be no excuse for filing claims that are

statutorily barred . . . counsel is charged with doing a modicum of legal research before bringing

a lawsuit.").  Had Burstein considered the plain language of the statute and performed the most

basic research, he would have certainly concluded that Tantaros could not state a claim under the

Stored Communications Act.

Additionally, regardless of the merits, all three causes of action are subject to arbitration

under the terms of the Agreement, just as Justice Cohen held when he compelled arbitration of

Tantaros' employment discrimination claims.  Justice Cohen specifically held that claims of

"harassment and retaliation" fell "within the terms of the parties['] broad arbitration provision,"

because "those claims arose within the scope of plaintiff's employment."  Ex. 2 at 36:15-37:5.

As explained in more detail in the Fox News Defendants' Motion to Compel Arbitration filed

today, Tantaros' claims of retaliation by means of electronic surveillance are subject to

arbitration just like her claims of retaliation by other means.  Burstein has no good faith

argument that the similar and overlapping claims alleged in the Complaint, which are directly

related to Tantaros' claims of employment discrimination, are not arbitrable.  Sanctions were

---

computer . . . because there is no evidence that [the] computer maintained any 'electronic communication
service'"); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 512 (S.D.N.Y. 2001).

awarded in *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 666-67 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 844 (2d Cir. 1999), where "plaintiff's counsel had no reasonable basis for filing the instant action given [plaintiff's] clear obligation to arbitrate her claims against defendants." *Id.* at 666.   There, as here, any doubt about the validity and scope of the arbitration clause in plaintiff's employment agreement had been resolved by an earlier order in a prior litigation.   *See id.*   Burstein's use of phony allegations to create a public spectacle in a bogus court filing when those claims had to be brought in a confidential arbitration should be sanctioned.

### III. Sanctions Are Warranted For Filing The Complaint For Improper Purposes

On this record, there can be no doubt that the Complaint was not filed for any legitimate reason.   The pursuit of such factually and legally baseless claims, alone, invites the inference that the Complaint was filed in bad faith and for improper purposes.   *See Silberman v. Innovation Luggage, Inc.*, 01 Civ. 7109, 2003 WL 1787123, at *15 (S.D.N.Y. Apr. 3, 2003) (prosecution of baseless claims compelled conclusion they were presented without adequate investigation and in bad faith); *Abner Realty, Inc.*, 1998 WL 410958, at *3-8 (failure to discover publicly discoverable inaccuracies gave rise to inference that action was filed for improper purposes).

Context matters too.   Burstein's history of grandstanding and threatening a "media event" betray his true intention:   to pressure Fox News to accede to Tantaros' extortionate settlement demands.   Burstein first threatened to take Tantaros' claims to the media rather than the courts to squeeze Fox News.   Then he unleashed the threatened media assault on Fox News and filed a legal action in contravention of his client's obligation to arbitrate her claims in confidence. Burstein then used an oral argument before the New York County Supreme Court, and the media assembled outside the courtroom, to spread his unfounded allegations of electronic surveillance.

After Justice Cohen determined that Tantaros' sexual harassment claims belong in confidential arbitration, Burstein ignored that directive and filed the instant Complaint, which repeats and amplifies Tantaros' allegations of sexual harassment, *see, e.g.*, Compl. ¶¶ 6, 23-34 & Exs. F-G, I, even though the Complaint *admits* that these "background facts" on sexual harassment allegations do not form the basis of any claim, *id*. ¶ 33.  Burstein even spoke to a reporter about the Complaint, accusing Fox News of "cyberstalking on steroids," despite the fact that Justice Cohen had ruled such conduct to be in breach of the Agreement.  *See* above note 15.  There is no excuse for this media campaign targeting the Fox News Defendants in violation of his client's contractual obligation to maintain confidentiality.  Indeed, Burstein and Tantaros are repeat offenders; in addition to this case, Tantaros (represented by Burstein) has filed another case in state court against Defendant Briganti, making some of the very same allegations asserted here.

This persistent abuse of the judicial process is exactly the kind of conduct Rule 11 sanctions exist to address.   In *Galonsky v. Williams*, counsel filed Title VII claims against talk show host Montel Williams.  *See* No. 96 Civ. 6207, 1997 WL 759445, at *1 (S.D.N.Y. Dec. 10, 1997).  After being told he would not be allowed to amend, counsel held a press conference at which he "made good on a threat he had previously made to defense counsel in a telephone call in which he said that unless defendants paid him an unspecified sum of money, his clients would seek to amend their Complaint to assert claims on behalf of [the proposed plaintiff] that would cause Mr. Williams personal embarrassment."  *See id.*, at *2-3 (internal alteration and quotations omitted).  Although the court noted that it could "not ordinarily punish a lawyer for talking to the press, it [was] appropriate to consider the press conference held by counsel in assessing the issue of his good faith in filing frivolous claims and motions."  *See id.*, at *6 (internal citation omitted).  The record establishes that Burstein's course of unprofessional conduct was for the very same improper purposes and equally merits sanctions.

**IV. The Requested Sanctions Are Necessary To Prevent Further Misconduct**

The court has significant discretion to determine appropriate sanctions for particular violations of Rule 11.  *See Edmonds v. Seavey*, 08 Civ 5646, 2009 WL 4404815, at *4-5 (S.D.N.Y. Dec. 2, 2009).  Although ***monetary awards*** are the most common form of sanctions— and they are certainly warranted here—a wide variety of non-monetary sanctions are also available to address specific misconduct.  *See id.*  Given the egregious, repeated nature of the conduct at issue here, sanctions above and beyond attorneys' fees and costs are appropriate.

***Tantaros' claims should be dismissed with prejudice.***  This sanction is justified by Burstein and Tantaros' assertion of meritless claims, based on false information.  *See Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 656-57 (7th Cir. 2003) (dismissal for "'false, fraudulent and salacious charges of discrimination' against Defendants . . . exploited the judicial process" and subjected plaintiffs to harassment); *Abdelhamid v. Altria Grp., Inc.*, 515 F. Supp. 2d 384, 399-400 (S.D.N.Y. 2007) (dismissal of claims where counsel filed amended complaint with allegations contradicted by testimony and otherwise factually impossible).

***Tantaros and Burstein should be enjoined from filing any additional claims against Fox News outside of arbitration.***  The Second Circuit has recognized that parties who have abused their litigation opportunities may be precluded altogether from further filings.  *See Safir v. U.S. Lines Inc.*, 792 F.2d 19, 23 (2d Cir. 1986).  The pursuit of previously rejected claims, like Tantaros' arbitrable employment-related claims, constitutes vexatious litigation warranting preclusion.  *See id.* at 24 ("More important, [plaintiff] has continued to assert many of these same claims after their rejection."); *Lipin v. Nat'l Union Fire Ins. Co. of Pitt.*, 202 F. Supp. 2d 126, 138-43 (S.D.N.Y. 2002) (permanently enjoining plaintiff and counsel from further subject matter litigation due to recycling failed claims).  The relief sought here is far more modest, for the Fox News Defendants request only that the Court enjoin Tantaros and Burstein from bringing

any additional "controversy, claim or dispute arising out of or relating to [the] [A]greement or

[Tantaros'] employment," Ex. 2 at 36:16-20, outside of confidential arbitration before the AAA,

*see* Arbitration Clause, attached to Rose Decl. as Ex. 22.  The relief is therefore "limited to what

suffices to deter repetition of the conduct," Fed. R. Civ. P. 11(c)(4), and falls within the Court's

broad discretion to determine the sanctions merited by these egregious violations of Rule 11.

   ***The Court should refer this matter to disciplinary authorities.***  To the extent that

Burstein "knowingly advance[d] a claim or defense that is unwarranted under existing law," or

"knowingly asserted material factual statements that are false," or that the filing of the Complaint

"serves merely to harass or injure another," he has also violated his ethical responsibilities under

Rule 3.1 of the New York Rules of Professional Conduct.  The Court "has available a variety of

possible sanctions to impose for violations," including "referring the matter to disciplinary

authorities."  *See* Fed. R. Civ. P. 11(c) (advisory committee notes to 1993 Amendments).

Accordingly, the Fox News Defendants respectfully request that the Court refer this matter to the

Grievance Committee for the Southern District of New York and to the Attorney Disciplinary

Committee in the New York State Appellate Division, First Department.

## CONCLUSION

   For the reasons set forth above, the Fox News Defendants respectfully request that the

Court grant the sanctions sought in this Motion, including a substantial monetary award of the

expenses, including attorneys' fees and costs, in bringing this motion, as well as dismissal of the

Complaint with prejudice, enjoining Tantaros and Burstein from bringing any additional claims

arising out of Tantaros' employment outside of confidential arbitration, and a referral of this

matter to disciplinary authorities.

Dated: New York, New York                DECHERT LLP
      May 24, 2017


By: _____
      Andrew J. Levander
      Linda C. Goldstein
      Nicolle L. Jacoby
      Benjamin M. Rose
1095 Avenue of the Americas
New York, New York 10035
(212) 698-3500
andrew.levander@dechert.com

*Attorneys for Defendants Fox News Network,*
*LLC, William Shine and Irena Briganti*