UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                    :

ANDREA TANTAROS                   :

                                  :

           Plaintiff,           :

                                  :

       v.                    :   Case No. 17-cv-02958 (GBD)

FOX NEWS NETWORK, LLC, ROGER   :
AILES, WILLIAM SHINE, IRENA     :
BRIGANTI, PETER A. SNYDER,      :
DISRUPTOR, INC., and JOHN DOES 1-50.  :

            Defendants.      :

------------------------------------------------------------x

 

**DEFENDANTS PETER A. SNYDER AND DISRUPTOR, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR
<u>MOTION SEEKING SANCTIONS PURSUANT TO RULE 11</u>**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND................................................... 4

    A.    Mr. Snyder's and Disruptor's Backgrounds ........................................... 4

    B.    Ms. Tantaros and Fox News Have an Employment Dispute That Plaintiff Publicizes in State Court in Derogation of Her Arbitration Agreement ................ 5

        1.    First State Court Action ................................................................ 5

        2.    Second State Court Action and Mr. Burstein's Attempted Shakedown ................................................................................... 6

    C.    Plaintiff Files This Baseless Action Against Mr. Snyder and Disruptor in Federal Court on April 24, 2017 .......................................... 9

    D.    Ms. Tantaros and Mr. Burstein Refuse to Withdraw Her Complaint in Response to the Snyder Rule 11 Letter and Fox News Rule 11 Letter................ 11

        1.    The Moving Defendants' April 28, 2017 Rule 11 Letter.......................... 11

        2.    Fox News May 2, 2017 Rule 11 Letter.................................... 12

        3.    Mr. Burstein's Litigation Misconduct.................................... 13

        4.    Fox News's May 24, 2017 Rule 11 Motion............................. 14

LEGAL STANDARD.................................................................................................. 15

ARGUMENT .............................................................................................................. 15

I.    SANCTIONS ARE WARRANTED UNDER RULE 11(B)(3) BECAUSE THE COMPLAINT IS SELF-CONTRADICTORY AND BASED ENTIRELY ON DEMONSTRABLY FALSE SPECULATION AND CONJECTURE, IF NOT OUTRIGHT FABRICATION .......................................................................... 16

    A.    The Complaint Is Bereft of Anything Other Than Speculative, Conjectural, and Conclusory Allegations Regarding Mr. Snyder ...................... 17

    B.    Ms. Tantaros Provides No Evidence for Her Claims Against Disruptor ............. 20

II.    SANCTIONS ARE WARRANTED UNDER RULE 11(B)(2) BECAUSE THE COMPLAINT IS TIME-BARRED AND LEGALLY MERITLESS, WITH NO CHANCE OF SUCCESS.................................................................................. 21

    A.    The Complaint Makes Clear That the Pleaded Claims Are Time-Barred ........... 21

    B.    Ms. Tantaros's Claims Are Wholly Meritless and Deserving of Sanctions ......... 22

## TABLE OF CONTENTS

(continued)

Page

III.   SANCTIONS ARE WARRANTED UNDER RULE 11(B)(1) BECAUSE THE
         COMPLAINT IS A TRANSPARENT ATTEMPT TO AVOID COURT-
         ORDERED CONFIDENTIAL ARBITRATION AND IS AN IMPERMISSIBLE
         STRIKE SUIT ................................................................................................................... 23

CONCLUSION ................................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Orrick, Herrington & Sutcliffe, LLP*,
    2016 WL 1071033 (S.D.N.Y. Mar. 16, 2016) ......................................................23

*Abner Realty, Inc. v. Adm'r of Gen. Serv. Admin.*,
    1998 WL 410958 (S.D.N.Y. July 22, 1998) ........................................................20

*Ahmed v. Purcell*,
    2016 WL 1064610 (S.D.N.Y. Mar. 14, 2016) ......................................................21

*Amorosa v. Ernst & Young LLP*,
    2010 WL 245553 (S.D.N.Y. Jan. 20, 2010) ........................................................23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................17

*Bello v. Barden Corp.*,
    2006 WL 2827091 (D. Conn. Sept. 29, 2006),
    *aff'd sub nom Umeugo v. Barden Corp.*,
    307 F. App'x 514 (2d Cir. 2009) ........................................................................25

*Bender v. City of New York*,
    78 F.3d 787 (2d Cir. 1996)....................................................................................22

*Bernard v. Galen Grp., Inc.*,
    901 F. Supp. 778 (S.D.N.Y. 1995) ......................................................................24

*Binghamton Masonic Temple, Inc. v. Bares*,
    168 F.R.D. 121 (N.D.N.Y. 1996) ....................................................................17, 20

*Colliton, Cravath, Swaine & Moore LLP*,
    2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008),
    *aff'd*, 356 F. App'x 535 (2d Cir. 2009)..........................................................18, 25

*Dunahoo v. Hewlett-Packard Co.*,
    2012 WL 178332 (S.D.N.Y. Jan. 20, 2012) ........................................................22

*Edmonds v. Seavey*,
    2009 WL 4404815 (S.D.N.Y. Dec. 2, 2009) ........................................................15

*Fleishman v. Hyman*,
    2006 WL 2372279 (S.D.N.Y. Aug. 16, 2006) (GBD)..........................................16

*Gambello v. Time Warner Commc'ns, Inc.*,
    186 F. Supp. 2d 209 (E.D.N.Y. 2002) ................................................................20

# TABLE OF AUTHORITIES
## (con't)

**Page(s)**

*Howard v. Klynveld Peat Marwick Goerdeler*,
    977 F. Supp. 654 (S.D.N.Y. 1997),
    *aff'd*, 173 F.3d 844 (2d Cir. 1999) ................................................................................23, 24

*Lipin v. Nat'l Union Fire Ins. Co. of Pitt.*,
    202 F. Supp. 2d 126 (S.D.N.Y. 2002) ...........................................................................25

*Manwani v. Brunelle*,
    99 F.3d 400 (2d Cir. 1995) ...........................................................................................23

*Medcalf v. Walsh*,
    938 F. Supp. 2d 478 (S.D.N.Y. 2013) ..........................................................................22

*Molefe v. Verizon N.Y., Inc.*,
    2015 WL 1312262 (S.D.N.Y. Mar. 24, 2015) .............................................................22

*Revson v. Cinque & Cinque, P.C.*,
    49 F. Supp. 2d 686 (S.D.N.Y. 1999),
    *judgment rev'd in part, vacated in part sub nom.*
    *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71 (2d Cir. 2000) .................................3, 25

*Safir v. U.S. Lines Inc.*,
    792 F.2d 19 (2d Cir. 1986) ...........................................................................................25

*Saltz v. City of N.Y.*,
    129 F. Supp. 2d 642 (S.D.N.Y. 2001) ..........................................................................21

*In re Sept. 11th Liab. Ins. Coverage Cases*,
    243 F.R.D. 114 (S.D.N.Y. 2007) .................................................................................19

*Shetiwy v. Midland Credit Mgmt.*,
    2014 WL 3739512 (S.D.N.Y. July 29, 2014) .............................................................17

*StreetEasy, Inc. v. Chertok*,
    651 F. App'x 37 (2d. Cir. 2016) ..................................................................................15

*Voiceone Commc'ns, LLC v. Google Inc.*,
    2014 WL 10936546 (S.D.N.Y. Mar. 31, 2014) ..........................................................22

**Statutes**

18 U.S.C. § 2511 ...............................................................................................................21

18 U.S.C. § 2511(1)(a) ......................................................................................................22

18 U.S.C. § 2511(1)(b) ......................................................................................................22

**TABLE OF AUTHORITIES**
**(con't)**

<u>**Page(s)**</u>

18 U.S.C. § 2511(1)(c)........................................................................................22

18 U.S.C. § 2511(1)(d) ......................................................................................22

18 U.S.C. § 2520(e) ...........................................................................................21

**Rules**

Fed. R. Civ. P. 11 ................................................................................................1

Fed. R. Civ. P. 11(b)(1).................................................................................15, 23

Fed. R. Civ. P. 11(b)(2).................................................................................15, 22

Fed. R. Civ. P. 11(b)(3).................................................................................15, 16

Fed. R. Civ. P. 11(c)(2)......................................................................................15

Fed. R. Civ. P. 11(c)(4)......................................................................................15

Defendants Peter A. Snyder and Disruptor, Inc.[1] (collectively, the "Moving Defendants"), respectfully submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure 11, for an order imposing sanctions on Plaintiff Andrea Tantaros and her counsel, Judd Burstein, for bringing this federal action they knew to be baseless and subject to contractually-required, state court-ordered arbitration.

## PRELIMINARY STATEMENT

While Plaintiff Andrea Tantaros's Complaint reads like "pulp fiction" and generated the negative buzz that she desired about her former employer, Fox News Network, LLC ("Fox News"), upon even rudimentary due diligence, it becomes abundantly clear that Ms. Tantaros's page-turner about alleged wiretapping and "sock puppet" Twitter accounts targeting her on Fox News's behalf is a *tall tale* too good to be true, because it *isn't* true at all.  Mr. Snyder and his company did no such thing, whether on behalf of Fox News or anyone else.  Ms. Tantaros and her counsel, Judd Burstein, knew that,[2] yet they brought this malicious lawsuit against the Moving Defendants anyway, for ill motives—to generate adverse publicity against her former employer with whom she is already arbitrating, and to try to coerce massive monetary settlements out of those she and her counsel are smearing.  Indeed, she and her counsel were already ordered by a state court to confidentially arbitrate these types of claims, as required under her employment agreement, yet they brought this incendiary federal suit anyway as a publicity stunt.  In other words, this is a classic case of frivolous, vexatious litigation that should not be countenanced.  It is that rare, reprehensible case that cries out for Rule 11 sanctions.

---

[1]  Disruptor, Inc., d/b/a "Disruptor Capital" (hereinafter, "Disruptor"), is a company Mr. Snyder formed in 2011.

[2]  Ms. Tantaros and Mr. Burstein were made aware of the falsity of their allegations by, for example, the Moving Defendants' counsel's pre-filing conversations with Mr. Burstein; the Moving Defendants' Rule 11 letter sent on April 28, 2017; the Rule 11 letter sent by counsel for other Defendants on May 2, 2017; and the Rule 11 sanctions motion filed by other Defendants on May 24, 2017.

To be crystal clear at the outset:

(1) **Neither Mr. Snyder nor Disruptor has ever conducted the kind of social media smear campaign that Ms. Tantaros alleges, nor have they performed *any* social media or communications consulting services for Fox News since 2012**, belying Ms. Tantaros's claims that they could have participated in any such campaign targeting her "after . . . April 25, 2016," *compare* Compl.[3] ¶ 34, *with* Dkt. 20-22 at 3; and

(2) The so-called "fictitious" "sock puppet" Twitter account that Ms. Tantaros alleges was supposedly created by the Moving Defendants to torment her was not a fake account at all.  *See* Compl. ¶¶ 8, 10–11, 38, 46–64.  It is a real account of a real person—Daniel Wayne Block (the "Block Account")—*who has never had any contact or association with the Moving Defendants*.  As verified by Mr. Block in his sworn declaration, submitted by Defendants Fox News, William Shine, and Irena Briganti in connection with their Rule 11 motion—and as Ms. Tantaros and Mr. Burstein were well aware (*see id*. ¶ 48, Compl. Ex. Y)—Mr. Block is "a real person living in Gainesville, Florida," *see* Dkt. 20-1 ¶ 1, who sent all tweets of his own volition, has "never met anyone who works for, or on behalf of," Fox News, and "do[es] not know anyone named Peter A. Snyder and ha[s] never had any contact with him or anybody else who works for Disruptor Capital or New Media Strategies,"[4] *id*. ¶¶ 2–5.

---

[3]  Unless otherwise noted, all citations to "Compl." or "Complaint" refer to the Complaint in this action (Dkt. 1).

[4]  In 1999, Mr. Snyder founded New Media Strategies ("NMS"), attracting over the next decade an impressive list of major clientele across 85 industries, including Fox News.  Ex. 1.  By 2007, he sold his share in the company for a substantial multimillion-dollar amount—but not before carving out a seven-figure share for dozens of non-shareholder employees who otherwise would not have benefitted from the sale—and then left the business altogether in 2011.  Exs. 1–2.  He has since invested those proceeds through Disruptor, which, since 2012, has focused exclusively on angel capital investing.  *See* Ex. 3.  All citations to "Ex." refer to exhibits attached to the Declaration of Randy M. Mastro in support of this motion ("Mastro Rule 11 Decl."), dated June 20, 2017, and submitted herewith.

Indeed, Ms. Tantaros and her counsel have utterly failed to plead any facts connecting the Moving Defendants to the Block Account or to any other alleged "sock puppet" account. For this reason, among others, Mr. Snyder and Disruptor have simultaneously moved to dismiss Plaintiff's claims against them, with prejudice, or alternatively, to compel arbitration of those claims and stay these proceedings pending arbitration.

That Ms. Tantaros and Mr. Burstein have committed sanctionable misconduct is even clearer from their course of conduct here. Indeed, before filing this action, Mr. Burstein personally emailed Mr. Snyder—a successful entrepreneur, media commentator, and one-time candidate for statewide office—and attempted to shake him down for millions of dollars. Mr. Burstein even included in his email gratuitous smears about Mr. Snyder's personal life and marriage that, while false and also irrelevant to any legal claim, were clearly intended to ratchet up the pressure on Mr. Snyder to pay off Mr. Burstein and Ms. Tantaros before any of their false attacks went public. Incredibly, Mr. Burstein eventually insisted that Mr. Snyder accede to an outrageous $15,000,000 settlement demand within the next 24 hours or else the lawsuit would be publicly filed, thereby generating media to advance Mr. Burstein's smear campaign. Mr. Burstein's shakedown was so brazen that it was tantamount to extortion. Sadly, this is apparently Mr. Burstein's *modus operandi*: Judge Denny Chin, while sitting on the United States District Court, admonished Mr. Burstein's "'Rambo lawyering'" and "employ[ing] inappropriate tactics in an effort to intimidate and harass [his adversary] into resolving th[e] matter on terms that [his client] and [he] himself found acceptable," including by "fil[ing] suit . . . just two days" after sending a letter purportedly "in one last effort to avoid litigation."[5]

---

[5] *Revson v. Cinque & Cinque, P.C.*, 49 F. Supp. 2d 686, 686–87 (S.D.N.Y. 1999), *judgment rev'd in part, vacated in part sub nom. Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71 (2d Cir. 2000).

Mr. Burstein and Ms. Tantaros's tactics are all the more incredible, given that they instituted this action in flagrant disregard of a state court order compelling confidential arbitration of her Fox News-related disputes:  New York State Justice David B. Cohen recently ruled that Ms. Tantaros's harassment and retaliation claims involving Fox News must be *confidentially* arbitrated.[6]  Indeed, Justice Cohen already found that Ms. Tantaros "involved the news media in th[at] dispute in violation of the confidentiality provisions of the parties' agreement," and noted Mr. Burstein's individual involvement in that breach of confidentiality.[7] Unable to speak publicly about the confidential arbitration with Fox News, Mr. Burstein and Ms. Tantaros are using Mr. Snyder and Disruptor (not to mention the federal courts) as pawns to pursue their media campaign against Fox News, and are now falsely accusing Mr. Snyder and Disruptor of participating in the very same retaliation scheme they have alleged against Fox News that is the subject of the confidential arbitration.

For all of these reasons and as set forth below, the Moving Defendants therefore respectfully request that the Court impose Rule 11 sanctions against Ms. Tantaros and her counsel, Mr. Burstein, for filing this ill-motivated and baseless federal lawsuit over claims they knew were subject to state court-ordered confidential arbitration.

### FACTUAL AND PROCEDURAL BACKGROUND

#### A.    Mr. Snyder's and Disruptor's Backgrounds

In 1999, Mr. Snyder founded one of the first social media companies, NMS, which he sold in 2007.  *See supra* n.4.  After that, Mr. Snyder began focusing on angel capital investment.  In addition to his angel investing, in 2012, at Fox News's request, Mr. Snyder,

---

[6]  *See* Ex. 4 at 36:14–38:19.

[7]  *See id.* at 22:4–8, 38:4–6.

through his company, Disruptor, performed some social media/communications consulting
work.  That consulting relationship ceased when Mr. Snyder announced his intention to run for
Lieutenant Governor of Virginia in November 2012.  **Neither Mr. Snyder, nor anyone
affiliated with Mr. Snyder, including Disruptor, has provided any social media or
communications consulting services for Fox News since 2012.**

Separate from his consulting work, Mr. Snyder had been appearing as a regular unpaid
guest on Fox News going back to 1998, and was retained in 2012 as a paid on-air contributor.
After a hiatus in which he ran for public office, Mr. Snyder returned to Fox News as an on-air
contributor in December 2013 and served in that capacity until April 2017, when that contract
ended, too.  Neither Mr. Snyder nor Disruptor was ever asked to, or ever did, engage in any
alleged retaliatory harassment of Ms. Tantaros, nor did either ever instruct anyone else to do so.

### B.    Ms. Tantaros and Fox News Have an Employment Dispute That Plaintiff Publicizes in State Court in Derogation of Her Arbitration Agreement

#### 1.    First State Court Action

In violation of the confidentiality and arbitration agreement in her employment
agreement, Ex. 6,[8] Plaintiff filed the First State Court Action on August 22, 2016, against Fox
News and various current and former executives and employees, including Roger Ailes, Mr.
Shine, and Ms. Briganti.  Compl. ¶ 9; Ex. 5.  The complaint in that action alleged, among other
things, that she had been sexually harassed and that, as "retaliation" for reporting that
harassment, Fox News "was smearing [her] through the use of friendly media and 'sock puppet'
accounts," including by "sexualiz[ing] [her] image" and through "hostile posts."  Ex. 5 ¶¶ 49–50,
53.  In six different paragraphs, the complaint details the use of "sock puppet" social media

---

[8]  *See* Ex. 6 ("Employment Agreement").  This is the portion of Ms. Tantaros's employment agreement on the
public record in *Tantaros v. Fox News Network, LLC*, No. 157054/2016, ECF No. 74 (Sup. Ct. N.Y. Cty.) (the
"First State Court Action").

accounts—"designed to make it appear they were maintained by persons unrelated to Fox News"—to "retaliate against" and "smear" Ms. Tantaros. *Id.* ¶¶ 6, 48–51, 53. In other words, Ms. Tantaros's First State Court Action complaint asserted, against other defendants, *essentially the same allegations* she now seeks to pin on Mr. Snyder and Disruptor.

On February 15, 2017, Justice Cohen granted defendants' motion to compel arbitration on the record at oral argument, determining not only that Ms. Tantaros was required to arbitrate her claims against Fox News and all individual defendants—officers, employees, and agents of Fox News—pursuant to the broad arbitration clause in her Employment Agreement, Ex. 4 at 37:6–23, but also holding that "it was plaintiff who first involved the news media in this dispute in violation of the confidentiality provisions [in that agreement]," *id.* at 38:4–6, and noting Mr. Burstein's "individual involvement in breaching that confidentiality [provision]," *id.* at 22:4–8.

2.     Second State Court Action and Mr. Burstein's Attempted Shakedown

Rather than complying with this order, Ms. Tantaros and Mr. Burstein escalated their negative publicity blitz by filing, on April 19, 2017—only two months after, and in flagrant derogation of, Justice Cohen's order—another suit (the "Second State Court Action") in the Supreme Court of the County of New York. Ex. 7. Much like the complaint in the First State Court Action, the Second State Court Action complaint described alleged retaliatory use of social media to "undermine Tantaros's credibility" (pleaded this time as a libel *per se* claim). *Id.* ¶ 11. While the complaint still did not name Mr. Snyder or Disruptor as defendants, Mr. Burstein and Ms. Tantaros expressly mentioned the Moving Defendants and their supposed "disgraceful social media campaign for Fox News against Tantaros . . . through the use of fake social media accounts known as 'sock puppet' accounts," and repeatedly referenced the fact that a lawsuit would soon be filed against Mr. Snyder and Disruptor. *See id.* ¶¶ 5–9.

That the Second State Court Action was yet another obvious attempt to put the screws to

6

Mr. Snyder so that he would simply pay off Mr. Burstein and Ms. Tantaros to make these baseless claims disappear is made abundantly clear from the fact that it was filed only two days after Mr. Burstein demanded that an outrageous $15,000,000 be paid in the following 24 hours, or else he threatened to file suit, with all the corresponding adverse publicity and reputational damage that would result.  *See* Ex. 9.

      As Mr. Burstein knew—and could easily have confirmed—before filing the Complaint, neither Mr. Snyder nor Disruptor has performed any social media or communications consulting work for Fox News since 2012,[9] *see* Dkt. 20-22, well before the recent period when this Complaint alleges Ms. Tantaros was the victim of the alleged social media campaign or the one- or two-year statute of limitations periods applicable to her claims.  Thus, Mr. Snyder was shocked to receive, on April 10, 2017, an email from Mr. Burstein, accusing him and Disruptor of participating, ***in 2016***, in the alleged social media campaign, and threatening to sue if not resolved by an exorbitant settlement payment.  Ex. 8.  Not content simply to make litigation threats, Mr. Burstein threw into his email irrelevant personal smears—falsely accusing Mr. Snyder of having a "widely-known drinking problem" and of "hit[ting] on" Ms. Tantaros as "his pregnant wife slept" in the same home—for no apparent reason other than to try to coerce a huge, multimillion dollar settlement out of Mr. Snyder to avoid the adverse publicity.  *Id.* Needless to say, these personal attacks against Mr. Snyder are completely fabricated, but Ms. Tantaros's accusations were particularly astonishing because, as Ms. Tantaros acknowledges in her Complaint, Mr. Snyder and Ms. Tantaros were long-time friends, sufficiently close that Ms. Tantaros "stayed at Snyder's Nantucket home on a number of occasions," Compl. ¶ 74, Mr.

---

[9]  Mr. Snyder's only work for Fox since 2012 has been as an on-air contributor—for which he was paid less than what he received for his earlier consulting work—but Mr. Snyder ceased even that on-air work in April 2017.

Snyder helped Ms. Tantaros secure her first interview and subsequent job at Fox News, and over the years Mr. Snyder repeatedly endeavored to *help*, rather than harm, her, including by providing her with strategy and advice regarding her relationship with Fox News, *cf. id*. Ex. JJ.

Realizing he was the target of a shakedown by a former friend, Mr. Snyder retained counsel, Randy Mastro, who then contacted Mr. Burstein by phone on April 17 to ask for more time to get up to speed before any suit was filed, as Mr. Burstein had threatened to do imminently.  Indeed, Mr. Mastro told Mr. Burstein at the time that it was his understanding that Mr. Snyder had never engaged in the type of activity Ms. Tantaros and Mr. Burstein alleged, and more so, had ceased doing any social media work on behalf of Fox News many years prior.  Mastro Rule 11 Decl. ¶ 10.  In response, later that same day, Mr. Burstein sent Mr. Mastro an email demanding an outrageous settlement of $15,000,000 and giving the Moving Defendants just over 24 hours to respond or else face immediate suit.  *See* Ex. 9.  Given that Mr. Burstein had suggested in his April 17 discussion with Mr. Mastro that he was aware Mr. Snyder had sold his company for millions of dollars, could therefore afford to pay, and should want to settle to avoid damaging his reputation, Mastro Rule 11 Decl. ¶ 10, this demand was an obvious attempt to coerce Mr. Snyder into settling Ms. Tantaros's groundless claims in order to avoid the adverse publicity and reputational damage that would result from the public filing of this lawsuit, no matter how baseless.

The next day, on April 18, 2017, Mr. Mastro sent Mr. Burstein an email rejecting his settlement demand and explaining why the action he proposed to bring against the Moving Defendants would be baseless and sanctionable.  Ex. 10.  The very next day, on April 19, 2017, Mr. Burstein proceeded to needlessly publicize in the Second State Court Action the contents of his April 10, 2017 email threatening Mr. Snyder with litigation.  Ex. 7.

## C.   Plaintiff Files This Baseless Action Against Mr. Snyder and Disruptor in Federal Court on April 24, 2017

After the Moving Defendants failed to comply with their outrageous demands, Mr. Burstein and Ms. Tantaros went even further, filing the instant baseless action in federal court on April 24, 2017, in which they allege violations of 18 U.S.C. § 2511 *et seq*. (the "Wiretap Act") and intentional infliction of emotional distress ("IIED").  A plain reading of this Complaint— which asserts, in conclusory language wholly bereft of factual support, precisely the same flawed theories of liability Mr. Mastro expressly informed Mr. Burstein were baseless pre-filing— makes clear that **neither Ms. Tantaros nor her counsel apparently bothered to conduct even the most basic investigation of their allegations prior to filing the Complaint.  Had they done so, they could not possibly have filed it**.  Nevertheless, seeking yet a third bite at the publicity apple, in violation of her arbitration agreement and Justice Cohen's order, Ms. Tantaros now adds new defendants—Mr. Snyder and Disruptor—and asserts new causes of action— purported violations of the Wiretap Act and IIED—but alleges essentially the same supposed social media retaliation scheme she pleaded in both her First and Second State Court Action complaints and for which she already sued, in state court, defendants other than the Moving Defendants, including those named here.  *See* Compl. ¶¶ 19–20, 44, 72–80.

Just as in the First and Second State Court Action complaints, the Complaint alleges that, because of Ms. Tantaros's "complain[ts] . . . about Ailes' sexual harassment of her" and "complaints about retaliation against her," *id*. ¶¶ 41–43,[10] Defendants "retaliated" against her by "criminally cyber-stalking her through sockpuppet Twitter accounts," employing "unique surveillance viruses" so that Ms. Tantaros "could be spied upon," and utilizing "a constant

---

[10]   The Complaint includes two different versions of ¶¶ 38–44: first in Section A.II.a.i and then again spanning Sections A.II.a.ii and A.II.a.iii.  This citation refers to the second versions of ¶¶ 41 and 43 in Section A.II.a.iii.

stream of social media posts from multiple sockpuppet accounts designed to make it clear to Ms. Tantaros that she was being illegally surveilled," *id.* ¶¶ 11, 45–46.  Notably, the Complaint ***expressly disclaims*** that Mr. Snyder or Disruptor have any history of such harassment-related behavior—in a purported 2013 conversation with Ms. Tantaros,

> [Mr.] Snyder did not give Ms. Tantaros any indication that he was using . . . digital tools to attack Fox News employees, let alone women who had claimed to have been sexually harassed by Ailes or O'Reilly.  Nor was he telling her anything that was a real surprise, as it is was well known in the industry that Snyder's former company, [NMS], had engaged in **legal** social media campaigns . . . .

*Id*. ¶ 75 (emphasis in original).

Although the Complaint mostly focuses on Tweets issued by the Block Account, which purportedly "ma[d]e it clear to Ms. Tantaros that she was being illegally surveilled," *see id.* ¶¶ 46–63, the Complaint offers no facts connecting Mr. Block or his Twitter account to Mr. Snyder or Disruptor, or anyone in their control.  Nor does the Complaint allege the Moving Defendants' involvement in the supposed "hacking Ms. Tantaros's computer" or any other "surveillance" of her, or their receipt of any information from this alleged surveillance.  *Id*. ¶¶ 45–46.

Rather, the only purported connection in the 34-page complaint between the Moving Defendants and the alleged sockpuppet Twitter harassment of Ms. Tantaros—and the sole basis for Ms. Tantaros's "[o]n-information-and-belief" allegation that Mr. Snyder has engaged in the complained-of misconduct within the applicable limitations period, *see id.* ¶ 80—is the timing of a Tweet made by a third-party completely unconnected to the Moving Defendants:  on April 18, 2017, at 11:13 pm EST, "just one hour and 17 minutes after Ms. Tantaros's counsel informed Snyder's counsel that Ms. Tantaros was going to be suing Snyder in the next day or two, [third party] Nomiki Konst sent out a defamatory Tweet in which she falsely claimed that Ms. Tantaros had physically assaulted and threatened her."  *Id*. ¶ 80(f).  In other words, the Complaint presumes, without any basis whatsoever, that Mr. Snyder somehow orchestrated the Konst Tweet

10

because he learned that a suit against him was imminent.  This assumption is specious, as Mr.

Snyder has never met or contacted Ms. Konst, nor does the Complaint allege that he did.  Further

undermining this alleged temporal or causal connection, Mr. Snyder knew about the impending

lawsuit much earlier than the Konst Tweet, namely on April 10, 2017, when Mr. Burstein

originally informed Mr. Snyder of his intention to sue, Ex. 8, and on April 17, 2017, when Mr.

Burstein sent him a demand letter mandating a settlement figure of $15,000,000 by "no later than

5:00 pm on April 18, 2017," Ex. 9.  It was therefore clear at the latest by 5:00 pm on April 18,

2017 that litigation would commence, a sentiment that Mr. Snyder's counsel, Mr. Mastro,

clarified in his email response to Mr. Burstein at 7:45 pm.  *See* Ex. 10.  There is thus no temporal

or causal connection between Messrs. Mastro's and Burstein's correspondence and the Tweet

sent that night by a person unaffiliated with Mr. Snyder or Disruptor.

> **D.     Ms. Tantaros and Mr. Burstein Refuse to Withdraw Her Complaint in Response to the Snyder Rule 11 Letter and Fox News Rule 11 Letter**

> > 1.     The Moving Defendants' April 28, 2017 Rule 11 Letter

In light of these glaring deficiencies, and because Mr. Burstein had already been

informed of the falsity of this Complaint's allegations, on April 28, 2017, Mr. Mastro sent Mr.

Burstein a letter pursuant to Rule 11's "safe harbor" provisions, informing Mr. Burstein and Ms.

Tantaros of the Moving Defendants' intention "to file Rule 11 sanctions" against them if they

"do not withdraw all claims and allegations against [the Moving Defendants]," and explaining

that sanctions were warranted because the Complaint:

> (a) Made allegations against the Moving Defendants that were "lacking 'evidentiary support,' and completely fabricated," based, as they are, "on flimsy conjecture";

> (b) "[M]ischaracterize[d] the pre-litigation communications between" Mr. Burstein and Mr. Mastro "in a false and nonsensical manner";

> (c) Asserted "untenable" legal claims against the Moving Defendants that were "implausible, based on self-contradictory allegations, and time-barred";

(d) "[W]as filed in clear violation of both the extremely broad confidential arbitration clause in Ms. Tantaros's employment agreement with Fox News" and the order in the First State Court Action;

(e) "[W]as filed for the improper purpose of publicly smearing all Defendants," while getting around the arbitration clause's confidentiality bar; and

(f) Was a "strike suit intended to shake down the Defendants for money."

Ex. 11 ("Snyder Rule 11 Letter").[11]

## 2.   Fox News May 2, 2017 Rule 11 Letter

The Snyder Rule 11 Letter was substantiated on May 2, 2017, when Mr. Burstein and Ms. Tantaros were again alerted to the dearth of any factual support for Ms. Tantaros's allegations in a letter from Defendants Fox News, Mr. Shine, and Ms. Briganti regarding their own Rule 11 motion, Dkt. 20-22 ("Fox News Rule 11 Letter"), since filed on May 24, 2017, Dkts. 18–20 ("Fox News Rule 11 Motion").  The Fox News Rule 11 Letter explained that additional factual allegations in the Complaint are false—for example, Mr. Block is not "a fictitious identity" for a "sock puppet" account controlled by or associated with Mr. Snyder, but is "a real person living in Gainesville, Florida, a fact that could have been ascertained in a few minutes of research,"[12] and he did not even know Mr. Snyder.  *See* Dkt. 20-22 at 2–3.  The Fox News Rule 11 Letter also corroborated exactly what the Moving Defendants' counsel told Mr. Burstein before the Complaint was filed:  that "[n]either Peter A. Snyder nor Disruptor, Inc., have performed any services for Fox News Network, LLC or its affiliates since December 2012," *id*. at 3, other than the on-air contributor services previously discussed, *see supra* n.9.

---

[11]   The "safe harbor" period expired on May 19, 2017 for the Snyder Rule 11 Letter, and Ms. Tantaros and Mr. Burstein have not, as demanded in that letter, "withdraw[n] all claims and allegations against" the Moving Defendants.  Although Mr. Burstein has stated his intention to file an amended complaint, Ex. 12 at 2, no amendment could possibly cure the Complaint's defects warranting sanctions.

[12]   This is not even the first time that Ms. Tantaros and Mr. Burstein have falsely accused a real person of being a Fox News-controlled "sock puppet" used to smear Ms. Tantaros.  *See* Ex. 13.

3.      <u>Mr. Burstein's Litigation Misconduct</u>

On May 22, 2017, Mr. Burstein responded to the Snyder Rule 11 Letter by proposing the dismissal, without prejudice, of Ms. Tantaros's claims against the Moving Defendants, subject to an investigation, by a mutually agreeable independent investigator, of whether Mr. Snyder "(a) 'has done no social-media related work for Fox in many years,' (b) has not engaged in any conduct directed toward Ms. Tantaros since April 25, 2015, directly or indirectly, and (c) has not performed any social media services for Fox News during the period from April 25, 2015 to April 24, 2017."  If the investigator cleared Mr. Snyder (as any responsible investigator would), Ms. Tantaros would then issue a public apology and grant Mr. Snyder a general release.  Ex. 12 at 1–2.  But even this proposal intimated the improper purpose motivating Mr. Burstein and Ms. Tantaros's litigation conduct, as Mr. Burstein demanded that Mr. Snyder essentially submit to a tremendously invasive witch hunt, giving the independent investigator the right to question Mr. Snyder and any employee witness, and "unfettered access to all documents and information requested"—without imposing any reasonable limitations or scope on such requests, other than that Mr. Burstein himself would be "permitted to provide the [independent investigator] confidential information about relevant areas of investigation."  *Id*. at 1 ¶¶ 2–3.  Even so, Mr. Snyder was so confident that all of Ms. Tantaros's allegations were completely false that he would have submitted to such an invasive investigation so that the truth would come out.

Less than 24 hours later, however, Mr. Burstein backed away from even this proposal, conditioning it on the understanding that "there will be *absolutely no limitations upon who the investigator may speak to and what records the investigator may examine*," Ex. 14 (emphasis added), and then dramatically expanding the scope of the proposed investigation once again, to a "full investigation" under which the investigator would have "[c]omplete freedom to interview Snyder or anyone in his employment," "Computer Forensic to do [sic] ESI search," and

13

"[c]omplete access to all of Snyder's business and banking records," Ex. 15 at 6. Again, Mr.

Snyder remained open to such an investigation, but Ms. Tantaros and her counsel, Mr. Burstein,

were not willing to subject themselves to any reciprocal investigation to determine whether they

had any good faith basis for making these incendiary allegations against Mr. Snyder and

Disruptor. *Id.* at 2–6. And after an extended back-and-forth, Mr. Burstein finally pulled the plug

and told the Moving Defendants' counsel to file their sanctions motion.

4.   <u>Fox News's May 24, 2017 Rule 11 Motion</u>

In the interim, on May 24, 2017, other named Defendants filed the Fox News Rule 11

Motion, which provided further overwhelming evidence of the falsity of Ms. Tantaros's

allegations against the Moving Defendants. For example, contrary to her claims that the Block

Account belonged to a "fictitious identity" and was, in fact, a "sockpuppet" account being used

by Defendants, including Mr. Snyder and Disruptor, to perpetrate the alleged retaliatory social

media campaign, *see* Compl. ¶¶ 38, 46–63, Mr. Block is a "real person living in Gainesville,

Florida," Dkt. 20-1 ¶ 1, *see also* Dkt. 20-7; he created the Block Account "for [his] own personal

use, not as a 'sock puppet' for anyone else," Dkt. 20-1 ¶ 2; he has never shared his account logon

information with anyone, authorized anyone to use the account on his behalf, or otherwise

become aware of anyone other than him possessing the account's logon credentials, *id.*; he

himself sent all Tweets from the Block Account "when [he] was moved to do so" and "[n]o one

has ever asked [him] to send any tweet on their behalf . . . [or] paid [him]" to do so, *id.* ¶ 3; and

he has "never met anyone who works for, or on behalf of, [Fox News] or any affiliated Fox

corporate entities," he does "not know, nor ha[s] [he] ever met or spoken to," Mr. Ailes, Mr.

Shine, or Ms. Briganti, and he "do[es] not know anyone named Peter A. Snyder and ha[s] never

had any contact with him or anybody else who works for Disruptor [] or [NMS]," *id.* ¶¶ 4–5.

Moreover, contrary to the Complaint's allegations that the Block Account's Tweets in the

"spring and summer of 2016" "ma[d]e it clear to Ms. Tantaros that she was being illegally surveilled," Compl. ¶ 46, a review of the Block Account reveals that Mr. Block tweeted substantially similar Tweets ***prior to Ms. Tantaros's purported intercepted communications***, *compare id.* ¶¶ 55, 57–59, 61–62, *with* Dkt. 19 at 8–10, Dkts. 20-9–20-14, thus further belying any suggestion that the Block Account Tweets were posted as part of any retaliatory social media smear campaign.  And whereas the Complaint alleges that Ms. Tantaros received a copy of her book in the mail from Mr. Block even though "[t]here is no possible way that he could have known Ms. Tantaros's home address," Compl. ¶ 48, it turns out that a simple Internet search returns an address for Ms. Tantaros, *see* Dkt. 20-20.  Despite this evidence, Ms. Tantaros and Mr. Burstein have not withdrawn their Complaint's allegations against any of the Defendants.

## LEGAL STANDARD

Rule 11 of the Federal Rules of Civil Procedure imposes a duty on counsel to present factual allegations that "have evidentiary support," Fed. R. Civ. P. 11(b)(3), to make legal claims that are "warranted by existing law," Fed. R. Civ. P. 11(b)(2), and not to file claims made "for any improper purpose," Fed. R. Civ. P. 11(b)(1).  Once a Court determines that Rule 11 has been violated, the court "may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion," Fed. R. Civ. P. 11(c)(2), and has significant discretion to determine appropriate sanctions for particular violations of Rule 11, *see Edmonds v. Seavey*, 2009 WL 4404815, at *4–5 (S.D.N.Y. Dec. 2, 2009), namely those that "'suffic[e] to deter repetition of the conduct or comparable conduct,'" *StreetEasy, Inc. v. Chertok*, 651 F. App'x 37, 39 (2d. Cir. 2016) (quoting Fed. R. Civ. P. 11(c)(4)).

## ARGUMENT

This action is nothing more than Ms. Tantaros and her counsel asserting the same allegations as in her First and Second State Court Action complaints, this time in federal court

15

and against innocent third parties—Mr. Snyder and his company, Disruptor—for the improper

purposes of circumventing a state court order compelling Ms. Tantaros to confidential

arbitration, continuing her smear campaign against Fox News and related individuals/entities,

and attempting to score a huge settlement by weaponizing the threat of reputational harm from

Ms. Tantaros's groundless accusations to the innocent Moving Defendants, who live in the

public eye.  The Complaint's allegations against the Moving Defendants are simply false,

without foundation, factual basis, or legal merit.  Despite being told that repeatedly by the

Moving Defendants' counsel, Ms. Tantaros and her counsel have now accused Mr. Snyder and

Disruptor, in a public federal court pleading, of *criminal* cyberstalking, unlawful electronic

surveillance in violation of the Wiretap Act, and extreme and outrageous conduct rising to the

level of IIED, making the rampant speculation and flat-out fabrication inherent in the Complaint

part of the public record—and Mr. Snyder's and Disruptor's reputations—for the foreseeable

future.  Rule 11 exists to discourage precisely this kind of bad-faith abuse of process, and the

Moving Defendants respectfully request that the Court impose such sanctions here.  *See, e.g.,*

*Fleishman v. Hyman*, 2006 WL 2372279, at *1 (S.D.N.Y. Aug. 16, 2006) (GBD) (adopting

report and recommendation dismissing complaint and imposing sanctions where plaintiff's

allegations "were essentially the same as claims that were previously dismissed by the Court").

## I.    SANCTIONS ARE WARRANTED UNDER RULE 11(B)(3) BECAUSE THE COMPLAINT IS SELF-CONTRADICTORY AND BASED ENTIRELY ON DEMONSTRABLY FALSE SPECULATION AND CONJECTURE, IF NOT OUTRIGHT FABRICATION

Ms. Tantaros's counsel has shirked his Rule 11 obligation to make "an inquiry reasonable

under the circumstances" and to verify that "the factual contentions [in his client's Complaint]

have evidentiary support."  Fed. R. Civ. P. 11(b)(3).  Any such reasonable inquiry would have

revealed precisely what Mr. Snyder and Disruptor's counsel told Ms. Tantaros's counsel

explicitly and repeatedly in the days leading up to the filing of her Complaint:  that Ms.

Tantaros's claims against Mr. Snyder and Disruptor are utterly baseless.[13]

### A.    The Complaint Is Bereft of Anything Other Than Speculative, Conjectural, and Conclusory Allegations Regarding Mr. Snyder

Ms. Tantaros alleges the same retaliatory social media scheme she alleged in her First

and Second State Court Action complaints, but this time—ostensibly in support of her claim that

*Mr. Snyder* is responsible for that scheme, and for purported Wiretap Act violations and IIED—

she states conclusorily that, in conducting a "criminal harassment campaign against Ms.

Tantaros," Fox News "reli[ed] upon Snyder."  Compl. at 22–24.  In other words, Ms. Tantaros's

own Complaint acknowledges that this suit is merely a regurgitation of the Fox News-related

retaliation scheme that Justice Cohen held to be subject to confidential arbitration.

Ms. Tantaros's purported factual support for Mr. Snyder's role in this alleged retaliation

scheme consists of only a transcription of a hearsay magazine article regarding a website that

was "shuttered *in 2007*," *id*. ¶ 72, harmless email exchanges between Mr. Shine and Mr. Snyder

*in March 2014*, *id*. ¶¶ 76–79, and statements allegedly made by Mr. Snyder to Plaintiff *in August

2013*, *id*. ¶¶ 73–75, in which, according to Plaintiff, Mr. Snyder "describ[ed] to her . . . the work

of Disruptor" as "just what" his former company, NMS, had done: "engaged in **legal** social

media campaigns to influence opinions, etc.," *id*. ¶ 75 (last emphasis in original).  In other words,

Ms. Tantaros alleges that Fox News "reli[ed] upon Snyder," for "**legal**" conduct, during a period

---

[13]  Rather than pleading *facts*—as opposed to "labels and conclusions," or "naked assertion[s] devoid of further factual enhancement," which are insufficient under federal pleading standards, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)—connecting conduct on Mr. Snyder or Disruptor's part to the alleged Wiretap Act violations and IIED she complains of, Ms. Tantaros's Complaint is based solely on "speculation and conjecture," unsupported by "tangible evidence," and is sanctionable on that basis alone.  *Binghamton Masonic Temple, Inc. v. Bares*, 168 F.R.D. 121, 127–29 (N.D.N.Y. 1996) (inferring improper purpose from complete lack of factual and legal basis for bringing a claim; holding claims had no chance of success and were frivolous; and awarding monetary sanction of attorneys' fees and nonmonetary sanction of requiring attorneys to seek leave from court before filing papers); *see also Shetiwy v. Midland Credit Mgmt.*, 2014 WL 3739512, at *3 (S.D.N.Y. July 29, 2014) (Rule 11 is violated where, as here, a party "fail[s] to ensure a factual basis for each of their allegations").

predating her alleged harm by at least two years.

Leaving aside that Ms. Tantaros's allegations make clear her claims are time-barred, *see infra*, they also contradict her purported theory of liability, as they indicate that, in fact, Mr. Snyder was attempting to *help* Ms. Tantaros, not hurt her:  Ms. Tantaros and Mr. Snyder were "friendly enough that Ms. Tantaros stayed at Snyder's Nantucket home on a number of occasions," *id.* ¶ 74, Mr. Snyder offered Ms. Tantaros a job, *id.* ¶ 75, and Mr. Snyder provided advice and support in connection with Ms. Tantaros's attempts to advance her career at Fox News, *cf. id.* Ex. JJ.  Such "[s]elf-contradictory assertions . . . clearly lack reasonable evidentiary support" and thus "violat[e] . . . Rule 11(b)(3)."  *Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *13 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d Cir. 2009).

The outrageous nature of Ms. Tantaros's allegations is made even clearer by her self-serving conclusion that, "[o]n information and belief," Mr. Snyder is "still performing the same services for Shine and Fox News."  Compl. ¶ 80.  The sole support Ms. Tantaros offers for this statement is that, "just one hour and 17 minutes" after Ms. Tantaros's counsel allegedly informed Mr. Snyder's counsel that litigation was imminent, third party "Nomiki Konst sent out a defamatory Tweet in which she falsely claimed that Ms. Tantaros had physically assaulted and threatened her," *id.* ¶ 80(c)–(f), and this was then re-Tweeted 348 times, on "information and belief, . . . from Twitter accounts controlled by Snyder," *id.* ¶ 80(i).  In other words, Ms. Tantaros asks this Court to deem plausible her claims based on the incredible assumption that Mr. Snyder waited more than a week after Mr. Burstein's April 10, 2017 letter threatening Mr. Snyder with imminent litigation, and six hours after the expiration of Mr. Burstein and Ms. Tantaros's shakedown $15,000,000 settlement demand at 5:00 pm on April 18, 2017, to then coordinate alleged retaliation via a third party *to whom Mr. Snyder has no connection*.

18

Ms. Tantaros pleads no facts that would permit the Court to draw the inference that Mr. Snyder had any involvement in either Ms. Konst's original Tweet or any of the 348 alleged re-Tweets thereof—nowhere does Plaintiff allege any relationship or communications between Ms. Konst *and Mr. Snyder* (nor could she so plead, as Mr. Snyder does not know Ms. Konst), or even between Ms. Konst and the other Fox News employees or legal representatives with whom Plaintiff's counsel allegedly communicated, which were then somehow conveyed *to Mr. Snyder*. Nor does Plaintiff plead such basic facts as how many of the 348 alleged re-Tweets were from accounts allegedly controlled by Mr. Snyder, the nature of that alleged control, or even the names or handles of the purportedly controlled Twitter accounts.  It is precisely these types of "baseless factual contention[s]," "utterly lacking in support," which warrant Rule 11 sanctions. *In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 124, 128 (S.D.N.Y. 2007).

Not content with mere speculation and conjecture, Ms. Tantaros ventures into full-on fabrication, alleging that Tweets issued from the Block Account and an unnamed "one of Defendants' sockpuppet accounts" used or disclosed information supposedly illegally intercepted from Ms. Tantaros's "personal telephone," and that Block allegedly mailed her a copy of her own book to her home address, which "[t]here is no possible way that [he] could have known." Compl. ¶¶ 48, 54–63, 82.  Ms. Tantaros has simply invented these contentions from whole cloth: Not only does the Block Twitter account belong to a real person living in Gainesville, Florida, but Ms. Tantaros's home address is publicly available through a simple internet search, Dkts. 20-1, 20-7, 20-20, 20-22, and the Tweets purportedly demonstrating that Ms. Tantaros "was being illegally surveilled," Compl. ¶¶ 46–64, were largely similar to Tweets posted by the Block Account prior to Ms. Tantaros's allegedly intercepted communications, *compare id.* ¶¶ 55, 57–59, 61–62, *with* Dkt. 19 at 8–10, Dkts. 20-9–20-14.

19

That a reasonable inquiry would have revealed these basic facts—which decimate Ms. Tantaros's allegations—is itself a basis on which to impose sanctions on Ms. Tantaros and her counsel.  *See, e.g., Gambello v. Time Warner Commc'ns, Inc.*, 186 F. Supp. 2d 209, 229 (E.D.N.Y. 2002) (imposing sanctions for failure to conduct reasonable inquiry prior to filing, where inquiry would have shown lack of evidentiary support for allegations).[14]  But in addition, the dearth of *any* facts connecting these alleged "sockpuppet" accounts to Mr. Snyder, let alone facts suggesting that Mr. Snyder exercised a degree of control over them sufficient to render him liable for the information they disseminated, renders Ms. Tantaros's Complaint at best "speculat[ive]" and "conjectur[al]," and at worst pure fabrication, either of which is cause for the imposition of sanctions under Rule 11.  *See Binghamton Masonic Temple*, 168 F.R.D. at 127–29.

### B.    Ms. Tantaros Provides No Evidence for Her Claims Against Disruptor

Amazingly, Ms. Tantaros's Complaint alleges even fewer facts regarding Disruptor than it does regarding Mr. Snyder.  In the 100-paragraph, 34-page Complaint, Ms. Tantaros mentions Disruptor only six times, including twice to establish Disruptor's state of incorporation and location of its principal office.  *See* Compl. ¶ 20.  The remaining four allegations related to Disruptor describe only "legal" conduct predating the "events at issue in this case," namely "after [Plaintiff] was removed from the air on April 25, 2016," *id.* ¶¶ 19, 34, 73–75:

- "Snyder had once tried to hire [Ms. Tantaros] to run [NMS's] public affairs department to do just what Snyder was describing to her as the work of Disruptor," namely "engag[ing] in **legal** social media campaigns to influence opinions, etc."  *Id.* ¶ 75 (emphasis in original).

- "*On August 19, 2013*, . . . Snyder told Ms. Tantaros that he used an 'army' of independent contractors to complete assignments, and that Disruptor was used to employ these contractors."  *Id.* ¶ 74 (emphasis added).

- "Snyder's work did not end when he sold [NMS] [in 2007]. Instead, as Snyder admitted to Ms.

---

[14]  *See also Abner Realty, Inc. v. Adm'r of Gen. Serv. Admin.*, 1998 WL 410958, at *3–8 (S.D.N.Y. July 22, 1998) (imposing Rule 11 sanctions for, *inter alia*, failure to make a reasonable inquiry, including even basic Internet research, which would have revealed inaccuracies in pleading).

Tantaros, he continued to perform the same services for Ailes through Disruptor." *Id*. ¶ 73.

- "*As of 2014*, Snyder was performing the same work for Ailes through his new company, Disruptor, Inc." *Id*. ¶ 19 (emphasis added).

Leaving aside that neither Mr. Snyder nor Disruptor has done any social media consulting work for Fox News since 2012, none of these assertions describes any conduct on Disruptor's part that would subject it to liability for the alleged Wiretap Act violations or IIED, and Rule 11 sanctions are warranted on this basis alone. *See, e.g., Saltz v. City of N.Y.*, 129 F. Supp. 2d 642, 646–47 (S.D.N.Y. 2001) (imposing Rule 11 sanctions for failure to "make a reasonable inquiry into the facts alleged in plaintiff's complaint" where plaintiff's counsel's pre-filing investigation consisted of barely more than interviewing his client).

## II.    SANCTIONS ARE WARRANTED UNDER RULE 11(B)(2) BECAUSE THE COMPLAINT IS TIME-BARRED AND LEGALLY MERITLESS, WITH NO CHANCE OF SUCCESS

### A.    The Complaint Makes Clear That the Pleaded Claims Are Time-Barred

Ms. Tantaros's own Complaint makes clear that her claims of purported Wiretap Act violations and IIED are time-barred.  Ms. Tantaros's claims can reach back, at most, to April 24, 2015, two years prior to the filing of Plaintiff's Complaint.  *See* 18 U.S.C. § 2520(e) (two-year statute of limitations applicable to private cause of action under 18 U.S.C. § 2511); *see also Ahmed v. Purcell*, 2016 WL 1064610, at *4 (S.D.N.Y. Mar. 14, 2016) (one-year statute of limitation for IIED claims).  Yet the sole allegations pleaded in Ms. Tantaros's Complaint against Mr. Snyder and Disruptor go back to 2014, are therefore now time-barred, and describe lawful conduct anyway.  *See* Compl. ¶¶ 19, 76–79.  And even those allegations are contrary to reality, as neither Mr. Snyder nor Disruptor have done any social media consulting work for Fox News since 2012, other than the on-air contributor work previously mentioned, *supra* n.9; *see also* Dkt. 20-22.  Even though Mr. Snyder's counsel informed Ms. Tantaros's counsel of this fact

on multiple occasions pre-filing, Ms. Tantaros and her counsel insisted on asserting these time-barred claims against Mr. Snyder and Disruptor, and should therefore be sanctioned under Rule 11(b)(2). *See, e.g., Voiceone Commc'ns, LLC v. Google Inc.*, 2014 WL 10936546, at *13 (S.D.N.Y. Mar. 31, 2014) (Rule 11(b)(2) sanctions imposed for filing time-barred claims).

### B. Ms. Tantaros's Claims Are Wholly Meritless and Deserving of Sanctions

This Court should also impose Rule 11 sanctions because the claims are not "warranted by existing law," Fed. R. Civ. P. 11(b)(2), as set forth more fully in the Moving Defendants' motion to dismiss the Complaint, or alternatively, to compel arbitration and stay proceedings, filed simultaneously herewith.  Ms. Tantaros fails to allege, for example, that either of the Moving Defendants did, or attempted to, intercept Ms. Tantaros's wire, oral, or electronic communications, *see* 18 U.S.C. §§ 2511(1)(a), (b), or that either of them actually used or disclosed, or attempted to use or disclose, the contents of any such communication, knowing (or having reason to know) that the information was obtained through unlawful interception, *id.* §§ 2511(c), (d), as is required to state a claim for Wiretap Act violations.  *See, e.g., Molefe v. Verizon N.Y., Inc.*, 2015 WL 1312262, at *3–4 (S.D.N.Y. Mar. 24, 2015); *Dunahoo v. Hewlett-Packard Co.*, 2012 WL 178332, at *5 (S.D.N.Y. Jan. 20, 2012).

And while her IIED claim requires a showing of (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) actual severe emotional distress, *see Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996), Ms. Tantaros fails to plead *any* misconduct on Mr. Snyder's or Disruptor's part, let alone the "most egregious conduct" that is "sufficiently extreme and outrageous" to permit the "extremely disfavored" tort of IIED to proceed, nor does she make "any non-conclusory allegation that [she] suffered severe emotional distress."  *See Medcalf v. Walsh*, 938 F. Supp. 2d 478, 488, 490 (S.D.N.Y. 2013).

Because Ms. Tantaros "does not come close to satisfying the standard" for either of these claims, as she "fails to sufficiently allege facts to satisfy [multiple] of the . . . required elements," and instead her Complaint "seems designed . . . to prolong litigation and to continue to harass" the defendants, Ms. Tantaros and her counsel should be sanctioned under Rule 11. *See Abbas v. Orrick, Herrington & Sutcliffe, LLP*, 2016 WL 1071033, at *6 (S.D.N.Y. Mar. 16, 2016).[15]

## III.  SANCTIONS ARE WARRANTED UNDER RULE 11(B)(1) BECAUSE THE COMPLAINT IS A TRANSPARENT ATTEMPT TO AVOID COURT-ORDERED CONFIDENTIAL ARBITRATION AND IS AN IMPERMISSIBLE STRIKE SUIT

Ms. Tantaros and Mr. Burstein should be sanctioned under Rule 11(b)(1) because they have instituted this action for the "improper purpose[s]" of (1) forcing Defendants to undertake vexatious litigation that is properly subject to confidential arbitration; (2) publicizing Plaintiff's allegations in derogation of Justice Cohen's ruling and the confidentiality provision of the Arbitration Clause in Ms. Tantaros's Employment Agreement; and (3) harassing the Moving Defendants into a quick and astronomical settlement.  Fed. R. Civ. P. 11(b)(1).

*First*, Rule 11(b)(1) sanctions should be imposed because Ms. Tantaros and Mr. Burstein are brazenly attempting to avoid Justice Cohen's arbitration ruling and re-litigate her harassment and retaliation claims.  *See, e.g.*, *Manwani v. Brunelle*, 99 F.3d 400 (2d Cir. 1995) (discussing imposition of Rule 11 sanctions against plaintiff who attempted to relitigate in E.D.N.Y. a New York State court order compelling arbitration).[16]  Justice Cohen clearly held in the First State Court Action that Ms. Tantaros's harassment and retaliation claims against "individual defendants" must be arbitrated even "though they are not signatories to the arbitration

---

[15]  The meritless and sanctionable nature of Ms. Tantaros's allegations is further evidenced by her repeated references to the Moving Defendants' purported "criminal cyber-stalking scheme . . . in violation of 18 U.S.C. § 2261A," Compl. ¶¶ 4, 7, 10–11, 46, 84, 92, 96, which her counsel, Mr. Burstein, has already conceded, in his April 10, 2017 email to Mr. Snyder, does not provide a private right of action, *see* Ex. 8.

[16]  *See also Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 666 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 844 (2d Cir. 1999); *Amorosa v. Ernst & Young LLP*, 2010 WL 245553, at *5 (S.D.N.Y. Jan. 20, 2010).

agreement" because, as the Moving Defendants are alleged to be, they are "agents of Fox" and the "claims against the individual defendants . . . are factually intertwined with [her employment] agreement and the claims against Fox News." Ex. 4 at 37:6–23.  The Complaint—based on the same underlying theory of "sexual harassment" and "retaliation," *see* Compl. ¶¶ 1, 2, 4, 5, 8–10, 17, 23, 24, 26–28, 41, 43, 46, 75—is thus an attempted end-run around this ruling, and Ms. Tantaros and Mr. Burstein have therefore violated Rule 11(b)(1) by filing this action instead of arbitrating her claims against the Moving Defendants.  *See, e.g.*, *Howard*, 977 F. Supp. at 666.

*Second*, Ms. Tantaros and Mr. Burstein should be sanctioned for continuing to publicize the allegations concerning her harassment and retaliation in violation of Justice Cohen's order, and using innocent third parties like the Moving Defendants as the pretense for doing so.  Justice Cohen held that Ms. Tantaros "involved the news media in this dispute in violation of the confidentiality provisions of the parties' agreement," noted Mr. Burstein's "individual involvement in breaching that confidentiality [provision]," and ruled that Ms. Tantaros's harassment and retaliation claims should be confidentially arbitrated.  Ex. 4 at 22:4–8, 38:4–6.  Ms. Tantaros's and Mr. Burstein's continued publicity of a "confidential arbitration," Compl. ¶ 10, in unabashed defiance of Justice Cohen's order, also calls for sanctions.  *See Bernard v. Galen Grp., Inc.*, 901 F. Supp. 778, 782–84 (S.D.N.Y. 1995) (sanctioning attorney for violating "confidentiality provisions" in "alternative dispute resolution context").

*Third*, sanctions are warranted here because the Complaint is an impermissible strike suit.  Judge Chin previously criticized Mr. Burstein for precisely the "'Rambo lawyering'" he is utilizing here, when Mr. Burstein "employed inappropriate tactics" by "fil[ing suit] just two days" after sending a letter purportedly "in one last effort to avoid litigation."[17]  Here, Mr.

---

[17]   *Revson*, 49 F. Supp. 2d at 686–87, *judgment rev'd in part, vacated in part sub nom. Revson v. Cinque &*

Burstein and Ms. Tantaros gave the Moving Defendants even less time to decide whether to settle for $15,000,000:  just over 24 hours.  *See* Ex. 9.  Such transparent coercion in itself warrants sanctions.  *See Bello v. Barden Corp.*, 2006 WL 2827091, at *10 (D. Conn. Sept. 29, 2006) (sanctions imposed where plaintiff's "counsel pursued the action . . . as part of a course of conduct calculated to harass defendants . . . into settlement for the nuisance value of the litigation rather than incurring the full costs of a defense, as opposed to . . . as a means to resolve an honest dispute"), *aff'd sub nom. Umeugo v. Barden Corp.*, 307 F. App'x 514 (2d Cir. 2009).

## CONCLUSION

For the reasons set forth above, the Court should impose sanctions on Andrea Tantaros and Judd Burstein, including reasonable attorneys' fees and costs; dismissal, with prejudice, of Ms. Tantaros's claims against the Moving Defendants, *see Colliton*, 2008 WL 4386764, at *15; an injunction requiring Ms. Tantaros to bring any future claims related to her employment in confidential arbitration, as per the terms of her Employment Agreement, *see Safir v. U.S. Lines Inc.*, 792 F.2d 19, 23 (2d Cir. 1986), *Lipin v. Nat'l Union Fire Ins. Co. of Pitt.*, 202 F. Supp. 2d 126, 138–43 (S.D.N.Y. 2002); and any other relief the Court deems proper.

Dated:  New York, New York          GIBSON, DUNN & CRUTCHER LLP
       June 20, 2017

                                        By:    */s/ Randy M. Mastro*
                                                Randy M. Mastro
                                                    Mylan L. Denerstein
                                                Michael Marron

                                       200 Park Avenue
                                       New York, New York 10166
                                       Tel.:  (212) 351-4000
                                       Fax:  (212) 351-4035
                                       RMastro@gibsondunn.com

                                       *Attorneys for Peter A. Snyder and Disruptor, Inc.*

---

*Cinque, P.C.*, 221 F.3d 71 (2d Cir. 2000).