UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                          :
ANDREA TANTAROS                                           :
                                                          :
                          Plaintiff,                      :
                                                          :
          v.                                              :   Case No. 17-cv-02958 (GBD)
                                                          :
FOX NEWS NETWORK, LLC, ROGER                              :
AILES, WILLIAM SHINE, IRENA                               :
BRIGANTI, PETER A. SNYDER,                                :
DISRUPTOR, INC., and JOHN DOES 1-50.                      :
                                                          :
                          Defendants.                     :
                                                          :
-----------------------------------------------------------x


**DEFENDANTS PETER A. SNYDER AND DISRUPTOR, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR
<u>MOTION TO DISMISS OR, ALTERNATIVELY, TO COMPEL ARBITRATION</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 6

ARGUMENT ..................................................................................................................... 8

I.     THE COMPLAINT FAILS TO STATE A CLAIM.......................................... 8

    A.     Plaintiff Fails to State Any Claim Against Mr. Snyder ......................... 9

        1.     Mr. Snyder Is Not Liable for Any Alleged Violations of the
             Wiretap Act ............................................................................... 9

            a.     Electronic Surveillance ................................................. 9

            b.     Use of the Fruits of Electronic Surveillance .............. 11

        2.     Mr. Snyder Is Not Liable for IIED........................................ 14

    B.     Plaintiff Fails to State Any Claim Against Disruptor ........................... 17

    C.     Plaintiff's Claims Are Barred by the Statute of Limitations................. 18

II.    ALTERNATIVELY, PLAINTIFFS' CLAIMS MUST BE ARBITRATED .................. 19

    A.     Plaintiff's Claims Fall Within Her Arbitration Clause Because They
        "Arise Out of or Relate to" Her "Employment" With Fox News........................ 19

    B.     Moving Defendants Are Entitled to Invoke the Arbitration Clause .................... 23

        1.     The Arbitration Clause Covers the Moving Defendants Because
            Plaintiff's Claims Against Them as Alleged Agents of Fox News
            Are Wholly Dependent on Her Claims Against Fox News .................... 23

        2.     Plaintiff Should Be Estopped from Avoiding Arbitration of Her
            Claims Against the Moving Defendants .................................. 24

CONCLUSION................................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahmed v. Purcell*,
  2016 WL 1064610 (S.D.N.Y. Mar. 14, 2016) ....................................................5, 19

*Alahverdian v. Grebinski*,
  2014 WL 2048190 (S.D. Ohio May 19, 2014) ........................................................16

*Alemac Ins. Servs., Inc. v. Risk Transfer Inc.*,
  2003 WL 22024070 (S.D.N.Y. Aug. 28, 2003)........................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................4, 8, 9, 11, 12, 14, 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................4, 7, 9, 12

*Bender v. City of New York*,
  78 F.3d 787 (2d Cir. 1996).....................................................................................15

*Bittman v. Fox*,
  107 F. Supp. 3d 896 (N.D. Ill. 2015) .....................................................................15

*Cain v. Christine Valmy Int'l Sch. of Esthetics, Skin Care, & Makeup*,
  2016 WL 6127514 (S.D.N.Y. Oct. 20, 2016) .............................................................8

*Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co.*,
  271 F.3d 403 (2d Cir. 2001)....................................................................................25

*Covina 2000 Ventures Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  2007 WL 2154186 (S.D.N.Y. July 26, 2007) ..........................................................24

*Cullen v. Paine, Webber, Jackson & Curtis, Inc.*,
  587 F. Supp. 1520 (N.D. Ga. 1984) ........................................................................20

*In re Currency Conversion Fee Antitrust Litig.*,
  265 F. Supp. 2d 385 (S.D.N.Y. 2003)....................................................................6, 25

*Danisco A/S v. Novo Nordisk A/S*,
  2003 WL 282391 (S.D.N.Y. Feb. 10, 2003).............................................................23

*Dassero v. Edwards*,
  190 F. Supp. 2d 544 (W.D.N.Y. 2002) ....................................................................24

*Diego Beekman Mut. Hous. Assoc. Hous. Dev. Fund Corp. Hdfc v. Dish Network, L.L.C.*,
  2016 WL 1060328 (S.D.N.Y. Mar. 15, 2016) ..........................................................14

## TABLE OF AUTHORITIES
### (cont'd)

Page(s)

*DirecTV, LLC v. Saylor*,
    2015 WL 1477885 (Mar. 31, 2015) ..................................................22

*Doe v. GTE Corp.*,
    347 F.3d 655 (7th Cir. 2003) ..........................................................10

*Dunahoo v. Hewlett-Packard Co.*,
    2012 WL 178332 (S.D.N.Y. Jan. 20, 2012) ................................10, 18

*Fernicola v. Specific Real Property in Possession, Custody, Control of Healthcare*
    *Underwriters Mut. Ins. Co.*,
    2001 WL 1658257 (S.D.N.Y. Dec. 26, 2001) ..................................4, 14

*Genesco, Inc. v. T. Kakiuchi & Co.*,
    815 F.2d 840 (2d Cir. 1987) ........................................................19, 23

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
    2012 WL 3262435 (D.N.J. Aug. 7, 2012) ........................................25

*Gulf Ins. Co. v Transatlantic Reins. Co.*,
    69 A.D.3d 71 (1st Dep't 2009) ......................................................24

*Howell v. N.Y. Post Co.*,
    81 N.Y.2d 115 (N.Y. 1993) ..........................................................15

*Interoceanica Corp. v. Sound Pilots, Inc.*,
    107 F.3d 86 (2d Cir. 1997) ............................................................23

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004) ..........................................................20

*Jones v. Ocwen Fed. Bank*,
    147 F. Supp. 2d 219 (S.D.N.Y. 2001) ....................................4, 13, 14

*Katz v. Cellco P'ship*,
    794 F.3d 341 (2d Cir. 2015) ..........................................................19

*Kaupp v. Church*,
    2011 WL 4357492 (S.D.N.Y. Sept. 19, 2011) ................................5, 16

*Keystone Shipping Co. v. New England Power Co.*,
    109 F.3d 46 (1st Cir. 1997) ..........................................................23

*Klein v. Metro. Child Servs.*,
    100 A.D.3d 708 (2d Dep't 2012) ..................................................17

# TABLE OF AUTHORITIES
## (cont'd)

Page(s)

*Krys v. Pigott*,
   749 F.3d 117 (2d Cir. 2014) ...................................................................................5, 17, 18

*Marcus v. Frome*,
   275 F. Supp. 2d 496 (S.D.N.Y. 2003) ..............................................................................24

*McKenna Long & Aldridge, LLP v. Ironshore Specialty Ins. Co.*,
   2015 WL 144190 (S.D.N.Y. Jan. 12, 2015) .....................................................................24

*Medcalf v. Walsh*,
   938 F. Supp. 2d 478 (S.D.N.Y. 2013) ....................................................................5, 15, 17

*Molefe v. Verizon N.Y., Inc.*,
   2015 WL 1312262 (S.D.N.Y. Mar. 24, 2015) ...........................................................4, 10, 13

*Mosca v. Doctors Assocs.*,
   852 F. Supp. 152 (E.D.N.Y. 1993) ...................................................................................23

*Orange Cty. Choppers, Inc. v. Goen Techs. Corp.*,
   374 F. Supp. 2d 372 (S.D.N.Y. 2005) ..............................................................................20

*Parisi v. Goldman, Sachs & Co.*,
   710 F.3d 483 (2d Cir. 2013) ............................................................................................22

*Phillips v. Bell*,
   365 F. App'x 133 (10th Cir. 2010) ...................................................................................10

*Ragone v. Atl. Video at Manhattan Ctr.*,
   595 F.3d 115 (2d Cir. 2010) ..............................................................................................6

*Roby v. Corp. of Lloyd's*,
   996 F.2d 1353 (2d Cir. 1993) ............................................................................................6

*Saucier v. Aviva Life & Annuity Co.*,
   589 F. App'x 701 (5th Cir. 2014) .....................................................................................23

*Slue v. N.Y. Univ. Med. Ctr.*,
   409 F. Supp. 2d 349 (S.D.N.Y. 2006) ..........................................................................5, 16

*Talmor v. Talmor*,
   185 Misc. 2d 293 (Sup. Ct. Nassau Cnty. 2000) ..............................................................15

*Walther v. Maricopa Int'l Inv., Corp.*,
   1998 WL 689943 (S.D.N.Y. Sept. 30, 1998) ...............................................................5, 15

# TABLE OF AUTHORITIES
## (cont'd)

Page(s)

**Statutes**

9 U.S.C. §§ 1 *et seq.*..............................................................................................................1

18 U.S.C. § 2511........................................................................................................3, 11, 19

18 U.S.C. § 2511(1)(a)..........................................................................................................10

18 U.S.C. § 2511(1)(b)..........................................................................................................10

18 U.S.C. § 2511(1)(c)....................................................................................................11, 14

18 U.S.C. § 2511(1)(d)....................................................................................................11, 14

18 U.S.C. § 2520(e)...........................................................................................................5, 18

**Rules**

Fed. R. Civ. P. 8....................................................................................................................9

Fed. R. Civ. P. 8(a)...........................................................................................................1, 4

Fed. R. Civ. P. 12(b)(6)....................................................................................................1, 4

Defendants Peter A. Snyder and Disruptor, Inc.[1] (collectively, the "Moving Defendants") respectfully submit this memorandum of law in support of their motion to dismiss this Complaint with prejudice, pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6), or alternatively, to compel arbitration and stay proceedings, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*

## PRELIMINARY STATEMENT

This baseless lawsuit is the third attempt in less than one year by Plaintiff Andrea Tantaros, a former Fox News Network, LLC ("Fox News") employee, to exploit the legal system as a PR weapon in her personal media crusade against her former employer and to try to shake down those she considers to have been associated with Fox News.  After filing two similar complaints in state court,[2] Ms. Tantaros has now come to federal court hoping to circumvent the confidential arbitration already ordered by a state court judge, asserting, as she did in her prior two actions, that because she "complain[ed]" about "harassment," Fox News executives "retaliat[ed]" against her by making her the object of an alleged social media smear campaign, supposedly executed for Fox News by the Moving Defendants, in which she claims to have been "criminally cyber-stalk[ed]" through fake "sockpuppet Twitter accounts," and "spied upon" through "unique surveillance viruses."  *See* Compl. ¶¶ 8–11, 38, 41–64.[3]  **Put simply, that is a**

---

[1]  Disruptor, Inc., d/b/a "Disruptor Capital" (hereinafter, "Disruptor"), is a company Mr. Snyder formed in 2011.

[2]  Plaintiff filed these complaints—against certain of the Defendants here, but not the Moving Defendants—in New York Supreme Court in August 2016 and April 2017.  Both described in detail the retaliatory social media campaign Plaintiff now accuses the Moving Defendants of participating in.  *Compare* Complaint ¶¶ 6, 48–51, 53, *Tantaros v. Fox News Network, LLC*, No. 157054/2016, ECF No. 2 (Sup. Ct. N.Y. Cty. Aug. 22, 2016) (the "First State Court Action") (Ex. 1), *and* Complaint ¶¶ 5–7, *Tantaros v. Konst*, No. 153637/2017, ECF No . 2 (Sup. Ct. N.Y. Cty. April 19, 2017) (the "Second State Court Action") (Ex. 2), *with* Compl. ¶¶ 11, 41–44, 46.  Unless otherwise noted, all citations to "Ex." refer to the Declaration of Randy M. Mastro ("Mastro MTD Decl.") in support of this motion, dated June 20, 2017 and submitted herewith.

[3]  Unless otherwise noted, all references to "Complaint" or "Compl." are to the Complaint here (Dkt. 1), the paragraphs of which are misnumbered:  there is one version of ¶¶ 38–44 in Section A.II.a.i, and another in Sections A.II.a.ii and A.II.a.iii.  The citation above refers to the second version of ¶¶ 41–44 in Section A.II.a.iii.

**lie.  Mr. Snyder and Disruptor have done no such thing.**  And while this is a motion to dismiss requiring assumption of the pleading's patently false allegations for purposes of resolving it, **the Moving Defendants want to make crystal clear at the outset that**:

(1) **Neither Mr. Snyder nor Disruptor has ever performed the kind of social media smear work that Ms. Tantaros alleges, nor have they performed** *any* **social media or communications consulting services for Fox News since 2012, belying Ms. Tantaros's claims that they could have participated in such a campaign**, if any, "after . . . April 25, 2016," *compare* Compl. ¶ 34, *with* Dkt. 20-22 at 3; and

(2) The so-called "fictitious" "sock puppet" Twitter account supposedly created by the Moving Defendants to torment Ms. Tantaros was not a fake account at all and was never associated in any way with the Moving Defendants.  *See* Compl. ¶¶ 8, 10–11, 38, 46–64.  **Amazingly, given the Complaint's obsessive focus on alleged "sock puppet" accounts, particularly "the Block Twitter account," that was a real account of a real person**—Daniel Wayne Block (the "Block Account")—unaffiliated with any of the Defendants here.  As verified by Mr. Block in his sworn declaration, submitted by Defendants Fox News, William Shine, and Irena Briganti in connection with their Rule 11 sanctions motion—and as Ms. Tantaros and Mr. Burstein were well aware (*see id*. ¶ 48, Compl. Ex. Y)—Mr. Block is "a real person living in Gainesville, Florida," *see* Dkt. 20-1 ¶ 1, **who sent all Tweets from the Block Account of his own volition**, has "never met anyone who works for, or on behalf of," Fox News, **and "do[es] not know anyone named Peter A. Snyder and ha[s] never had any contact with him or anybody else who works for Disruptor Capital or New Media Strategies**,"[4] *id*. ¶¶ 2–5.

---

[4]  In 1999, Mr. Snyder founded New Media Strategies ("NMS"), attracting over the next decade an impressive list

Both prior to filing this Complaint and since, Ms. Tantaros and her counsel, Judd Burstein, were made well aware that their allegations in this regard were false, but they made them anyway.

Though Mr. Snyder and Disruptor have not performed any social media or consulting work for Fox News since *2012*, *see* Dkt. 20-22 at 3,[5] this Complaint speculates, without any factual basis, that the Moving Defendants violated 18 U.S.C. § 2511 (the "Wiretap Act") and intentionally inflicted emotional distress ("IIED") on Ms. Tantaros by purportedly participating in what she claims was a *2016* social media "campaign" directed by Fox News executives to smear her—the same supposed "campaign" previously pleaded in the First and Second State Court Actions, in which neither Mr. Snyder nor Disruptor was named as a defendant.

Of course, Plaintiff, represented by the same counsel as here, has already been ordered by a state court judge to submit any such claims against Fox News and associated parties to confidential arbitration,[6] as required under her employment agreement.[7] The motives of Ms. Tantaros and her counsel in bringing this federal court action against the Moving Defendants, after failing to name either of them in her first two state court lawsuits and knowing she could not go back to state court because of the compulsory arbitration ruling there, are as transparent as they are sinister: (1) to use innocent third parties—the Moving Defendants—as a pretense for continuing to promote her ongoing publicity campaign against Fox News and its current and

---

of major clientele across 85 industries, including Fox News. Ex. 3. By 2007, he sold his share in the company for a substantial multimillion-dollar amount—but not before carving out a seven-figure share for dozens of non-shareholder employees who otherwise would not have benefitted from the sale—and then left the business altogether in 2011. Exs. 3–4. He has since invested those proceeds through Disruptor, which, since 2012, has focused exclusively on angel capital investing. *See* Ex. 8.

[5] Mr. Snyder's only work for Fox since 2012 has been as an on-air contributor—for which he was paid less than what he received for his earlier consulting work—but Mr. Snyder ceased even that on-air work in April 2017.

[6] *See* Ex. 5 at 36:14–38:19.

[7] *See* Ex. 6 ("Employment Agreement"). This is the portion of Ms. Tantaros's employment agreement on the public record in the First State Court Action.

former executives in the courts, despite the state court's recent order compelling these claims to confidential arbitration;[8] and (2) to try to coerce massive monetary settlements out of the Moving Defendants under threat of further reputational damage based on false allegations (some personal in nature and wholly irrelevant to any legal claim) with no factual basis whatsoever.[9]

Leaving aside these impermissible purposes driving Plaintiff's suit and the fact that her allegations against the Moving Defendants are entirely false, the Complaint must still be dismissed, with prejudice, under Federal Rules of Civil Procedure 8(a) and 12(b)(6), because even if "accepted as true," the Complaint fails to, and cannot, plead "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Dismissal is now required for each of the following independent reasons:

(1) Ms. Tantaros alleges **no facts** demonstrating that **the Moving Defendants** intercepted her communications, as required to state her Wiretap Act claim of purported "electronic surveillance of [her] personal telephone," Compl. ¶ 82; *see Molefe v. Verizon N.Y., Inc.*, 2015 WL 1312262, at *4 (S.D.N.Y. Mar. 24, 2015), or that **the Moving Defendants** either controlled the Twitter accounts used to post references to her purportedly unlawfully intercepted communications, *see Jones v. Ocwen Fed. Bank*, 147 F. Supp. 2d 219, 224 (S.D.N.Y. 2001), or had any knowledge that the contents of those Tweets stemmed from such surveillance, *see Fernicola v. Specific Real Property in Possession, Custody, Control of Healthcare Underwriters Mut. Ins. Co.*, 2001 WL 1658257, at *7 (S.D.N.Y. Dec. 26, 2001), as required to state her Wiretap Act claim that the Moving Defendants "use[d] [] the fruits of

---

[8]  *See* Ex. 5 at 36:14–38:19.

[9]  For these reasons, the Moving Defendants have also simultaneously moved for Rule 11 sanctions against Ms. Tantaros and her counsel of record, Judd Burstein.

that surveillance to emotionally torture Ms. Tantaros," Compl. ¶ 82.

(2) Ms. Tantaros's IIED claim fares no better, because surveillance and harassment campaigns do not constitute the requisite "extreme and outrageous conduct" as a matter of law, *see Walther v. Maricopa Int'l Inv., Corp.*, 1998 WL 689943, at *4 (S.D.N.Y. Sept. 30, 1998); the Complaint does not allege that the Moving Defendants caused or intended to cause Ms. Tantaros emotional distress, *see Kaupp v. Church*, 2011 WL 4357492, at *4 (S.D.N.Y. Sept. 19, 2011); *Slue v. N.Y. Univ. Med. Ctr.*, 409 F. Supp. 2d 349, 372 (S.D.N.Y. 2006); and the Complaint does not allege anything other than the conclusory statement that Plaintiff suffered "severe emotional distress," *see Medcalf v. Walsh*, 938 F. Supp. 2d 478, 490 (S.D.N.Y. 2013). These deficiencies are all the more glaring as to Plaintiff's claims against Disruptor, which is mentioned only six times in the 100-paragraph, 34-page Complaint and is not alleged to have engaged in *any* conduct during the time period relevant to the events at issue in this case. *See Krys v. Pigott*, 749 F.3d 117, 132 (2d Cir. 2014).

(3) The facts Ms. Tantaros actually pleads establish that her claims against the Moving Defendants are time-barred, as any conduct on their part falls outside the two-year limitations period for Wiretap Act violations, *see* 18 U.S.C. § 2520(e), and the one-year period for IIED claims, *see Ahmed v. Purcell*, 2016 WL 1064610, at *4 (S.D.N.Y. Mar. 14, 2016).

At a minimum, this Court should still compel arbitration of those claims and stay these proceedings under the FAA because Plaintiff's claims fall within the scope of the very broad arbitration clause to which Ms. Tantaros agreed in her Employment Agreement, requiring arbitration of any claims "arising out of or relating to" her employment with Fox News. Because Ms. Tantaros alleges that the Moving Defendants, as purported agents of Fox News, engaged in a social media smear campaign against her, *in retaliation for her sexual harassment claims against*

*her former superiors at Fox News*, *see* Compl. ¶¶ 19, 72, 73, 77, her claims against the Moving Defendants are subject to arbitration, because they:  (1) arise out of her employment with Fox News; (2) are wholly derivative of her claims—already sent to arbitration by New York State Supreme Court Justice David B. Cohen in the First State Court Action—against Fox News and its employees and other alleged agents for, *inter alia*, the same purported retaliatory social media scheme pleaded in the Complaint, *id.*; *see also* Ex. 5 at 37:6–23; *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993); and (3) for these reasons, are clearly intertwined with her Employment Agreement, such that they fall under the doctrine of alternative estoppel, which "estop[s] a signatory" to an arbitration clause, like Plaintiff, "from avoiding arbitration with a non-signatory," like the Moving Defendants, "when the issues the non-signatory is seeking to arbitrate are intertwined with the contract," *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 402 (S.D.N.Y. 2003); *see also Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126-27 (2d Cir. 2010).

In sum, this Court should now dismiss this Complaint, with prejudice, in its entirety, or alternatively, grant the Moving Defendants' motion to compel arbitration and stay this action during the pendency of the arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

Ms. Tantaros filed the instant baseless action in federal court on April 24, 2017.  The Complaint alleges that Defendants "retaliated" against her for "complain[ing] . . . about [Roger] Ailes' sexual harassment of her" and "about retaliation against her," Compl. ¶¶ 41–43, by "criminally cyber-stalking her through sockpuppet Twitter accounts," employing "unique surveillance viruses" to "sp[y] upon" her, and "constant[ly] stream[ing] . . . social media posts from multiple sockpuppet accounts . . . to make it clear to Ms. Tantaros that she was being

illegally surveilled," *id*. ¶¶ 11, 45–46.[10]

These allegations, among others, formed the basis of Ms. Tantaros's First State Court Action, filed on August 22, 2016, against Fox News and various current and former executives and employees, including Roger Ailes, William Shine, and Irena Briganti, but not naming either Mr. Snyder or Disruptor as defendants.  Compl. ¶ 9.  The complaint in that action alleged, among other things, that Plaintiff had been sexually harassed and that, as "retaliation" for reporting that harassment, Fox News "was smearing [Ms. Tantaros] through the use of friendly media and 'sock puppet' accounts," including by "sexualiz[ing] [her] image" and through "hostile posts," "designed to make it appear they were maintained by persons unrelated to Fox News," Ex. 1 ¶¶ 6, 48–51, 53—in other words, essentially the same purported retaliatory social media scheme she now seeks to pin on Mr. Snyder and Disruptor.  On February 15, 2017, Justice Cohen granted defendants' motion to compel arbitration, making clear that all of Ms. Tantaros's claims against Fox News and all individual defendants—officers, employees, and agents of Fox News—must be pursued in arbitration, and not in court, because of the broad arbitration clause in Ms. Tantaros's Employment Agreement.  Ex. 5 at 37:6–23.

Two months later, on April 19, 2017, Ms. Tantaros brazenly skirted that order by filing

---

[10]  First and foremost in the Complaint among these alleged sockpuppet accounts is the Block Account, which Plaintiff contends belongs to "a fictitious identity" and whose tweeting activity supposedly tormented Ms. Tantaros, *see* Compl. ¶¶ 8, 10–11, 46–64.  As the Complaint itself recognizes, however, Mr. Block is a real person living in Gainesville, Florida, *see* Compl. ¶ 48 & Ex. Y, whose contact information, among other things, is available online, Dkt. 20-7, as Ms. Tantaros or her counsel could easily have confirmed, and who not only sent out all the Tweets from the Block Account on his own, but does not know and has never had any contact with Mr. Snyder or anyone else who works for Disruptor or Mr. Snyder's previous company, NMS, *see* Dkt. 20-1 ¶¶ 2–3, 5.  There is not a single fact pleaded in the Complaint connecting either Mr. Snyder or Disruptor to Mr. Block or to any Tweet issued from the Block Account.  The Complaint's only tether between any purported "sockpuppet" Tweets and the Moving Defendants—that "just one hour and 17 minutes after Ms. Tantaros's counsel informed Snyder's counsel that Ms. Tantaros was going to be suing Snyder in the next day or two, [third party] Nomiki Konst sent out a defamatory Tweet in which she falsely claimed that Ms. Tantaros had physically assaulted and threatened her," Compl. ¶ 80(f)—is unsupported by any facts—*e.g.*, communications between the Moving Defendants and Ms. Konst, or between any other individual or entity and Ms. Konst that were then conveyed to the Moving Defendants—that would "nudge[] [Plaintiff's] claims across the line from conceivable to plausible," as required to survive a motion to dismiss, *see Twombly*, 550 U.S. at 570.

her Second State Court Action in New York County Supreme Court, which described—this time as a libel *per se* claim—the same alleged retaliatory use of social media to "undermine Tantaros's credibility," Ex. 2 ¶ 11, as described in the First State Court Action (and here).  While Mr. Snyder and Disruptor were still not named as defendants in that action, Ms. Tantaros expressly mentioned them and their supposed "disgraceful social media campaign for Fox News against Tantaros . . . through the use of fake social media accounts known as 'sock puppet' accounts," noting repeatedly that a lawsuit would soon be filed against them.  *See id.* ¶¶ 5–9.

Perhaps thinking the third time is the charm, Ms. Tantaros now comes to federal court and adds new defendants—Mr. Snyder and Disruptor—and asserts new causes of action— purported violations of the Wiretap Act and IIED—alleging essentially the same supposed social media retaliation scheme she pleaded in both her First and Second State Court Action complaints, for which she already sued other defendants including those named here, such as Fox News, Messrs. Ailes and Shine, and Ms. Briganti, *see Compl.* ¶¶ 19–20, 44, 72–80, and which were already ordered, by Justice Cohen, to confidential arbitration, *see* Ex. 5 at 36:14–38:19.

## ARGUMENT

## I.    THE COMPLAINT FAILS TO STATE A CLAIM

Plaintiff's Complaint must be dismissed because it is fatally deficient, as it impermissibly alleges only "unadorned, the-defendant-unlawfully-harmed-me accusation[s]."  *Iqbal*, 556 U.S. at 678.  Plaintiff alleges purported violations of the Wiretap Act—which prohibits the interception of communications or use of intercepted communications—and IIED.[11]  Compl. ¶¶

---

[11]  Plaintiff's repeated references to a "criminal cyber-stalking scheme . . . in violation of 18 U.S.C. § 2261A," Compl. ¶¶ 4, 7, 10–11, 46, 84, 92, 96, are not actionable, as Plaintiff's counsel admitted pre-filing.  *See* Ex. 7 (It is an "erroneous notion that 18 U.S.C. § 2261A provides a private right of action."); Compl. ¶ 80(c); *see also Cain v. Christine Valmy Int'l Sch. of Esthetics, Skin Care, & Makeup*, 2016 WL 6127514, at *5 (S.D.N.Y. Oct. 20, 2016) ("Case law is . . . unanimous that no private right of action is available under § 2261A.").

81–85, 91–96.  This is obviously false, given the preposterous nature of the allegations and the concrete sworn testimony that the supposed "sockpuppet" account central to the Complaint—the Block Account—belongs to one of Ms. Tantaros's real fans, Daniel Wayne Block, an individual with no connection to Mr. Snyder.  *See* Dkt. 20-1 ¶ 3.  Even more delusional, the so-called harassing Block Account Tweets in question, from which Ms. Tantaros allegedly drew a secret "signal" that she is being surveilled, never even mention her by name or Twitter handle (as is typical when people attempt to address or talk with others on Twitter) and are, in fact, just the online musings of a real human being living in Florida who tweeted about similar subjects weeks and even months before Ms. Tantaros claims her conversations were supposedly surveilled.  In addition, however, Ms. Tantaros has utterly failed to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Rather, Plaintiff has offered mere "labels and conclusions," or "naked assertions devoid of further factual enhancement," which simply "will not do" to satisfy the pleading standards set forth under Rule 8 of the Federal Rules of Civil Procedure, *id.*, and the claims against the Moving Defendants must therefore be dismissed.

## A.   Plaintiff Fails to State Any Claim Against Mr. Snyder

### 1.   Mr. Snyder Is Not Liable for Any Alleged Violations of the Wiretap Act

Plaintiff alleges two theories of Mr. Snyder's liability for purported violations of the Wiretap Act: (1) "the electronic surveillance of Ms. Tantaros personal telephone [sic]," and (2) the "use of the fruits of that surveillance to emotionally torture Ms. Tantaros."  Compl. ¶ 82.  She fails to state a claim under either theory, even accepting her allegations as true.

#### a.   *Electronic Surveillance*

While the pleadings' allegations in this regard are completely false and Mr. Snyder did none of these things, they must be assumed for purposes of this motion.  On its face, the

Complaint does not adequately allege that Mr. Snyder attempted to, or did, intercept Ms. Tantaros's wire, oral, or electronic communications, as required to state a claim for electronic surveillance under § 2511(1)(a) or (b).[12]  This alone warrants dismissal.  *See, e.g., Dunahoo v. Hewlett-Packard Co.*, 2012 WL 178332, at *5 (S.D.N.Y. Jan. 20, 2012) (dismissing Wiretap Act claim where "sole allegation of an electronic 'interception' that would fall under the Act" was insufficient and "the complaint provides no further factual support for [defendant's] alleged interception").  Indeed, not only has Ms. Tantaros failed to allege specific facts demonstrating that *her* communications were intentionally intercepted *by Mr. Snyder*, she does not even allege Mr. Snyder had *access* to any device on which Plaintiff engaged in wire, oral, or electronic communications, much less that Mr. Snyder used (let alone intentionally used) any such access to actually intercept, or attempt to intercept, her communications.  *See, e.g., Molefe*, 2015 WL 1312262, at *4 (dismissing Wiretap Act claim even where the plaintiff alleged the defendant "snoops on or wiretaps its customers . . . , that he suffered a handful of scattered service interruptions, and that certain of his information migrated to his wife's [defendant-operated] device," since plaintiff failed to allege defendant "intentionally intercepted or disclosed *Plaintiff's* information" (emphasis added)).[13]  Having failed to allege anything more than that Plaintiff's personal telephone and computer were electronically surveilled—and not even attempting to allege that *Mr. Snyder himself* engaged in any such surveillance, Compl. ¶¶ 45,

---

[12]  These provisions impose liability on any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication," § 2511(1)(a), and any person who "intentionally uses, endeavors to use, or procures any other person to use or endeavor to use [in specified ways] any electronic, mechanical, or other device to intercept any oral communication," § 2511(1)(b).

[13]  *See also Doe v. GTE Corp.*, 347 F.3d 655, 658–59 (7th Cir. 2003) (no § 2511 liability beyond "primary interceptor"); *Phillips v. Bell*, 365 F. App'x 133, 141 (10th Cir. 2010) (dismissing Wiretap Act claim where plaintiff's "string of possible reasons for [defendant's] recording of their conversations" and "recitation of the statutory elements" was "so general" that it "lack[ed] the necessary factual enhancements to get it from the 'possibility' of misconduct to a 'plausibility' of such misconduct required for relief").

82—Plaintiff's electronic surveillance claim under § 2511 must be dismissed.

> b.     *Use of the Fruits of Electronic Surveillance*

Again, while the pleadings' allegations in this regard are completely false and Mr. Snyder did none of these things, they must be assumed for purposes of this motion.  The Complaint similarly fails to allege *any* facts as to *Mr. Snyder's* conduct that would permit a "reasonable inference that the defendant is liable for" a violation of 18 U.S.C. § 2511(1)(c) or (d), which prohibit the actual or attempted disclosure or use of the contents of any wire, oral, or electronic communication, when the discloser or user knows or has reason to know that the information was obtained through unlawful interception in violation of § 2511.[14] *Iqbal*, 556 U.S. at 678.

Ms. Tantaros appears to base this claim against Mr. Snyder on the fact that Fox News allegedly "reli[ed] upon Snyder," Compl. at 24, for "**legal** social media campaigns," *id.* ¶ 75, *several years prior to the post-April 25, 2016 time period relevant to her Complaint*, *see id.* ¶ 34, as purportedly evidenced by: (1) a transcription of a hearsay magazine article regarding a website that was "shuttered *in 2007*," *id.* ¶ 72, (2) descriptions of email exchanges between Mr. Shine and Mr. Snyder *in March 2014*, *id.* ¶¶ 76–79, and (3) statements allegedly made (in a conversation that never happened) by Mr. Snyder to Plaintiff *in August 2013*, *id.* ¶¶ 73–75, in which Mr. Snyder supposedly "describ[ed] . . . the work of Disruptor" as "just what" NMS had done: "engaged in **legal** social media campaigns to influence opinions, etc.," *id.* ¶ 75.

From this contention that Mr. Snyder performed social media work for Fox News at least to March 2014 (which is itself false and never included sock puppet accounts), Plaintiff urges the

---

[14]   These provisions impose liability on any person who "intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of [such] communication in violation of this subsection," § 2511(1)(c), and any person who "intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a [such] communication in violation of this subsection," § 2511(1)(d).

Court to make the fantastic leap to inferring Mr. Snyder's purported liability for the alleged

retaliatory social media scheme that began "after . . . April 25, 2016," Compl. ¶ 34, on nothing

more than "information and belief" that Mr. Snyder "is still performing the same services for

Shine and Fox News," Compl. ¶ 80.  While admittedly very little can be discerned from

Plaintiff's wholly speculative allegations, this conclusion appears to be based on a convoluted

series of communications between Plaintiff's counsel and parties *other than Mr. Snyder*, and the

close-in-time-thereafter actions of third-party actors *wholly unrelated to Mr. Snyder*:

- In communications with *other defendants' counsel*, Ms. Tantaros's counsel allegedly asked that Fox News deny a story about Plaintiff engaging in physical altercations with two Fox News employees, including a woman named Nomiki Konst.  *Id.* ¶ 80(a).

- Six days later, a third party reporter allegedly approached Plaintiff's counsel about that same story, and her counsel responded with a denial, copying counsel for Fox News.  *Id.* ¶ 80(b).

- Seventeen days after that, on April 10, 2017, her counsel sent an email to Mr. Snyder informing him that this lawsuit was imminent and offering to settle; on April 18, 2017, after rejecting Mr. Snyder's request for a delay, Plaintiff's counsel allegedly informed Mr. Snyder's counsel that litigation was going to commence in the following day or two, and "just one hour and 17 minutes after [that correspondence] . . . , Nomiki Konst sent out a defamatory Tweet in which she falsely claimed that Ms. Tantaros had physically assaulted and threatened her."  *Id.* ¶ 80(c)–(f).

- This Tweet was allegedly re-Tweeted 348 times, and again on only "information and belief, many of those re-Tweets were from Twitter accounts controlled by Snyder."  *Id.* ¶ 80(i).

In other words, Ms. Tantaros's "information and belief" that Mr. Snyder is somehow responsible

for the alleged retaliatory social media scheme perpetrated against her in 2016 is based on the

fact that a third party whom Mr. Snyder has never met or ever had any contact with—Ms.

Konst—Tweeted something related to former Fox News host Bill O'Reilly that mentioned Ms.

Tantaros more than a week after Mr. Snyder knew Ms. Tantaros intended to file suit against him

if he did not pay her a substantial sum of money.

Plaintiff has pleaded no facts—distinct from "[t]hreadbare recitals," "mere conclusory

statements," and "legal conclusion[s]" that the Court is "'not bound to accept," *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 555)—that would permit the Court to draw the inference that Mr. Snyder controlled, orchestrated, or had any involvement in either Ms. Konst's original Tweet or any of the 348 alleged re-Tweets thereof.  Nowhere does Plaintiff allege any relationship or communications between Ms. Konst *and Mr. Snyder*, or even between Ms. Konst and any other individual that was then somehow conveyed *to Mr. Snyder*.  Nor has Plaintiff pleaded any facts to support her speculation that "many of the [348] re-Tweets [of Ms. Konst's Tweet] were from Twitter accounts controlled by Snyder," Compl. ¶ 80(i)—Plaintiff fails to plead how many of these 348 alleged re-Tweets were from Twitter accounts supposedly controlled by Mr. Snyder, the nature of that alleged control, or even the names or handles of the purportedly controlled Twitter accounts.  Such wholly conclusory allegations cannot save Plaintiff's claim:  merely alleging that Mr. Snyder "engaged in conduct" prohibited by the statute at issue "without specifics or details is not enough."  *See Jones*, 147 F. Supp. 2d at 224 (dismissal warranted where plaintiff "fail[ed] to allege what [alleged unlawful] conduct consisted of, who specifically engaged in [it], and when [it] took place"); *see also Molefe*, 2015 WL 1312262, at *4 (dismissing Wiretap Act claim where plaintiff offered only "generalized, highly conclusory allegations" tying defendant to surveillance).

Moreover, there is not a single factual allegation in Plaintiff's Complaint connecting either Ms. Konst's initial Tweet, any of the 348 re-Tweets, or the corresponding Twitter accounts that sent them, to any information illegally intercepted from Plaintiff's "personal telephone," which is the basis of Plaintiff's cause of action, *see* Compl. ¶ 82.[15]  The only Twitter accounts Plaintiff alleges used or disclosed information purportedly intercepted through surveillance of

---

[15]  Indeed, the substance of Ms. Konst's Tweet, and the 348 subsequent re-Tweets, was communicated to opposing counsel *by Plaintiff's counsel*, who allegedly "sent an email to Fox News's counsel stating: 'The Huffington Post is about to write [the] story'" regarding the Konst altercation.  *See* Compl. ¶ 80(a).

her telephone came from "the Block account" and an unnamed "one of Defendants' sockpuppet accounts," Compl. ¶¶ 54–63, but Plaintiff pleads no facts connecting these accounts *to Mr. Snyder*, let alone facts that would suggest Mr. Snyder exercised a degree of control over any of these accounts sufficient to render him liable for the information disseminated therefrom. *See Jones*, 147 F. Supp. 2d at 224.[16]

And needless to say, Plaintiff has not pleaded that Mr. Snyder "kn[ew] or ha[d] reason to know that the information" Tweeted from those accounts had been illegally intercepted, as is required to sustain Plaintiff's cause of action. *See* 18 U.S.C. § 2511(1)(c)–(d); *see also Fernicola*, 2001 WL 1658257, at *7 (dismissing Wiretap Act claims "because, in addition to being conclusory, they fail to allege that [defendant] knew that its purported activities were in violation of the statute," and Wiretap Act "only prohibits a person from using or disclosing communications where that person knows or has reason to know that the information was obtained in violation of the statute").

Because Plaintiff has failed to plead any facts from which the Court could "draw the reasonable inference" that Mr. Snyder is "liable for the misconduct alleged"—that he "use[d] . . . the fruits of [electronic] surveillance [of Plaintiff's personal telephone] to emotionally torture Ms. Tantaros," Compl. ¶ 82, which he certainly did not—Plaintiff's claim must be dismissed. *See Iqbal*, 556 U.S. at 678.

### 2.   Mr. Snyder Is Not Liable for IIED

Again, while the pleadings' allegations in this regard are completely false and Mr. Snyder

---

[16]   *See also Diego Beekman Mut. Hous. Assoc. Hous. Dev. Fund Corp. Hdfc v. Dish Network, L.L.C.*, 2016 WL 1060328, at *7 (S.D.N.Y. Mar. 15, 2016) (where "[t]he only sentence in the [complaint] regarding the relationship between Defendants and the direct tortfeasors is so broad as to encompass every possible theory" of applicable liability but "contain[ed] no supporting facts that would allow the Court to discern which of these theories – if any – might plausibly apply," this was "precisely the sort of 'speculative' claim proscribed by *Twombly* and its progeny").

did none of these things, they must be assumed for purposes of this motion.  The Complaint fails to state a claim for IIED against Mr. Snyder, as she fails to plead facts establishing the necessary elements of that tort:  "(1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress."  *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996).

*First*, Plaintiff's allegations fail to meet the "rigorous, and difficult to satisfy" standard for "extreme and outrageous conduct," requiring that "conduct [be] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122 (N.Y. 1993); *see also Medcalf*, 938 F. Supp. 2d at 488 (IIED is "'extremely disfavored'" and only "the most egregious conduct . . . sufficiently extreme and outrageous to establish" it).  Mr. Snyder's alleged "electronic surveillance of Plaintiff as part of a vicious social media campaign," Compl. ¶ 92, is precisely the type of conduct that has been deemed insufficient to rise to this "extreme," "atrocious," and "utterly intolerable" level.[17]  Indeed, the creation and use of fake social media sites to defame and harass a plaintiff has fallen short of extreme and outrageous conduct under similar laws of other states.  *See Bittman v. Fox*, 107 F. Supp. 3d 896, 904–05 (N.D. Ill. 2015) (insufficient where defendants "made statements falsely accusing [plaintiff] of discriminatory conduct[,] . . . used a photo obtained from the Internet in which [plaintiff] is drinking a glass of champagne to claim that she drinks at work[,] . . . traveled to [plaintiff's] residence and took photos of her house and posted them on the Internet[,] . . . [and] created the

---

[17]  *See, e.g., Walther v. Maricopa Int'l Inv., Corp.*, 1998 WL 689943, at *4 (S.D.N.Y. Sept. 30, 1998) ("repeated verbal threats . . . unannounced visits to [plaintiff's] home at late-night hours, persistent telephone calls to [plaintiff's] home . . . and harassment of [plaintiff's] doorman at his apartment house" not extreme and outrageous); *Talmor v. Talmor*, 185 Misc. 2d 293, 299–300 (Sup. Ct. Nassau Cnty. 2000) (surveilling phone conversations for future use against surveillee not extreme and outrageous).

Sassy Pants Facebook Page to impersonate and defame [plaintiff's] floral arrangement business"); *see also Alahverdian v. Grebinski*, 2014 WL 2048190, at *5, *15 (S.D. Ohio May 19, 2014) (defendants' use of social media and blogs to claim that plaintiff participated in "fugitive behavior, [and] sexual assault, and questioned his mental state" was not extreme or outrageous).

*Second*, though Plaintiff is "require[d] . . . to prove 'that the defendant acted out of a desire to hurt the plaintiff rather than promote the defendant's legitimate interests,'" *Slue*, 409 F. Supp. 2d at 372, Plaintiff has offered absolutely no evidence to suggest that Mr. Snyder had any intent to hurt her.  In fact, Plaintiff's allegations—that she and Mr. Snyder were sufficiently close friends that she "stayed at Snyder's Nantucket home on a number of occasions," Compl. ¶ 74, that he "once tried to hire [Plaintiff] to run [New Media Strategies'] public affairs department," *id*. ¶ 75, and that he repeatedly made efforts to *help*, rather than harm, her, including by providing her with strategy and advice regarding her relationship with Fox News, *cf. id*. Ex. JJ—belie any such intent to cause Ms. Tantaros harm, thereby dooming her IIED claim.

*Third*, there is no basis to conclude that any conduct in which *Mr. Snyder* engaged actually caused Plaintiff severe emotional distress.  Plaintiff's IIED claim is premised on her allegation that "Defendants have sought and are continuing to emotionally torture Ms. Tantaros . . . through illegal electronic surveillance . . . , the hacking of her personal computer . . . , and the use of 'sockpuppet' social media accounts to stalk Ms. Tantaros . . . ." *Id.* ¶ 4.  But as previously set forth, *supra* Section I.A.1, Plaintiff has failed to allege any facts tying any conduct *on Mr. Snyder's* part to any electronic surveillance of Plaintiff, any use of the fruits of such surveillance, or any participation in or control over any social media accounts engaged in such conduct.[18]

---

[18]   Even if Plaintiff alleged (she does not) that Mr. Snyder was aware of other defendants' involvement in such an electronic surveillance or social media campaign, that is insufficient to sustain an IIED claim as to Mr. Snyder. *See Kaupp*, 2011 WL 4357492, at *4 (dismissing IIED claim against a business who knew its employee had

*Finally*, Plaintiff's Complaint is bereft of any allegations regarding her supposed "emotional distress" except for the conclusory statement that she "did suffer severe emotional distress, requiring medical treatment and medication . . . ." *Id.* ¶ 94.  This is fatal to her IIED claim, which requires "more than the conclusion that 'plaintiff suffered extreme and grievous mental distress as a result of the extreme and outrageous behavior of the defendants.'"  *Klein v. Metro. Child Servs.*, 100 A.D.3d 708, 711 (2d Dep't 2012) (alterations omitted); *accord, e.g., Medcalf*, 938 F. Supp. 2d at 490 (dismissing IIED claim where, *inter alia*, plaintiff "does not make any non-conclusory allegation that [she] suffered severe emotional distress").

Because Plaintiff has failed to "plead[] [*any*] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," her IIED claim must be dismissed.  *See Iqbal*, 556 U.S. at 678.

### B.       Plaintiff Fails to State Any Claim Against Disruptor

In her 100-paragraph, 34-page Complaint, Plaintiff mentions Disruptor only six times, including twice to establish the location of Disruptor's incorporation and principal office, *see* Compl. ¶ 20.  Neither that assertion, nor any of the other four applicable to Disruptor, *see id.* ¶¶ 19, 73–75, articulates any facts regarding *any* conduct on Disruptor's part, let alone *mis*conduct that would subject Disruptor to liability for the alleged violations of the Wiretap Act or IIED.

In fact, the Complaint appears to state only that any conduct in which Disruptor engaged was "legal":  according to the pleading, "the work of [New Media Strategies]"—"engag[ing] in **legal** social media campaigns to influence opinions, etc."—was "***just what Snyder was describing to her as the work of Disruptor***." *Id.* ¶ 75 (first emphasis in original).  Her claims

---

stalked and threatened plaintiff, noting that "causation is an insurmountable obstacle for Plaintiff. . . . [business defendant's] conduct has not been alleged as the reason for [employee defendant's] harassment of [plaintiff]").

against Disruptor fail for this reason alone.  *See, e.g., Krys*, 749 F.3d at 132 (complaint

insufficient where, *inter alia*, plaintiff pleaded facts "entirely consistent with normal, lawful

business practices").

Moreover, Plaintiff alleges no facts about any conduct on Disruptor's part during the time

period relevant to the "events at issue in this case," namely "after [Plaintiff] was removed from

the air on April 25, 2016," Compl. ¶ 34.  Rather, Plaintiff's assertions consist solely of the

following conclusory statements detailing alleged activity *from 2014* at the latest:

- "*As of 2014*, Snyder was performing the same work for Ailes through his new company, Disruptor, Inc."  *Id.* ¶ 19 (emphasis added).

- "Snyder's work did not end when he sold New Media Strategies.  Instead, as Snyder admitted to Ms. Tantaros, he continued to perform the same services for Ailes through Disruptor. . . . *On August 19, 2013*, . . . Snyder told Ms. Tantaros that he used an 'army' of independent contractors to complete assignments, and that Disruptor was used to employ these contractors."  *Id.* ¶¶ 73–74 (emphasis added).

Both of the above statements are patently false, but in any event, because there is not a single

allegation in the Complaint that ties any act of Disruptor to Plaintiff, and certainly not at any

point after 2014, Plaintiff's claims against Disruptor must be dismissed.  *See Krys*, 749 F.3d at

133 (allegations as to certain defendant "cannot support plaintiffs' claims" since that defendant

"is not alleged to have participated in [the alleged misconduct] after 2001" and relevant time

period was not "until 2002"); *Dunahoo*, 2012 WL 178332, at *4 (dismissing IIED claim where

plaintiff failed to "provide anything other than conclusory allegations to link [defendant] to the

events which [plaintiff] alleges resulted in his suffering").

### C.   Plaintiff's Claims Are Barred by the Statute of Limitations

To the extent Plaintiff has pleaded any *facts* (rather than conclusions) regarding *the*

*Moving Defendants themselves* (rather than other or third parties), those facts describe alleged

conduct falling outside the applicable statutes of limitations, which at most reach back to April

24, 2015,[19] two years prior to the filing of Plaintiff's Complaint.  *See* 18 U.S.C. § 2520(e) (two-year statute of limitations applicable to Plaintiff's private cause of action under 18 U.S.C. § 2511); *see also Ahmed*, 2016 WL 1064610, at *4 ("[A] claim of IIED has a one-year statute of limitations," meaning that a court "can only consider the defendant's behavior in the year before the claim was filed.").  Thus, all pleaded claims against the Moving Defendants are time-barred.

## II.   ALTERNATIVELY, PLAINTIFFS' CLAIMS MUST BE ARBITRATED

Were the Court disinclined to dismiss Plaintiff's Complaint, it should still compel arbitration of Plaintiff's claims here, consistent with the FAA's requirement "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible," *Katz v. Cellco P'ship*, 794 F.3d 341, 346 (2d Cir. 2015).  Ms. Tantaros's claims (i) fall squarely within the scope of the "valid, broad, and unambiguous" Arbitration Clause in Plaintiff's Employment Agreement, which has already been deemed to cover the factual allegations Plaintiff now seeks to pin on the Moving Defendants,[20] and (ii) Mr. Snyder and Disruptor are entitled to invoke that clause against Plaintiff both as (a) alleged agents of Fox News with respect to the misconduct described in the Complaint and (b) based on alternative estoppel.

### A.   Plaintiff's Claims Fall Within Her Arbitration Clause Because They "Arise Out of or Relate to" Her "Employment" With Fox News

"The federal policy favoring arbitration requires [courts] to construe arbitration clauses as broadly as possible. . . .  [A]rbitration should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 847 (2d Cir. 1987) (reversing order

---

[19]   Even these allegations are contrary to reality, since Mr. Snyder's only work for Fox since 2012 has been as an on-air contributor—for which he was paid less than what he received for his earlier consulting work—and Mr. Snyder ceased even that on-air work in April 2017.  *See supra* n.5.

[20]   Ex. 5 at 36:16–37:23 *see, e.g., id.* 28:24–29:3 (stating that Mr. Burstein "made reference to" sock-puppet accounts "in [his] papers and the complaint extensively").

denying motion to compel arbitration).  The Arbitration Clause in section 8 of Plaintiff's

Employment Agreement with Fox News is exceedingly broad:

> **Any controversy, claim or dispute arising out of or relating** to this Agreement
> or **your employment** shall be brought before a mutually selected three-member
> arbitration panel and held in New York City in accordance with the rules of the
> American Arbitration Association then in effect.

Ex. 6 (emphasis added).[21]

Such broad arbitration clauses are "presumptively applicable to disputes involving

matters going beyond the interpreting or enforcing particular provisions of the contract," such

that "[i]f the *allegations* underlying the claims *touch matters* covered by the parties' contracts,

then those claims must be arbitrated."  *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 172

(2d Cir. 2004) (emphases added).  Plaintiff's claims clearly "touch matters" regarding her

employment with Fox News, as Plaintiff herself pleads that the alleged conduct by Defendants

"started while she was employed by Fox News," Compl. ¶ 2, "the chronology of events at issue .

. . began after she was removed from the air on April 25, 2016," *id.* ¶ 34—meaning after she

suffered an adverse employment action—and the purported retaliatory social media campaign

was triggered by Ms. Tantaros's complaints about sexual harassment in the workplace, *id.* ¶¶ 24–

27.  *See*, *e.g.*, *Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, 587 F. Supp. 1520, 1524 (N.D.

Ga. 1984) (claims arose out of plaintiff's employment, and therefore must be arbitrated, where

"[i]t seems evident that but for the employment relationship there would be no dispute").

Indeed, a state court has already referred to an AAA tribunal Plaintiff's harassment and

---

[21]  *See, e.g., Orange Cty. Choppers, Inc. v. Goen Techs. Corp.*, 374 F. Supp. 2d 372, 374 (S.D.N.Y. 2005)
(collecting cases and holding "arbitration clause . . . covering '[a]ny disputes arising from this [a]greement' is a
broad arbitration clause"); *Alemac Ins. Servs., Inc. v. Risk Transfer Inc.*, 2003 WL 22024070, at *4 (S.D.N.Y.
Aug. 28, 2003) (describing the language "any dispute or controversy" as "the paradigm of an expansive clause"
giving rise to a "strong presumption of arbitrability").

retaliation claims against four of the same Defendants in this case—Fox News, Messrs. Ailes and

Shine, and Ms. Briganti[22]—including claims based on the same purported retaliatory social

media scheme that Plaintiff now asserts was perpetrated by the Moving Defendants.  *Compare*

Ex. 1 ¶¶ 6, 48–51, 53 (describing alleged use of "sock puppet" accounts by Fox News and its

employees to "retaliate against" and "smear" Plaintiff), *and* Compl. ¶¶ 73, 74, 80 (pleading

purported use of "sock puppet accounts, fake websites, and internet trolling" allegedly

"controlled by Snyder" on behalf of Fox News and its executives).

Both Plaintiff's Complaint in this action and her First State Court Action complaint

include strikingly similar allegations about harassment and retaliation that "touch matters"

regarding her employment with Fox News, such as:

- ***Plaintiff was allegedly sexually harassed by Fox News employees during her employment
  there and retaliated against after complaining of such conduct***, *see* Ex. 1 ¶ 5 (alleging
  sexual harassment by Messrs. Ailes and O'Reilly, followed by retaliation against her for
  raising complaints of such treatment); Compl. ¶ 8 (alleging the same sexual harassment by
  Mr. Ailes and others at Fox News and retaliation for making those claims);

- ***Plaintiff supposedly was the subject of attacks on social media via sock puppet accounts
  controlled by Fox News***, *see* Ex. 1 ¶¶ 6, 48, 50-51, 53 (describing negative comments written
  about Plaintiff on social media through sock puppet accounts managed by the Fox News
  media relations department); Compl. ¶¶ 7–8 (describing the same type of harassment via a
  social media campaign through sock puppet sites controlled by Fox News and its agents);

- ***Fox News purportedly retaliated against Plaintiff by removing her from the air under the
  pretext that her upcoming book violated company policies***, *see* Ex. 1 ¶¶ 8, 62 (describing a
  letter sent from employee Dianne Brandi to Plaintiff's counsel removing Plaintiff from the
  air and citing conflicts related to her book, as well as "barr[ing] [Plaintiff] from entering Fox
  News premises anywhere in the world"); Compl. ¶ 26 (quoting same letter regarding
  Plaintiff's removal based on her violation of Fox News's book policy, noting specifically that
  Plaintiff was "barred from entering Fox News premises anywhere in the world");

- ***Fox News refused to fire Plaintiff, she contends, after she reported the sexual harassment
  and continued to pay her salary in an effort to silence her from coming forward publicly
  with her allegations***, *see* Ex. 1 ¶¶ 9, 67 (alleging continued payments to Plaintiff as an
  incentive to remain quiet about the sexual harassment); Compl. ¶ 27 (alleging that Fox News

---

[22]   *See* Ex. 5 at 36:14–38:19.

continued to pay Plaintiff's salary in order to "incentivize her" to stop pursuing her claims);

- ***Mr. Shine was supposedly Mr. Ailes's primary enforcer and personally committed numerous acts of retaliation against Plaintiff and other women who alleged sexual assault by Messrs. Ailes and O'Reilly***, *see, e.g.*, Ex. 1 ¶ 15  (describing Mr. Shine as Mr. Ailes' "enforcer" and noting retaliatory acts Mr. Shine committed against Mr. Ailes's alleged victims); Compl. ¶ 17 (alleging Mr. Shine is Mr. Ailes' "primary enforcer and enabler," and noting that he retaliated against women who claimed to be harassed at Fox News);

- ***Mr. Shine allegedly refused to investigate or offer support to Plaintiff after she complained to him of Mr. Ailes's sexual harassment***, *see* Ex. 1 ¶ 38 (Mr. Shine allegedly encouraged Plaintiff not to pursue her harassment claims because Mr. Ailes was "a very powerful man"); Compl. ¶ 9 (referencing same conversation between Mr. Shine and Plaintiff, including that Mr. Shine referred to Mr. Ailes as "a very powerful man" and discouraged Plaintiff from pursuing any of her complaints);

- ***Plaintiff eventually gave up complaining about the harassment by Mr. Ailes because Fox News purportedly refused to take any action against him***, *see* Ex. 1 ¶¶ 49, 59 (alleging that Plaintiff realized that the only way to put an end to Fox News's retaliatory actions was to cease complaining about Mr. Ailes); Compl. ¶ 23 (alleging that Plaintiff "had given up on" seeking any relief from Mr. Ailes' harassment because it was "fruitless"); and

- ***Fox News allegedly attempted to aid Plaintiff after she complained about harassment by Mr. O'Reilly by agreeing that she would not appear on Mr. O'Reilly's show in the future***, *see* Ex. 1 ¶ 54 (allegedly in response to her complaints, Fox News notified Plaintiff that she would no longer appear on Mr. O'Reilly's show); Compl. ¶¶ 24-25 (describing same notice removing Plaintiff from appearances on Mr. O'Reilly's show in response to her harassment complaints).

Given these striking similarities between the Complaint's allegations and those asserted in the First State Court Action, Plaintiff should not be permitted to violate her Arbitration Clause and circumvent Justice Cohen's order compelling arbitration simply by repackaging her allegations from the First State Court Action as federal statutory claims and IIED[23] and now naming—in her *third* complaint describing the same purported retaliation scheme—non-

---

[23]   *See Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 486 (2d Cir. 2013) ("[P]reference for enforcing arbitration agreements applies even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'"); *see also DirecTV, LLC v. Saylor,* 2015 WL 1477885 (Mar. 31, 2015) (compelling arbitration of claims including an 18 U.S.C. §§ 2511 (interception of wiretap communications) claim against corporate defendant and its non-signatory sole owner under the agency theory).

signatory defendants, Mr. Snyder and Disruptor, not previously named in the First State Court Action.[24] *See Genesco*, 815 F.2d at 847 ("In determining whether a particular claim falls within the scope of the parties' arbitration agreement, [courts] focus on the ***factual allegations*** in the complaint rather than the legal causes of action asserted." (emphasis added)).[25]  Ms. Tantaros's continued desire to, as Justice Cohen put it, "involve[] the media in this dispute in violation of the confidentiality provision of the parties' [arbitration] agreement" in her Employment Agreement,[26] drove her to file this third complaint, in federal court, to keep her dispute in the spotlight, but the Court should not permit her to evade Justice Cohen's ruling by relitigating the same alleged retaliatory scheme in a new forum, masquerading her old allegations as "new" claims, on the groundless pretense of adding new, innocent non-signatory defendants.

### B.    Moving Defendants Are Entitled to Invoke the Arbitration Clause

1.    The Arbitration Clause Covers the Moving Defendants Because Plaintiff's Claims Against Them as Alleged Agents of Fox News Are Wholly Dependent on Her Claims Against Fox News

The Complaint seeks to hold the Moving Defendants liable for the purported retaliatory social media scheme undertaken on Fox News's behalf, meaning as its alleged agents.  *See*

---

[24]  *See, e.g.*,  *Danisco A/S v. Novo Nordisk A/S*, 2003 WL 282391, at *4 (S.D.N.Y. Feb. 10, 2003) (plaintiffs "cannot avoid arbitration for which they had contracted simply by adding a non-signatory [party], lest the efficacy of contracts and the federal policy favoring arbitration be defeated"); *Mosca v. Doctors Assocs.*, 852 F. Supp. 152, 155 (E.D.N.Y. 1993) ("This court will not permit Plaintiffs to avoid arbitration simply by naming individual agents of the party to the arbitration clause and suing them in their individual capacity.").

[25]  Ms. Tantaros is collaterally estopped from arguing that Justice Cohen's decision—made after full briefing and oral argument—compelling arbitration of her claims should not be enforced.  *See Interoceanica Corp. v. Sound Pilots, Inc*., 107 F.3d 86, 91 (2d Cir. 1997) (collateral estoppel bars relitigation of an issue if "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."); *see also Keystone Shipping Co. v. New England Power Co*., 109 F.3d 46, 48 (1st Cir. 1997) (a state court decision that an arbitration clause covered plaintiff's claims estopped plaintiff from later arguing in federal district court that the claim was not arbitrable); *cf. Saucier v. Aviva Life & Annuity Co.*, 589 F. App'x 701, 703-07 (5th Cir. 2014) (party collaterally estopped from litigating applicability of arbitration clause where state court had determined claim not arbitrable).

[26]  Ex. 5 at 22:4–8, 38:4–6.

Compl. ¶¶ 72– 74, 79, 80; *see also Gulf Ins. Co. v Transatlantic Reins. Co.*, 69 A.D.3d 71, 96–97 (1st Dep't 2009).  But Ms. Tantaros cannot have her cake and eat it, too:  if the Moving Defendants are purportedly agents of Fox News,[27] they are entitled to "the benefit of arbitration agreements entered into by their principals" that the Second Circuit has "consistently afforded agents" where "a suit alleges misconduct that relates to behavior" of the agents in their capacities as such.  *McKenna Long & Aldridge, LLP v. Ironshore Specialty Ins. Co.*, 2015 WL 144190, at *7 (S.D.N.Y. Jan. 12, 2015).[28]  Because the Complaint alleges that the Moving Defendants acted as Fox News's agents—agreeing to act, and acting, at Fox News's request, and being paid to do so by Fox News—in executing the purported retaliatory social media campaign against Ms. Tantaros (which is false), Plaintiff's claims against the Moving Defendants are wholly dependent on those against Fox News and must similarly be arbitrated, as Justice Cohen already ordered.

 2.   Plaintiff Should Be Estopped from Avoiding Arbitration of Her Claims
  Against the Moving Defendants

 The doctrine of alternative estoppel also precludes Plaintiff from avoiding arbitration of her claims against the Moving Defendants, since a signatory to an arbitration agreement, like Plaintiff, "is estopped from avoiding arbitration with a non-signatory [like the Moving Defendants] 'when the issues the nonsignatory is seeking to resolve in arbitration are intertwined

---

[27]  The Complaint repeatedly alleges that the Moving Defendants acted on Fox News's or its agents' behalf and for their benefit.  *See, e.g.,* Compl. ¶ 72 ("Snyder played a crucial role in Fox News's practice . . . to destroy Ailes whomever , and now Shine, considered to be an enemy"); *id.* ¶ 19 (Snyder and Disruptor "manage[d] social media campaigns using fake websites and social media accounts against individuals who Roger Ailes identified as an enemy"); *id.* ¶ 77 ("Snyder was consulting with Shine about Fox News business . . . .").  Even more explicitly, Plaintiff's email to Mr. Snyder threatening this litigation expressly states that the Moving Defendants acted "on behalf of Fox News under the direction of Bill Shine and Roger Ailes."  Ex. 7.

[28]  *See also id*. at *7 ("[T]he corporate agent may use the arbitration provision as a sword to compel arbitration, which is to say, a shield against litigation before a court"); *Covina 2000 Ventures Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2007 WL 2154186, at *1 (S.D.N.Y. July 26, 2007) (granting non-signatory agent's motion to compel arbitration); *Marcus v. Frome*, 275 F. Supp. 2d 496, 504–05 (S.D.N.Y. 2003) (non-signatory employee entitled to seek arbitration under agreement containing arbitration clause); *Dassero v. Edwards*, 190 F. Supp. 2d 544, 548–551 (W.D.N.Y. 2002) (non-signatory "can seek to enforce the arbitration agreement against [signatory] plaintiffs under both agency and veil-piercing/alter ego theories").

with the agreement that the estopped party has signed.'" *Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co.*, 271 F.3d 403, 404 (2d Cir. 2001); *see also In re Currency Conversion*, 265 F. Supp. 2d at 402.  Where, as here, a plaintiff signatory to an arbitration agreement seeks the same relief for the same claims from both the non-signatory and the signatory, the claims are sufficiently intertwined to estop plaintiff from avoiding arbitration.  *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 2012 WL 3262435, at *6–8 (D.N.J. Aug. 7, 2012).  As discussed, above, Ms. Tantaros has, in fact, sought the same relief for the same claims from the Moving Defendants as she has from Fox News and its employees and other alleged agents, and therefore she is estopped from circumventing Justice Cohen's order compelling arbitration.

## CONCLUSION

As set forth above, the Moving Defendants' motion to dismiss the Complaint, with prejudice, pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6), or in the alternative, to compel arbitration and stay proceedings, should be granted.

Dated:  New York, New York
   June 20, 2017

GIBSON, DUNN & CRUTCHER LLP

By:  */s/ Randy M. Mastro*
   Randy M. Mastro
   Mylan L. Denerstein
   Michael Marron

200 Park Avenue
New York, New York 10166
Tel.:  (212) 351-4000
Fax:  (212) 351-4035
RMastro@gibsondunn.com

*Attorneys for Peter A. Snyder and Disruptor, Inc.*

25