UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
ANDREA TANTAROS,

                               Plaintiff,

                 - against -

FOX NEWS NETWORK, LLC, ROGER AILES, WILLIAM
SHINE, IRENA BRIGANTI, PETER A. SNYDER,
DISRUPTOR, INC., and JOHN DOES 1-50,

                             Defendants.
------------------------------------------------------- x

17 Civ. 2958 (GBD)

ORAL ARGUMENT
REQUESTED


**REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR SANCTIONS BY DEFENDANTS FOX NEWS NETWORK AND IRENA BRIGANTI**

Andrew J. Levander
Linda C. Goldstein
Nicolle L. Jacoby
Benjamin M. Rose
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500

*Attorneys for Defendants Fox News Network, LLC and Irena Briganti*

## TABLE OF CONTENTS

                                                                                                                         **Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

I.      Sanctions Are Warranted For Pursuing Unfounded Factual Allegations ..........................2

          A.    Burstein Did Not Perform A Reasonable Inquiry Into The Block Twitter Account Or The Complaint's Other Key Allegations ............................................2

          B.    Nit-Picking Irrelevant Details In The Block Declaration Does Not Provide Factual Support For The Frivolous Claims ............................................................5

          C.    Sanctions Cannot Be Avoided By Belatedly Revising The Complaint .................6

          D.    Sanctions May Be Granted Before Considering A Motion To Dismiss ................7

II.     Sanctions Are Warranted For Pursuing Legally Meritless Claims That Must Be Arbitrated If Asserted At All ..............................................................................................8

III.    Sanctions Are Warranted For Filing The Complaint For Improper Purposes ..................10

CONCLUSION ...............................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Abner Realty, Inc. v. Adm'r of Gen. Serv. Admin.*,
   No. 97 Civ. 3075, 1998 WL 410958 (S.D.N.Y. July 22, 1998) .................................................. 7

*Garr v. U.S. Healthcare, Inc.*,
   22 F.3d 1274 (3d Cir. 1994) .................................................................................................... 8

*Kramer v. Pollock-Krasner Foundation*,
   890 F. Supp. 250 (S.D.N.Y. 1995) ......................................................................................... 8

*Martin v. Am. Kennel Club, Inc.*,
   No. 87C2151, 1989 WL 252511 (N.D. Ill. Jan. 6, 1989) ........................................................ 7

*O'Malley v. N.Y.C. Transit Auth.*,
   896 F.2d 704 (2d Cir. 1990) ................................................................................................... 7

*Sussman v. Bank of Israel*,
   56 F.3d 450 (2d Cir. 1995) ................................................................................................... 10

## PRELIMINARY STATEMENT

Faced with indisputable proof that Tantaros' claims are a hoax, the Opposition does not even try to counter the evidence that Burstein did not conduct a reasonable inquiry into the Complaint's outrageous allegations that the Fox News Defendants wiretapped her phone and hacked her computer.[1] Instead, Burstein doubles down with even more sanctionable claims.

He accuses Mr. Block of lying under oath without identifying a single material inaccuracy in his declaration. He backpedals from the Complaint's allegations about the timing of Mr. Block's tweets relative to Tantaros' phone conversations in favor of an even more outlandish theory that Mr. Block or the Fox News Defendants could *predict* her future conversations. He pretends that the Complaint's illegal surveillance and hacking claims are not both factually and legally baseless, even though he cannot connect the Fox News Defendants to any of the alleged espionage. He never denies that he sought to extract an eight-figure payment to avoid the public filing of a frivolous complaint accusing the Fox News Defendants of criminal misconduct, when a prior judicial ruling barred him from filing that suit outside of a private arbitral forum. Finally, he contends that this Court may not impose sanctions on him or his client for their outrageous conduct unless the Fox News Defendants also file a motion to dismiss, even though the law says otherwise: a federal court may sanction counsel for failing to conduct a reasonable pre-filing factual investigation even where, unlike here, a claim has some merit.

None of these ploys should be countenanced. The circumstances demand that this Court sanction both Burstein and Tantaros to put an end to their repeated abuse of the judicial process.

---

[1] The Amended Memorandum of Law in Opposition to Defendants' Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 [ECF Doc. No. 59] is referred to as the "Opposition" or "Opp. Mem.," and the Declaration of Judd Burstein [ECF Doc. No. 52] and Amended Declaration of Andrea Tantaros [ECF Doc. No. 58] are referred to as the "Burstein Decl." and "Tantaros Decl.," respectively. The exhibits cited in this Reply are submitted in the accompanying Reply Declaration of Linda C. Goldstein, and referred to as "Reply Ex." The exhibits cited in the Motion and Opposition are referred to as "Mot. Ex." and "Opp. Ex.," respectively.

## ARGUMENT

### I. Sanctions Are Warranted For Pursuing Unfounded Factual Allegations

The Opposition confirms that Burstein did not conduct a reasonable inquiry under Fed. R. Civ. P. 11(b)(3) into the Block Twitter Account before signing a pleading that relied upon that account as the sole basis for false accusations of grave criminal misconduct. None of the nit-picking, speculation or backpedaling in the Opposition cures that shortcoming or provides a factual basis for Tantaros' outlandish claims of electronic surveillance and cyberstalking.

#### A. Burstein Did Not Perform A Reasonable Inquiry Into The Block Twitter Account Or The Complaint's Other Key Allegations

Burstein's declaration may be most notable for what it does *not* say: that he reviewed the Block Twitter Account to determine whether it could support the Complaint's core allegation that the account was being used by Fox News to intimidate Tantaros with information gleaned from wiretapping her phone.[2] Burstein does not explain how a reasonable lawyer could lob that accusation of criminal misconduct when a review of the Block Twitter Account itself, wholly independent of the Block Declaration, shows that:

- *None* of the allegedly threatening tweets cited in the Complaint was addressed to @andreatantaros. *See* Compl. Exs. A, C-E, CC-GG. Thus, as Burstein's Declaration concedes, *there was no reason to think that Tantaros would see any of them* because Mr. Block had "to address a Tweet to @andreatantaros in order to ensure that Ms. Tantaros would see it." Burstein Decl. ¶ 11; *see also* Opp. Mem. at 7 ("there would have been no

---

[2] Burstein's only reference to his review of the account, at paragraph 49 of his declaration, confirms that it was haphazard at best: he asserts that a "key May 21, 2016 tweet" (described in paragraphs 47 and 50 of the Complaint) had disappeared from the Block Twitter Account *when that tweet still appears there. See* Mot. Ex. 18. Even Burstein's description of the purportedly missing tweet is deceptive; Burstein says it was addressed to "@andreatantaros," when it was addressed to the "Andrea Tantaros Fan" account (at "@realNASCARman"), which re-tweeted it. *See* Mot. Ex. 18; Compl. Ex. Z.

reason for Mr. Block to have assumed that Ms. Tantaros would have even seen" a tweet not addressed to @andreatantaros).

- The Block Twitter Account displays notable affection for Tantaros, and nothing that, to a rational eye, appears to threaten her. *See* Mot. Ex. 17. Burstein says it is an "obvious tactic" to mix "seemingly innocent Tweets with other Tweets," but nowhere explains how the benign images of animals and trees in the Block Twitter Account could reasonably "unnerve Ms. Tantaros" or suggest that someone was listening to her phone calls. Opp. Mem. at 15.

- The images that allegedly referenced specific telephone conversations between Tantaros and third parties identified in the Complaint were tweeted many times *before* the allegedly surveilled conversations. *See* Mot. Exs. 9–14.

Even Burstein does not echo the ridiculous assertion, made in the Tantaros declaration, that Mr. Block (or someone else) was able to *predict* what she would say in *future* phone calls and plant anticipatory tweets to make it appear that the later purported threats "were organic Tweets generated by Mr. Block." Tantaros Decl. ¶ 12. If the only way of squaring the allegations in the Complaint with a review of the Block Twitter Account is to assume that the party responsible for posting the earlier tweets is clairvoyant, the allegations are plainly unreasonable.

Burstein's declaration is just as silent about what he did to investigate other key allegations in the Complaint. Burstein does not say what he did to confirm the Complaint's false allegation that "there is no possible way that [Mr. Block] could have known Ms. Tantaros' home address." Compl. ¶ 48. That allegation, which is central to the Complaint's tortured narrative of how the Block Twitter Account could have "had Ms. Tantaros's attention," Compl. ¶ 54, even though the tweets at issue are not addressed to @andreatantaros, is simply not true: Tantaros' home address was publicly available on the Internet. Mot. Ex. 19. A reasonable lawyer would

have verified this readily-tested fact, but all Burstein says in his defense is that Tantaros' "current address" now shown on the Internet is not the same as her home address in May 2016. Opp. Mem. at 15. This sleight-of-hand is damning; Tantaros' former home address on West 70th Street *is still* listed on the Internet, *see* Mot. Ex. 19, and as Tantaros well knew, it first appeared there in October 2014. *See* Reply Ex. 1 (email from Tantaros to Fox News' general counsel stating "it appears my address has popped up on a website called Peek You").

Finally, while Burstein does purport to offer support for the Complaint's incendiary allegation that the Fox News Defendants "engaged in surreptitious surveillance by breaking into her personal computer and planting key-logging and other surveillance software on it," this is another one of his shell games. Compl. ¶ 10; *see also* Compl. ¶ 45 (referring to "unique surveillance viruses"). Burstein presents only an undated, one-page excerpt of a report from a computer forensic firm, which he does not even claim to have reviewed before he signed the Complaint. Burstein Decl. ¶ 46 & Opp. Ex. RR. This cryptic summary—which says nothing about Tantaros' phone—does *not* state that Tantaros' emails were in fact accessed or monitored by anyone, much less by the Fox News Defendants, or that there was anything "unique" about the "malicious software" allegedly found on her laptop.[3] Opp. Ex. RR. There is not a shred of support for the Complaint's allegation that the Fox News Defendants hacked Tantaros' computer, since not one of the tweets described in the Complaint is said to convey information learned from an email. *See* Compl. ¶¶ 8(a)–(d), 55–63 (referring only to Tantaros' phone calls). No reasonable lawyer could make such an inflammatory charge based on the vague equivocations in Opp. Ex. RR, and Burstein should be sanctioned for doing so.

---

[3]   The report's assertion that "[i]f any agent of Fox News Channel had access to her computer . . . between September 28, 2015 and April 25, 2016, then they would have known her password universally" is a *non sequitur*; there is no allegation, either in the Complaint or the Tantaros declaration, that anyone at Fox News had access to her personal computer other than once on August 6, 2015. *See* Tantaros Decl. ¶ 21.

- 4 -

### B. Nit-Picking Irrelevant Details In The Block Declaration Does Not Provide Factual Support For The Frivolous Claims

Unable to defend his indefensible failure to investigate the Complaint, Burstein resorts to fly-specking the Block Declaration and speculating that Mr. Block was bribed to lie. Neither Burstein's quibbles nor his irresponsible accusations detract from the fact that a review of the Block Twitter Account *on its face* would have negated the Complaint's far-fetched allegations of cyberstalking.

***The @DanielBlock5 Twitter Account.*** Burstein points to Mr. Block's other Twitter account, the @DanielBlock5 Twitter account. Opp. Mem. at 9–10. The Complaint says nothing about this account, which apparently never bothered Tantaros, and the Fox News Defendants did not mention it in their Rule 11 motion. Mr. Block described this account in his declaration to explain that while *some* of the tweets in the @DanielBlock5 account were not his own—because they had been sent by his deceased son—he had sent *all* of the tweets in the @DanielWayneBlo1 account at issue in this case. *See* Block Decl. ¶ 2. *None* of the activity in the @DanielBlock5 account affects the veracity of that statement. Indeed, the similarity of the tweets in the @DanielWayneBlo1 and @DanielBlock5 accounts confirms they came from the same source— Mr. Block, as he attested—and that they were not directed at Tantaros.

***The Ready Availability of Mr. Block.*** Burstein questions "the speed with which the Block Dec. was secured, and the way it was presented." Opp. Mem. at 8. This shows only how accessible Mr. Block was, underscoring how unreasonable it was for Burstein not to reach out to him in the eight months he had available to conduct a factual investigation.

***The Nature and Timing of Mr. Block's Tweets.*** Burstein speculates that Mr. Block did not send all of the tweets in his account, since they show "eclectic tastes." Opp. Mem. at 13. He also questions whether tweets sent after midnight or before 6 a.m. are the "types of Tweets" that

would be sent at those hours. *Id.* These irrelevant observations prove only that Burstein and Mr. Block do not share the same tastes and habits; they are not evidence that Mr. Block has lied.

***The @realNASCARman Tweets.*** Burstein challenges the veracity of the Block Declaration based on two tweets sent to the @realNASCARman account. Opp. Mem. at 11. It is plain from the content of the tweets, which speak to "Andrea," that Mr. Block thought he was sending them to Tantaros' account. *See* Opp. Ex. AA. Neither tweet threatens Tantaros nor betrays access to her phone calls. There is nothing nefarious about Mr. Block's error.

***The Condolence Tweet.*** As another example, Burstein argues that the Block Declaration must have been obtained by extortion or bribery because the 71 year-old Mr. Block mistakenly believed that he had directed a condolence tweet to Tantaros even though he had not addressed it to @andreatantaros. Opp. Mem. at 6–7; Block Decl. ¶ 8(b); Compl. Ex. C. Mr. Block's confusion is not evidence of bribery or extortion, but merely confirms that *none* of the allegedly threatening tweets could reasonably be believed to have been directed to Tantaros, since *none* of them was addressed to @andreatantaros.

## C. Sanctions Cannot Be Avoided By Belatedly Revising The Complaint

In the face of devastating proof of tweets sent before the specific conversations that the Complaint alleges were wiretapped, Tantaros tries to defend herself and Burstein from a Rule 11 sanction by rewriting her factual allegations. For example, she tries to explain away Disney tweets that pre-date a June 22, 2016 phone call with her brother's children, Compl. ¶ 8(c), 61, by asserting that she "routinely communicated . . . with both [her] brother and his children during the period between April and June 2016," Tantaros Decl. ¶ 14. And she tries to explain away Blue Angels tweets that predate a June 12, 2016 telephone conversation about the squad, Compl. ¶ 57, by asserting that the Blue Angels were a "routine topic of conversation in the period between April and June of 2016," Tantaros Decl. ¶ 15. Tantaros also asserts that other tweets

- 6 -

from the @DanielWayneBlo1 account purportedly show surveillance of her "personal communications"—but does not provide them. Tantaros Decl. ¶ 12.

These belated revisions cannot avoid sanctions. When they first served their Notice of Rule 11 Motion, the Fox News Defendants sent a Rule 11 "safe harbor" letter that identified some of the earlier Disney and Blue Angel tweets. Mot. Ex. 21 at 2. The proper course when served with the Notice of Motion would have been to withdraw the frivolous Complaint or attempt to cure its material factual defects during the ensuing 21-day period, before the motion was filed with the Court. Burstein cannot defend the Complaint's deficient factual allegations, which he failed to investigate, by rewriting them into different allegations that are not in the Complaint. *See Martin v. Am. Kennel Club, Inc.*, No. 87C2151, 1989 WL 252511, at *4 (N.D. Ill. Jan. 6, 1989) ("flat-out falsehoods" in complaint only aggravated by attorney attempting to recast them in responding to motion for sanctions).

### D. Sanctions May Be Granted Before Considering A Motion To Dismiss

Burstein's assertion that the Court cannot grant sanctions before ruling on the merits of a motion to dismiss is contrary to well-established law. Opp. Mem. at 16. Under Rule 11, courts test whether a reasonable inquiry into the viability of a pleading was done *before* the attorney signed it. *See O'Malley v. N.Y.C. Transit Auth.*, 896 F.2d 704, 705-06 (2d Cir. 1990) ("Rule 11 imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before actually signing it.") (internal quotations omitted); *Abner Realty, Inc. v. Adm'r of Gen. Serv. Admin.*, No. 97 Civ. 3075, 1998 WL 410958, at *3-4 (S.D.N.Y. July 22, 1998) ("The substantive requirement imposed on an attorney or party by Rule 11 is that pleadings, motions, and other papers be justifiable at the time they are signed.").

Sanctions may be awarded even if a case is not wholly "unmeritorious" if counsel has failed to make a "reasonable inquiry" before filing a complaint.[4] *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1276-81 (3d Cir. 1994) (affirming sanctions imposed solely for attorneys' failure to conduct reasonable investigation before filing, before any motion to dismiss was filed). Indeed, "a signer making an inadequate inquiry into the sufficiency of the facts and law underlying a document will not be saved from a Rule 11 sanction by the stroke of luck that the document happened to be justified." *See Garr*, 22 F.3d at 1279. To hold otherwise would frustrate the Rule's purpose "'to deter baseless filings.'" *Id.* (*citing Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990) (Rule 11 sanctions may be imposed even after voluntary dismissal because "[t]he filing of complaints, papers or other motions without taking the necessary care in their preparation is a separate abuse of the judicial system, subject to separate sanction")). Thus, even if the Complaint happened to state viable claims that might survive dismissal (which it does not), Burstein's failure to conduct a reasonable investigation should still be sanctioned.

## II. Sanctions Are Warranted For Pursuing Legally Meritless Claims That Must Be Arbitrated If Asserted At All

Sanctions are warranted under Fed. R. Civ. P. 11(b)(2) because there was no legal basis to bring Tantaros' claims in this Court, rather than a private arbitral forum, as required by Justice Cohen's order. As explained in more detail in the Fox News Defendants' Motion to Compel Arbitration, Tantaros' claims of retaliation by means of electronic surveillance are subject to arbitration, just as are her claims of retaliation by other means. Justice Cohen's order was clear that claims of "harassment and retaliation" fell "within the terms of the parties['] broad

---

[4] *Kramer v. Pollock-Krasner Foundation*, 890 F. Supp. 250 (S.D.N.Y. 1995) is not to the contrary. In *Kramer*, the Court held that, in that particular case, determining the truth of the allegations after dismissal would be a waste of judicial resources and denied the sanctions motion as moot. *Id.* at 259.

- 8 -

arbitration provision," because "those claims arose within the scope of plaintiff's employment." Mot. Ex. 2 at 36:15–37:5. That Justice Cohen elsewhere commented in passing on a hypothetical case of sexual assault, having no connection to alleged retaliation, does nothing to change this. Opp. Mem. at 24. Nor does Justice Cohen's denial without prejudice of Burstein's oral request to amend Tantaros' state court complaint make the Order that Tantaros' employment-related claims are arbitrable any less clear or controlling.

Sanctions are also warranted because none of the Complaint's three causes of action has a legal basis. All rely on the false premise that the Block Twitter Account was the instrumentality through which Tantaros was surveilled and harassed. But Tantaros cannot connect the Fox News Defendants to any of purported misconduct. For example, with respect to the Wiretap Act claim, Tantaros argues that the Fox News Defendants "had a motive to harass Ms. Tantaros," that the press has "chronicled" Fox News' "use of its media relations department and sockpuppet social media accounts to target and victimize perceived enemies," and that a "Black Room" at Fox News purportedly carried out these efforts. Opp. Mem. at 19. None of these allegations has anything to do with Tantaros; they cannot substitute for facts showing that the Fox News Defendants illegally surveilled her phone calls. Opp. Mem. at 18–20; Mot. at 18.[5]

Burstein tries to resurrect the claim under the Stored Communications Act—which applies to servers, not personal computers—by revising the Complaint to assert that the Fox News Defendants improperly accessed the emails in Tantaros' Gmail account, which are located on Google's servers. Opp. Mem. at 22–23. But Google's servers are not mentioned in the

---

[5] Tantaros' contention that a "plausibility" standard provides the touchstone for this Rule 11 Motion thoroughly misses the mark. Opp. Mem. at 16–17. Not only are public press reports of purported media campaigns against other people irrelevant, they do not go to the fundamental question of whether Tantaros has pled any factual basis for her outlandish claims that the Fox News Defendants were responsible for any purported tap on her phone or hack of her computer.

Complaint, and there is not a shred of evidence that Tantaros' Gmail account was accessed by an unauthorized user, much less by the Fox News Defendants. If there were such evidence, it would be readily available to Tantaros, since Gmail keeps login history allowing users to "[r]eview which devices have accessed [their] account."[6] The Complaint does not point to a single email as a source for the Block tweets; it alleges only (and without basis) that Tantaros' phone calls were monitored. *See* Compl. ¶¶ 8(a)–(d), 55–63 (referring only to Tantaros' phone calls). The Stored Communications Act claim has no legal basis.

### III. Sanctions Are Warranted For Filing The Complaint For Improper Purposes

The Complaint was plainly filed for improper purposes, in violation of Fed. R. Civ. P. 11(b)(1). Burstein does not deny that he threatened to file the Complaint in order to generate a "media event." Mot. at 4-7, 21-22.[7] He nowhere disavows that he brought these claims in this Court, rather than in the private arbitral forum where they belong, to inflict maximum damage on Fox News' business and reputation. Instead, the Opposition tries to raise a procedural hurdle by asserting that "Rule 11(b)(1) sanctions are unavailable unless that complaint is dismissed with prejudice." Opp. Mem. at 25. Lawyers cannot be sanctioned for threatening to assert non-frivolous claims, but there is no bar to imposing sanctions where, as here, a lawyer has improperly threatened to publicly file frivolous claims.[8]

### CONCLUSION

For the reasons set forth above, Defendants Fox News Network, LLC and Irena Briganti respectfully request that the Court grant the sanctions sought in the Motion.

---

[6] *See* Reply Ex. 2 (Gmail Sign-in & Security Page).

[7] The improper purposes are also confirmed and underscored by the separate motion for sanctions brought by Defendants Peter A. Snyder and Disruptor, Inc. Just as he did with Fox News, Burstein made extortionate demands on Mr. Snyder, threatening to subject him to reputational harm unless he agreed to a pre-litigation $15,000,000 settlement. *See* Mastro Exs. 8 [ECF Doc. No. 40-8] & 9 [ECF Doc. No. 40-9].

[8] *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995), cited by Burstein, holds that the court must find that a complaint is frivolous to impose sanctions under Rule 11(b)(1), not that the complaint first must be dismissed.

| | |
|---|---|
| Dated: New York, New York<br>July 12, 2017 | DECHERT LLP<br><br>By: _____/s/_____<br>Andrew J. Levander<br>Linda C. Goldstein<br>Nicolle L. Jacoby<br>Benjamin M. Rose<br>1095 Avenue of the Americas<br>New York, New York 10036<br>(212) 698-3500<br>andrew.levander@dechert.com<br><br>*Attorneys for Defendants Fox News Network, LLC and Irena Briganti* |