UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANDREA TANTAROS,

                *Plaintiff,*

-- against --                                 Case No. 17-cv-2958

FOX NEWS NETWORK, LLC, WILLIAM
SHINE, IRENA BRIGANTI, PETER A.
SNYDER, DISRUPTOR, INC., and JOHN     **DECLARATION OF**
DOES 1-50,                                    **JUDD BURSTEIN**

                *Defendants.*
------------------------------------------------------------X

        JUDD BURSTEIN hereby declares under penalty of perjury:

        1.     I am a Principal of Judd Burstein, P.C., attorneys for Plaintiff Andrea Tantaros.

        2.     I submit this Declaration in opposition to the motion for sanctions filed by Defendants Peter A. Snyder and Disruptor, Inc. ("Disruptor") (collectively, the "Snyder Defendants").

        3.     The purpose of this Declaration is (a) to provide a foundation for documentary evidence supporting certain factual assertions in the accompanying Memorandum of Law ("MOL") filed in opposition to the Snyder Defendants' motion, and (b) to provide more detailed factual answers to claims made in the Snyder Defendants' motion.

**A.**     **DOCUMENTS REFERENCED IN THE MOL**

        4.     Annexed hereto as Exhibit 1 is a true and accurate copy of a May 26, 2004 letter from Judge Denny Chin, then a District Court Judge in the Southern District of New York, addressed to me.

        5.     Annexed hereto as Exhibit 2 is a true and accurate copy of my June 28, 2017 Declaration, with Exhibits, in opposition to Defendants Fox News Network, LLC ("Fox News"),

William Shine ("Shine"), and Irena Briganti's ("Briganti", and together with Fox News and Shine, the "Fox News Defendants") Rule 11 motion.

6. Annexed hereto as Exhibit 3 is a true and accurate copy of Ms. Tantaros's Amended Memorandum of Law in opposition to the Fox News Defendants' Rule 11 motion.

7. Annexed hereto as Exhibit 4 is a true and accurate copy of an April 18, 2017 Salon.com article entitled "Roger Ailes' fake news empire: Former Fox News head presided over a panoply of phony 'sock puppet' blogs."

8. Annexed hereto as Exhibit 5 is a true and accurate copy of a May 14, 2017 Politico.com article entitled "The Widening Blast Radius of the Fox News Scandal".

**B.   ADDITIONAL FACTS SUPPORTING THIS OPPOSITION**

9. During the course of settlement negotiations with Randy Mastro, Esq., Mr. Mastro informed me that Mr. Snyder is and has been an on-air commentator for Fox News and Fox Business Channel since 2012, and is paid a "stipend" of $15,000 per month, or $180,000 per year for this work. My office has compiled a list of Mr. Snyder's appearances from 2014 through 2016. To the best of my knowledge, this compilation is exhaustive because, as explained in the accompanying Declaration of Evan Solomon, a paralegal employed by my firm, it is based upon (a) a search of Snyder's name on the www.foxnews.com website, (b) a search of Snyder's name on the www.foxbusiness.com website, and (c) a search of Snyder's YouTube page. It shows that Snyder has been compensated extravagantly by Fox News on a per-appearance basis. As explained by Mr. Solomon:

    a.    In 2014, Snyder appeared on Fox News 11 times, setting his per-appearance compensation at $16,363.64;

    b.    In 2015, Snyder appeared on Fox News 13 times, setting his per-appearance compensation at $13,846.15; and

    c.    In 2016, Snyder appeared on Fox News 23 times, setting his per-appearance compensation at $7,826.09.

10.    When all totaled over this three year period, upon information and belief based upon this analysis, **Mr. Snyder was paid $11,489.36 per appearance.**[1] Those sums would be astronomical standing alone. However, perspective is gained by comparing them with the fees reportedly paid to Bo Dietl, another on-air contributor for Fox News, and one who is far better known than Mr. Snyder. In June of this year, the *New York Times* reported that **Mr. Dietl is paid only $700 for each appearance**. (*See* Exhibit 6 hereto, a true and accurate copy of a June 24, 2017 article from The New York Times called "A Self-Proclaimed 'Tough Cop' Wants a New Title: Mayor", at p. 5 of the Exhibit). In other words, **Mr. Snyder's average appearance fee for the years 2014-2016 is more than 16 times <u>greater</u> than the fee paid to Mr. Dietl.** Based on these exorbitant fees, Plaintiff is entitled to the inference that Fox News was paying Mr. Snyder for something other than his on-air appearances.

11.    The Snyder Defendants also raise some issues about settlement negotiations I engaged in with Mr. Mastro prior to filing this action. During these negotiations, I was willing to consider a settlement whereby a forensic would examine the Snyder Defendants' computers and finances, and if they were exonerated, Plaintiff would publicly apologize. That proposal was of interest to me, not out of any concern about the veracity of Plaintiff's allegations against the Snyder Defendants, but because I was confident that they would be borne out. Indeed, I did not

---

[1] It is possible that our search did not uncover **every** appearance by Mr. Snyder on Fox News or the Fox Business Channel, but any missing appearances could not possibly reduce the per-appearance compensation significantly.

believe that the Snyder Defendants would agree to a comprehensive independent investigation, and ultimately they did not.

12. As for the allegations about Snyder's drinking problem and attempted philandering with Ms. Tantaros while his pregnant wife was sleeping upstairs, I believed in good faith that these allegations were relevant because they provided an explanation for why Mr. Snyder made various incriminating admissions to Ms. Tantaros – *i.e.*, he was intoxicated and engaging in reckless behavior at the time. Accordingly, I raised those issues prior to commencing litigation. Nonetheless, after Mr. Mastro expressed outrage over the allegations, I thought about the impact they would have upon Mr. Snyder's wife, and decided to exercise my discretion not to include them in the pleading. While I deemed these allegations relevant, I did not think they were necessary to state a claim. Nevertheless, I believed and do believe that this proof would come out during the case. Moreover, I did exhibit an April 10, 2017 email I sent to Mr. Snyder (before he was represented by counsel) detailing these allegations to the complaint Ms. Tantaros filed in the New York County Supreme Court on April 19, 2017, against Nomiki Konst and Irena Briganti (the "Konst Complaint"). (This email is Exhibit 8 to the June 20, 2017 declaration of Mr. Mastro ("Mastro Dec.") filed in support of the sanctions motion; the Konst Complaint, **without its exhibits**, is Exhibit 7 to the Mastro Dec.).

13. Plainly, if I had only been raising these issues in an effort to force Mr. Snyder to settle, as the Snyder Defendants imply, I would not have made them a public record in filing the Konst Complaint. Accordingly, it is troubling that the version of the Konst Complaint annexed to the Mastro Dec. did not contain its exhibits. If they had been included, my April 10, 2017 email would have completely undermined the Snyder Defendants' theory for why my conduct during settlement negotiations was allegedly improper.

14. In view of the foregoing, I was consequently surprised when the Snyder Defendants made these allegations public by including them in their submissions supporting this motion.

15. For completeness purposes, annexed hereto as Exhibit 7 is a true and accurate copy of a June 28, 2017 Declaration of Andrea Tantaros.

I declare under penalty of perjury that the foregoing is true.

Dated:  New York, New York
        August 10, 2017

                                                            JUDD BURSTEIN