UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANDREA TANTAROS,

                *Plaintiff,*

  -- against --                                Case No. 17-cv-02958 (GBD)

FOX NEWS NETWORK, LLC, ROGER AILES,
WILLIAM SHINE, IRENA BRIGANTI, PETER
A. SNYDER, DISRUPTOR, INC., and JOHN
DOES 1-50.

                *Defendants.*
------------------------------------------------------------X

# MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION SEEKING SANCTIONS PURSUANT TO RULE 11 FILED BY DEFENDANTS PETER A. SNYDER AND DISRUPTOR, INC.

JUDD BURSTEIN, P.C.
5 Columbus Circle, Suite 1501
New York, New York 10019
(212)974-2400
(212) 974-2944 (Fax)
*Attorneys for Plaintiff*
*Andrea Tantaros*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................. ii

INTRODUCTION ...................................................................... 1

PRELIMINARY STATEMENT ........................................................... 1

STATEMENT OF RELEVANT FACTS ...................................................... 3

ARGUMENT .......................................................................... 4

POINT I

THE LAW GOVERNING THIS MOTION ................................................... 4

POINT II

THE SNYDER DEFENDANTS HAVE NOT IDENTIFIED A LEGITIMATE
BASIS FOR THE IMPOSITION OF SANCTIONS ............................................ 5

    A.    The Disagreement Between Counsel In This Case About
         The Merits Of Plaintiff's Claims Does Not Provide
         Grounds For Rule 11 Sanctions ................................................ 5

    B.    The Block Declaration Does Not Establish That
         Plaintiff's Claims Are Frivolous .............................................. 6

    C.    Plaintiff's Allegations Connect The Snyder Defendants To The Actionable
         Conduct Underlying Her Claims And Are Not Frivolous ................... 8

    D.    The Settlement Negotiations Do Not Give Rise To A
         Basis For Rule 11 Sanctions ................................................ 10

    E.    The Snyder Defendants' Statute of Limitations Argument
         Does Not Provide A Basis For Sanctions ..................................... 12

    F.    The State Court's Rulings Do Not Provide A Basis For Sanctions ........... 12

CONCLUSION ....................................................................... 14

# TABLE OF AUTHORITIES

CASES

*Abner Realty, Inc. v. Adm'r of Gen. Servs. Admin.*,
    No. 97 CIV. 3075 (RWS),
    1998 WL 410958 (S.D.N.Y. July 22, 1998)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Am. Fun & Toy Creators, Inc. v. Gemmy Indus., Inc.*,
    1997 WL 482518 (S.D.N.Y. Aug. 21, 1997) (Francis, M.J.) . . . . . . . . . . . . . . . . . . . . 4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

*Associated Indemnity Corp. v. Fairchild Industries, Inc.*,
    961 F.2d 32 (2d Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*,
    2003 WL 21355212 (S.D.N.Y. June 11, 2003) (McKenna, D.J) . . . . . . . . . . . . . . . . . 4

*Bello v. Barden Corp.*,
    No. 3:01CV01531 (AWT),
    2006 WL 2827091 (D. Conn. Sept. 29, 2006),
    *aff'd in part sub nom. Umeugo v. Barden Corp.*,
    307 F. App'x 514 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Eastway Const. Corp. v. City of N.Y.*,
    762 F.2d 243 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Edberg v. Neogen Corp.*,
    17 F. Supp.2d 104 (D. Conn. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Fleishman v. Hyman*,
    No. 00 CV00009 (GBD)(KNF),
    2006 WL 2372279 (S.D.N.Y. Aug. 16, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

*Gambello v. Time Warner Commc'ns, Inc.*,
    186 F. Supp. 2d 209 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-8

*Kramer v. Pollock-Krasner Foundation*,
    890 F. Supp. 250 (S.D.N.Y. 1995) (Baer, D.J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Manwani v. Brunelle*,
   99 F.3d 400 (2d Cir. 1995) .................................................. 13

*Safe-Strap Company, Inc., v. Koala Corporation*,
   270 F.Supp.2d 407 (S.D.N.Y. 2003) ........................................... 5

*Saltz v. City of New York*,
   129 F. Supp. 2d 642 (S.D.N.Y. 2001) ......................................... 10

*Voiceone Commc'ns, LLC v. Google Inc.*,
   No. 12 CIV. 9433(PGG),
   2014 WL 10936546 (S.D.N.Y. Mar. 31, 2014) .................................. 12

*Worldwide Home Prod., Inc. v. Bed, Bath & Beyond, Inc.*,
   2014 WL 4899745 (S.D.N.Y. Sept. 30, 2014) (Swain, D.J.) ..................... 4

## STATUTES AND OTHER AUTHORITY

Fed.R.Civ.P. 11 ................................................................ *passim*

## INTRODUCTION

Plaintiff Andrea Tantaros ("Plaintiff" or "Tantaros") respectfully submits this Memorandum of Law ("MOL") in opposition to the motion seeking sanctions pursuant to Rule 11 filed by Defendants Peter A. Snyder ("Snyder") and Disruptor, Inc. ("Distuprtor") (collectively the "Snyder Defendants"); together with such other and further relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

At its core, the Snyder Defendants' motion for sanctions is premised upon the notion that because they dispute the merits of Tantaros's claims, Plaintiff and her attorney should be sanctioned for frivolous conduct under Rule 11. (*See, e.g.*, the Snyder Defendants' MOL ("Snyder Defs. MOL"), Dkt. No. 39, p. 1) ("Ms. Tantaros's page-turner about alleged wiretapping and 'sock puppet' Twitter accounts targeting her on Fox News's behalf is a *tall tale* too good to be true, because it *isn't* true at all.") (Emphasis in original). But that is not how the federal court system works. Indeed, it would have a chilling effect upon plaintiffs generally for federal courts to impose Rule 11 sanctions whenever a defendant feels aggrieved by a lawsuit, which is essentially 100% of the time: "Rule 11 should never be used as a litigation tactic for intimidating opposing counsel from asserting a meritorious position." *Edberg v. Neogen Corp.*, 17 F. Supp.2d 104, 109 (D. Conn. 1998). But that is the modus operandi of Defendant Fox News Network, LLC ("Fox News") and its cohorts – crush any opposition with overwhelming force.[1]

Putting that aside, the Snyder Defendants are wrong about the merits. As shown in Plaintiff's opposition to their motion to dismiss or alternatively to compel arbitration, Plaintiff's claims are not subject to dismissal, and mandatory arbitration is unwarranted. At a bare minimum, the parties and

---

[1] Fox News and Defendants William Shine ("Shine") and Irena Briganti ("Briganti") are collectively referred to herein as the "Fox News Defendants."

their counsel have a good faith disagreement about the merit of those matters, and Plaintiff's position is not frivolous. Indeed, arbitration is a waivable defense, and if the Snyder Defendants were correct, and any party who files a lawsuit and is later compelled to arbitrate could be sanctioned, the cases where courts ordered arbitration and granted sanctions would be legion. They are not.

The Snyder Defendants also completely misrepresent the import and scope of a decision rendered by New York Supreme Court Justice, Hon. David B. Cohen, in a separate litigation (the "Cohen Decision") to which the Snyder Defendants were not even parties. (*See e.g.*, Snyder Defs. MOL, p. 1, claiming that Tantaros and her counsel "were already ordered by a state court to confidentially arbitrate these types of claims ... yet they brought this incendiary federal suit anyway as a publicity stunt."). The Cohen Decision simply does not apply to the issues or claims raised herein, let alone bar Plaintiff's claims under the doctrine of collateral estoppel.

In fact, the Snyder Defendants are indulging in Freudian projection when they describe this lawsuit as a "publicity stunt." The Snyder Defendants' Rule 11 motion was clearly designed to give Fox News and its agents an opportunity to smear Plaintiff and her counsel through their well oiled publicity machine.

Indeed, while the Snyder Defendants feign outrage over the supposed damage to their reputations caused by this lawsuit, they are the ones trumpetting Tantaros's allegations about Snyder's well-known drinking problem, and how when he was intoxicated one night, he tried to seduce Tantaros while his pregnant wife slept upstairs. In fact, there is no basis to seek Rule 11 sanctions for the settlement communications between counsel, considering that Plaintiff's attorney did not sign the pleading that submitted them to Court – rather, that was done by Snyder's counsel.

In all events, if the Snyder Defendants were legitimately concerned about their reputations, they would not be calling public attention to Snyder's appalling conduct.

Further confirming that no blow is too low for them, the Snyder Defendants stoop so far as to cite an 18-year old, **reversed** decision of Hon. Denny Chin, then a District Court Judge in the Southern District of New York, which had sanctioned Plaintiff's counsel. (*See* Snyder Defs. MOL, pp. 3 and 24, citing *Revson v. Cinque & Cinque, P.C.*, 49 F.Supp.2d 686 (S.D.N.Y. 1999), *judgment rev'd and vacated in part*, 221 F.3d 71 (2d Cir. 2000)). What the Snyder Defendants and their counsel apparently did not know – or perhaps did not care – is that following the *Revson* decision, Hon. Denny Chin wrote a letter to Mr. Burstein, stating in relevant part that

> Since the Revson case, you have appeared before me in two substantial matters, Benetton and DiBella. Both were difficult, high-profile matters. * * * Not only were you a superb advocate in representing your clients, you were respectful and courteous, both to the Court and your adversaries. * * * I am confident that you would make a capable and honorable member of any Bar.

(Exhibit 1 to the August 10, 2017 Declaration of Judd Burstein ("Burstein Dec.")) (Underline emphasis in original).

Accordingly, Hon. Denny Chin does not believe that his decision in *Revson* should reflect poorly upon Mr. Burstein today. That the Snyder Defendants dredged up this ancient history to smear Mr. Burstein was more than just a cheap shot, it is representative of the overall abusive nature of this Rule 11 motion.

## STATEMENT OF RELEVANT FACTS

The facts relevant to a determination of this motion are set forth in the accompanying Burstein Dec. and the Exhibits thereto, which are incorporated by reference herein. In addition, the factual allegations in the Complaint must also be considered on this motion because, at this stage in

3

the proceedings, they must be "accepted as true" by the Court. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather than repeat all of the facts here, we reference them where appropriate in the "Argument" section of the MOL.

## ARGUMENT

### POINT I

### THE LAW GOVERNING THIS MOTION

"Sanctions may be – but need not be – imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous.... The standard for sanctionable conduct is objective reasonableness, and therefore the court need not make a finding of bad faith.... The Supreme Court has instructed courts to read Rule 11 to 'give effect to the Rule's central goal of deference' but cautiously 'in light of concerns that it will ... chill vigorous advocacy.....' Courts therefore 'resolve all doubts in favor of the party against whom sanctions are sought' unless a claim 'has absolutely no chance of success.'" *Worldwide Home Prod., Inc. v. Bed, Bath & Beyond, Inc.*, 2014 WL 4899745, at *3 (S.D.N.Y. Sept. 30, 2014) (Swain, D.J.). (Emphasis supplied) (Citations and some quotation marks omitted).

Thus, sanctions are appropriate only where a claim is "destined to fail" (*Eastway Const. Corp. v. City of N.Y.*, 762 F.2d 243, 254 (2d Cir. 1985)), and "[l]ack of success on a claim is not a basis for imposing sanctions." (*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 2003 WL 21355212, at *1 (S.D.N.Y. June 11, 2003) (McKenna, D.J)). Further, denial of a Rule 12(b)(6) motion moots a Rule 11 motion. *See, e.g., Am. Fun & Toy Creators, Inc. v. Gemmy Indus., Inc.*, 1997 WL 482518, at *12 (S.D.N.Y. Aug. 21, 1997) (Francis, M.J.).

Indeed, where, as here, a motion for sanctions is made even before a motion to dismiss is filed, the Court cannot grant sanctions against a plaintiff because, at the Rule 12(b)(6) stage, credibility may not be considered. *See Kramer v. Pollock-Krasner Foundation*, 890 F. Supp. 250, 259 (S.D.N.Y. 1995) (Baer, D.J.). Finally, a defendant cannot use a sanctions motion in lieu of a summary judgment motion. *Safe-Strap Co., Inc. v. Koala Corp.*, 270 F.Supp.2d 407, 416 (S.D.N.Y. 2003).

## POINT II

### THE SNYDER DEFENDANTS HAVE NOT IDENTIFIED A LEGITIMATE BASIS FOR THE IMPOSITION OF SANCTIONS

A.  **The Disagreement Between Counsel In This Case About The Merits Of Plaintiff's Claims Does Not Provide Grounds For Rule 11 Sanctions**

The Snyder Defendants contend that because (a) their lawyer warned Tantaros's attorney that she had no case against them, but (b) Plaintiff and her counsel filed suit anyway, (c) they should be punished with sanctions. (*See* the Snyder Defs. MOL, p, 16: "The Complaint's allegations ... are simply false, without foundation, factual basis, or legal merit" and Plaintiff's counsel was "told that repeatedly by [the Snyder] Defendants' counsel.")

Frankly, it is the rare case where counsel for a potential defendant concedes his or her client's liability. Certainly, that would not be a very effective bargaining position, and the Snyder Defendants have able counsel. Therefore, the fact that counsel disagreed on the merits is hardly unusual. In all events, the Snyder Defendants' view of the facts and the law do not control here. As logic would dictate, their case law on this issue is not remotely on point. (*See* Snyder Defs. MOL, p. 16, citing *Fleishman v. Hyman*, No. 00 CV00009 (GBD)(KNF), 2006 WL 2372279 (S.D.N.Y. Aug. 16, 2006)). In *Fleishman*, "[t]he Court ... imposed sanctions on the plaintiff, pursuant to

Fed.R.Civ.P. 11, because the second amended complaint contained usury and RICO allegations that were essentially the same as claims that were previously dismissed by the Court." (*Id.*, at * 1) Here, Plaintiff did not file claims in this Court which were dismissed and then re-file those same claims in the same Court. Indeed, none of Tantaros's claims in the state court action were dismissed on the merits either. All Justice Cohen did was order arbitration – for different causes of action, based on different facts, and against different parties than the Snyder Defendants. As such, *Fleishman* provides no support whatsoever for the Snyder Defendants' theory that sanctions should be awarded because Plaintiff did not accept their lawyer's demand that they walk away.

**B.      The Block Declaration Does Not Establish That Plaintiff's Claims Are Frivolous**

The compelling reasons why the Daniel Wayne Block Declaration (the "Block Declaration") (Dkt. No. 20-1) is entirely unreliable are addressed at length in (a) the June 28, 2017 Declaration submitted by Judd Burstein, Esq. ("June 28 Burstein Dec.") (Dkt. No. 52), and (b) the Amended Memorandum of Law (Dkt. No. 59) in opposition to the Fox News Defendants' Rule 11 motion (Dkt. Nos. 18-20). Accordingly, we have submitted the June 28 Burstein Dec. with Exhibits as Exhibit 2 to the Burstein Dec., and the Amended Memorandum of Law as Exhibit 3 to the Burstein Dec. Those arguments and facts presented there are respectfully incorporated herein by reference.

In arguing that the Block Declaration justifies imposing Rule 11 sanctions, the Snyder Defendants cite to *Gambello v. Time Warner Commc'ns, Inc.*, 186 F. Supp. 2d 209 (E.D.N.Y. 2002). The reliance upon *Gambello* is totally unjustified. To begin, the court in *Gambello* began its sanctions analysis by confirming that "when 'dividing the point at which an argument turns from merely 'losing' to losing *and* sanctionable, **[the Court of Appeals has] instructed district courts to resolve all doubts in favor of the signer.**'" (*Id.*, at 229) (Quoting *Associated Indemnity Corp.*

*v. Fairchild Industries, Inc.*, 961 F.2d 32, 34 (2d Cir.1992) (bold emphasis supplied; italic emphasis and brackets in original). Then, out of several close calls, the *Gambello* court found only one basis for sanctions, which arose from plaintiff's attorney's repeated insistence upon pursuing a claim that was shown to be factually unsupported **based upon his client's own deposition**:

> [A] reasonable inquiry conducted prior to filing the Amended Complaint would have shown that the allegation that defendants breached a promise to bridge plaintiff's years of service at Manhattan Cable lacked evidentiary support. * * * These facts, which emerged during plaintiff's deposition, could have been, and should have been, obtained by plaintiff's counsel before bringing the claim, which was made in the amended complaint.

(*Id.*)

Making matters worse, the attorney in *Gambello* refused to withdraw these allegations even when faced with his client's contrary deposition testimony at argument before the Court:

> Even on oral argument, when confronted with these facts, plaintiff's lawyer did not deny them, but they refused to withdraw the claim, arguing instead that plaintiff had a claim for breach of contract because his prior years of service were not counted toward his severance, even though plaintiff has never made a claim that defendants had promised such credit. Indeed, they made arguments about what plaintiff "thought" and "believes," which are completely contradicted by his sworn deposition testimony.

(*Id.*)

In this case, by way of contrast, the Snyder Defendants argue that Tantaros and her attorney should be sanctioned because the Block Declaration supposedly irrefutably establishes that Plaintiff's claims lack merit. But the Block Declaration, which has not even been tested through discovery as of yet, was already shown to be full of holes, and very possibly procured through some form of coercion or bribery. (We do not contend that counsel for the Defendants was complicit in any such misconduct). Thus, the circumstances here have nothing to do with those in *Gambello*, where the

7

lawyer persisted with claims and arguments that were directly contradicted by his own client's sworn testimony.[2]

### C. Plaintiff's Allegations Connect The Snyder Defendants To The Actionable Conduct Underlying Her Claims And Are Not Frivolous

The Snyder Defendants contend that Rule 11 sanctions are warranted because Plaintiff's allegations do not connect him to the cyber-attacks alleged herein. (*See, e.g.* Snyder Defs. MOL, p. 10: "[T]he Complaint offers no facts connecting Mr. Block or his Twitter account to Mr. Snyder or Disruptor..."; *see id.* at p. 19: "Ms. Tantaros pleads no facts that would permit the Court to draw the inference that Mr. Snyder had any involvement in either Ms. Konst's original Tweet or any of the 348 alleged re-Tweets thereof....")

This misrepresents Plaintiff's allegations. To begin, Snyder got drunk and admitted to Tantaros that these are precisely the services that he provides Roger Ailes ("Ailes") and Fox News. In this connection, moreover, even the Snyder Defendants had to admit that "at Fox News's Request, Mr. Snyder, through his company, Disruptor, performed some social media/communications consulting work." (Snyder Defs. MOL, pp. 4-5) Euphemisms aside, based on Snyder's prior admission, we know exactly what his "social media/communications consulting work" entails. Tellingly, moreover, there is no record cite for the Snyder Defendants' claim that "[n]either Mr. Snyder, nor anyone affiliated with Mr. Snyder, including Disruptor, has provided any social media

---

[2] On this issue, the Snyder Defendants also cite to *Abner Realty, Inc. v. Adm'r of Gen. Servs. Admin.*, No. 97 CIV. 3075 (RWS), 1998 WL 410958, at *7 (S.D.N.Y. July 22, 1998). (*See* Snyder Defs. MOL, p. 20, n. 14). *Abner* is similarly inapposite. There, the plaintiff's attorney (a) made false allegations about ownership of property that was contradicted by publicly available records, (b) ignored it when he was advised in court of the true, publicly ascertainable facts, and (c) further alleged on information and belief that various public officials had ownership interest in entities as part of a conspiracy, when that was not the case and there was no basis for making the allegation. *See id.*, at *6-8.

or communications consulting services for Fox News since 2012." (*Id.*, p. 5) (Emphasis omitted). This contention may also be intentionally deceptive, as the Complaint alleges that the Snyder Defendants were working for Ailes, not Fox News. In this regard, Salon.com published an article discussing Snyder's role in creating deceptive sites and sock puppet blogs for Ailes, and Fox News responded that he had been working only for Ailes. (Exhibit 4 to the Burstein Dec. is a true and accurate copy of this article).

Importantly, the Snyder Defendants do admit that he was an on-air contributor for Fox News from December 2013 through April 2017, and a simple analysis shows that Snyder was grossly overpaid for that role. (*See* Burstein Dec., at ¶¶ 9-10 and Exhibit 6 thereto; *see also* the August 10, 2017 Declaration of Evan Solomon). In fact, upon information and belief based upon this analysis, Snyder was paid in excess of $11,000 per appearance, while the far better known Bo Dietl only received $700 per appearance by Fox News. (*See id.*; *see also* Exhibit 6 thereto). These inflated payments give rise to a plausible inference that Fox News used Snyder's on-air contributions as an artifice to pay him for what he was really doing for Fox News – his "social media/communications consulting work."

With this background, the Complaint further alleges (a) close similarities between the attacks administered against Tantaros and the types of attacks that Snyder performed for Ailes in the past (Compl. ¶¶ 44, 72), (b) Snyder's own admissions that Shine identified enemies for him to target through sockpuppet accounts, fake websites, and internet trolling, (c) that he did so through an 'army' of independent contractors employed by Disruptor (*id.*, ¶ 74), (d) the emails attached to the Complaint showing (i) the close relationship between Snyder and Shine, (ii) a motive to attack Chris Ruddy followed by a a huge uptick in negative Tweets and blogs about him (*id.*, ¶ 78), (iii) Snyder

advocating an aggressive course of action to Shine, (iv) Shine serving as Snyder's key contact at Fox News (*id.*, ¶ 79), and (e) defamatory Tweets about Tantaros getting into a physical altercation with Nomiki Konst appearing after Snyder learned that he was a potential defendant in the lawsuit (*id.*, ¶ 80(f)).

But perhaps most damning of all, incriminating Tweets began disappearing from the Block Twitter Account as soon as Snyder learned that he was a potential defendant. (*Id.*, ¶ 11). Tellingly, when the Snyder Defendants purport to identify all of the allegations implicating them in the cyber-attacks against Tantaros, they omit this crucial allegation about the disappearance of incriminating Tweets. (*See* Snyder Defs. MOL, pp. 10-11). The reason for this omission is obvious – they have no answer for the allegation.

In support of their argument that sanctions should be imposed because Plaintiff fails to allege sufficient facts tying the Snyder Defendants to the Block Twitter Account, they cite to *Saltz v. City of New York*, 129 F. Supp. 2d 642 (S.D.N.Y. 2001). That case is inapposite in that for a full year after being retained, plaintiff's attorney did essentially nothing to confirm whether the individuals who allegedly assaulted the plaintiff were actually New York city police officers. *Id.*, at 644. In fact, based on the description of the license plate, it appeared that the van they were driving was foreign, *i.e.*, not from New York. *Id.* The case is also procedurally inapposite, because sanctions were only granted after a motion for summary judgment dismissing the complaint for a lack of evidence. *Id.* Even then, the Court only issued a $200 sanction. *Id.*, at 647.

**D.     The Settlement Negotiations Do Not Give Rise To A Basis For Rule 11 Sanctions**

The Snyder Defendants are also of the opinion that sanctions are justified because settlement negotiations between counsel broke down. It would be a dangerous precedent to set if good faith

settlement negotiations, which ultimately did not succeed, could give rise to sanctions. A reading of the communications between counsel reveals that the settlement negotiations fell apart when the attorneys could not agree upon a mechanism for a forensic to test Snyder's denial that he was involved with the actionable conduct alleged herein. Moreover, counsel for Plaintiff was willing to consider a settlement when a forensic would examine the Snyder Defendants' computers and finances not out of any concern about the veracity of the allegations, but because he was confident they would be borne out. (Burstein Dec., ¶ 11).

As for the allegations about Snyder's drinking and attempted philandering, Plaintiff's counsel believed in good faith that these allegations were relevant because they provided an explanation for why Snyder made various incriminating admissions to Tantaros – *i.e.*, he was intoxicated and engaging in reckless behavior at the time. Accordingly, Mr. Burstein raised them in settlement negotiations with Randy Mastro, Esq., counsel for the Snyder Defendants. But after Mr. Mastro professed outrage over the allegations, Mr. Burstein decided not to include them in the pleading out of consideration for Snyder, and more importantly, his wife. (*See* Burstein Dec., ¶ 12).[3] In point of fact, it is the Snyder Defendants who have been emphasizing these allegations publicly by including them in their submissions supporting this motion, and this self-inflicted wound can hardly be considered a valid basis to impose sanctions upon Plaintiff or her lawyer.

In support of their argument, the Snyder Defendants erroneously cite to *Bello v. Barden Corp.*, No. 3:01CV01531 (AWT), 2006 WL 2827091, at *9 (D. Conn. Sept. 29, 2006), *aff'd in part sub nom. Umeugo v. Barden Corp.*, 307 F. App'x 514 (2d Cir. 2009). In that case, the Second

---

[3] In the Burstein Dec., Mr. Burstein provides an additional explanation as to why the Snyder Defendants' implication that he sought to unfairly force Snyder to settle the case to avoid making these allegations public is completely unfounded. (Burstein Dec., ¶ 13)

11

Circuit actually vacated the portion of the district court's decision that had imposed sanctions based upon the filing of the complaint, holding that it was an abuse of discretion.

E.   **The Snyder Defendants' Statute of Limitations Argument Does Not Provide A Basis For Sanctions**

As shown in Plaintiff's opposition to the motion to dismiss or compel arbitration, the Snyder Defendants' statute of limitations argument is borderline frivolous. Accordingly, that argument cannot provide a basis to impose sanctions on Plaintiff or her attorney.

Further, the case law they cite on this issue is completely inapplicable to our circumstances. (*See* Snyder Defs. MOL, p. 22, citing *Voiceone Commc'ns, LLC v. Google Inc.*, No. 12 CIV. 9433(PGG), 2014 WL 10936546, at *6–7 (S.D.N.Y. Mar. 31, 2014)). In *Voiceone*, the court did not impose sanctions because plaintiff's claims were barred by the statute of limitations, but rather because the claims were barred by New York's two-dismissal rule. (*Compare Voiceone* at * 13, confirming that sanctions were being imposed pursuant to Section I(B) of the order, with *id.*, at *6-*7, at Section I(B) of the order, which addressed the two-dismissal rule). In particular, the court concluded that plaintiff had sued Google on three total occasions for the same transactions, and that there was no good faith basis for bringing any of the lawsuits. (*Id.*, at *6-*7). As such, it is entirely misleading for the Snyder Defendants to represent to this Court that *Voiceone* supports their argument for sanctions based on a theory that Plaintiff's claims are supposedly barred by the statue of limitations.

F.   **The State Court's Rulings Do Not Provide A Basis For Sanctions**

The Snyder Defendants also contend that Rule 11 sanctions should be imposed because Plaintiff filed this action in violation of the Cohen Decision. But Justice Cohen did not make some

blanket ruling that any claim Tantaros could ever bring where Fox News was a defendant had to be arbitrated. Rather, the Cohen Decision was limited to the claims brought in the state court action, which sounded in sexual harassment and retaliation, with related claims – and none of which were asserted against the Snyder Defendants. But at a bare minimum, Plaintiff has a good faith basis to contend that the Cohen Decision did not bar her from bringing these claims against the Snyder Defendants. Consequently, the mere filing of the Complaint cannot provide a basis for sanctions. The Snyder Defendants' case law is not on point with these facts. *See, e.g., Manwani v. Brunelle*, 99 F.3d 400 (2d Cir. 1995) ("The complaint before us seeks to relitigate several prior lawsuits brought by Manwani in the state and federal courts, and to reargue claims that have already been before this Court two times.")

As a general observation, the Snyder Defendants misrepresent the tenor of the proceedings before Justice Cohen. Before rendering his decision, Justice Cohen completed all counsel on the argument: "First, I would like to commend counsel on extremely well-prepared, well-organized and capable argument made on the record today." (Dkt. No. 40-4, p. 36). This was not a situation where Plaintiff or her counsel were called on the carpet by the Court; they simply did not prevail on the motion.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, as well as those set forth in the accompanying submissions, and all proceedings had herein, Plaintiff respectfully requests that the Court issue an Order denying the Snyder Defendants' Rule 11 motion for sanctions; together with such other and further relief as this Court deems just and proper.

Respectfully submitted,

JUDD BURSTEIN, P.C.

By: _____
Judd Burstein
Peter B. Schalk