UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANDREA TANTAROS,

                 *Plaintiff,*

– against –

FOX NEWS NETWORK, LLC, ROGER AILES,
WILLIAM SHINE, IRENA BRIGANTI, PETER
A. SNYDER, DISRUPTOR, INC., and JOHN
DOES 1-50,

                 *Defendants.*
------------------------------------------------------------X

Case No. 17-cv-2958 (GBD)

**DECLARATION OF JUDD BURSTEIN IN RESPONSE TO DEFENDANTS FOX NEWS NETWORK, LLC AND IRENA BRIGANTI'S MOTION FOR EXPEDITED DISCOVERY**

    **JUDD BURSTEIN** hereby declares under penalty of perjury:

    1.    I am an attorney duly admitted to the practice of law before the Bar of this Court.

    2.    Until October 10, 2017, when the court granted my and Judd Burstein, P.C.'s ("JBPC") motion to withdraw as counsel for Plaintiff Andrea Tantaros ("Ms. Tantaros") in this action (ECF No. 101), I served as Ms. Tantaros's lead counsel.

    3.    Although neither JBPC nor I continue to represent Ms. Tantaros, Defendants contend that their sanctions motions against JBPC and me should move forward. As a result, JBPC's and my motion to withdraw as counsel explicitly sought a carve out to permit JBPC and me "to defend against the pending motions pursuant to Fed. R. Civ. P. 11(c) asserted against" us. (ECF No. 87 at p. 1) Since the Court granted JBPC's and my motion to withdraw without comment, I am submitting this Response to Defendants Fox News Network, LLC's and Irena Briganti's (collectively, "Fox") Motion for Expedited Discovery on the assumption that the Court also granted my and JBPC's request to remain in the case for the purpose of defending the sanctions motions against us. Nonetheless, out of an excess of caution, JBPC and I will, next week, be filing a motion to intervene in this case pursuant to Fed. R. Civ. P. 24(b). However,

this response proceeds on the assumption that the Court has permitted me and JBPC to remain in the case to defend against the pending sanctions motions.

4. In summary, JBPC and I respond to Fox's motion as follows:

   a. Fox's motion in fact provides additional support for the *bona fides* of the Complaint, thereby further demonstrating that their sanctions motion is frivolous; and

   b. JBPC and I (i) do not oppose Fox's request for the discovery, but (ii) contend that there should be full plenary discovery in anticipation of the Court deciding the pending sanctions motions.

A. **FACTUAL RESPONSE TO FOX'S MOTION**

5. Fox's motion further supports the *bona fides* of the Complaint.

6. **First**, Fox again mischaracterizes the Complaint by focusing upon the fact that Daniel Wayne Block is an actual person even though, as noted in Ms. Tantaros's response to Fox's sanctions motion, "the Complaint specifically alleges that Mr. Block is a real person whose Twitter account has been used as a vehicle to abuse Ms. Tantaros[.]" (Memorandum of Law in Opposition to Fox's Motion for Sanctions ("Tantaros Opp. MOL") (ECF No. 59), at p. 5)

7. **Second**, Fox has never responded to the substance of Ms. Tantaros's argument that Mr. Block was either bribed or extorted into providing his Declaration because the Declaration is so obviously false. (*See* Tantaros Opp. MOL at pp. 6-14; Declaration of Judd Burstein in opposition to Fox's Motion for Sanctions ("Burstein Sanctions Dec.") (ECF No. 52), at ¶¶ 50-52) Instead, Fox blithely states that the allegation has been made "without an iota of supporting evidence" (Fox's Memorandum of Law in Support of Motion for Expedited Discovery ("Fox MOL") (ECF No. 96) at p. 3) even though bribery or extortion by a Fox

operative would appear to be the only reasonable inference to be drawn from the patent falsehood of Mr. Block's Declaration.

8. **Third**, Fox makes the stunning admission that the "@realNASCARman ... Twitter account[] appear[s] on [its] face to be [a] fake account[]." (*Id.*) Yet, if this is so, how does Fox explain the fact that Mr. Block's Declaration (ECF No. 20-1), at Paragraph 11 thereof, denies that Mr. Block knows of this Twitter account even though there are messages sent directly between the two accounts in Twitter's public timeline? (*See* Burstein Sanctions Dec. at ¶ 30 and Exhibit AA thereto (ECF No. 52-29))

9. **Fourth**, concerning the @AveryDovven and @dycin55 Twitter accounts, I am now limited in what information I can reveal because I am no longer Ms. Tantaros's counsel, and have no control over what she chooses to submit to the Court. However, based upon what I know but no longer have the freedom to reveal, I have no doubt that the Court will ultimately conclude that the document upon which Fox relies (Exhibit 1 (ECF No. 97-1) to the Declaration of Benjamin M. Rose ("Rose Dec.") (ECF No. 97) in support of Fox's Motion for Expedited Discovery) is a fraud and does not reflect actual messages between Ms. Tantaros and Mr. Krechmer.

10. **Fifth**, consistent with the sloppiness which led to it submitting the obviously false Declaration by Mr. Block to this Court, Fox has again irresponsibly sought to rely upon a document which no responsible lawyer should offer to the Court:

    a. The document is, on its face, a mere compilation of purported text messages created by a party suing Ms. Tantaros. Yet, Fox's counsel plainly has not seen any of the underlying data (*see* Fox MOL at pp. 1-2);

b. If one reads through the document, it becomes clear that, time and again, purported messages appear without context. This strongly suggests that, to the extent that there are real messages included within the document, many additional messages were removed or modified in editing;

c. Since Fox has almost surely not seen the underlying data (and that would have to be the actual metadata, carrier logs and the device(s) used by Mr. Krechmer), it has absolutely no basis to conclude that the messages were sent, as opposed to having been fraudulently inserted into the document;

d. It is abundantly clear that the purported messages between Mr. Krechmer and Ms. Tantaros quoted at page 5 of the Fox MOL were created out of thin air. These supposed text messages appear to state that Ms. Tantaros's friend took over the @AveryDovven Twitter account on August 24, 2015 and deleted references to Ms. Tantaros and Dave Navarro. **This makes no sense because Paragraph 43(c) of the Complaint (ECF No. 5 at p. 17) alleges that the @AveryDovven Tweets were posted (and sent to Ms. Tantaros) "[a] few weeks" after August 24, 2015. Just as importantly, the unredacted version of Exhibit W to the Complaint (Exhibit A hereto) shows that the Tweets in question explicitly referenced Dave Navarro.** There is no way to harmonize the purported text messages upon which Fox relies with (i) the fact that the Complaint alleges that the @AveryDovven Tweets were posted "[a] few weeks" after August 24, 2015, and (ii) the supposed text messages state that Ms. Tantaros's friend took over the @AveryDovven account on or before August 24, 2015 and that **she removed references to Dave Navarro at that time**; and

4

e.  As shown by Exhibit B hereto,[1] all Tweets from the @AveryDovven account have mysteriously disappeared from Twitter. If, as the purported text messages suggest, Ms. Tantaros's friend was in control of the account as of August 24, 2015, there would have been no reason to continue Tweeting from it after that date.

**B.  RESPONSE TO FOX'S REQUEST FOR DISCOVERY**

11.  Fox has now admitted that discovery is needed for a resolution of the sanctions motions in this case:

> Good cause [for discovery] is present because, as demonstrated in the Fox News Defendants' pending motion to compel arbitration, the merits of Tantaros' claim will likely be determined by a panel of AAA arbitrators, not by this Court. If the inferences drawn above from the Text Log are correct, Tantaros and Burstein have falsely accused the Fox News Defendants of tormenting Tantaros with sock puppet accounts that she herself created and used—truly egregious behavior that deserves the harshest possible sanction available to the Court. Yet if the Rule 11 motion is decided before the Fox News Defendants have an opportunity to investigate the facts and the case is then dismissed in favor of arbitration, the misconduct of Tantaros and her counsel with respect to those false accusations will go unpunished. Prevention of that injustice is "good cause" warranting discovery at this juncture.

(Fox MOL at 9) (emphasis omitted)

12.  Fox and I are in agreement on this issue. However, Fox does not go far enough because it does not take account of the facts that (a) **all** defendants in this case have filed both motions to compel arbitration and motions for sanctions, and (b) if this case is referred to

---

[1]  Exhibit B hereto is a print-out from "TweetDeck," the premier tool for searching Twitter accounts. It shows that a search for Tweets from the @AveryDovven account for the period August 19, 2015 to date came up empty even though there were Tweets from that account during that time period. To show that the search would have found Tweets from that time period if they were still extant, Exhibit B also contains an accompanying search of Donald Trump's Twitter account for a portion of August 2015. This search revealed actual Tweets from the Trump account, thereby demonstrating that the @AveryDovven Tweets were in fact removed.

arbitration, JBPC and I will never have an opportunity to demonstrate the merits of Ms. Tantaros's case because we no longer represent Ms. Tantaros. Nor will we have access to any of the evidence developed and presented in the arbitration because that proceeding will be strictly confidential.

13. Accordingly, the only way for JBPC and I to fully defend ourselves against the pending sanctions motions is to grant us plenary discovery so that we can demonstrate the validity of the allegations in the Complaint. This is particularly so in the case of the Defendants other than Peter Snyder and Disruptor, Inc. because those other Defendants have not moved to dismiss the Complaint. Hence, if this Court were to send the case to arbitration, it would never even address the merits of Ms. Tantaros's claims against Fox. As for Peter Snyder and Disruptor, Inc., the Court might also choose to not rule on their motion to dismiss the Complaint by sending the case to arbitration.[2]

14. By way of brief example: (a) if there is going to be a subpoena to Twitter, it should not be limited just to the @AveryDovven and @dycin55 Twitter accounts; it should also seek documents concerning the Daniel Wayne Block Twitter accounts, as well as numerous other sockpuppet accounts that Ms. Tantaros would identify; (b) the exorbitant $180,000 contract between Peter Snyder and Fox, as well as all documents related thereto, should be disclosed, (c) documents showing all monies paid to Peter Snyder or any of his companies by or for the benefit of Fox, or any affiliate of Fox, should be produced, (d) all communications between Bill Shine and Peter Snyder for the relevant time period should be produced, (e)

---

[2] I do concede that the Court could impose sanctions against JBPC and me (but not Ms. Tantaros) without discovery on two grounds: (a) if it were to find that the filing of this action as opposed to commencing an arbitration proceeding was frivolous, or (b) if the legal theories advanced in the Complaint were frivolous assuming that all of the facts alleged therein were true.

6

documents showing that, contrary to his false public claims, Peter Snyder is currently using sockpuppet accounts on behalf of various Republican candidates, should be produced, (f) documents concerning Fox's practices and history of using sockpuppet accounts and private investigators to attack perceived enemies should be produced, (g) all Defendants should be deposed, (h) individuals whom I have solid reason to believe have participated in "Black Room" operations should be deposed, (i) given that (1) Judge Forrest has opined that there is good reason to believe that Fox and Mr. Krechmer have been colluding (*see* Exhibit C hereto at pp. 20-21, fn. 2), and (2) Bo Dietl has admitted to the New York Times that he was hired to investigate Ms. Tantaros and one of his investigators admitted to the Times that Mr. Dietl sent an investigator to interview Mr. Krechmer in an effort to obtain "compromising" information about Ms. Tantaros (*see* Exhibit D hereto at p. 6), Mr. Dietl and the investigator who interviewed Mr. Krechmer should be deposed.

**WHEREFORE**, for the foregoing reasons, (a) Fox's motion for expedited discovery should be granted, and (b) plenary discovery on the merits of the case should be ordered.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, New York
      October 20, 2017

                                            JUDD BURSTEIN