UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- x

ANDREA TANTAROS,                          :
                                          :
                          Plaintiff,      :        17 Civ. 02958 (GBD)
                                          :
              - against -                 :        ECF CASE
                                          :
FOX NEWS NETWORK, LLC, ROGER AILES, WILLIAM :      ORAL ARGUMENT
SHINE, IRENA BRIGANTI, PETER A. SNYDER,   :        SCHEDULED FOR
DISRUPTOR, INC., and JOHN DOES 1-50,      :        APRIL 17, 2018
                                          :
                          Defendants.     :
                                          :
------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANTS FOX NEWS NETWORK, LLC AND IRENA BRIGANTI TO DISMISS THE AMENDED COMPLAINT

DECHERT LLP
Andrew J. Levander
Linda C. Goldstein
Nicolle L. Jacoby
Benjamin M. Rose
1095 Avenue of the Americas
New York, New York 10036
Tel. (212) 698-3500
linda.goldstein@dechert.com

*Attorneys for Defendants Fox News
Network, LLC and Irena Briganti*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ..................................................................................... 3

    A.    The Prior Proceedings and Succession of Prior Counsel ...................................... 3

    B.    The Anecdotes Purportedly Demonstrating Access to
          Plaintiff's Laptop Computer and BlackBerry ...................................... 5

    C.    The Cryptic and Inconclusive Cycura Materials ................................. 8

    D.    The Speculative Physical Surveillance Allegations ........................................... 11

ARGUMENT ...................................................................................................... 12

    I.    The Amended Complaint Does Not State A Claim Under The Wiretap Act ...... 13

    II.    The Amended Complaint Does Not State A Claim Under
          The Stored Communications Act ....................................................... 16

    III.    The Amended Complaint Does Not State A Claim For
           Intentional Infliction of Emotional Distress ...................................... 19

CONCLUSION ................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................13

*Campbell v. Aduddel*,
   No. 11 Civ. 1413, 2014 WL 4659364 (N.D.N.Y. Sept. 17, 2014) ........................15

*Clark v. Elam Sand & Gravel, Inc.*,
   4 Misc. 3d 294, 777 N.Y.S.2d 624 (Sup. Ct. Ontario Cty. 2004)..........................20

*Conte v. Newsday, Inc.*,
   703 F. Supp. 2d 126 (E.D.N.Y. 2010) ...................................................................13

*Directv, LLC v. Wright*,
   No. 15 Civ. 474, 2016 WL 3181170 (S.D.N.Y. June 3, 2016).........................13, 14

*In re DoubleClick Inc. v. Privacy Litig.*,
   154 F. Supp. 2d 497 (S.D.N.Y. 2001).....................................................................16

*Dunahoo v. Hewlett-Packard*,
   No. 11 Civ. 05588, 2012 WL 178332 (S.D.N.Y. Jan. 20, 2012)...........................19

*Flamm v. Van Nierop*,
   56 Misc. 2d 1059, 291 N.Y.S.2d 189 (Sup. Ct. N.Y. Cty. 1968) ..........................20

*Galella v. Onassis*,
   353 F. Supp. 196 (S.D.N.Y. 1972), *aff'd in part, modified in part*,
   497 F.2d 986 (2d Cir. 1973).....................................................................................20

*Garcia v. City of Laredo*,
   702 F.3d 788 (5th Cir. 2012) .............................................................................17, 18

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
   806 F.3d 125 (3d Cir. 2015), *cert. denied sub nom. Gourley v. Google, Inc.*,
   __ U.S. __, 137 S. Ct. 36 (2016)..............................................................................16

*Howell v. New York Post Co.*,
   81 N.Y.2d 115, 596 N.Y.S.2d 350 (1993) ..............................................................19

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
   62 F.3d 69 (2d Cir. 1995).........................................................................................10

*JBCHoldings NY, LLC v. Pakter*,
   931 F. Supp. 2d 514 (S.D.N.Y. 2013)..................................................................2, 18

*Klein v. Metro. Child Servs., Inc.*,
   100 A.D.3d 708, 954 N.Y.S.2d 559 (2d Dep't 2012) ............................................19

*Madonna v. United States*,
   878 F.2d 62 (2d Cir. 1989) ....................................................................................13

*Martinez v. Queens Cty. Dist. Atty.*,
   No. 12-CV-06262, 2014 WL 1011054, (E.D.N.Y. Mar. 17, 2014),
   *aff'd*, 596 F. App'x 10 (2d Cir. 2015) ..................................................................15

*Mayor & City Council of Baltimore v. Citigroup, Inc.*,
   709 F.3d 129 (2d Cir. 2013) ..................................................................................12

*Molefe v. Verizon New York, Inc.*,
   No. 14 Civ. 1835, 2015 WL 1312262 (S.D.N.Y. Mar. 24, 2015) ...............14, 15, 17

*Murphy v. Am. Home Prods. Corp.*,
   58 N.Y.2d 293, 461 N.Y.S.2d 232 (1983) .............................................................19

*In re Nickelodeon Consumer Privacy Litig.*,
   827 F.3d 262 (3d Cir. 2016), *cert. denied sub nom. C.A.F. v. Viacom Inc.*,
   __ U.S. __, 13 S. Ct. 624 (2017) ...........................................................................16

*Sawicka v. Catena*,
   79 A.D.3d 848, 912 N.Y.S.2d 666 (2d Dep't 2010) ..............................................21

*Snyder v. Fantasy Interactive, Inc.*,
   No. 11 Civ. 3593, 2012 WL 569185 (S.D.N.Y. Feb. 9, 2012) ...............................14

*United States v. Steiger*,
   318 F.3d 1039 (11th Cir. 2003) .............................................................................17

*Univ. Sports Publ'n Co. v. Playmakers Media Co.*,
   725 F. Supp. 2d 378 (S.D.N.Y. 2010) ...................................................................18

*Williams v. Rosenblatt Secs. Inc.*,
   136 F. Supp. 3d 593, 607 (S.D.N.Y. 2015) ...........................................................16

*In re Zynga Privacy Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ..........................................................................17, 18

**Statutes and Rules**

18 U.S.C. § 2510(4) .....................................................................................................13

18 U.S.C. § 2511 ..............................................................................................3, 13, 14

18 U.S.C. § 2520(a) .....................................................................................................13

18 U.S.C. § 2701 ........................................................................................................... 3, 16

18 U.S.C. § 2707 .............................................................................................................. 16

Fed. R. Civ. P. 11 ..................................................................................................... 1, 5, 10

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 3, 12

Gen. Bus. L. § 395-b .................................................................................................... 3, 20

## PRELIMINARY STATEMENT

Plaintiff Andrea Tantaros is currently represented by at least three different law firms in multiple matters.  To our knowledge, she is proceeding *pro se* only in this one case.  The likely reason is that no counsel mindful of his or her obligations under Fed. R. Civ. P. 11 could sign the Amended Complaint that Plaintiff has proffered to this Court.  Indeed, at the sanctions hearing held on November 30, 2017, her second set of counsel asked this Court for approximately two months' delay so that they could study the original filing and, with the help of experts, examine the facts to determine what, if any, pleading they could file on her behalf.  Tr. of Nov. 30, 2017 Hrg. (ECF Doc. 118) at 5:14-6:9.  Apparently, they reached the conclusion that Plaintiff and her initial counsel should have reached in the first place:  none.  And, as described below, the *pro se* pleading that Plaintiff has now filed utterly fails to state a claim under the applicable legal standards, even under the most generous reading of its allegations.

*First*, to state a wiretapping claim against Defendants Fox News Network, LLC ("Fox") and Irena Briganti (together with Fox, the "Fox Defendants"), Plaintiff must plausibly allege that they used a device to intercept one or more of her wire, oral or electronic communications.  Plaintiff has not identified a single one of her communications that was intercepted, much less by whom.  She persists in asserting that two tweets in the Twitter account of Daniel Wayne Block— the same account that was the linchpin of her now-abandoned original Complaint—included "information that only someone with access to Ms. Tantaros' communications would have."  ECF Doc. 124-2 ("Am. Compl.") ¶ 62.  But the benign tweets she references do not mention Plaintiff or her communications; they are at once generic and wholly consistent with other tweets Mr. Block was making before and after her alleged communications.  Nor is any actual interception alleged by virtue of Plaintiff's references to "[m]alicious software" purportedly residing on her laptop computer or the asserted "outdated operating version" of a BlackBerry

device provided to her by Fox. *Id.* ¶¶ 30, 33.  As Judge Engelmayer held in dismissing a similar claim based on the mere existence of spyware and malware on the plaintiffs' computers, a defendant's liability for computer hacking cannot be "couched in terms of sheer possibility, otherwise known as conjecture," for such allegations "stop short of the line between possibility and plausibility" needed to state a claim. *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 526 (S.D.N.Y. 2013) (internal quotations and alterations omitted).

*Second*, to state a claim under the Stored Communications Act ("SCA"), Plaintiff must allege that the Fox Defendants accessed her Gmail account without authorization.  Access to her computer laptop or another personal device does not suffice to make out a claim, since (as four Courts of Appeals have held), the SCA applies only to electronic storage on facilities operated by electronic communications service providers, such as Google's Gmail.  Plaintiff has not identified a single instance in which the Fox Defendants accessed her Gmail account.  Her allegation that she supposedly received "notices from gmail that *someone* had logged into her account" does not suffice to claim that the *Fox Defendants* accessed it.  Am. Compl. ¶ 28 (emphasis added).

*Third*, Plaintiff's claim for intentional infliction of emotional distress ("IIED") fails because none of the facts alleged in the Amended Complaint amounts to "extreme and outrageous" conduct.  Since she has not alleged that the Fox Defendants conducted any unlawful electronic surveillance, *a fortiori* she has not alleged that they did so with the intent of causing her emotional distress.  Her sensational allegations of physical surveillance—assumed to be true for purposes of this motion despite their complete lack of specificity—also fail to state an IIED claim.  New York law does not bar employers from installing cameras in their employees' offices, meaning that Plaintiff would have had no legitimate expectation of privacy when she

chose to disrobe there, rather than in a restroom.  *See* Gen. Bus. L. § 395-b.  And even if Plaintiff

had adequately alleged (she has not) that the black SUVs that she purportedly spotted near her

residences were dispatched there by the Fox Defendants, she does not allege that the vehicles or

their occupants menaced her in any way.

The Amended Complaint should be dismissed in its entirety, with prejudice, pursuant to

Fed. R. Civ. P. 12(b)(6).

## STATEMENT OF FACTS

### A.    The Prior Proceedings and Succession of Prior Counsel

Plaintiff is a former anchor and host at Fox News Channel.  Am. Compl. ¶ 17.  In her first

federal Complaint, filed on April 24, 2017, she sought damages against the Fox Defendants on

the same legal theories asserted here:  the civil damages provisions of the Federal Wiretap Act,

as amended by the Electronic Communications Privacy Act (the "Wiretap Act"), 18 U.S.C.

§ 2511, and the SCA, 18 U.S.C. § 2701; and a common-law IIED claim.  ECF Doc. 1 ¶¶ 81-96.

The Complaint contended that the Fox Defendants used "sock puppet" social media accounts,

most notably the Twitter account of Daniel Wayne Block, to "emotionally torture" her with

information gleaned from unlawful wiretaps on her phone and hacks of her personal computer.

*Id.* ¶¶ 4, 8, 11, 38-64.  Nine tweets from Mr. Block's Twitter account were annexed to the

original Complaint as exemplars of this purported scheme; *none* of them was addressed to

Plaintiff, and their images of elk, bunny rabbits, Disneyland, lions, jets and the like were *all*

harmless.  ECF Docs. 1-1, 1-3 to 1-5, 1-30 to 1-34.  Plaintiff asserted that each of the annexed

tweets contained information learned from alleged unlawful interceptions of her telephone

conversations on certain specified dates with her friends and family members.  ECF Doc. 1 ¶¶ 8,

54-63.

The Fox Defendants promptly filed a motion for Rule 11 sanctions against Plaintiff and her then-counsel, Judd Burstein.  ECF Doc. 18.  Central to the motion were nine exhibits containing 150 tweets from Mr. Block's Twitter account.  ECF Docs. 20-9 to 20-17.  These tweets demonstrated that Mr. Block had tweeted the same or similar images as the ones annexed to the Complaint many, many times, and that he had done so weeks or months *before* the allegedly intercepted telephone calls, as well as afterwards.

By the time of the oral argument on November 30, 2017, Mr. Burstein had withdrawn as Plaintiff's counsel.  ECF Doc. 101.  Plaintiff's new counsel, Morgan, Lewis & Bockius LLP ("Morgan Lewis"), advised the Court that it was conducting an investigation intended to support an amended complaint:

> Well, we're working with this firm called Cycura.  They are a top cybersecurity firm that works with a number of government agencies. . . . They're looking right now finishing their review of four years of messages on Twitter and other platforms that have Ms. Tantaros's name in them.  That involves hundreds of thousands of tweets, and they're looking at the authenticity of those tweets and the author's authenticity.  Once that process is finished, they'll use other devices and the hope would be to use discovery to find out the identities of the different sockpuppet and other accounts.

> *          *          *

> We intend to carefully review that and determine whether the causes of action should proceed and against whom the causes of action should proceed.

Tr. of Nov. 30, 2017 Hrg. at 5:14-25, 6:7-9.  The Court ordered that the proposed amended complaint be filed on January 19, 2018.  *Id.* at 214:20-25.

On January 16, 2018, Tor Ekeland entered an appearance as additional counsel.  ECF Doc. 121.  As per his website, Mr. Ekeland and his firm Tor Ekeland Law PLLC "provide experienced counsel in all areas of U.S. computer law."  *See* https://torekeland.com.  Through

Morgan Lewis, Plaintiff sought additional time to file an Amended Complaint so that Mr.

Ekeland could review the "complex findings of the investigation which includes the substantial,

additional work performed by Plaintiff's cybersecurity experts that we outlined at the beginning

of the November 30, 2017 hearing," and the Court granted the request.  ECF Docs. 122-23.

According to Plaintiff, after reviewing the results of the Cycura social media study,

neither Morgan Lewis nor Mr. Ekeland presented a proposed amended complaint to her.  Tr. of

Feb. 15, 2018 Hrg. at 8:9-11.  Instead, on January 29, 2018, Morgan Lewis filed Plaintiff's

request to amend the Complaint and advised the Court that Plaintiff would be proceeding in this

action *pro se*.  Presumably wary of incurring liability under Fed. R. Civ. P. 11, Morgan Lewis

underscored that it was "not the author of and is not counsel on the proposed Amended

Complaint or its attachments."  ECF Doc. 124.  The law firm's refusal to be associated with the

Amended Complaint is all the more telling because Morgan Lewis *continues to represent*

*Tantaros* in at least two other actions.[1]  Mr. Ekeland also did not sign the proposed Amended

Complaint and on February 5, 2018, less than three weeks after he first appeared in the action, he

withdrew altogether.  ECF Docs. 127, 133.

The Fox Defendants' Fed. R. Civ. P. 11 motion against Mr. Burstein and Plaintiff for

filing the superseded Complaint is fully submitted and remains *sub judice*.

## B.   The Anecdotes Purportedly Demonstrating Access to Plaintiff's Laptop Computer and BlackBerry

The bulk of Plaintiff's allegations regurgitate public charges of retaliation made by

journalists who have written books or articles critical of her former employer.  *See, e.g.*, Am.

Compl. ¶ 37 (reporters' allegations of physical surveillance), ¶ 41 (speculation about Ailes's

---

[1]        Morgan Lewis remains counsel of record to Plaintiff in *Tantaros v. Konst*, Index No.
153637/2017 (Sup. Ct. N.Y. Cty.) and *Krechmer v. Tantaros*, 1:17-cv-4061 (2d Cir.).  Another
firm represents Plaintiff in the AAA arbitration pending between her and Fox.

supposed "Black Room"), ¶ 42 (accounts of Ailes's alleged vendettas), ¶ 74 at 31[2] (anti-Semitic caricature of reporter).  None of these irrelevant accounts has anything to do with Plaintiff, her laptop computer, her telephone, her Gmail account, or her other communications.  Indeed, the Amended Complaint does not plausibly identify a single telephone conversation of Plaintiff's that was intercepted, or a single one of her emails or other documents that was hacked.  Although the Amended Complaint attaches or refers to three documents prepared by Cycura, none of them provides forensic evidence that Plaintiff's telephone or her laptop computer was compromised by anyone, much less by the Fox Defendants.  Instead, the only aspects of the Amended Complaint that have anything to do with Plaintiff's electronic devices are three anecdotes that, assuming them to be true for the purpose of this motion, show only that Fox once had access to her laptop and that its IT department serviced a BlackBerry that it had issued for her use.

*The Alleged Republican Debate Formatting Check*.  Plaintiff alleges that on August 6, 2015, Fox asked "select employees, including Ms. Tantaros to bring in their personal laptops to participate in a Facebook and Twitter Live Tweet Session during the presidential debate."  *Id.* ¶ 26.  In preparation for this event, Plaintiff states that she was asked to turn over her laptop to the Fox IT department for about an hour to ensure that it was "formatted properly" for live tweeting.  *Id.*  Although Plaintiff concedes that she was not singled out for this exercise (because other "select employees" participating in social media during the debate also had to turn in their "personal laptops" for a format review), she speculates that Fox had a motive to target her because two days earlier, Roger Ailes, then the Chairman of Fox, had "flagrantly and publicly sexually harassed Tantaros" by remarking, "[w]e need to get you a tighter dress," to which Plaintiff responded with a biting retort.  *Id.*

---

[2]    The Amended Complaint erroneously assigns paragraph numbers 65 to 78 to two different sets of paragraphs.  To avoid confusion, the citations for paragraphs in that range include page numbers.

***The Alleged BlackBerry Maintenance***.  Plaintiff alleges that Fox issued BlackBerry devices to its "talent," including Plaintiff, and that these "work blackberries [were] regularly handled by" the Fox IT department.  *Id*. ¶ 27.  She claims that "shortly after" one instance of such service, she allegedly started receiving multiple notices from Gmail that "*someone* had logged into her account."  *Id*. ¶ 28 (emphasis added).  Plaintiff does not state when the BlackBerry was serviced, why she believes that multiple log-ins to her account that took place afterwards are related to that servicing, how routine servicing performed on all BlackBerries issued to Fox "talent" could lead to "someone" logging into her Gmail account, or (most significantly) who that "someone" is.

***The Alleged BlackBerry Wiping.***  Plaintiff states that, upon her suspension from Fox, "Fox News attempted to wipe [her] work Blackberry," and she "realized her emails were being deleted" from the device.  *Id.* ¶ 31.  She does not allege that this purported wiping affected her personal computer or any of the emails in her Gmail account.  The BlackBerry itself was a "work" BlackBerry that belonged to Fox, as the Amended Complaint repeatedly concedes.  *Id*. ¶¶ 2, 27, 31 (referring to Plaintiff's "work" BlackBerry).

***The Daniel Wayne Block Twitter Account.***  The only other allegation that is even potentially linked to the Amended Complaint's claims for wiretapping or hacking is a reference to two tweets from Mr. Block's Twitter account.  Plaintiff persists in alleging that Mr. Block tweeted about information that "only someone who had surreptitiously accessed her communications would have," including a "move Tantaros was considering to Colorado . . . that she only communicated about with two people," and "the Black Scorpion Movie after Tantaros communicated with a friend who had suffered a Scorpion bite."  *Id.* ¶¶ 52, 62.  The tweets themselves belie any conceivable inference that they reflect information obtained from Plaintiff

by means of electronic surveillance.  Over a period of months, Mr. Block repeatedly tweeted

images of elk, *see* ECF Doc. 20-9, and images of classic science fiction films such as the Black

Scorpion, *see* ECF Doc. 20-15.  And because neither of the tweets contains Plaintiff's Twitter

handle (@AndreaTantaros) or otherwise refers to her or her conversations, there is absolutely no

basis to conjecture that they were directed at her.  *See* ECF Docs. 1-1, 1-33.  Tantaros' allegation

that Mr. Block "allow[s] companies . . . access to monetize [his] account[]," even if assumed to

be true, does not make her far-fetched claims that his tweets evidence electronic surveillance of

her private communications even arguably plausible.[3]  Am. Compl. ¶ 52.

## C.     The Cryptic and Inconclusive Cycura Materials

At the November 30, 2017 hearing, Morgan Lewis informed the Court that Cycura had

been engaged to prepare an analysis of all mentions of Plaintiff on Twitter and other social media

over a four-year period, presumably in search of support for her notion that the Fox Defendants

had targeted her with sock puppets.  Tr. of Nov. 30, 2017 Hrg. at 5:14-25.  Plaintiff has not

submitted any report summarizing that investigation, but her Amended Complaint attaches or

refers to three different Cycura documents that purport to analyze her laptop computer and the

BlackBerry issued to her by Fox.[4]  None of these Cycura materials supports her claims of

wiretapping or computer hacking by the Fox Defendants.

---

[3]     In fact, Mr. Block's affidavit, submitted in connection with the Fox Defendants' sanctions motion, unequivocally attests to the fact that before this case was filed, nobody associated with any of the defendants had ever contacted him.  ECF Doc. 20-1 ¶¶ 4-5.

[4]     A fourth Cycura document, attached as Exhibit 2 to the Amended Complaint, "provides an analysis of [Defendant] Pete Snyder, to detect his connection to an online campaign against Ms. Tantaros."  ECF. Doc. 124-4.  This report does not purport to examine Plaintiff's phone or computer and provides no evidence of any interception of her communications.

     ***Exhibit 1 to the Amended Complaint.***  This report, titled "Mobile Forensic Report" and dated January 23, 2018, states that Cycura was engaged by Plaintiff:[5]

> to forensically review a Blackberry Mobile Phone she was using during the time period of 2016.  The goal of the examination was to determine if any applications had been loaded such as key loggers or other monitoring applications

ECF Doc. 124-3 at 2.  The Mobile Forensic Report notes that the BlackBerry operating system "does not allow" the capture of raw application data, and thus *does not identify any "monitoring applications" on the BlackBerry*.  *Id.*  Noting that the data on the BlackBerry was very limited ("(321) contacts, (164) text sms messages, (23) mms messages and (13) email messages"), Cycura opined that "the 'corporate' workspace was *most likely* deleted from the Blackberry Enterprise Server administrator," but does not rule out other possibilities, including that Plaintiff deleted the data herself.  *Id.* (emphasis added).

     ***Exhibit 3 to the Amended Complaint.***  This undated document is not styled as a "report," but rather as "Blackberry Device Forensic Assessment Remarks."  ECF Doc. 125-1 at 2.  The "remarks" concern "a forensic review of the Blackberry Mobile Phone provided to Ms. Andrea Tantaros by Fox News."  *Id.*  These remarks do not validate Plaintiff's claim that Fox "wiped" the BlackBerry that it had provided to her.  Rather, the document merely parrots the allegations made by Plaintiff in the Amended Complaint:

> *Ms. Tantaros has stated* that prior to the device being isolated, Fox News had attempted to 'wipe' the device remotely using the server that controls it . . . .
>
> *Based on Ms. Tantaros' description*, thousands of emails and text messages *would have been* removed from the device.

---

[5]     Although Cycura was engaged by Plaintiff, the report was delivered to "Joseph Cane, Esq."  Mr. Cane's law firm represents Plaintiff in the litigation *Tantaros v. Krechmer*, Index No. 650476/2018 (Sup. Ct., N.Y. Cty.).

*Id.* (emphasis added).  Instead of confirming Plaintiff's account that the BlackBerry was remotely wiped, Cycura points to "technical irregularities" that undermine her narrative:

> Despite the device being remotely wiped, a select number of SMS and email messages remained on the device.  Under normal circumstances, data pertaining to Fox News and *addressed to Ms. Tantaros Fox News email account* would have been stored in the secure container for corporate data, and removed when the wipe was issued, unless intentionally excluded.

*Id.* (emphasis added).  Regardless of whether the data "addressed to Ms. Tantaros Fox News email account" was deleted by Fox or by Plaintiff herself, the alleged wiping is not asserted to have had any effect on Plaintiff's Gmail account.

**Exhibit RR to the June 28, 2017 Burstein Declaration.**  Paragraph 30 of the Amended Complaint quotes from yet another undated Cycura document, titled "Forensic Assessment Remarks."[6]  ECF Doc. 52-45.  These "remarks" concern certain "technical and procedural irregularities" observed in the course of Cycura's assessment of Plaintiff's laptop computer:[7]

> (1) 'Malicious software was found in the downloads directory and according to the run activity history, had been executed on the system.  This suggests *the capability of remote access or monitoring of Ms. Tantaros communications*.'
>
> (2) 'Multiple wireless network connections to differing access points were seen in the logs on Ms. Tantaros' laptop, indicating a *potential attack* against the machine using compromised or rogue WiFi access points.  Other than the Fox News Debate exclusion, Ms. Tantaros' laptop was utilized at her residence in a "desktop" capacity, which eliminates public WiFi hotspots as items on this list.'

---

[6]  These "remarks" were submitted to the Court by Plaintiff in opposition to the Fox Defendants' motion for sanctions under Fed. R. Civ. P. 11.  Although the document has not been annexed to the Amended Complaint, it is plainly integral to that pleading and may be considered by the Court on this motion to dismiss.  *See, e.g.*, *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

[7]  According to Mr. Burstein, these "remarks" are excerpts from "a lengthy report by CYCURA on a forensic examination of Ms. Tantaros's laptop."  ECF Doc. 52 ¶ 46.  The full report, said to be 50 pages long, ECF Doc. 59 at 22, has not been provided to the Court or the Fox Defendants.

> (3) 'Fox News Channel hosted a live media event on August 6, 2015. Ms. Tantaros was instructed to provide her laptop to FNC associates for the purposes of participating in the event.' '*If* any agent of Fox News Channel had access to her computer for system updates, or any other reason at any time, between September 28, 2015 and April 25, 2016, *then* they *would have* known her password universally.'

ECF Doc. 52-45 (emphasis added).

  *Nothing* in this document supports a claim that *anyone*—much less the Fox Defendants—intercepted Plaintiff's communications or accessed her Gmail account. With respect to the first point, as the Court acknowledged during the November 30, 2017 hearing, "Everybody has malware." Tr. of Nov. 30, 2017 Hrg. at 85:10. The existence of malware on Plaintiff's laptop does not create a plausible inference that the Fox Defendants remotely monitored her telephone conversations or other communications. The second point identifies only a "*potential attack* on the machine," by means of a WiFi connection, not an actual attack, and certainly not an attack that provided access to Plaintiff's Gmail account to anyone, much less to the Fox Defendants. The third point is an utter *non sequitur*: Cycura observes that Fox purportedly had access to Plaintiff's laptop computer at *one single time*, specifically on August 6, 2015, but then hypothesizes that *if* Fox was given access to the laptop *again* after September 28, 2015, a full six weeks later, it "*would have*" known Tantaros' computer password "universally." ECF Doc. 52-45. Cycura says nothing about Plaintiff's Gmail password.

  **D. The Speculative Physical Surveillance Allegations**

  Plaintiff's allegations of physical surveillance are equally amorphous. She alleges that during the summer of 2015 through today, she has "cited [*sic*] similar [*i.e.*, black] SUVs driving by and parked outside her residence in New York City and at her vacation home." Am. Compl. ¶ 38. Black SUVs are ubiquitous; Plaintiff does not allege any of these SUVs followed her or that the drivers did anything to threaten her. In one supposed instance, at some unidentified date

during the "Summer of 2016," she claims that she "easily recognized the driver of one of the SUVs as one of Ailes' personal security detail," but even then, she does not contend that the SUV followed her or that the driver menaced her in any way.  *Id.*

For the first time, Plaintiff also claims that she (and other "Fox female talent") were recorded while undressing at Fox.  *Id.* ¶ 35-36.  This allegation is based solely on a statement in a shareholder derivative complaint that Fox had installed a CCTV system in its offices, studios, greenrooms, and back entrance.  *Id.* ¶ 34.  Plaintiff asserts "[u]pon information and belief" that she and others were recorded when they undressed in their own offices or at the "bi-annual trunk show . . . conducted by Fox's wardrobe department" that was held in other "empty Fox offices." *Id.* ¶¶ 35-36.  She does not, however, assert that she ever observed cameras in her office or any of these other offices, nor does she provide any other factual basis for her conclusory allegations.

Similarly, Plaintiff alleges that the Fox used "an outdated operating version of the Blackberry that enabled them to turn on the microphone and camera of the device at will without the knowledge or consent of the person who had the Blackberry in his or her possession."  *Id.* ¶ 33.[8]  Plaintiff does not allege that Fox ever deployed this supposed capability to watch her activities or listen to her conversations.

## ARGUMENT

To survive dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must state "enough facts to state a claim to relief that is plausible on its face."  *Mayor & City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted).  "A claim has facial plausibility when the

---

[8]     Although the Amended Complaint attributes this purported conclusion to Cycura, it does not appear in any of the Cycura materials submitted to the Court.  *See* ECF Docs. 52-45, 124-3, 125-1.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff cannot bring a lawsuit with no factual basis in the hope that discovery might provide support for unfounded claims.  *See Madonna v. United States*, 878 F.2d 62, 66 (2d Cir. 1989) (plaintiff cannot bring conclusory complaint in hopes that discovery will uncover support).  As this Court has observed, "you can't file a lawsuit saying I'll find the evidence to prove it in discovery.  You have to have a good faith basis to allege a certain set of facts."  Tr. of Nov. 30, 2017 Hrg. at 180:13-16.  The facts alleged in the Amended Complaint do not permit the "reasonable inference" that any misconduct occurred, much less that the Fox Defendants are responsible for it.  The Amended Complaint should be dismissed with prejudice.

## I.  THE AMENDED COMPLAINT DOES NOT STATE A CLAIM UNDER THE WIRETAP ACT

The Wiretap Act makes it a criminal offense to "intentionally intercept[], endeavor[] to intercept, or procure[] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication."  18 U.S.C. § 2511(1)(a).  Civil recovery for violation of the Wiretap Act is limited to plaintiffs whose wire, oral, or electronic communications are actually intercepted, disclosed, or intentionally used.  18 U.S.C. § 2520(a).

Under the Wiretap Act, "[i]ntercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."  18 U.S.C. § 2510(4).  Accordingly, "in order to state a claim under the Wiretap Act, a plaintiff must allege that a communication was intentionally intercepted through the use of a device."  *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 139 (E.D.N.Y. 2010) (alteration omitted); *see, e.g.*, *Directv, LLC v. Wright*, No. 15 Civ. 474, 2016 WL 3181170, at *5 (S.D.N.Y. June 3, 2016) (same).  Courts in this district have adopted a narrow definition of

"intercept"; the term includes only "acquisitions of communication[s] contemporaneous with transmission," meaning a "capture of the communication while it is in transit."  *Directv, LLC*, 2016 WL 3181170, at \*5; *see also Snyder v. Fantasy Interactive, Inc.*, No. 11 Civ. 3593, 2012 WL 569185, at \*2 (S.D.N.Y. Feb. 9, 2012) (dismissing Wiretap Act claim where plaintiffs "plead no facts suggesting that Defendants accessed their communications during transmission").

Plaintiff alleges that the Fox Defendants violated the Wiretap Act "through the electronic and physical surveillance of Ms. Tantaros via private investigators and her personal communications and use of the fruits of that surveillance to emotionally torture" her.  Am. Compl. ¶ 66 at 33.  These allegations are insufficient for at least two reasons.

First, physical surveillance cannot violate the Wiretap Act.  *See* 18 U.S.C. § 2511 (limited to interception of wire, oral, or electronic communications).

Second, Plaintiff does not allege that the Fox Defendants actually intercepted any wire, oral, or electronic communications through a device while a communication was in transit.  At most, she alleges that "[m]alicious software" on her laptop computer *might have* given *someone* the capability of intercepting her communications, Am. Compl. ¶ 30, and that Fox used an "outdated operating version" of BlackBerry that *could have* permitted remote operation of the microphone on her device, *id*. ¶ 33.[9]  Neither allegation evidences an actual interception of any of Plaintiff's communications, much less an interception by the Fox Defendants.

In *Molefe v. Verizon New York, Inc.*, No. 14 Civ. 1835, 2015 WL 1312262 (S.D.N.Y. Mar. 24, 2015), this Court dismissed a similarly defective claim.  There, the *pro se* plaintiff alleged that defendant Verizon "snoops on or wiretaps its customers."  *Id*. at \*4.  Similar to what

---

[9]   The Amended Complaint does not explain how remote operation of the BlackBerry's microphone feature could make the BlackBerry a listening and recording "device," as required to state a Wiretap Act claim.

Plaintiff has done here, Molefe relied upon published reports describing Verizon's alleged "ability to monitor its network." *Id.* at *1. He also identified "a handful of scattered service interruptions," and contended that "certain of his information migrated to his wife's device." *Id.* at *4.

Even though Molefe's allegations were arguably more specific than anything Plaintiff has alleged, Judge Swain dismissed the Wiretap Act claim, holding that the plaintiff's "allegations are insufficient to allege plausibly that Verizon intentionally intercepted or disclosed Plaintiff's information." *Id.* Notably, the Court specifically held that the technological capability of intercepting a communication (as Plaintiff appears to allege with respect to her laptop computer and the BlackBerry) is not enough to assert a claim under the Wiretap Act:

> Though Plaintiff's discussion of Mr. Bamford's book suggests the technological feasibility of the activities Plaintiff alleges, Plaintiff 'fails to provide [a] factual basis . . . [for a finding] that *his* phone and internet services were tapped.'

*Id.* (citations omitted; emphasis and bracketed language in opinion); *see Campbell v. Aduddel*, No. 11 Civ. 1413, 2014 WL 4659364, at *9 (N.D.N.Y. Sept. 17, 2014) (dismissing claims that defendants worked in concert with technology professionals to tap plaintiff's phones where there was "nothing in the [complaint] to link any of the defendants with the incidents [relayed] by plaintiff in support of this claim"); *Martinez v. Queens Cty. Dist. Atty.*, No. 12-CV-06262, 2014 WL 1011054, at *15 (E.D.N.Y. Mar. 17, 2014), (dismissing § 1983 claims against telephone providers for failure to allege private action under color of state law, noting that "plaintiff fail[ed] to provide the factual basis for his belief that his phone and internet services were tapped"), *aff'd*, 596 F. App'x 10 (2d Cir. 2015).

The Amended Complaint does not come close to alleging an interception of any of Plaintiff's wire, oral or electronic communications, much less an interception by the Fox Defendants.  The Amended Complaint's First Claim for Relief should be dismissed.

## II.  THE AMENDED COMPLAINT DOES NOT STATE A CLAIM UNDER THE STORED COMMUNICATIONS ACT

The SCA makes it an offense to "intentionally access without authorization a facility through which an electronic communication service is provided" and to "obtain[], alter[], or prevent[] authorized access to a wire or electronic communication while it is in electronic storage in such system."  18 U.S.C. §§ 2701(a), 2707.  The SCA "deals only with facilities operated by electronic communications services . . . and the risk that communications temporarily stored in these facilities could be accessed by hackers," and "makes no mention of individual users' computers."  *In re DoubleClick Inc. v. Privacy Litig.*, 154 F. Supp. 2d 497, 509 (S.D.N.Y. 2001) (holding that cookies on plaintiffs' computer hard drives are not in electronic storage because plaintiffs are not electronic communication service providers); *see Williams v. Rosenblatt Secs. Inc.*, 136 F. Supp. 3d 593, 607 (S.D.N.Y. 2015) (dismissing SCA claim alleging that defendants had tampered with emails stored on their own server because emails were "neither stored on  a temporary basis 'incident to [their] electronic transmission' nor stored 'by an electronic communication service for purposes of backup protection of such communication'") (alteration in original).

The four Courts of Appeals that have addressed the issue—the Third, Fifth, Ninth, and Eleventh—have all held that the SCA does not apply to communications stored on personal devices.  *See, e.g.*, *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 277 (3d Cir. 2016) (affirming dismissal because personal computing devices are not protected under the statute), *cert. denied sub nom. C.A.F. v. Viacom Inc.*, __ U.S. __, 13 S. Ct. 624 (2017); *In re Google Inc.*

*Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 147 (3d Cir. 2015) ("'[F]acility' is a term of art denoting where network service providers store private communications."), *cert. denied sub nom. Gourley v. Google, Inc.*, __ U.S. __, 137 S. Ct. 36 (2016); *Garcia v. City of Laredo*, 702 F.3d 788, 790 (5th Cir. 2012) ("We conclude that the [SCA] . . . does not apply to data stored in a personal cell phone."); *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1098-99 (9th Cir. 2014) (SCA covers access to electronic information stored in "third party computers"); *United States v. Steiger*, 318 F.3d 1039, 1049 (11th Cir. 2003) ("the SCA clearly applies, for example, to information stored with a phone company, Internet Service Provider (ISP), or electronic bulletin board system (BBS)"; it "does not appear to apply to the [the plaintiff's personal] computer . . . because there is no evidence that [the] computer maintained any 'electronic communication service'").

Thus, as two of Plaintiff's former counsel acknowledged at the November 30, 2017 hearing, it is only unauthorized access to her Gmail account that could possibly state a claim under the SCA.  Tr. of Nov. 30, 2017 Hrg. at 81:5-15, 183:6-8.  But the Amended Complaint does not allege unauthorized access of Plaintiff's Gmail account by the Fox Defendants. Although she alleges that she received multiple notices from Gmail that "someone" had logged into her Gmail account, Plaintiff does not provide any details about these alleged notices and does not plausibly allege any facts suggesting that the "someone" who allegedly accessed her Gmail account was one of the Fox Defendants.  Am. Compl. ¶ 28.  Such vague allegations do not suffice to state a claim under the SCA.  *See Molefe*, 2015 WL 1312262, at *3 (dismissing SCA claim brought by *pro se* plaintiff who alleged, "without elaboration, that Verizon was responsible for a transfer of files" and "provide[d] no factual basis").  This Court has dismissed hacking claims brought under the similar Computer Fraud Abuse Act ("CFAA") where the claims, like

those here, were based on the mere presence of "spyware and malware on Plaintiffs' servers" and plaintiffs alleged only that it was "possible" that those items had been installed by the defendants. *JBCHoldings NY, LLC*, 931 F. Supp. 2d at 526.  In Judge Engelmayer's words, "[t]hese are precisely the sort of speculative, 'naked assertion[s]' that do not suffice to survive a motion to dismiss." *Id*. (quoting and citing *Iqbal*) (second alteration in original).

   As to the BlackBerry used by Plaintiff, even if she had adequately alleged that the Fox Defendants had deleted emails from her Fox email account (which she has not), such deletion does not state a claim under the SCA.  A BlackBerry is not a facility operated by an electronic communications services provider.  *See, e.g.*, *Garcia*, 702 F.3d at 790 (SCA inapplicable to data on a phone); *In re Zynga Privacy Litig.*, 750 F.3d at 1104 (SCA applies to "third party computers").  Even if it were, cases dealing with analogous facts under the CFAA have held that systems administrators conducting authorized activity on their employers' systems cannot be liable for hacking, because they do not "intentionally access a computer without authorization" or "exceed authorized access."  *See, e.g.*, *Univ. Sports Publ'n Co. v. Playmakers Media Co.*, 725 F. Supp. 2d 378, 384 (S.D.N.Y. 2010) (dismissing hacking claim where there was no evidence system administrator "entered some forbidden virtual space" to "which he is not entitled to access").

   Plaintiff's failure to allege that the Fox Defendants gained unauthorized access to her Gmail account is not cured by her conclusory allegation that "[o]n information and belief, Ailes and Shine, on behalf of Fox News . . . direct[ed] a person paid, directly or indirectly, by Fox News to hack Ms. Tantaros's personal computer and electronics and gain access, *inter alia*, to her private emails, texts, and communications."  Am. Compl. ¶ 71 at 34.  As the Court observed at the November 30, 2017 hearing, that language "doesn't say that person did it."  Tr. of Nov. 30,

2017 Hrg. at 188:4.  The Amended Complaint does not identify any stored communications that were accessed or any connection between any purported access and the Fox Defendants.  The Amended Complaint's Second Claim for Relief should be dismissed.

## III. THE AMENDED COMPLAINT DOES NOT STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

To state a claim for IIED, a plaintiff must allege:  "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350 (1993).  The conduct in question must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232 (1983).  "Furthermore, conclusory assertions are insufficient to set forth a cause of action sounding in the intentional infliction of emotional distress."  *Klein v. Metro. Child Servs., Inc.*, 100 A.D.3d 708, 710-11, 954 N.Y.S.2d 559 (2d Dep't 2012) (internal citation omitted).

Plaintiff's IIED claim hinges on her allegation that the Fox Defendants violated "federal criminal statutes in using electronic surveillance of Plaintiff as part of a vicious social media campaign which also included the use of fake Twitter accounts to communicate to Plaintiff that she was being surveilled."  Am. Compl. ¶ 76 at 35.  For the same reasons Plaintiff states no claim under the Wiretap Act or SCA, her bogus allegations of electronic surveillance cannot form the basis of an IIED claim.  She has not provided "anything other than conclusory allegations to link [defendants] to the events which [Tantaros] alleges resulted in [her] suffering."  *See Dunahoo v. Hewlett-Packard*, No. 11 Civ. 05588, 2012 WL 178332, at *4 (S.D.N.Y. Jan. 20, 2012) (dismissing claim for IIED based on alleged cyberstalking).

The Amended Complaint's conclusory allegations of physical surveillance do not salvage its IIED claim. A claim of intentional infliction of emotional distress based on physical surveillance must allege conduct that "harasse[s], threaten[s] and denie[s] [the] privacy" of an individual. *Galella v. Onassis*, 353 F. Supp. 196, 230 (S.D.N.Y. 1972), *aff'd in part, modified in part*, 497 F.2d 986 (2d Cir. 1973). For example, in *Flamm v. Van Nierop*, 56 Misc. 2d 1059, 1060, 291 N.Y.S.2d 189 (Sup. Ct. N.Y. Cty. 1968), an IIED claim survived a motion to dismiss where the defendant was alleged to have "[d]ashed at the plaintiff in a threatening manner in various public places, with 'threatening gestures, grimaces, leers, distorted faces and malign looks,' accompanied by 'ridiculous utterances and laughs;' driven his automobile behind that of the plaintiff at a dangerously close distance, walked closely behind, or beside, or in front of the plaintiff on the public streets." The allegation that Plaintiff has seen black SUVs in the vicinity of her two homes—even if she thought she once recognized one of the drivers, Am. Compl. ¶ 38—simply does not rise to that level of "extreme and outrageous" conduct.

Nor can Plaintiff offer any basis for her IIED claim based on her tabloid-ready speculation that Mr. Ailes surreptitiously filmed her while she undressed in her office at Fox. *Id.* ¶ 35-36. Accepting this speculation as though it were a well-pled fact—which it is not—there is no common law duty to provide privacy in the workplace, with the exception of specifically designated areas where employees may legitimately expect privacy, such as restrooms and showers. *See* Gen. Bus. L. § 395-b(2). For example, a New York State court has dismissed an IIED claim where "alleged videotaping . . . is not claimed to have occurred in one of the statutorily designated realms of privacy, such as a restroom or shower facility," but rather "in business offices, including the plaintiff's work area." *Clark v. Elam Sand & Gravel, Inc.*, 4 Misc. 3d 294, 296, 777 N.Y.S.2d 624 (Sup. Ct. Ontario Cty. 2004) (citing Gen. Bus. L. § 395-

b(2)).  By contrast, in *Sawicka v. Catena*, 79 A.D.3d 848, 849, 912 N.Y.S.2d 666 (2d Dep't

2010), the Second Department affirmed an IIED judgment in favor of employees whose

employer filmed them using a workplace restroom.  Plaintiff does not allege that Fox installed

cameras in any statutorily protected area.  Nor does she otherwise allege anything connected to

the Fox Defendants that remotely approaches the extreme and outrageous conduct necessary to

maintain an IIED claim.  The Amended Complaint's Third Claim for Relief should be dismissed.

## CONCLUSION

There is a reason that none of Plaintiff's many lawyers has signed her *pro se* Amended

Complaint:  its flamboyant factual claims, even if assumed to be true, do not begin to approach

stating a legal cause of action.  The Amended Complaint should be dismissed with prejudice.


Dated:      New York, New York
            March 1, 2018

                                        Respectfully submitted,

                                        DECHERT LLP

                                        By:    */s/ Linda C. Goldstein*
                                               Andrew J. Levander
                                               Linda C. Goldstein
                                               Nicolle L. Jacoby
                                               Benjamin M. Rose

                                        1095 Avenue of the Americas
                                        New York, New York 10036
                                        Telephone: (212) 698-3817
                                        Fax: (212) 698-0684

                                        *Attorneys for Defendants Fox News*
                                        *Network, LLC and Irena Briganti*