UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                                                          :
ANDREA TANTAROS                                           :
                                                          :
                Plaintiff,                                :
                                                          :
        v.                                                :   Case No. 17-cv-02958 (GBD)
                                                          :
FOX NEWS NETWORK, LLC, ROGER                              :
AILES, WILLIAM SHINE, IRENA                               :   **ORAL ARGUMENT**
BRIGANTI, PETER A. SNYDER,                                :   **SCHEDULED FOR APRIL 17, 2018**
DISRUPTOR, INC., and JOHN DOES 1-50.                      :
                                                          :
                Defendants.                               :
                                                          :
--------------------------------------------------------x


**DEFENDANTS PETER A. SNYDER AND DISRUPTOR, INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.................................... 5

ARGUMENT ....................................................................................... 10

I.     PLAINTIFF FAILS TO STATE ANY CLAIM AGAINST SNYDER........................... 11

       A.     The Amended Complaint Does Not State a Claim for Any Alleged
              Violations of the Wiretap Act ...................................................... 11

              1.     Electronic Surveillance ....................................................... 11

              2.     Use of the Fruits of Electronic Surveillance ........................... 13

       B.     The Amended Complaint Does Not State a Claim for Intentional Infliction
              of Emotional Distress .............................................................. 17

II.    PLAINTIFF FAILS TO STATE ANY CLAIM AGAINST DISRUPTOR .................... 20

III.   PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF
       LIMITATIONS ................................................................................ 21

CONCLUSION...................................................................................... 22

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahmed v. Purcell*,
   2016 WL 1064610 (S.D.N.Y. Mar. 14, 2016) ....................................................5, 21

*Alahverdian v. Grebinski*,
   2014 WL 2048190 (S.D. Ohio May 19, 2014) ........................................................18

*Alexander v. Bd. of Educ.*,
   648 F. App'x 118 (2d Cir. 2016) ............................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................4, 11, 14

*Bender v. City of New York*,
   78 F.3d 787 (2d Cir. 1996)......................................................................17

*Bittman v. Fox*,
   107 F. Supp. 3d 896 (N.D. Ill. 2015) ...............................................18, 20

*Cain v. Christine Valmy Int'l Sch. of Esthetics, Skin Care, & Makeup*,
   2016 WL 6127514 (S.D.N.Y. Oct. 20, 2016) ......................................10

*Diego Beekman Mut. Hous. Assoc. Hous. Dev. Fund Corp. Hdfc v. Dish
   Network, L.L.C.*,
   2016 WL 1060328 (S.D.N.Y. Mar. 15, 2016) ......................................15

*Doe v. GTE Corp.*,
   347 F.3d 655 (7th Cir. 2003) ...............................................................12

*Dunahoo v. Hewlett-Packard Co.*,
   2012 WL 178332 (S.D.N.Y. Jan. 20, 2012) ...........................12, 20, 21

*Fernicola v. Specific Real Prop. in Possession, Custody, Control of Healthcare
   Underwriters Mut. Ins. Co.*,
   2001 WL 1658257 (S.D.N.Y. Dec. 26, 2001) ......................................4, 16

*Howell v. N.Y. Post Co.*,
   81 N.Y.2d 115 (N.Y. 1993) ...................................................................17

*Jones v. Ocwen Fed. Bank*,
   147 F. Supp. 2d 219 (S.D.N.Y. 2001)..................................................4, 15

## TABLE OF AUTHORITIES
### (cont'd)

Page(s)

*Kaupp v. Church*,
    2011 WL 4357492 (S.D.N.Y. Sept. 19, 2011)....................................................................4, 19

*Klein v. Metro. Child Servs.*,
    100 A.D.3d 708 (2d Dep't 2012) ...............................................................................19, 21

*Medcalf v. Walsh*,
    938 F. Supp. 2d 478 (S.D.N.Y. 2013)..............................................................5, 17, 19

*Molefe v. Verizon N.Y., Inc.*,
    2015 WL 1312262 (S.D.N.Y. Mar. 24, 2015) .............................................4, 12, 15

*Phillips v. Bell*,
    365 F. App'x 133 (10th Cir. 2010) .....................................................................12

*Slue v. N.Y. Univ. Med. Ctr.*,
    409 F. Supp. 2d 349 (S.D.N.Y. 2006)..........................................................4, 18, 21

*Talmor v. Talmor*,
    185 Misc. 2d 293 (N.Y. Sup. Ct. Nassau Cnty. 2000)............................................17

*Walther v. Maricopa Int'l Inv., Corp.*,
    1998 WL 689943 (S.D.N.Y. Sept. 30, 1998)................................................4, 17

**Statutes**

18 U.S.C. § 2511 ...........................................................................................*passim*

18 U.S.C. § 2511(1)(a)................................................................................12, 13

18 U.S.C. § 2511(1)(b) ...............................................................................12, 13

18 U.S.C. § 2511(1)(c)................................................................................13, 16

18 U.S.C. § 2511(1)(d) ...............................................................................13, 16

18 U.S.C. § 2520(e) .....................................................................................5, 21

Defendants Peter A. Snyder and Disruptor, Inc.[1] (collectively, the "Snyder Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss this First Amended Complaint against them with prejudice, pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6).

## PRELIMINARY STATEMENT

This First Amended Complaint, filed *pro se* after three different sets of attorneys withdrew since the initial filing ten months ago, is futile and fails to cure any of the fatal defects in the original pleading.  It must therefore now be dismissed with prejudice.

In both her original and amended pleadings, Plaintiff Andrea Tantaros continues to tell a tall tale too fantastical to be true—because it isn't.  Her principal complaint is against her former employer, Fox News, which she alleges made her the target of illegal wiretapping and cyberstalking to retaliate against her for making harassment allegations.  But she doesn't stop there.  Without any evidentiary basis whatsoever, she has dragged innocent parties into her blood feud with Fox News—Pete Snyder, whom she describes in her amended pleading as a "close friend," and his angel investment firm, Disruptor.  ECF No. 124-2 (First Amended Complaint ("FAC")) ¶ 55.  She claims Snyder, then a regular on-air Fox News contributor, was really being paid by the cable news network to have his angel investment company secretly run fake social media "sock puppet" accounts for Fox News at its command attacking Tantaros.

But even after it turned out the so-called "sock puppet" account Tantaros cited in her original pleading was a real person named Daniel Wayne Block, *see* ECF No. 20-1 ¶ 1, and a major law firm, Morgan, Lewis & Bockius ("Morgan Lewis"), no longer representing Tantaros

---

[1]  Disruptor, Inc., d/b/a "Disruptor Capital" (hereinafter, "Disruptor"), is an angel investment company that Snyder formed in 2011.

had "substantial, additional" "investigati[ve] . . . work" done by "cybersecurity experts" that turned up nothing of consequence on Snyder or his company, ECF No. 122, 124-4,[2] Tantaros now doubles down on the fake "sock puppet" accusation. She repeats it and claims that even real people can "allow access to monetize their accounts." FAC ¶ 52. The problem for Tantaros, though, is that she has never had any factual or good-faith basis for making any such allegation, and this is especially so now that Block has sworn that "all  . . . messages" on the "account were sent by me," "I do not know anyone named Peter A. Snyder and have never had any contact with him or anybody else who works for Disruptor," and "nobody asked or told me to tweet or re-tweet" any messages. ECF No. 20-1 ¶¶ 3, 5 and 9.

It comes as no surprise, then, that Tantaros has now run through three sets of counsel and is left having to proceed *pro se*. As she put it best at the February 15 hearing, "I was not presented with an amended complaint from prior counsel as promised" and "prior counsel was incapable or unwilling to present your Honor with a full picture." ECF No. 137 at 8:7–18. In other words, as officers of the court, they could not proceed with the case Tantaros has insisted on pursuing. Indeed, no matter what the facts or the law, she seems bent on waging a PR war against Fox News, and the innocent bystander, Pete Snyder, is just collateral damage in Tantaros's vicious campaign, dragged through the mud in a shakedown attempt by her first lawyer, Judd Burstein, to try to get Snyder to cough up $15 million to fund this litigation

---

[2]  That investigation, performed by a well-known cybersecurity firm, Cycura, was conducted over the course of at least several months and, according to Morgan Lewis, the extensive delay in filing the amended pleading was due to Cycura's exhaustive investigation, including a "review of four years of messages on Twitter and other platforms that have Ms. Tantaros's name in them. That involves hundreds of thousands of tweets, and they're looking at the authenticity of those tweets and the author's authenticity.  Once that process is finished, they'll use other devices and the hope would be to use discovery to find out the identities of the different sockpuppet and other accounts." ECF No. 118 at 5:14–25. Despite months of investigation, though, Cycura ultimately turned up not a shred of adverse evidence against Snyder or Disruptor. *See* ECF No. 124-4.

vendetta based upon lies.  *See* ECF No. 40-9.  That should be reason enough to dismiss this case, but Tantaros's false pleading also fails to state any colorable claims as a matter of law.

On its face, this amended pleading is legally deficient because it fails to cure any of the fatal pleading deficiencies under Federal Rules 8(a) and 12(b)(6) previously identified by the Snyder Defendants in their original Motion to Dismiss, ECF No. 42 at 8–19.  Rather than advance any new theory, supply additional relevant factual allegations, or attempt to cure prior deficiencies, this First Amended Complaint simply continues to perpetuate blatant lies about Snyder and Disruptor that, even if credited, would fail to establish the elements necessary to maintain either of the two causes of action asserted against the Snyder Defendants: (i) violations of 18 U.S.C. § 2511 (the "Wiretap Act"), and (ii)  intentional infliction of emotional distress (the "emotional distress" claim).  Although Snyder and Disruptor have not performed any social media or consulting work for Fox News since *2012*, *see* ECF No. 20-22 at 3,[3] this pleading speculates, without any factual basis, that, years later, the Snyder Defendants purportedly carried out a social media "campaign" directed by Fox News executives to smear Tantaros in *2015 and 2016*, FAC ¶¶ 31, 51, 62—the same supposed "campaign" previously pleaded by Tantaros's state court litigation against Fox News (the "State Court Action"), *see* ECF No. 43-1, in which neither Snyder nor Disruptor was named as a defendant.

Plaintiff's amended pleading must therefore be dismissed with prejudice under Federal Rules of Civil Procedure 8(a) and 12(b)(6), because, even if "accepted as true," the pleading fails to, and cannot, plead "sufficient factual matter . . . to 'state a claim to relief that is plausible on

---

[3]  Snyder's only work for Fox News since 2012 has been as an on-air contributor—as Tantaros acknowledges in her First Amended Complaint, FAC ¶ 51—but Snyder ceased even that on-air work in April 2017.

its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Dismissal is now required for each of the following independent reasons:

(1) Tantaros alleges **no facts** demonstrating that **the Snyder Defendants** intercepted her communications, as required to state her Wiretap Act claim of purported "electronic . . . surveillance . . . via . . . . her personal communications," FAC ¶ 66;[4] *see Molefe v. Verizon N.Y., Inc.*, 2015 WL 1312262, at *4 (S.D.N.Y. Mar. 24, 2015), or that **the Snyder Defendants** "use[d] [] the fruits of that surveillance to emotionally torture Ms. Tantaros," FAC ¶ 66, by both controlling the social media accounts used to post references to her purportedly unlawfully intercepted communications, *see Jones v. Ocwen Fed. Bank*, 147 F. Supp. 2d 219, 224 (S.D.N.Y. 2001), **and** having knowledge that the contents of those posts stemmed from such surveillance, *see Fernicola v. Specific Real Prop. in Possession, Custody, Control of Healthcare Underwriters Mut. Ins. Co.*, 2001 WL 1658257, at *7 (S.D.N.Y. Dec. 26, 2001).

(2) Tantaros's intentional infliction of emotional distress claim fares no better, because the alleged surveillance campaign does not constitute the requisite "extreme" and "outrageous conduct" as a matter of law, *see Walther v. Maricopa Int'l Inv., Corp.*, 1998 WL 689943, at *3–4 (S.D.N.Y. Sept. 30, 1998); the amended pleading does not allege that **the Snyder Defendants** caused or intended to cause Tantaros emotional distress, *see Kaupp v. Church*, 2011 WL 4357492, at *4 (S.D.N.Y. Sept. 19, 2011); *Slue v. N.Y. Univ. Med. Ctr.*, 409 F. Supp. 2d 349, 372 (S.D.N.Y. 2006); and the amended pleading does not allege anything other

---

[4]   As with the original complaint in this action, paragraphs of Plaintiff's First Amended Complaint are misnumbered:  there is one version of ¶¶ 65–78 in Section IV, and another Plaintiff's Claims for Relief.  The citation above refers to the second version of ¶ 66 in Section IV.

than the conclusory statement that Plaintiff suffered "severe emotional distress," *see Medcalf v. Walsh*, 938 F. Supp. 2d 478, 489–90 (S.D.N.Y. 2013).

(3) Finally, any *facts* Tantaros actually pleads establish that her claims against the Snyder Defendants are time-barred, as any conduct on their part falls outside the two-year limitations period for Wiretap Act violations, *see* 18 U.S.C. § 2520(e), and the one-year limitations period for intentional infliction of emotional distress claims, *see Ahmed v. Purcell*, 2016 WL 1064610, at \*4 (S.D.N.Y. Mar. 14, 2016).

Plaintiff's amended pleading, which now includes references to wholly irrelevant people and events, including Harvey Weinstein, FAC ¶ 13, and Twentieth Century Fox, *id.* ¶ 75, also extensively quotes numerous other complaints, books, and public news articles to describe activities that, in fact, have nothing at all to do with the Snyder Defendants—let alone the two claims asserted against them here.  Indeed, within this 36-page, 94-paragraph First Amended Complaint, scant few paragraphs even refer to Snyder or Disruptor at all—and even those paltry references are speculative, conclusory and insufficient to state any claim against them, let alone the two alleged here.  Hence, this Court should now dismiss the First Amended Complaint against the Snyder Defendants with prejudice in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

The Amended Complaint is the latest in a string of baseless and improper filings lodged by Tantaros.  Tantaros and her former counsel, Judd Burstein, initially filed a complaint in this groundless action in federal court on April 24, 2017, almost one year ago.  The original complaint alleged that Defendants "retaliated" against Tantaros for "complain[ing] . . . about [Roger] Ailes' sexual harassment of her" by "criminally cyber-stalking her through sockpuppet Twitter accounts," employing "unique surveillance viruses" to "sp[y] upon" her, and "constant[ly] stream[ing] . . . social media posts from multiple sockpuppet accounts . . . to make

it clear to Tantaros that she was being illegally surveilled."  ECF No. 1 ¶¶ 4, 11, 41–43, 45–46.

These allegations, among others, formed the basis of Tantaros's State Court Action, filed on August 22, 2016, against Fox News and various current and former executives and employees, including Roger Ailes, William Shine, and Irena Briganti, but not naming either Snyder or Disruptor as defendants.  *See* ECF No. 43-1.  The complaint in that action alleged, among other things, that Plaintiff had been sexually harassed and that, as "retaliation" for reporting that harassment, Fox News "was smearing [Tantaros] through the use of . . . 'sock puppet' accounts," including by "sexualiz[ing] [her] image" and through "hostile posts," "designed to make it appear they were maintained by persons unrelated to Fox News,"  *Id.* ¶¶ 6, 48–51, 53—in other words, essentially the same purported retaliatory social media scheme she now seeks to pin on Snyder and Disruptor.

By April 2017, Tantaros decided to file in federal court to add new defendants—Snyder and Disruptor—and assert new causes of action—purported violations of the Wiretap Act and intentional infliction of emotional distress—alleging essentially the same supposed social media retaliation scheme she pleaded in her State Court Action.[5]  *Compare* ECF No. 43-1 ¶¶ 6, 48–51, 53 *with* FAC ¶¶ 8, 14, 62, 76.  In May 2017, Fox News, Mr. Ailes and Ms. Briganti (the "Fox Defendants") and Mr. Shine moved to compel arbitration of the claims against them and for Rule 11 sanctions against Tantaros and Burstein.  ECF Nos. 19, 22.  In June 2017, the Snyder Defendants followed suit, moving to dismiss, or in the alternative, compel arbitration, of the

---

[5]  Prior to filing, Tantaros's and Burstein's behavior made it obvious that this litigation was merely an impermissible strike suit initiated solely to harass Snyder so that he would pay off Plaintiff and her counsel. Tellingly, the original complaint was filed *only seven days* after Burstein demanded that Snyder pay an outrageous $15,000,000 settlement within the next *27 hours*.  *See* ECF No. 40-9.  Burstein further threatened that if Snyder failed to comply with this absurd demand, he would file suit, with all the corresponding adverse publicity and reputational damage that would result.  *Id.*  When Snyder obviously refused, Tantaros and Burstein launched into action.

claims asserted against them, as well as for Rule 11 sanctions against Tantaros and Burstein. ECF Nos. 39, 42.[6]  By September 2017, Burstein had withdrawn as Tantaros's counsel, ECF No. 87, and he was replaced in short order by Morgan Lewis, ECF Nos. 90-91.

Later, at a November 30, 2017 hearing before this Court on Defendants' pending motions, the Court identified several of the numerous deficiencies in Plaintiff's claims against the Snyder Defendants.  The Court noted that "the problem I have is . . . I don't know what [a sock puppet account] has to do with whether or not you're tapping into somebody's phone or computer."  ECF No. 118 at 112:8–113:6.  The Court then considered Burstein's explanation that tweets from the account of a man named Daniel Wayne Block disclosed illegally intercepted information from Tantaros and asked "[e]ven if I accept that, how does that point to Snyder[?]" *See id.* at 114:15–115:13.  The Court went on to note that "[t]here's not a lot of [evidence].  This is not a strong set of allegations," *id.* at 144:1–2 and concluded that "that's not a heck of a lot.  It really isn't.  I mean, you know, it's not a heck of a lot.  And then even at this point there's no evidence that Fox News has anything to do with this [Block] tweet, is there? That Fox News has any connection whatsoever with this tweet?" *Id.* at 179:16–24.  The Court was right to be concerned about the lack of evidence tying the tweets to Fox News; indeed, none has been provided to tie the Snyder Defendants to these tweets either.

To that end, by January 2018, both Morgan Lewis and *a third* attorney hired by Tantaros, Tor Ekeland, ECF No. 121, had "review[ed] the case file and the complex findings of the investigation which includes the substantial, additional work performed by Plaintiff's cybersecurity experts," ECF No. 122, and found absolutely *no* evidence to support Tantaros's

---

[6]  The Snyder Defendants' Motion for Rule 11 sanctions against Tantaros and Burstein is currently still pending before this Court.  *See* ECF Nos. 39, 85.

baseless claims.  Accordingly, on January 29, 2018, the deadline to request leave to file an amended Complaint, Morgan Lewis announced its withdrawal as counsel and stated that Tantaros would proceed *pro se*.  ECF No. 124.  Mr. Ekeland noticed his withdrawal several days later, on February 5, 2018.  ECF No. 127.

Despite the loss of three different sets of counsel over the course of six months, Tantaros brought this Amended Complaint *pro se*, alleging yet again that after "making formal complaints to Fox management . . . about harassment, retaliation and an intolerable, toxic workplace," she "face[d] an onslaught of negative posts on social media by sock puppet accounts."  FAC ¶¶ 62, 76.  That the Amended Complaint is nothing more than a PR weapon is evidenced by the fact that it is littered with irrelevant, inflammatory, and untrue allegations regarding Snyder's personal life, career, and finances, including, *inter alia*, Snyder's retainer as a Fox News on-air contributor, FAC ¶ 51,[7] that Snyder "hit on" Tantaros while his pregnant wife was asleep in their home, *id*. ¶ 61, and that "his performance was terrible" when he appeared on a Fox News show hosted by Tantaros, *id*.  These allegations have absolutely nothing to do with Tantaros's claims that she was the victim of a "vicious social media campaign," *id*. ¶ 76—rather, they are outrageous and false assertions clearly included solely for the purpose of tarnishing Snyder's reputation.

The rest of the allegations against Snyder describe either lawful conduct, including that he is supposedly a shareholder in a news publication called the Independent Journal Review,

---

[7]  The inclusion of information regarding Snyder's retainer is particularly egregious and unavailing given that the Court explicitly stated at the November 30, 2017 hearing that "[t]he fact that [Snyder] is being paid by Fox News does nothing to advance whether or not he tapped somebody's telephone" and "[y]ou can't just simply say he made a lot of money from Fox, and that's evidence that he's tapping somebody's phone."  ECF No. 118 at 145:24–146:1, 146:10–12.

which has allegedly published unflattering pieces about Tantaros, *id.* ¶ 60,[8] and that he kept in friendly contact with Defendant William Shine even after Snyder ended his social media consulting job for Fox News, *id.* ¶¶ 57–59, or are wholly conclusory (and false), and therefore insufficient to support claims for violations of the Wiretap Act and emotional distress.

Similarly, the Amended Complaint's few allegations regarding Disruptor—only five paragraphs in all—also describe either entirely legal conduct—such as the fact that "companies *like* Disruptor" purchase inactive or abandoned social media accounts sold by Twitter, *id.* ¶ 53 (emphasis added), and that certain Twitter users grant "companies such as Disruptor . . . access to monetize their accounts," *id.* ¶ 52—or are sweeping, entirely conclusory (and false) claims devoid of any factual support, such as Disruptor's use of "millions of fake social media accounts to defame, discredit, gaslight . . . and influence the public perception of an individual" and the fact that "Disruptor[] has an active contract with Fox News."  *Id.* ¶ 51.

Plaintiff fares no better by annexing the long awaited reports from Cycura—described by Plaintiff as "one of the world's foremost cybersecurity firms –with clientele that includes the United States Department of Defense, the United States Department of Homeland Security and multiple NATO aligned intelligence services around the world," *id.* ¶ 2—which reveal only anodyne information such as the number of mutual Facebook friends Snyder shares with known pro-Fox News individuals or statements that explicitly contradict allegations in Tantaros's own Amended Complaint.  *Compare* ECF No. 124-4 at 10 ("[IJR's] articles about Tantaros are mostly neutral, reporting news like other websites" and that only "one article's inclination *might*

---

[8]   Although the Court is required to accept all of Plaintiff's factual allegations as true and need not reach the merits on a motion to dismiss, *Iqbal*, 556 U.S. at 678, in reality, Snyder was a very small minority shareholder in the holding company that owned IJR and never had any editorial or journalistic control over IJR's publications.

be problematic" (emphasis added)) *with* FAC ¶ 60 (describing that IJR published "several unflattering pieces about" her).[9]  Notably, the Cycura report which purports to "provide[] an analysis of Pete Snyder, to detect his connection to an online campaign against Ms. Tantaros," ECF No. 124-4, does not reflect an examination of Tantaros's laptop or Blackberry and therefore conveys no information about alleged interception of her communications.  *See* ECF No. 143 at 8 n.4.  These reports are not evidence in support of Tantaros's allegations against the Snyder Defendants; rather, they are further proof that Tantaros has no basis for her claims.

## ARGUMENT

Plaintiff's Amended Complaint must be dismissed because it is futile and fatally deficient, as it impermissibly alleges only "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678.  Plaintiff alleges purported violations of the Wiretap Act—which prohibits the interception of communications or use of intercepted communications—and intentional infliction of emotional distress, but yet again makes wild claims without any evidentiary support and does not establish any causes of action.[10]  FAC ¶¶ 65–69, 75–80.

Tantaros claims that she is the victim of a "vicious social media campaign," *id.* ¶ 76, but she offers no supporting evidence beyond a handful of references to a single Twitter account which *she admits* is run by a real person and was not a fake account created by Snyder or Disruptor, *id.* ¶ 52, and various other unidentified accounts which she neither bothers to name or

---

[9]  As explained *supra* at n.8, Snyder was not actually a shareholder in IJR, nor did he exert any oversight or control over any of the articles published by IJR.

[10]  Plaintiff's repeated references to a "criminal cyber-stalking scheme . . . in violation of 18 U.S.C. § 2261A," FAC ¶¶ 68, 73, 80, are not actionable, as Plaintiff's former counsel admitted pre-filing.  *See* ECF No. 43-7 (It is an "erroneous notion that 18 U.S.C. § 2261A provides a private right of action."); *see also Cain v. Christine Valmy Int'l Sch. of Esthetics, Skin Care, & Makeup*, 2016 WL 6127514, at *5 (S.D.N.Y. Oct. 20, 2016) ("Case law is . . . unanimous that no private right of action is available under § 2261A.").

describe and which do not even hint at any illegal surveillance of her private communications.[11] There is clearly no nexus between the activities Tantaros complains of and either of the Snyder Defendants.

In addition, Tantaros has utterly failed to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Rather, Plaintiff has offered mere "labels and conclusions," or "naked assertions devoid of further factual enhancement," which simply "will not do" to satisfy the pleading standards set forth under Rule 8(a) of the Federal Rules of Civil Procedure.  *Id*. Moreover, the First Amended Complaint impermissibly violates Rule 8(a)(2) by improperly group pleading without sufficient distinction between the Defendants.  *See* ECF No. 140 at 9-10. The claims against the Snyder Defendants must therefore be dismissed.

## I.  PLAINTIFF FAILS TO STATE ANY CLAIM AGAINST SNYDER

### A.  The Amended Complaint Does Not State a Claim for Any Alleged Violations of the Wiretap Act

Plaintiff alleges that Snyder violated the Wiretap Act both "through the electronic and physical surveillance of Tantaros via private investigators and her personal communications" and through "use of the fruits of that surveillance to emotionally torture Tantaros."  FAC ¶ 66. However, even accepting her allegations as true, she fails to state a claim.

#### 1.  Electronic Surveillance

On its face, the Amended Complaint does not sufficiently allege that Snyder intercepted

---

[11]  Although Tantaros alleges that "real people like Daniel Wayne Block create, but allow companies such as NMS, now Disruptor . . . access to monetize their accounts," FAC ¶ 52, as she well knows, Mr. Block has sworn under threat of perjury that he "do[es] not know anyone named Peter A. Snyder and ha[s] never had any contact with him or anybody else who works for Disruptor Capital or New Media Strategies."  ECF No. 20-1 ¶ 5.  In reality, neither Snyder nor Disruptor has ever had anything to do with Mr. Block's Twitter account, and any insinuations by Plaintiff to the contrary are patently false.

Tantaros's wire, oral, or electronic communications, as required to state a claim for electronic surveillance under § 2511(1)(a) or (b).[12]  This alone warrants dismissal.  *See, e.g.*, *Dunahoo v. Hewlett-Packard Co.*, 2012 WL 178332, at *5 (S.D.N.Y. Jan. 20, 2012) (dismissing Wiretap Act claim where "sole allegation of an electronic 'interception' that would fall under the Act" was insufficient and "the complaint provides no further factual support for [defendant's] alleged interception").  Indeed, not only has Tantaros failed to allege specific facts demonstrating that *her* communications were intentionally intercepted *by Snyder*, she does not even allege that Snyder had *access* to any device on which Plaintiff engaged in wire, oral, or electronic communications, much less that he used (let alone intentionally used) any such access to actually intercept, or attempt to intercept, her communications.  *See, e.g.*, *Molefe*, 2015 WL 1312262, at *4 (dismissing Wiretap Act claim even where plaintiff alleged that defendant "snoops on or wiretaps its customers . . . , that he suffered a handful of scattered service interruptions, and that certain of his information migrated to his wife's [defendant-operated] device," because plaintiff failed to allege that defendant "intentionally intercepted or disclosed *Plaintiff's* information" (emphasis added)).[13]  Having failed to allege anything more than that Plaintiff's personal telephone and computer were purportedly electronically surveilled—and not even attempting to allege that *Snyder himself* engaged in any such surveillance, FAC ¶¶ 2, 26–34—Plaintiff's

---

[12]  These provisions impose criminal liability on any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication," § 2511(1)(a), and any person who "intentionally uses, endeavors to use, or procures any other person to use or endeavor to use [in specified ways] any electronic, mechanical, or other device to intercept any oral communication," § 2511(1)(b).

[13]  *See also Doe v. GTE Corp.*, 347 F.3d 655, 658–59 (7th Cir. 2003) (no § 2511 liability beyond "primary interceptor"); *Phillips v. Bell*, 365 F. App'x 133, 141 (10th Cir. 2010) (dismissing Wiretap Act claim where plaintiff's "string of possible reasons for [defendant's] recording of their conversations" and "recitation of the statutory elements" was "so general" that it "lack[ed] the necessary factual enhancements to get it from the 'possibility' of misconduct to a 'plausibility' of such misconduct required for relief").

electronic surveillance claim under § 2511 must be dismissed.[14]

### 2.   Use of the Fruits of Electronic Surveillance

While the pleading's allegations in this regard are completely false and Snyder played no role in this alleged scheme, the allegations must be assumed true for purposes of this motion. Nevertheless, the Amended Complaint similarly fails to allege *any* facts as to *Snyder's* conduct that would permit a "reasonable inference that the defendant is liable for" a violation of 18 U.S.C. § 2511(1)(c) or (d), which prohibit the disclosure or use of the contents of any wire, oral, or electronic communication, when the discloser or user knows or has reason to know that the information was obtained through unlawful interception in violation of § 2511.[15]  *Iqbal*, 556 U.S. at 678.

Tantaros bases her claims against Snyder on the fact that the Fox News "Black Room relied heavily on outside contractors including Pete Snyder," FAC ¶ 51, and cites to Snyder's employment as a "Fox News Contributor" and his "outrageous yearly salary of roughly $183,000," *id.*, to somehow suggest that merely because he has been paid for holding an entirely normal, legal and completely run of the mill on-air contributor job with Fox News, he must also be responsible for any alleged social media campaign against Tantaros.[16]  This is not sufficient.

---

[14]   Tantaros further alleges numerous incidents of physical surveillance, FAC ¶¶ 35–40, but these allegations are also fatally deficient for two reasons:  (1) they do not connect *Snyder or Disruptor* to the alleged surveillance; and (2) the Wiretap Act does not apply to physical surveillance of this kind because it does not involve the interception of "any wire, oral, or electronic communication," *see* 18 U.S.C. § 2511(1)(a)–(b).

[15]   These provisions impose liability on any person who "intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of [such] communication in violation of this subsection," § 2511(1)(c), and any person who "intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of [such] communication in violation of this subsection," § 2511(1)(d).

[16]   Incredibly, the Amended Complaint also alleges that Snyder *must have been* performing social media consulting for Fox News in 2014 merely because he happened to send several emails to Fox News employee William Shine in March 2014—one of which contained a personal joke, one regarding Fox News's competition, and one regarding Newsmax CEO Chris Ruddy—and notes that "[f]ollowing this [Ruddy] email there was a

13

But Plaintiff has pleaded no facts—distinct from "[t]hreadbare recitals," "mere conclusory statements," and "legal conclusion[s]" that the Court is "'not bound to accept," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555)—that would permit the Court to infer that Snyder ever controlled, orchestrated, or had any involvement with the social media posts purportedly targeting her with information illegally intercepted from her own "personal communications." *See* FAC ¶ 66.  Nowhere does Plaintiff allege any communications between Fox News or any other individual and *Snyder* concerning information allegedly gleaned through surveillance of Tantaros's telephone and laptop.  Plaintiff fails to plead how many of these "highly sexual or grossly offensive posts" on social media she claims to have received from "millions" of Twitter, Facebook, or Instagram accounts, *id.* ¶¶ 51, 62, came from accounts supposedly controlled by *Snyder* or the nature of that alleged control.[17]  In fact, with regard to the *single* social media account which Plaintiff alleges used or disclosed information purportedly intercepted through surveillance of her telephone or laptop—the "Daniel Wayne Block account," FAC ¶¶ 62—Plaintiff pleads no facts connecting this account *to Snyder*,[18] let alone facts that would suggest Snyder exercised a degree of control over this or any other account sufficient to

---

huge uptick in negative tweets on social media platforms" which "were operated by Snyder."  FAC ¶¶ 57–59.  Notably, Plaintiff offers not a single shred of evidence to support her claim that these social media accounts were, in fact, operated by Snyder, nor does she explain how three emails sent between two men who had worked together previously for several years demonstrates a continued working relationship.  Regardless of this questionable logical leap, even if Snyder had still been employed as a social media consultant by Fox News in March 2014 (which he was not), the Amended Complaint still fails to allege any action taken by Snyder after April 24, 2015; the claims are thus time-barred.  *See infra* Section III.

[17]  While the Court is required to accept all of Plaintiff's factual allegations as true, *Iqbal*, 556 U.S. at 678, in truth, the only social media accounts operated or controlled by Snyder are his own personal Facebook, Twitter and Instagram accounts, political/public figure Pete Snyder Facebook page, a Facebook and Twitter account for his company Disruptor Capital, and a Twitter account for his BBQ smoker, @PetesPigRig.

[18]  Once again, pursuant to Daniel Wayne Block's sworn statement under perjury, he "do[es] not know anyone named Peter A. Snyder and ha[s] never had any contact with him or anybody else who works for Disruptor Capital."  ECF No. 20-1 ¶ 5.  Therefore, there is no connection between any tweets from Mr. Block's account and Snyder or Disruptor.  *See supra* n.11.

render them liable for the information disseminated therefrom.  *See Jones*, 147 F. Supp. 2d at 224.[19]  Nor does Plaintiff provide a shred of actual evidence that Block's tweets reflect information illegally obtained from Tantaros's communications.  *See* ECF No. 143 at 7–8; ECF No. 19 at 8.

Such wholly conclusory allegations cannot save Plaintiff's claim:  merely alleging that Snyder "engaged in conduct" prohibited by the statute at issue "without specifics or details is not enough."  *See Jones*, 147 F. Supp. 2d at 224 (dismissal warranted where plaintiff "fail[ed] to allege what that [alleged unlawful] conduct consisted of, who specifically engaged in [it], and when [it] took place"); *see also Molefe*, 2015 WL 1312262, at *4 (dismissing Wiretap Act claim where plaintiff offered only "generalized, highly conclusory allegations" tying defendant to surveillance).

Similarly, Plaintiff's claims that a website called the Independent Journal Review ("IJR") published "several unflattering pieces about" her and that Snyder is "a majority shareholder in IJR," FAC ¶ 60, fail to adequately allege a Wiretap Act violation because the statute does not prohibit the publication of merely "unflattering" information; it requires that Tantaros allege that the information published by IJR "was obtained through the interception of a wire, oral, or electronic communication in violation of" 18 U.S.C. § 2511.[20]  Even reports annexed to the

---

[19]  *See also Diego Beekman Mut. Hous. Assoc. Hous. Dev. Fund Corp. Hdfc v. Dish Network, L.L.C.*, 2016 WL 1060328, at *7 (S.D.N.Y. Mar. 15, 2016) (where "[t]he only sentence in the [complaint] regarding the relationship between Defendants and the direct tortfeasors is so broad as to encompass every possible theory" of applicable liability but "contain[ed] no supporting facts that would allow the Court to discern which of these theories–if any–might plausibly apply," this was "precisely the sort of 'speculative' claim proscribed by *Twombly* and its progeny").

[20]  Furthermore, the Cycura report submitted by Tantaros in support of her Amended Complaint, *see* ECF No. 124-4, explicitly contradicts Tantaros's claim that IJR published "several unflattering pieces about" her, FAC ¶ 60, instead noting that "[t]he journal's articles about Tantaros are mostly neutral, reporting news like other websites" and that only "one article's inclination *might* be problematic," *see* ECF No. 124-4 at 10 (emphasis added).  The Second Circuit has held that dismissal is appropriate where, like here, allegations in a complaint are contradicted by documentary evidence.  *See Alexander v. Bd. of Educ*, 648 F. App'x 118, 121 (2d Cir. 2016)

Amended Complaint from Cycura reveal that after months of investigation, the only "evidence" Cycura detected against Snyder is the existence of several "mutual friends" on Facebook who may also have ties to pro-Fox News websites or social media accounts.  For example, the report revealed the innocuous "conclusion" that "Snyder and [Fox News Senior Vice President Ken LaCorte] have two mutual friends on Facebook."  ECF No. 124-4 at 19.[21]  That Cycura did not identify *a single social media account* controlled or created by Snyder which was in any way related to the alleged campaign against Tantaros demonstrates the truth in this case: there never *was* any campaign against Tantaros and even if there were, Snyder had absolutely nothing to do with it.

Accordingly, needless to say, Plaintiff has not pleaded that Snyder "kn[ew] or ha[d] reason to know that the information" posted from those social media accounts or IJR had been illegally intercepted, as is required to sustain Plaintiff's cause of action.  *See* 18 U.S.C. § 2511(1)(c)–(d); *see also Fernicola*, 2001 WL 1658257, at *7 (dismissing Wiretap Act claims "because, in addition to being conclusory, they fail to allege that [defendant] knew that its purported activities were in violation of the statute," and the Wiretap Act "only prohibits a person from using or disclosing communications where that person knows or has reason to know that the information was obtained in violation of the statute").

Because Plaintiff has failed to plead any facts from which the Court could "draw the reasonable inference" that Snyder is "liable for the misconduct alleged"—that he "use[d] . . . the fruits of [electronic] surveillance [of Plaintiff's personal telephone and laptop] to emotionally

---

(affirming dismissal where plaintiff's "'attenuated allegations' were 'contradicted [] by' . . . documents incorporated [in the complaint] by reference").  This is yet another reason why Plaintiff's claims must be dismissed.

[21]  In the social media dominated world of the twenty-first century, having only two connections to someone is not connected at all.  This evidence is tenuous and paltry at best.

torture Tantaros," FAC ¶ 66, which he certainly did not—Plaintiff's claim must be dismissed.
*See Iqbal*, 556 U.S. at 678.

### B.      The Amended Complaint Does Not State a Claim
####        for Intentional Infliction of Emotional Distress

Again, while the pleadings' allegations in this regard are completely false and Snyder

was in no way involved in any illegal behavior directed toward Tantaros, the allegations must be

assumed true for purposes of this motion.  The Amended Complaint fails to state a claim for

intentional infliction of emotional distress against Snyder because it fails to plead facts

establishing the necessary elements of that tort:  "(1) extreme and outrageous conduct, (2) intent

to cause severe emotional distress, (3) a causal connection between the conduct and the injury,

and (4) severe emotional distress."  *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996).

*First*, Plaintiff's allegations fail to meet the "rigorous, and difficult to satisfy" standard

for "extreme and outrageous conduct," requiring that "conduct [be] so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community."  *Howell v. N.Y. Post Co.*, 81 N.Y.2d

115, 122 (N.Y. 1993); *see also Medcalf*, 938 F. Supp. 2d at 488 (emotional distress claims are

"extremely disfavored" and only "the most egregious conduct . . . [is] sufficiently extreme and

outrageous to establish" it).  Snyder's alleged "electronic surveillance of Plaintiff as part of a

vicious social media campaign," FAC ¶ 76, is precisely the type of conduct that has been deemed

insufficient to rise to this "extreme," "atrocious," and "utterly intolerable" level.[22]  Indeed, even

if Snyder had perpetrated such a scheme, the creation and use of fake social media sites to

---

[22]  *See, e.g.*, *Walther v. Maricopa Int'l Inv., Corp.*, 1998 WL 689943, at *4 (S.D.N.Y. Sept. 30, 1998) ("repeated verbal threats . . . unannounced visits to [plaintiff's] home at late-night hours, persistent telephone calls to [plaintiff's] home . . . and harassment of [plaintiff's] doorman at his apartment house" not extreme and outrageous); *Talmor v. Talmor*, 185 Misc. 2d 293, 299–300 (N.Y. Sup. Ct. Nassau Cnty. 2000) (surveilling phone conversations for future use against surveillee not extreme and outrageous).

defame and harass a plaintiff has fallen short of extreme and outrageous conduct under similar laws of other states.  *See Bittman v. Fox*, 107 F. Supp. 3d 896, 904–05 (N.D. Ill. 2015) (insufficient where defendants "made statements falsely accusing [plaintiff] of discriminatory conduct[,] . . . used a photo obtained from the Internet in which [plaintiff] is drinking a glass of champagne to claim that she drinks at work[,] . . . traveled to [plaintiff's] residence and took photos of her house and posted them on the Internet[,] . . . [and] created the Sassy Pants Facebook Page to impersonate and defame [plaintiff's] floral arrangement business"); *see also Alahverdian v. Grebinski*, 2014 WL 2048190, at *5, *15 (S.D. Ohio May 19, 2014) (defendants' use of social media and blogs to claim that plaintiff participated in "fugitive behavior [and] sexual assault, and questioned his mental state" was not extreme or outrageous).  Furthermore, any physical surveillance Ms. Tantaros alleges is also insufficiently "extreme and outrageous" to plead an emotional distress claim.  *See* ECF No. 143 at 11–12, 20.

*Second*, though Plaintiff is "require[d] . . . to prove 'that the defendant acted out of a desire to hurt the plaintiff rather than promote the defendant's legitimate interests,'" *Slue*, 409 F. Supp. 2d at 372, Plaintiff has offered absolutely no evidence to suggest that Snyder had any intent to hurt her.  In fact, Plaintiff's allegations—that she and Snyder were "close friends," FAC ¶ 55, that she paid "a visit to the Snyders' Nantucket home in 2014," *id.* ¶ 61, that he "tried to enlist Tantaros' to help campaign for him" during his run for Lieutenant Governor of Virginia, *id.* ¶ 56,[23] and that he "tried to hire Tantaros to head his newly created public affairs division of

---

[23]  Once again, while the Court is required to accept all of Plaintiff's factual allegations as true, *Iqbal*, 556 U.S. at 678, in fact, Tantaros voluntarily and enthusiastically endorsed Snyder's candidacy and there is evidence on social media on both Snyder's and Tantaros's social media accounts to prove it.  *See* Andrea Tantaros (@Andrea Tantaros), Twitter (Nov. 30, 2012, 3:34 PM), https://twitter.com/AndreaTantaros/status/274657655224692736 ("And check out my One More Thing: GOP rising star Pete Snyder http://www.petesnyder.com for LG of Virginia 2013."); Pete Snyder, Facebook (Apr. 30, 2013, 10:26 AM), https://www.facebook.com/PeteSnyderVA/photos/a.468715396482263.108551.441161439237659/5706408796 23047.

NMS," *id.* ¶ 54—belie any such intent to cause Tantaros harm, thereby dooming her emotional distress claim.

*Third*, there is no basis to conclude that any conduct in which *Snyder* engaged actually caused Plaintiff severe emotional distress.  Plaintiff's emotional distress claim is premised on her allegation that Defendants conducted "illegal electronic surveillance of Plaintiff as part of a vicious social media campaign which also included the use of fake Twitter accounts to communicate to Plaintiff that she was being surveilled." *Id.* ¶ 76.  But as previously set forth, *supra* Section I.A, Plaintiff has failed to allege any facts tying any conduct *on Snyder's* part to any electronic surveillance of Plaintiff, any use of the fruits of such surveillance, or any participation in or control over any social media accounts engaged in such conduct.[24]

*Finally*, Plaintiff's Amended Complaint is bereft of any allegations regarding her supposed "emotional distress" except for the conclusory statement that she "did suffer severe emotional distress, requiring medical treatment and medication." *Id.* ¶ 78.  This is fatal to her emotional distress claim, which requires "more than the conclusion that 'plaintiff suffered extreme and grievous mental distress as a result of the extreme and outrageous behavior of the defendants.'"  *Klein v. Metro. Child Servs.*, 100 A.D.3d 708, 711 (2d Dep't 2012) (alterations omitted); *accord, e.g.*, *Medcalf*, 938 F. Supp. 2d at 490 (dismissing emotional distress claim where, *inter alia*, plaintiff "does not make any non-conclusory allegation that [she] suffered severe emotional distress").

Because Plaintiff has failed to "plead[] [*any*] factual content that allows the court to draw

---

[24]   Even if Plaintiff alleged that Snyder or Disruptor were aware of other defendants' involvement in such an electronic surveillance or social media campaign (which she does not), that is insufficient to sustain an emotional distress claim as to Snyder and Disruptor.  *See Kaupp*, 2011 WL 4357492, at *4 (dismissing emotional distress claim against a business who knew its employee had stalked and threatened plaintiff, noting that "causation is an insurmountable obstacle for Plaintiff. . . . [business defendant's] conduct has not been alleged as the reason for [employee defendant's] harassment of [plaintiff]").

the reasonable inference that the defendant is liable for the misconduct alleged," her emotional distress claim against Snyder must be dismissed.  *See Iqbal*, 556 U.S. at 678.

## II.  PLAINTIFF FAILS TO STATE ANY CLAIM AGAINST DISRUPTOR

In her 94-paragraph, 36-page Amended Complaint, Plaintiff mentions Disruptor in only five paragraphs, including one merely to establish the location of Disruptor's incorporation and principal office.  *See* FAC ¶ 23.  Of the other four paragraphs which mention Disruptor, *see id*. ¶¶ 22, 51–53, only two describe conduct that is *remotely* related to Plaintiff's claims of Wiretap Act violations or emotional distress in that they allege that Disruptor is involved in the use of sock puppets during social media work,[25] *see id.* ¶¶ 51–52, but these, like the claims against Snyder, are both false and fail to tie Disruptor to the unlawful action Plaintiff complains of for one simple reason: there *was no* social media campaign aimed at Tantaros.  Tellingly, at no point does the Amended Complaint identify a single social media account connected in any way to Disruptor, let alone that Disruptor disclosed intercepted communications or knew or should have known that any information it allegedly disclosed contained illegally intercepted information. *See Dunahoo*, 2012 WL 178332, at *5 (dismissing Wiretap Act claim where "sole allegation of an electronic 'interception' that would fall under the Act" was insufficient and "the complaint provides no further factual support for [defendant's] alleged interception").

Similarly, even if Disruptor *had* been involved in such a social media campaign—which it was not—this type of campaign is not sufficiently "extreme and outrageous" to make out an emotional distress claim, *see Bittman*, 107 F. Supp. 3d at 904–05, nor does Tantaros allege that

---

[25]  Allegations that Disruptor uses sock puppet accounts are a red herring.  Even Tantaros's former counsel, Burstein, admitted that "there is nothing intrinsically illegal about using sockpuppet accounts.  It's done all the time.  It's illegal when you use the sockpuppet accounts as a means to communicate illegal electronic surveillance."  ECF No. 118 at 214:13–17.  But, as already discussed, the Amended Complaint does not allege that *Disruptor* was connected to any sockpuppet accounts which allegedly communicated illegal electronic surveillance and, therefore, the claim must fail.

Disruptor intended to cause her severe distress, *see Slue*, 409 F. Supp. 2d at 372, that it actually caused her severe distress, *see Dunahoo*, 2012 WL 178332, at *4 (dismissing emotional distress claim where plaintiff failed to "provide anything other than conclusory allegations to link [defendant] to the events which [plaintiff] alleges resulted in his suffering")*,* or even that she suffered severe distress at all, *see Klein*, 100 A.D.3d at 711 (dismissing emotional distress claim that states "little more than the conclusion that 'plaintiff suffered extreme and grievous mental distress'") (alterations omitted).  Because Tantaros fails to plead that Disruptor is "liable for the misconduct alleged," Plaintiff's claims against it must be dismissed.  *See Iqbal*, 556 U.S. at 678.

## III.   PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

To the extent Plaintiff has pleaded any *facts* (rather than conclusions) regarding *the Snyder Defendants themselves* (rather than other or third parties), those facts describe alleged conduct falling outside the applicable statutes of limitations, which at most reach back to April 24, 2015,[26] two years prior to the filing of Plaintiff's original complaint.  *See* 18 U.S.C. § 2520(e) (two-year statute of limitations applicable to Plaintiff's private cause of action under 18 U.S.C. § 2511); *see also Ahmed*, 2016 WL 1064610, at *4 ("[A] claim of intentional infliction of emotional distress has a one-year statute of limitations," meaning that a court "can only consider the defendant's behavior in the year before the claim was filed.").  Thus, all pleaded claims

---

[26] Even these allegations are contrary to reality, since Snyder's only work for Fox News since 2012 has been as an on-air contributor—for which he was paid less than what he received for his earlier consulting work—and Snyder ceased even that on-air work in April 2017.  *See* ECF No. 42 at 3 n.5.  Plaintiff's claims that Snyder's "counsel deliberately mislead [sic] the Court in his response by stating that when [Snyder] sold his company New Media Strategies he ceased work for Fox," FAC ¶ 51, is patently false.  Snyder and his counsel have *always* maintained that Snyder continued to work for Fox News as an on-air contributor even beyond 2012, when Snyder and NMS ceased to perform social media consulting for Fox News.  *See* ECF Nos. 40-14 at 2, 42 at 3 n.5, 84 at 1–2, 118 at 55:7–19, 56:18–57:2.

Furthermore, Disruptor has *never* had any involvement in Fox News whatsoever, nor does Plaintiff even allege any relationship between the two other than the bare conclusion that "[u]pon information and belief Snyder's company, Disruptor, has an active contract with Fox News."  FAC ¶ 51.  Simply put, Tantaros's information and belief is wrong.

against the Snyder Defendants are time-barred.

## CONCLUSION

As set forth above, the Snyder Defendants' motion to dismiss the First Amended

Complaint with prejudice pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6) should

be granted.

Dated: New York, New York  
      March 1, 2018

GIBSON, DUNN & CRUTCHER LLP

By:    */s/ Randy M. Mastro*
       Randy M. Mastro
       Mylan L. Denerstein
       Michael Marron

200 Park Avenue
New York, New York 10166
Tel.:  (212) 351-4000
Fax:  (212) 351-4035
RMastro@gibsondunn.com
MDenerstein@gibsondunn.com
MMarron@gibsondunn.com

*Attorneys for Peter A. Snyder and Disruptor, Inc.*