UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

————————————————————X

ANDREA TANTAROS

              Plaintiff,

      v.                                        Case No: 17-cv-02958

(GBD)

FOX NEWS, LLC, ROGER WILES, WILLIAM SHINE,

IRENA BRIGANTI, PETER A. SNYDER,

DISRUPTOR, INC. and JOHN DOES 1-50

              Defendants.

————————————————————X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/23/18

# PLAINTIFF ANDREA TANTAROS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT

## FOX NEWS, LLC'S MOTION TO DISMISS

Andrea Tantaros, *Pro Se*

## PRELIMINARY STATEMENT

Defendant Fox News LLC's (Fox News Defendants) Motion to Dismiss must be denied, despite Defendant's attempts, individually and en masse, to misdirect, obfuscate, reccuringly tangibly misquote, omit specific, direct and damaging allegations made by Ms. Tantaros.

As laid out in the Plantiff's Amended Complaint, all Defendants, acting as a (very) literal cabal, developed and then participated in the very behavior that leads them before you now, bringing with them a litany of heinous causes of action, and a never-ending (and noticeably evolving) steam of excuses regarding same.

The causes of action plead in the Plaintiff's Amended Complaint illustrates clear, intricate knowledge of Defendants complex attempts to keep these matters in secrecy – even from major Fox shareholders – for the past two decades… noting Snyder for a slightly lesser time-frame.

In all Defendant's seemingly coordinated Motions to Dismiss, Defendants find themselves (again) blatantly contradicting previous positions and statements made publicly and before your Honor's Court.

Defendants also rely on case law that is inapplicable and irrelevant to the allegations.  As Your Honor well knows, at the pleading stage, Plaintiff's claims must be accepted as true. With great respect for your Honor, I believe said Motions could be dismissed on these grounds alone.

- The Plaintiff's Amended Complaint alleges a clear violation of The Wiretap Act with forensics done on Ms. Tantaros' electronic devices that ties Fox News Channel (Fox News) to having Ms. Tantaros' passwords universally, giving Fox News and its employees the unique ability to access information from her in real time, specifically for the purpose of their (well-documented0 intimidation campaigns – in the media via allied media partners, fake websites they ordered created through social media influence contractors – Snyder's firm being their primary 'go to' in this arena. Fox News used Snyder's firm to develop hundreds and hundreds of thousands of professionally managed 'sock-puppet accounts'… bought, created and implemented by order of Fox news itself.

  Illegally accessing Ms. Tantaros' communications and wiping her Blackberry – which Counsel for Fox News has previously conceded, was additionally executed by Fox News to mount a legal defense against an employee who had been making repeated internal claims of sexual harassment, retaliation and hostile workplace - through her attorney - for two years prior to being pulled from the airways and suspended (with pay). In the ultimate act of retaliation, *just twelve hours before her on-air book launch*…and just two weeks after Ms. Tantaros had met with both Fox News' Human Resource and Legal departments to address Ms. Tantaros' numerous and extremely well-founded complaints.

Unlike other accusers, Ms. Tantaros flatly refused a seven-figure settlement offer from Fox News Channel in June of 2016, making her even more a 'danger' to Fox News with her long-held journalistic history of unyielding honesty, and access to media. This made her a very significant and timely target for (later fired) CEO, Roger Ailes (Ailes).

Predictably, Ailes and his Executives (acting more as Lieutenants than media executives) and their social media influence contractors, joined fired ex-President (and now Defendant) William Shine (Shine), Irena Briganti (Briganti), Peter A. Snyder (Snyder) and his company Disruptor, Inc. (Disruptor) to collect, collate, and begin a rigorous personal and corporate defense utilizing the information that Ailes had ordered surreptitiously collected through physical, digital and electronic surveillance, thus digitally weaponizing Briganti and Snyder at Ailes and Shine's behest, to carrying out unbelievably extreme, outrageous, defamatory discrediting campaigns against Ms. Tantaros *that remain ongoing to present.*

- The Plaintiff's Amended Complaint properly pleads a violation of the Wiretap Act against Fox News, Ailes and Shine.

- The Plaintiff's Amended Complaint sufficiently pleads a violation of the Stored Communications Act against Fox News, William Shine and Irena Briganti.

- The Plaintiff's Amended Complaint alleges multiple instances of confirmed surreptitious surveillance with specificity, including an admission by notorious private investigator, Bo Dietl, to the New York Times (published on June 18, 2016) that he was "hired by Fox News to spy on" Ms. Tantaros and "dig up dirt" on her using a twelve-man team. It also cites a direct admission from Fox News Head of Engineering - Warren Vanderveer, from the Fox Shareholder's Derivative Complaint, in which Vanderveer clearly declares that Roger Ailes had him "install a CCTV system throughout the building with cameras in hallways, greenrooms, entrances *and all offices"*, allowing Fox News, Ailes, Shine and Briganti to surveil female talent as they disrobed and/or monitor their private conversations contemporaneously, without Plaintiff's knowledge or prior consent.

- The Plaintiff's Amended Complaint properly alleges intentional infliction of emotional distress by Fox News. Ailes, Shine, Briganti and Snyder by the actions of Defendants which include: Fox News and Shine surreptitiously gaining access to her communications in real time via her blackberry and laptop, physically and electronically surveilling her in real time and through the use of multiple private investigators who followed Ms. Tantaros repeatedly in New York and at her vacation home in New Jersey.

Additionally, Tantaros was subject to surreptitious surveillance ordered by Ailes to **outrageously** record her disrobing… and the collection of data from her private

conversations via cameras and microphones deliberately placed in her executive office, and in the office space used to conduct Fox News' bi-annual trunk show. In addition, abhorrent online intimidation campaigns were spearheaded by Ailes, directed directed thru Shine, who then communicated same to employees like Briganti (and her media team), The Black Room (**BlackRoom**) Fox News central HQ for surveillance, targeting, planning, et al) and its paid contractors like Snyder and Disruptor. The sole purpose of the Black Room was to journalistically or digitally execute targeted discreditation and reputation-assassination campaigns against perceived threats to Fox News, Ailes, or his other business interests… outside *or* inside the building, using allied media, fake websites, and of course, social media of all types.

- The Plaintiff's Amended Complaints and facts included therein state a claim for relief which requires judicial determination. Defendants Motions not only confirm behavior that Fox surreptitiously surveilled and spied on Ms. Tantaros through multiple means, but they also contradict Fox News' and Shine's previous false and slanderous public statements and (more importantly) declarations made to the Court that they had "never engaged in surveillance against Ms. Tantaros of any kind," and that her allegations were "outlandish," "outrageous," a "sham and a shakedown, and part of a "paranoid fantasy."

For all the above reasons the Motions should be denied. However, if the Court is inclined to grant Defendants' Motion, Plaintiff respectfully requests for leave to amend should it be granted.

## BACKGROUND

### A. Prior Pleadings

In another awkward about-face, Fox News, Shine, and Snyder have decided to now dismiss Ms. Tantaros' claims without moving to sanction her personally, a distinctly different position which they had taken prior to her filing of a far more detailed, comprehensive and robust amended complaint, which contains a plethora of facts and preponderance of evidence to support her claims.

Defendants' previous position was to compel this case to confidential arbitration, and impose sanctions on Ms. Tantaros and her prior counsel, an incongruent, extreme and odd legal position from the outset. If the filing of first complaint was, in fact, sanctionable as all Counsel contended, was filed with improper purpose and had no factual basis whatsoever, Fox News and Shine would have not moved to arbitrate, but instead immediately move to dismiss the case, seek summary judgement and (albeit it rare, extreme, premature and draconian) seek sanction prior counsel and Ms. Tantaros.

As recently as February 7, 2018, Counsel for Fox News, Andrew Levander wrote His Honor demanding leave for Plaintiff's Amended Complaint and stated the Fox News

Defendants "will pursue sanctions against Ms. Tantaros herself". Only after the filing of Ms. Tantaros' Amended Complaint, Fox News Defendants and Shine are now solely moving to dismiss the complaint, and all Defendants in this action are, oddly, not pursuing sanctions against Ms. Tantaros while all Defendants are still referring to Plantiff's claims as "outlandish" and a "work of fiction."

Fox News has also abandoned its most bizarre defense, used in their motion to obtain expedited Rule 11 discovery: that it was Ms. Tantaros who was, in fact, behind the creation of the hundreds of thousands of fake social media accounts aimed at attacking, harassing, eroticizing and threatening her. Not only would this be implausible for her to have the time to conduct such massive operations, but no reasonable or sane person would defame (using exceptionally inappropriate profanity) threaten themselves, or file a lawsuit against Fox News Defendants for this exact same behavior, knowing full well that should this case move forward, an in-depth discovery process, subpoenas of social media platforms like Twitter, and via depositions of subject matter experts and additional third parties, it would be easy to tie these hundreds of thousands of accounts to their creator.

Upon seeing a Complaint that finally included a full, unedited, and complete set of facts in Plantiff's amended Complaint, and knowing they are under close scrutiny due to the multiple investigations which are being conducted currently that focus on the exact causes of action in both of Ms. Tantaros' complaints, Counsel for Fox News has made settlement overtures in the time between the filing of Plaintiff's Amended Complaint and their motion to dismiss.

Ms. Tantaros has, once again, flatly rejected any and all settlement proposals by Fox News outright.

## B. Previous Counsel, Terminations and Representation

All Defendants seek to make issue of Ms. Tantaros' decision to proceed *pro se* through presumption, insinuation with no factual basis. Rather than state facts, Defendants engage in speculation to misdirect the Court and attempt to tarnish and weaken Ms. Tantaros' far stronger position as a *pro se* litigant, where her words can no longer be edited or censored by frightened or ill-equipped attorneys, her facts omitted or mischaracterized by counsel who cannot properly contextualize, understand or explain the complex and cutting-edge nature of the subject matter, or large firms too concerned with long-term fallout to stand up to Fox News and the Murdoch Machine and endure the optics of their incessant, extreme and premature sanctions - designed to frighten any Law Firm assessing the case. As she has stated in court and in her letter to the Court, Ms. Tantaros decided, of her own volition, to proceed *pro se* to ensure his Honor had a complete and thorough Complaint that presented the full scope of the facts, properly explained and factually contextualized in a way that was accurate and cogent, without confusion, or material mistakes.

As a writer and journalist, Ms. Tantaros simply decided she is the best person to tell her story and, because she is not a multi-billion dollar company, would rather invest her resources in an Internationally renowned cyber-security firm to conduct in-depth investigations producing irrefutable evidence that can be used in trial, and SME's that will be relied upon as expert witnesses.

For the record, Ms. Tantaros is currently represented by two law firms. She retains one firm that handles her arbitration and another business and entertainment firm that has represented her for over a decade throughout her career.

Fox News has shifted legal counsel four times. Fox News has fired their longtime General Counsel, Dianne Brandi, who is currently under investigation for illegally accessing phone records and failure to properly report multiple, multi-million dollar secret settlement agreements to victims of harassment and discrimination. (Ms. Brandi is a Defendant in Ms. Tantaros' State Court Complaint). Fox News also proceeded to fire their longtime outside counsel of Epstein, Becker and Green in Fall of 2016 (the very same firm Fox News hired to engage Private Investigator Bo Dietl in 2008 to surveil and unearth damaging information on Bill O'Reilly sexual harassment accuser, Andrea Makris. It was Epstein, Becker and Green that assisted Fox News with its negative smear campaign against Ms. Makris, which played out in the media for eight (8) days before Fox News settled with Ms. Makris for $9 million. In addition, Fox News announced it had hired the firm of Paul, Weiss, Rifkind, Wharton and Garrison (Paul Weiss) to defend the network in its many harassment lawsuits shortly after terminating Epstein, Becker and Green. Paul Weiss is the same firm that was hired by Fox News' parent company, 21 Century Fox, to conduct an "independent", internal investigation into Fox News, Roger Ailes, Bill O'Reilly and the multitude of harassment, intimidation and hostile workplace claims of over two dozen women. Realizing the terrible optics of employing the firm that was supposed to be neutral in its internal investigation, within less than 72-hours Fox News quickly fired Paul Weiss and currently pays several firms to defend its many lawsuits for sexual harassment, retaliation, hostile workplace and racial discrimination, including Dechert, LLP.

Both Defendant Ailes (estate) and Defendant Shine were fired by Fox News Channel for the exact reasons stated by Ms. Tantaros in her two complaints. Shortly after their terminations, Fox News dropped its decision to legally defend ex-CEO Ailes, and 10 months later, upon firing Shine, they nixed their legal defense of the former Co-President, forcing both men to retain new counsel. When Ms. Tantaros initially filed her State Court complaint Fox News called her "a liar". Since then, dozens of women have publicly followed suit and corroborated Ms. Tantaros's claims. It also was made public that Fox News is currently under federal investigation by multiple agencies for the exact same behavior Ms. Tantaros alleges, an inconvenient, well-documented truth that Fox News continues to ignore. Currently, _only two_ Defendants remain employed at Fox News since both of Ms. Tantaros' complaints were filed. This demonstrates that Ms. Tantaros has a

history of being out-front when it comes to speaking truth and exposing the network for its sickening misdeeds, despite its history of extreme and outrageous retaliatory behavior deliberately designed to distress, defame, and destroy the careers of any current or former employee who stands up to the media giant.

Instead of directly addressing the facts and first-hand testimony outlined by Ms. Tantaros, reported and supported by *the facts*, statements by other Fox News employees, highly-acclaimed investigative journalists, *and most importantly - their own shareholders* - all Fox News Defendants misquote, misdirect and omit the facts in PAC. In point of fact, the Derivative Shareholder Complaint (filed *after* both Tantaros Complaints) contains an essential carbon copy of facts from both Ms. Tantaros' New York State Court Complaint (currently in arbitration) which charges Fox News with rampant sexual harassment, retaliation and hostile workplace, and Plaintiff's Amended Federal Complaint, which charges Fox News Defendants with different causes of action: violating The Wiretap Act, The Stored Communications Act, and Intentional Infliction of Emotional Distress. Fox News Channel, Roger Ailes or its board members did not seek to dismiss the Shareholders Derivative Complaint, nor did they call the charges "outlandish", and they did not seek sanctions against their Counsel, as they have done with Ms. Tantaros. Rather, they settled the lawsuit, that corroborates all of Ms. Tantaros' claims for $91 million on November 20, of 2017.

## C. Defendants' Litany of Ever-Changing Defenses

In each Motion to Dismiss, Counsel' for Fox News and Shine call Ms. Tantaros' publicly confirmed claims of surveillance "outlandish" and "speculative" still failing to acknowledge the concession by notorious private investigator, Bo Dietl, made said admission in the New York Times and published on June 18, 2017, stating that he was **"hired by Fox News to dig up dirt on Ms. Tantaros" and employed a twelve-man team to conduct surveillance operations against her, and "spy on her"**. Three weeks after submitting response papers denying that Fox News had ever conducted surveillance of any kind against Ms. Tantaros, Fox News Defendants also deliberately ignored the *facts* laid out by their own Shareholders in the Shareholder Derivative Complaint outlining (and passionately criticizing) Fox News' budget for intimidation campaigns and surveillance that were used against Ms. Tantaros, as well as direct quotes from Fox News employees cited in the Shareholder Complaint who specifically outline exactly how the cameras were set up and where, and the monies directed to fund the exact intimidation operations of physical, electronic and social media smear campaigns conducted against Ms. Tantaros, spearheaded by former CEO Roger Ailes (who was fired for these exact behaviors), ordered by ex-President, Defendant William Shine and carried out by Irena Briganti,

Oddly, Peter A. Snyder, (Disruptor) has not been accused of violating the Wiretap Act or the Stored Communications Act, yet he continues to deny both causes of action as a way

to misdirect and avoid addressing the third, clearly argued cause of action by Ms.
Tantaros… a claim against him for the intentional infliction of emotional distress by
using digital means to harass, discredit, eroticize and distress her and utilize information
illegally obtained by Fox News and Shine to do so.

It's critical to note that in their Motion to Dismiss Fox News Defendants switch stories
yet again, specifically with regard to surreptitious surveillance. In their original response
to Ms. Tantaros, Fox News Defendants alleged her claims were a "paranoid fantasy." At
the November 30th hearing, Counsel for Fox News, Andrew Levander, told your Honor
that the pleadings in this case were "outrageous" and in his Motion to Dismiss Shine calls
them "fantaisical." Fox News Defendants now concede Ms. Tantaros was correct about
her surreptitious surveillance claims in her office at Fox News and during the bi-annual
trunk show (where she had private conversations and disrobed daily) by not flatly
denying there were, in fact, cameras in her office and in other areas such as abandoned
offices and conference rooms where talent disrobed, and by weakly stating "there is no
common law duty to privacy in the workplace, with the exception of specifically
designated areas where employees may legitimately expect same.., such as restrooms and
showers." This defense is as preposterous as it is contradictory from their February 7th,
2017 letter and all statements both publicly and in legal filings to this Court made prior.
In the words of William Penn, "naked truth needs no shift."


## ARGUMENT

### A. Legal Standard

In reviewing a Motion to Dismiss, the courts assume that all well-pleaded factual
allegations are true and draw reasonable inferences in the plaintiff's favor. *E.E.O.C. v.
Staten Island Savings Bank*, 207 F.3d 144, 148 (Second Cir. 1999)(quoting Conley v.
Gibson, 355 U.S. 41, 45, 46 (1957). Rule 12(b)(6) and *Bell Atlantic Corp v. Twombly*,
550 U.S. 544 (2007) merely require that a complaint's well-pleaded facts, taken as true,
provide "plausible" grounds for relief. All factual allegations in the complaint and all
reasonable inferences, are taken as true, and the allegations are construed in the light
most favorable to the non-moving party. *Moss v. Secret Serv.*, 572, F.3d 962, 967, 969
(9th Cir. 2009).

At this early pleading stage, Ms. Tantaros' claims must pass only the "speculative level,"
which she has accomplished.  *See Luis v. Zang, 833 F.3d 619, 630, (6th Cir. 2016)*
(denying a motion to dismiss on a section 2511 claim).

Dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim is
appropriate when "it appears beyond a doubt that the plaintiff can prove no set of facts
that would entitle him to relief." *See Harris v. City of New York*, 186 F.3d 243, 250, (2nd
Cir. 1999) *(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).* The appropriate inquiry

is not whether a plantiff is likely to prevail, but whether she is entitled to offer evidence to support her claims. *See Chance v. Armstrong*, 143 F.3d 698, 701 (2ⁿᵈ Cir. 1998).

## B. The First Cause of Action States a Claim for Violation of the Wiretap Act

Fox News Defendants claim Ms. Tantaros "still does not allege that [Defendants] obtained her private emails, did anything with her private emails [or] explain in this claim how trying to gain access to her private emails by hacking her computer [or Blackberry] is actionable under the statute" when Ms. Tantaros states very clearly in her Amended Complaint how Fox gained access to her personal computer and all of her passwords, manually removed her firewall, and placed malware on her computer (Id. 11, 12) that gave Fox access to remotely access or monitor Ms. Tantaros' communications.

Ms. Tantaros included the irreputable forensic analysis and expert testimony of Cycura, one of the world's foremost cybersecurity firms (whose primary clients include the FBI, DHS, and many NATO-aligned intelligence agencies) that "malicious software was found in the downloads directory on Ms. Tantaros' computer and according to the run activity history, had been executed on the system." In simple terms, this is not something that could have downloaded by surfing the Internet. It would have had to have been placed on the laptop deliberately for the purpose of accessing the information on the device remotely and in real time. Fox News was the only party to have access to Ms. Tantaros' laptop to download this unique, non-commercial malware. *Plaintiff deliberately has chosen to save the full Cycura report for trial, but Plaintiff *is more than willing to submit a copy to His Honor upon request.* While it is lengthy and incredibly complex to the lay-person, it outlines the very technical findings and how Fox accessed Tantaros' laptop.

Cycura also concluded that "if any agent at Fox News had access to her computer for system updates, or any other reason at any time, between September 28, 2015 and April 25, 2016 then they would have known her password universally." Ms. Tantaros stated that an employee of Fox News did have access to not only her laptop, but also her Blackberry on a regular basis. (Id. 12.) This IT employee, who inexplicably uses an alias "Felipe Tognarelli" (Tognarelli), as opposed to his real name, Felipe Verduba, was in charge of "regularly" handling Ms. Tantaros' Blackberry and would have had access to her laptop on August 6, 2015. He also had Ms. Tantaros' blackberry in his possession "often"…"for hours, even days at a time." Tognarelli also boasts that he has completed several hacking courses over the past years (Id. 12). It was inferred in the Amended Complaint that it was Fox News who placed the malware on Ms. Tantaros' computer, had the means and motive to do so, and the information garnered from the illegal gathering of information was disseminated via online social media campaigns using sock puppet media accounts, conducted by Pete Snyder and Disruptor, and placed in articles on both 'real' websites and custom-prepared, fake news sites created by Fox New's Black Room employees and Media Relations Department lead (and driven) by Irena Briganti.

Insisting that the Daniel Wayne Block Twitter account is now "discredited" or a "scheme" is wishful thinking on behalf of Counsel for Fox News Defendants. The Block account is an exemplar to how they were using illegally intercepted communications. While the Plaintiff's Amended Complaint cites two examples for reference, it does not in any way abandon all prior examples – the references to Colorado with elk, the bunnies, Disneyland, lions, jets, were not *"all* harmless." They supported the claim that Fox News was surveilling Ms. Tantaros and disseminating her personal information via that account. While not properly explained by prior Counsel, the images on that account – even ones that were Tweeted more than once – *did not precede Ms. Tantaros' private conversations about these subjects*. Just because the tweets "were not addressed to Plaintiff" (the proper terminology for someone with knowledge of how Twitter works would be "tagged") does not mean Ms. Tantaros would not see them. Mr. Block "tagged" Ms. Tantaros in a tweet by inserting her Twitter handle @andreatantaros once. This prompted her to follow his account closely as she was doing to most accounts she suspected to be sock puppets, bots or professionally managed. By stating Block's tweets demonstrated "that Mr. Block had tweeted the same of similar images as the ones annexed to the original Complaint many, many times and that he had done so weeks or months before the allegedly intercepted telephone calls, as well as afterwards" (Id. is simply Counsel for Defendant's trying to confuse the Court.

Though Twitter has typically been uncooperative in the past in responding to legal or law enforcement requests, a subpoena of that Twitter account and its users (provided they were not using a virtual private network, or non-static IP as Fox News and its Contractors have been known to do) will show the IP addresses of those publishing the information.

Fox News also violated The Wiretap Act because, while it did have authority to view her work email, it did not have prior consent to access Ms. Tantaros' personal Gmail account or the contents therein stored on her work Blackberry. Nor did Ms. Tantaros give Fox prior consent to utilize the microphone and camera on the Blackberry as a recording device, which they did. Cycura found that "Fox was using an outdated operating version of the Blackberry that enabled them to turn on the microphone and camera of the device at will." (Id 14, Exhibit 1 and 3 of the Amended Complaint). Regarding Fox News allegations regarding Tantaros' Blackberry and work of Cycura, Inc". Dechert and Fox have certainly proved themselves formidable at being unnecessarily abrasive. I only wish they applied the same standard to reading retention, cyber-security, and the truth.

In their Motions to Dismiss Fox News Defendants made the erroneous claim that Cycura's report "does not rule out other possibilities, including that Plaintiff deleted the data herself." (Id. para 9) Here, Counsel for Fox Defendants demonstrate their gross deficiency of knowledge with regard to technology and the cyber arena. Under the heading; **Alleged Blackberry Wiping**, I must remind Dechert and Fox that *they have already admitted to this act on the record.* And digging further into Fox Defendants'

claims, they purposely misdirect cyber-sec information far above their understanding as their sole means of defense.

For example, Fox Defendants should already know that only the System Administrator has the ability to delete data from the "business side" of the Blackberry device... and deleted data from the Talent's "personal side" isn't even safe, as it too can be retrieved by the Administrator. Hence Ms. Tantaros' allegations.

It would also be illogical that Ms. Tantaros would delete the data herself, even if she did have the ability, as the business side of the device contained a multitude of critical emails that would be necessary for her to retain as evidence to support her harassment, retaliation and hostile workplace allegations. Moreover, Counsel for Fox News Defendants conceded orally that Fox did, in fact, wipe Ms. Tantaros' Blackberry.

In a letter to Your Honor dated February 7th, 2018, Counsel for Fox News Defendants are technically and factually incorrect again. When trying to defend the allegation that Fox News remotely turned on the microphone and camera on Ms. Tantaros' Blackberry, they claim that "apart from the purported conclusion does not appear in *any* of the three forensic reports annexed to the proposed amendment", Counsel displays their incompetence in this arena by failing to understand that this is a well-known fact, and common knowledge of the capabilities of the Blackberry, especially to any tech savvy user or Administrator. They showcase their deficiency in this arena once again by stating the forensic report in Ms. Tantaros' Amended Complaint "describes a capability that would have existed in every Blackberry device." That is true, however, the vast majority of companies would not use the Blackberry device given to their employees as a spy tool using the Administrative-driven microphone and camera capability. When it was found that the Blackberry could be used as a surreptitious surveillance device, across the board, employee outrage drove Blackberry to upgrade its operating system (OS) repeatedly, each time giving more privacy protections to the user, not the Administrator. With each upgrade, the protections have become stronger. However, Fox has chosen not to upgrade its employee Blackberries to the most recent software, opting to instead continue disbursing Blackberries to its employees with an OS that permits the Administrator (Fox News) to turn on the camera and microphone and utilize it as a way to surveil its employees without their prior consent or knowledge.

While Fox News contends in its Motion to Dismiss that it did not wipe her Blackberry, forensics completed by Cycura indicate Fox News did indeed wipe Ms. Tantaros' Blackberry, and Fox News' own Counsel has previously orally admitted this fact. To the Court, they now deny this fact, however the forensics are irrefutable and, as the case moves forward will reveal exactly how and for what purpose they handled Ms. Tantaros' Blackberry via discovery, depositions and expert testimony.

Plaintiff clearly states a claim for violation of the Wiretap Act by citing a public admission by Fox News' head of engineering, Warren Vanderveer, referenced in Fox Shareholder's Derivative Complaint, that Ailes instructed him to "install a CCTV system

that allowed Ailes to monitor *Fox offices* [emphasis added] studios, greenrooms, the back entrance and his home." (Id. para. 4, 14.) Having cameras installed in talent offices without prior consent from Ms. Tantaros clearly alleges that Fox was collecting her audio and visual imagery *as they were occurring*. Intercepting communications contemporaneously is absolutely a violation of the Wiretap Act.

## 2. Plaintiffs Amended Complaint States a Claim for Violating the Stored Communications Act

Plaintiff's Amended Complaint goes into specific detail with regard to motive, means and exactly when and how Fox News and Shine would have obtained access to her personal Gmail account, during the Facebook and Twitter Live Tweet Session during the presidential debate. (Dkt 124-2 at para. 26.) Though both Fox News Defendants and Shine contend that Plaintiff fails to state a claim that these Defendants accessed her Gmail, such a claim is implied. No other explanation exists for Fox News admitting to having in their possession hundreds of emails from Tantaros' personal email accounts (one account of which they would have no knowledge). Nor is there any other explanation for the malware placed on Tantaros' computer that allowed Fox to access her passwords and lead to the disabling of her firewall (something that would have to be done manually). Only Fox had Ms. Tantaros' personal laptop in their possession and would have access to her gmail as it was on her Fox News device. By contending Ms. Tantaros' Blackberry is essentially fair game because it was a work device does not give Fox authority to access her personal Gmail, which was kept on the device. Fox News and its current CEO, Rupert Murdoch's, lengthy history of hacking and convictions resulting is proof positive of this propensity to surreptitiously access the communications of its' targets (of which Ms. Tantaros IS one) seem to also escape the Defendants.

In support of the assertion that access to Tantaros's laptop or device does not count as the SCA violation, Fox Defendants cite 4 Courts of Appeals decisions (3rd, 5th, 9th and 11th Circuits).

First, the Southern District of New York has held that an unauthorized access to communications on a plaintiff's personal computers is subject to liability under the SCA. *Snyder v. Fantasy Interactive, Inc.*, 2012 WL 569185, at *3 (S.D.N.Y. Feb. 9, 2012); *see also Penrose Computer Marketgroup Inc. v. Camin*, 682 F.Supp.2d 202, 210–211 (N.D.N.Y.2010) (where employer was authorized to access plaintiff's computer for limited purpose, allegation that he exceeded authorized scope and accessed plaintiffs e-mail was sufficient to survive a motion to dismiss). This Court (and the 2nd Circuit) has not accepted the rule that the electronic storage must be on "facilities" operated by email service providers. *See Snyder*, 2012 WL 569185, at *3 (plaintiffs' allegation that defendants accessed communications occurring on plaintiffs' personal computers stated a claim under the SCA).

Fox News was never authorized to access her personal device or content therein for 'other purposes'. Following, a rare malware not available on the open market had been placed on her laptop, granting the ability to access her communications, including her Gmail email. (*Id.* at para. 29-30). Fox News, if it had access to her computer between

9/28/15 and 4/25/16 (and after). would have known her password universally, including password to her Gmail. (*Id.* at para. 30). It is further alleged that Ailes and Shine on behalf of Fox News directed a person paid by Fox News to hack Tantaros's personal computer and gain access to her private emails, texts and communications. (*Id.* at para. 71). Fox News had the ample motive and means to access her communications occurred through her personal devices and emails: *to wit*, to retaliate against her for exposing Roger Ailes as the sexual predator he is, Shine for his repeated attempts to cover for his boss, Ailes', grotesque misdeeds, and Fox News and Shine for their campaigns against women who complained of Roger Ailes' sexual harassment, which Shine lead, and which subsequently lead to his ouster from the company, among other things. (*Id.* at para. 26, 28, 31, and 43.) Tantaros clearly identified the instances where Fox News accessed her personal laptop and accessed her personal email account via her personal laptop and that these instances were in real time and ongoing after her employment given the information disseminated through hundreds of thousands of sock puppet accounts. These allegations are sufficient to state a claim under the SCA. *Snyder*, 2012 WL 569185, at *3; *see also Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 555 (S.D.N.Y. 2008) (the unauthorized act of logging onto Microsoft's Hotmail system and viewing them directly off of Hotmail's system would be a violation of the SCA). Therefore, Ms. Tantaros has sufficiently stated a claim under the SCA.

### 3. Plaintiffs States a Claim for Intentional Infliction of Emotional Distress

Ms. Tantaros cites numerous claims that point to behavior by *all* Defendants that warrant a claim of intentional infliction of emotional distress (IIED).

Fox News, Ailes and Shine Ordered the Hacking of Ms. Tantaros' personal laptop and placement of malware on her computer that allowed Fox News and Shine to monitor her communications and personal Gmail.

Fox News and Ailes deliberately distributed Blackberry's that utilized an outdated operating system allowing the Administrator (Fox News) to remotely turn on the camera and microphone on the device to use it as a tool to spy on her without prior consent or knowledge.

Fox News and Ailes instructed that cameras and microphones be installed in talent offices, including Ms. Tantaros' office, allowing them to record and film Ms. Tantaros as she had private conversations and disrobed on a daily basis, contemporaneously, and with the knowledge of Fox Exectutives, including Shine and Briganti.

Fox News, Ailes and Shine paid to have ex-NYPD officer, Bo Dietl, and his private investigative firm, employ a twelve-man team to physically surveil Ms. Tantaros in New York City and at her vacation home in New Jersey. Dietl and his men physically surveilled Ms. Tantaros outside her apartment, follow her, "spy on her", track down people close to Tantaros, including anyone romantic from her past, eavesdrop on her conversations and "dig up dirt" to "leak" to media publications, as Dietl admitted to the New York Times in an article published on June 18, 2017.

Tantaros specifically stated she "easily identified the driver of one of the SUVs" ordered to surveil her in Fall of 2016 as one of Ailes' well-known security detail driving the vehicle and following her when she was out for a run near her beach home, more than two and a half hours away from New York City. Fox News Defendants write "in one undated instance, thought she recognized the driver…mostly she regurgitates charges made against Fox News by journalists and others." Besides deliberately misquoting Ms. Tantaros, they seek to minimize the potency of her claims.

By generalizing "others", Fox continues to ignore the lawsuit filed by their largest shareholders, its similar allegations to Plantiff's Amended Complaint, and the multiple federal investigations currently underway into Fox News Channel by multiple government agencies including the FBI, the U.S. Postal Service, the NY State Human Rights Investigative Division and the Department of Justice for the causes of action cited in Plaintiff's Amended Complaint. Ms. Tantaros has been cooperating with all agencies who have asked her for multiple interviews, as Fox is well-aware.

Information garnered from aforementioned surreptitious and illegal surveillance both electronically and physically was then given to Defendants Irena Briganti and the Fox News Media Relations Team to place in articles designed to discredit, distress and destroy Tantaros' reputation. Other information about Ms. Tantaros was either fed to, or completely concocted by Fox News employees working in and for the company's Black Room to be placed in articles on fake websites created by Fox News or its paid Contractors such as Pete Snyder and his company, Disruptor. Similarly, illegally obtained personal information or purely abhorrent, profane or highly sexual messages were posted en masse on Ms. Tantaros' social media pages by thousands of sock puppet accounts, created and managed by Fox News at the behest of Ailes, at the direction of Shine and carried out by Briganti and Snyder, specifically for the purpose of eroticizing, emotionally damaging and distressing Ms. Tantaros.


## THE MOTIONS TO DISMISS

I.       **Fox News Defedants' Motion to Dismiss**

A.   **Fox News Defendants' Argument to Dismiss Due to Failure to State a Claim under the Wiretap Act (18 U.S.C.  2511) Lacks Merit**

Fox Defendants argue that Ms. Tantaros failed to allege with sufficient facts that a communication was intentionally intercepted through the use of a device under section 2511. They claim Ms. Tantaros has not identified a single one of her communications that were intercepted, much less by whom. (Dkt 143 at 6.) Such arguments lack merit. In her Amended Complaint Ms. Tantaros alleges that "Fox News" asked her to bring in her personal laptop for a Fox-specific social media event and shortly thereafter her personal Gmail had been accessed multiple times (Dkt 124-2 at para. 26, 28). A malware (not available to the average consumer or from surfing of the web) had been placed on her laptop granting the specific ability to access her

communications, including her Gmail account. (Id. At para 29-30). Her Amended Complaint further alleges that her blackberry was regularly handled by a Fox News employee who inexplicably uses an alias and advertises he takes hacking classes, and that after suspending her from the air, while still an employee of the network, Fox News had wiped her blackberry remotely. (Id. at para 26-27, 32-33). Fox News has a publicly proven history, and the ample means and motive to access/and or wipe her verbal and electronic communications through her personal laptop, Gmail and her blackberry: to wit, to retaliate against her for exposing Ailes as the sexual predator he is, Fox News for its numerous campaigns targeted at women who complained of Ailes' sexual harassment (Id. para 26, 28, 31 and 43) and following her refusal to submit to remain silent and settle with the network and instead file a lawsuit, access to all of her communications and deletion of critical and damaging information and evidence would weaken her position and give Fox News the upper hand in litigation. She further alleges that at the direction of Ailes and Shine, on behalf of Fox News, directed an individual paid by Fox News to hack Tantaros' personal computer and electronics and gain access to her private emails, texts and communications. (Id. at para 71). By all reasonable inference, there is unequivocally no doubt that that Ms. Tantaros has alleged that it is "Fox News" that has "intercepted, endeavored to intercept or procure[ed] any other person to intercept" her communications, 18 U.S.C. 2511 (1)(a); see *Luis vs. Zang*, 833 F.3d 619, 626, (6th Cir. 2016) (in denying a motion to dismiss a plaintiff's section 2511 claim, courts "must accept the complaint's well-pleaded factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.")

1. In support of their argument, Fox Defendants cite, most notably: JCB Holdings NY, Molefe, Campell, and Martinez. However, these cases do not support their proposition for the reasons set forth below:

*JCB Holdings* is inappropriate here both factually and on legal grounds. In that case, it was an employee who was accused of accessing her employer's computer for improper purpose. The employer sued the employee under the Computer, Fraud and Abuse Act ("CFAA"), 18, U.S.C. §§ 1030 *et seq.*, the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and several common law claims. The key issue in that case was whether or not the employee exceeded authorized access, or acted without authorization, in accessing the employer's computer. *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514 (S.D.N.Y. 2013). None of these facts apply in the instant case, and none of the claims in *JBCHoldings* overlap with Ms. Tantaros' claims asserted in her Amended Complaint.

Fox Defendants' reliance on *Molefe* is also misplaced. The plaintiff's section 2511 claim in *Molefe* is based "generalized, highly conclusory allegations that Verizon snoops on or wiretaps its customers" and as a result, he suffered a handful of scattered service interruptions and certain information migrated to his wife's devices. *Molefe v. Verizon New York, Inc.*, 2015 WL 1312262, at *3–4 (S.D.N.Y. Mar. 24, 2015). The *Molefe* court concluded that plaintiff failed to allege a sufficient factual basis to allow the court to draw the reasonable inference that his phone and internet services were wiretapped. *Id.* In contrast to the generalized allegations concerning "all Verizon customers" in *Molefe*, Ms. Tantaros'

allegation is far more specific. She alleged that Fox News targeted her specifically for wrongful reasons, accessed her personal computer and Gmail account, and remotely accessed and wiped blackberry (a previous concession made by Fox News' own Counsel). (Dkt 124-2 at para. 26-43.)

Fox Defendant's reliance on *Campbell* is equally misplaced. In *Campbell,* there was no factual allegation whatsoever to support plaintiff's conclusory allegation that defendants invaded her telephonic and computer systems and used personal information to defame her. There was no allegation as to what telephonic and computer systems were affected, what information was intercepted, or how the defendants used the unidentified information to defame her. As discussed above, Ms. Tantaros' allegations are specific as to Fox Defendants involvement.

Likewise, *Martinez* carries no weight here, as that case is wholly unrelated to the pleading standard for section 2511. A dismissal of section 1983 claim based on the failure to allege private action under color of state law has no applicability to the section 2511 analysis here. *Martinez v. Queens Cty. Dist. Atty.*, 2014 WL 1011054, at *15 (E.D.N.Y. Mar. 17, 2014).

For the foregoing reasons, Fox Defendant's motion to dismiss Ms. Tantaros' section 2511 claim should be denied.

### B.   Fox Defendants Claim of Failure to State Claim Under the Stored Communications Act (the "SCA") is Wrong on the Law

Fox Defendants argue that Tantaros's SCA claim is solely based on the alleged access to her Gmail account and that access to her computer laptop or personal device does not suffice because the SCA applies only to electronic storage on facilities operated by electronic communications service providers, such as Google. They further argue that Tantaros has not identified a single instance in which the Fox Defendants accessed her Gmail account. Tantaros currently has in her possession hundreds of emails produced by Fox from both Tantaros' Gmail and another personal email that Fox did not know existed, and will be requested in discovery.

Fox Defendants are wrong on the law. In support of the assertion that access to Tantaros's laptop or device does not count as the SCA violation, Fox Defendants cite 4 Courts of Appeals decisions (3rd, 5th, 9th and 11th Circuits), as well as the purported acknowledgment of Tantaros former counsel made at a prior court hearing. (Motion at 16-17.)

First, the Southern District of New York has held that an unauthorized access to communications on a plaintiff's personal computers is subject to liability under the SCA. *Snyder v. Fantasy Interactive, Inc.*, 2012 WL 569185, at *3 (S.D.N.Y. Feb. 9, 2012); *see also Penrose Computer Marketgroup Inc. v. Camin*, 682 F.Supp.2d 202, 210–211 (N.D.N.Y.2010) (where employer was authorized to access plaintiff's computer for limited purpose, allegation that he exceeded authorized scope and accessed plaintiffs e-mail was sufficient to survive a motion to dismiss). This Court (and the 2nd Circuit) has not accepted the rule that the electronic storage must be on "facilities" operated by email service providers. *See Snyder*, 2012 WL 569185, at *3

regular "office space" where the workers are not expected disrobe on a regular basis for the purpose of carrying out their jobs. It is also absurd to argue Ms. Tantaros had no expectation of privacy when she was having conversations with high-level sources (both on and off the record) for the purpose of her job as a journalist. If her sources (politicians, political staffers, presidential candidates, members of the media, etc.) believed that none of their conversations were private, Ms. Tantaros could not reasonably perform her job as a journalist, writer and columnist successfully in gathering information and conducting interviews. Not only would she not be able to conduct such interviews and guarantee ethically to her sources their information was protected, but no sophisticated source would speak with Ms. Tantaros knowing their conservations were not private. (Id. at 8, 21, 22, 32.) Just as preposterous are Fox News claims that "Plaintiff does not assert, however, that she ever observed cameras in her office or any other office." (Id at Motion, pg. 12). These cameras were hidden and would not be visible to the human eye, hence the claim that she was being filmed and recorded without her prior knowledge in her office, or Fox offices, that regularly doubled as "fitting rooms."

Ms. Tantaros' allegations of Fox News and its paid Contractors conducting social media and online intimidation campaigns using planted stories about Ms. Tantaros on fake websites created and managed by Fox News, through allied media partners, via social media influence campaigns using hundreds of thousands of fake social media profile spewing vile content on her social media pages, and via advertising on allied or conservative media partners paid for by Fox News and/or its paid Contractors constitutes atrocious, outrageous and extremely emotional distressing conduct via digital means.

For the foregoing reasons, Fox Defendant's motion to dismiss Ms. Tantaros' IIED claims should be dismissed.

## B. Defendant William Shine's Motion to Dismiss

### A. Defendant Shine's Motion to Dismiss is Wrong on the Law and Highly Implausible for Ailes' ex-Top Lieutenant

Defendant Shine worked at Fox News for twenty years, rising to the level of Co-President and Chief lieutenant for axed-CEO Roger Ailes before Shine's firing in 2017, for the exact same inappropriate and illegal behavior claimed by Ms. Tantaros and other female employees. It's laughable for Shine to proclaim his innocence after acting as the right-hand man and enforcer for one of the most vindictive sexual predators in American corporate history - Roger Ailes.

For almost two decades, Shine went as far as to arrange meetings for sex between Ailes and one of his victims, ex-Fox employee Lori Luhn, then setting up appointments for Luhn to seek psychiatric help when she threatened to go public.

Being the repository for Ms. Tantaros' multiple complaints of sexual harassment, retaliation and hostile workplace, Shine did nothing but insist Ms. Tantaros "not fight this" and "let this one go" when she formally complained to Shine, quoting "[Ailes] was a powerful man." Shine did nothing but exacerbate, and/or conceal, `Ms. Tantaros' multiple complaints, and execute the orders of Ailes that created the hostile, retaliatory and overtly sexual workplace at Fox News that

directly targeted Ms. Tantaros and other woman female employees who tried to formally lodge a complaint or take issue with the network over sexual harassment.

Shine was dropped by Fox News Legal Counsel immediately upon his firing, forcing him to retain a criminal defense attorney, Ms. Marion Bacharach, since he is named in numerous harassment, retaliation, hostile workplace and racial discrimination actions, and Fox is the subject of numerous federal investigations. Shine was so ensconced in the outrageous behavior beyond simply riding shotgun to it, that he was terminated from the company to restore its image and limit its liability and exposure.

In his motion to dismiss, Shine parrots Fox News Defendants, and incorrectly applied the defense that a federal complaint must contain sufficient factual matter to state a claim that is plausible on its face." (*Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007), when Ms. Tantaros has submitted a dearth of factual matter that are not only plausible, but irrefutably true. In reviewing a Motion to Dismiss, the courts assume that all well-pleaded factual allegations are true and draw reasonable inferences in the plaintiff's favor. E.E.O.C. v. Staten Island Savings Bank, 207 F.3d 144, 148 (Second Cir. 1999) (quoting Conley v. Gibson, 355 U.S. 41, 45, 46 (1957). For this reason alone, the Shine Motion to Dismiss should be denied.  Moreover, at this early pleading stage, Ms. Tantaros' claims must pass only the "speculative level," which she has accomplished. *See Luis v. Zang, 833 F.3d 619, 630, (6th Cir. 2016)* (denying a motion to dismiss on a section 2511 claim).

Rule 12(b)(6) and *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007) merely require that a complaint's well-pleaded facts, taken as true, provide "plausible" grounds for relief. All factual allegations in the complaint and all reasonable inferences, are taken as true, and the allegations are construed in the light most favorable to the non-moving party. *Moss v. Secret Serv.,* 572, F.3d 962, 967, 969 (9th Cir. 2009).

Dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim is appropriate when "it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief." *See Harris v. City of New York*, 186 F.3d 243, 250, (2nd Cir. 1999) *(quoting Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). The appropriate inquiry is not whether a plaintiff is likely to prevail, but whether she is entitled to offer evidence to support her claims. *See Chance v. Armstrong*, 143 F.3d 698, 701 (2nd Cir. 1998).

Plaintiff does not allege Shine himself placed malware on her laptop or phone, accessed or hacked her personal email (including Gmail), nor does she allege that Shine personally surveilled Ms. Tantaros. His Motion to Dismiss misdirects and deflects by denying he himself committed these acts.

Shine acted in an enforcer capacity where he had direct knowledge of all of these clearly pled causes of action and directed the behavior, including the surreptitious access of her personal email, the wiping of her Blackberry and had a prominent role in the planting of negative articles on Ms. Tantaros by directing Briganti and her team, and by ordering and overseeing the social media campaigns carried out by paid contractors such as Snyder and Disruptor aimed at targets of Ailes, specifically Ms. Tantaros.

After her suspension at Fox News, Shine was well-aware of all information illegally being harvested from Ms. Tantaros' communications, as well as the Black Room in their activities against Ms. Tantaros, including the violation of the Wiretap Act, the surreptitious access of her laptop and blackberry which produced information that could be, and was, used against Ms. Tantaros, and the cameras placed within Ms. Tantaros' office which monitored Plaintiff's conversations and filmed her disrobing in real time, a violation of the SCA.

*Yet he did NOTHING.*

**The Facts Against Shine's Infliction of Emotional Distress Are Well Plead**

Most notably, Defendant Shine participated in the intentional infliction of emotional distress by working directly with Snyder. "Snyder would disclose to Tantaros more details of his work for Fox News. Specifically, how these [social media intimidation and smear] campaigns were executed. "Ailes calls [Bill] Shine with a target. Shine then calls me to 'make some noise' and 'stir up thousands of social media accounts against the target.'" (Id. at para. 23) In Plaintiff's Amended Complaint, Ms. Tantaros produces emails from 2014, undisputed by Shine or Snyder, that showcase Shine's *direct* involvement with Snyder and Disruptor, Inc., in executing the orders of Ailes and continued into the years that Snyder claims he ceased work for Fox News conducting these types of campaigns. (Id at Motion, pg. 24.) Snyder and Disruptor Inc. worked closely with Shine on these operations until his firing in May of 2017, as Disruptor has a current contract with Fox News. Only a rigorous discovery process can truly unearth precisely how big of a role Shine had in the leadership of these media smear campaigns and the social media, sock-puppet operations where Shine fed both Briganti and Snyder the personal information illegally accessed from Ms. Tantaros' communications to circulate.

It is very clearly stated and inferred from Plaintiff's Amended Complaint that Ms. Tantaros was a target of these campaigns during and post her employment with Fox News, and it was Shine who put Ms. Tantaros in the crosshairs at the behest of Ailes. Salon's investigative piece entitled: **"Ailes' Fake News Empire: Fox News Chief Presided Over a Panoply of Fake Websites"** referred to "Bill Shine, the network's [former] Co-President and former right-hand man to Ailes was the primary point of contact…" to Synder's previous company, New Media Strategies, (Id at Motion, pg. 23)…the company has been tied to perverted and leery blogs and websites that sexualize Fox News female talent and conduct negative social media campaigns using hundreds of thousands of sock puppet, or fake online profiles.

Shine cannot be "the man who knew everything" (according to *Vanity Fair*), but now knows nothing, especially after his very public termination and Fox's nixing of their legal defense of him. For the foregoing reasons, Fox Defendant's motion to dismiss Ms. Tantaros' Wiretap, SCA and IIED claims should be dismissed.

### C. Defendant Peter A. Snyder and Disruptor, Inc.'s (The Snyder Defendants) Motion to Dismiss

#### A. Plaintiff's Amended Complaint Clearly States an IIED claim Against Snyder

Pete Snyder has a long history with Fox News that spans almost two decades. Though his Counsel has contradicted his role with the network since the filing of this lawsuit, one fact remains constant: his companies have worked for Fox News and reported directly to Bill Shine in the construction of fake websites that smear, sexualize and ruin the reputations of Fox female talent, and he has acted, by his own admission to Plaintiff, as a Contractor who controls hundreds of thousands of fake social media profiles for the purpose of inflicting emotional distress, causing reputational harm or manipulating the public's perception of the target chosen by Fox News. To allege that he is an innocent victim when he has made a lucrative career out of ruining the lives of human beings or "disrupting" companies or individuals reputations and thus their capital and brand is ludicrous and a blatant lie, and I remind his Honor of Snyder's website, constructed at the behest of Fox News, Ailes and Shine: "www.GirlsofFoxNews.com." Plaintiff's Amended Complaint references in specific detail what this man is capable of - calling Fox female employees "bimbos" and "milfs". (Id at pg 23.)

Snyder's claim that he didn't hack Ms. Tantaros' phone or surveil her – physically or digitally – is a disingenuous distraction designed to misdirect, as Plaintiff has not accused Snyder of such behavior.  Similarly, to state in his Motion to Dismiss that "Mr. Snyder doesn't even know Daniel Wayne Block" (the author of an account monetized by Block, a real person), is also additional misdirection. Snyder would not know Mr. Block nor did Ms. Tantaros ever allege that Snyder had any involvement with Mr. Block or his account in her Amended Complaint.  Snyder would not know an account holder such as Block, or the identities of those behind the sock puppet accounts as almost all are fake, and created and purchased by firms like Disruptor for highly improper – and in the case of Fox News – abhorrent and intimidating behavior. It's also highly implausible that Snyder and his former company have abandoned the fake website, and sock puppetry business after being outed by an investigative piece in both Salon and Politico that ties Snyder and his company to disgusting blogs and sites set up at the direction of Shine and Fox News. One doesn't go from being a peddler of trash to an upstanding family man, as his Counsel attempts to portray him.  Snyder sold his company, New Media Strategies, to create the appearance of clean hands so he could pursue political aspirations. After failing at a bid for Lieutenant Governor of Virginia, Snyder got back in the lurid, vindictive game of social media manipulation under the guise of an "angel" investment firm. Disruptor is anything but angelic. The company continues to do work for Fox News and was a paid contractor through the 2016 election.

As the recipient of illegally obtained information, or phony, defamatory messaging relayed to Snyder by Shine, Snyder and his past and current firm disseminate the damaging information to inflict the most intentional emotional pain via digital means, which fall exactly into the category of IIED. While the Snyder Defendants are correct in stating that there is nothing intrinsically illegal about sock puppets, it's when they are used en masse, as a weapon to saturate one's social

media pages with a barrage of posts from fake account spewing offensive, untrue and awful language that it becomes illegal.  Nothing is more extreme and outrageous than hundreds of thousands of Snyder-directed sock puppet accounts hurling profane, horrifically sexual, and defamatory language.

Snyder's attempts to paint Tantaros as a friend were also true at one point, even though he denied knowing her, or having inviting her to he and his wife's vacation home upon initial contact by Plaintiff's prior Counsel.

Their friendship ended when an inebriated Snyder tried to hit on Ms. Tantaros in front of two other houseguests in August of 2014 while his pregnant wife was sleeping, as explained in Plaintiff's Amended Complaint. That ended the friendship, despite Counsel for Snyder's phony insistence "he has always been a friend to her." This rebuffing of Snyder and ending of the friendship between Ms. Tantaros and Snyder and his wife prompted Snyder to be more than willing to take Shine's direction and make Tantaros a target of his social media smear campaigns at the orders of Ailes. His desperate, repeated attempts to demonstrate to the Court he and his wife were, for a period of time, friends with Ms. Tantaros is not up for debate. In fact, it's that friendship that lead to Snyder giving Tantaros the first-hand information in this suit.  It was when Snyder wanted to hire Ms. Tantaros in 2005 to lead his company's newly formed public affairs division, conducting the exact campaigns Plaintiff describes, and it was that friendship between Ms. Tantaros and the Snyders that informed Ms. Tantaros of Snyder's off-air work for Fox as a paid contractor and digital hitman, and the details of what companies and campaigns hire him to do. This is common knowledge for any Washington, DC beltway insider and easily exposed through discovery and depositions as the case moves forward, including a deep discovery into the financial and business link between Snyder and Fox News that exists and targets Ms. Tantaros to present, thus Plaintiff's claims are *in no way* time-barred.

Counsel for the Synder Defendants continuously swap stories about his role at Fox News.  After defending Snyder's outrageous six-figure salary with the network as a paid on-air contributor, in their most recent Motion to Dismiss the Plaintiff's Amended Complaint, Counsel foisted up an entirely new revelation: that Snyder Fox News have parted ways. (see footnote 3 in Snyder Defendants Motion, (Id at Motion, pg. 3) "Synder ceased even that on-air work [for Fox News] in 2017. This directly contradicts a later footnote cited by the Snyder Defendants (Id at Motion, para 21) where it reads, "Snyder and his Counsel have always maintained that Snyder continued to work for Fox News as an on-air contributor, even beyond 2012." Now, he is alleging he is suddenly *not* an on- air contributor and has not been since April of 2017, completely new information that his Counsel failed to mention in prior filings (this suit was filed in April of 2017) or at the November 30th hearing. Confusingly, his current Twitter profile still states he is a Fox News Contributor. For someone as savvy in social media as Snyder who tweets regularly (and controls his own social media platforms (as footnote 16 illustrates in the Snyder Defendant's Motion) it's unlikely he has failed to update his Twitter biography in the past year, particularly given this lawsuit.

Moreover, contrary to case law cited by Snyder (Fox News Defendants and Shine (Iqbal, 55 Rule 12(b)(6) and *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007) Courts merely require that a

complaint's well-pleaded facts, taken as true, provide "plausible" grounds for relief. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007).

In reviewing a Motion to Dismiss, the courts assume that all well-pleaded factual allegations are true and draw reasonable inferences in the plaintiff's favor. E.E.O.C. v. Staten Island Savings Bank, 207 F.3d 144, 148 (Second Cir. 1999) (quoting Conley v. Gibson, 355 U.S. 41, 45, 46 (1957). For this reason alone, the Shine Motion to Dismiss should be denied.  Moreover, at this early pleading stage, Ms. Tantaros' claims must pass only the "speculative level," which she has accomplished.  *See Luis v. Zang, 833 F.3d 619, 630, (6th Cir. 2016)* (denying a motion to dismiss on a section 2511 claim).

Dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim is appropriate when "it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief." *See Harris v. City of New York*, 186 F.3d 243, 250, (2nd Cir. 1999) *(quoting Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). The appropriate inquiry is not whether a plaintiff is likely to prevail, but whether she is entitled to offer evidence to support her claims. *See Chance v. Armstrong*, 143 F.3d 698, 701 (2nd Cir. 1998).

All factual allegations in the complaint and all reasonable inferences, are taken as true, and the allegations are construed in the light most favorable to the non-moving party. *Moss v. Secret Serv.,* 572, F.3d 962, 967, 969 (9th Cir. 2009). For this reason, the Snyder Motion to Dismiss must be denied.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully urges the Court to deny all Defendants Motions to Dismiss with prejudice. To the extent the Court is inclined to grant any portion of Defendant's Motion, leave to amend is requested.

Most respectfully submitted,

Andrea Tantaros, Pro se


DATED: March 23, 2018
New York, New York