UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

ANDREA TANTAROS,

                        Plaintiff,

                 - against -

FOX NEWS NETWORK, LLC, ROGER AILES, WILLIAM SHINE, IRENA BRIGANTI, PETER A. SNYDER, DISRUPTOR, INC., and JOHN DOES 1-50,

                       Defendants.

------------------------------------------------------- x

17 Civ. 02958 (GBD)

ECF CASE

ORAL ARGUMENT SCHEDULED FOR APRIL 17, 2018

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION BY DEFENDANTS FOX NEWS NETWORK, LLC AND IRENA BRIGANTI TO DISMISS THE AMENDED COMPLAINT

DECHERT LLP
Andrew J. Levander
Linda C. Goldstein
Nicolle L. Jacoby
Benjamin M. Rose
1095 Avenue of the Americas
New York, New York 10036
Tel. (212) 698-3500
linda.goldstein@dechert.com

*Attorneys for Defendants Fox News Network, LLC and Irena Briganti*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I.     Plaintiff Has Not Plausibly Alleged An Interception Of Any Communication As Required To State A Violation Of The Wiretap Act ......................................................... 2

II.    Plaintiff Has Not Plausibly Alleged Unauthorized Access To Any Stored Communication As Required To State A Violation Of The SCA .......................... 6

III.   Plaintiff Has Not Alleged Extreme And Outrageous Conduct Sufficient To State An IIED Claim ................................................................................................................... 9

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                             **Page(s)**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................... 1, 2, 8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................................. 2

*Campbell v. Aduddell*,
  No. 11 Civ. 1413, 2014 WL 4659364 (N.D.N.Y. Sept. 17, 2014) ....................................... 4

*Conley v. Gibson*,
  355 U.S. 41 (1957) ................................................................................................................ 2

*Doe v. Kaiser*,
  No. 06 Civ. 1045, 2007 WL 2027824 (N.D.N.Y. July 9, 2007) ......................................... 10

*Flamm v. Van Nierop*,
  56 Misc. 2d 1059, 291 N.Y.S.2d 189 (Sup. Ct. Westchester Cty. 1968) ............................. 9

*Guzman v. Bevona*,
  No. 92 Civ. 1500, 1995 WL 110584 (S.D.N.Y. Mar. 15, 1995) .......................................... 9

*JBCHoldings NY, LLC v. Pakter*,
  931 F. Supp. 2d 514 (S.D.N.Y. 2013) ............................................................................. 4, 8

*MacEntee v. IBM*,
  783 F. Supp. 2d 434 (S.D.N.Y. 2011), *aff'd,* 471 F. App'x 49 (2d Cir. 2012) ..................... 1

*Martinez v. Queens Cty. Dist. Atty.*,
  No. 12 Civ. 6262, 2014 WL 1011054 (E.D.N.Y. Mar. 17, 2014),
  *aff'd*, 596 F. App'x 10 (2d Cir. 2015) .................................................................................. 4

*Molefe v. Verizon New York, Inc.*,
  No. 14 Civ. 1835, 2015 WL 1312262 (S.D.N.Y. Mar. 24, 2015) ........................................ 4

*Pellier v. British Airways, PLC.*,
  No. 02 Civ. 4195, 2006 WL 132073 (E.D.N.Y. Jan. 17, 2006) ..................................... 2, 10

*Penrose Computer Marketgroup, Inc. v. Camin*,
  682 F. Supp. 2d 202 (N.D.N.Y. 2010) ................................................................................. 7

*Pure Power Boot Camp v. Warrior Fitness Boot Camp*,
  587 F. Supp. 2d 548 (S.D.N.Y. 2008) ................................................................................. 7

*Snyder v. Fantasy Interactive, Inc.*,
  No. 11 Civ. 3593, 2012 WL 569185 (S.D.N.Y. Feb. 9, 2012) ......................................... 2, 6, 7

*United States v. Biasucci*,
  786 F.2d 504 (2d Cir. 1986) ........................................................................................... 6

*United States v. Curley*,
  No. S1 08 Cr. 404, 2009 WL 10688209 (S.D.N.Y. July 14, 2009) ................................. 9, 10

*United States v. Larios*,
  593 F.3d 82 (1st Cir. 2010) ............................................................................................ 6

**Statutes**

18 U.S.C. § 2701(a) .............................................................................................................. 6

Gen. Bus. L. § 395-b ............................................................................................................ 2

**PRELIMINARY STATEMENT**

Plaintiff tries to cure the Amended Complaint's shortcomings by pretending that her newly *pro se* status immunizes her from the need to make plausible factual allegations that state a legal claim, declaring that all of her "claims must be accepted as true." ECF 147 at 2.[1] To the contrary, *pro se* parties are not exempt "from compliance with the relevant rules of procedural and substantive law." *MacEntee v. IBM*, 783 F. Supp. 2d 434, 441-42 (S.D.N.Y. 2011), *aff'd*, 471 F. App'x 49 (2d Cir. 2012). The Amended Complaint's claims of electronic espionage, even as embellished in the Opposition Brief, are precisely the kind of "speculative level" allegations, unmoored to any facts, condemned by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Dismissal is therefore warranted.

*First*, Plaintiff has not identified a single communication that was intercepted, and thus cannot allege a claim under the Wiretap Act. Her rambling discussion of malware purportedly found on her laptop, Fox's supposed capability to remotely operate the microphone and camera of her BlackBerry, or the ostensible capacity of the Fox CCTV system to record conversations in her office, does not identify even one communication captured by *any* of these supposed means. To the extent Plaintiff still relies upon tweets by Daniel Wayne Block to show interception—even though she was able to dodge an award of sanctions because those allegations were largely purged from the Amended Complaint—this Court has already concluded that those allegations "lacked sufficient factual support." Mar. 16, 2018 Order [ECF Doc. 146] at 9-10.

*Second*, Plaintiff's contention that the SCA can be violated by improper access to a laptop or other personal device, as opposed to a communications storage "facility," is based on a

---

[1] Plaintiff's original Opposition Brief (ECF Doc. 147) is missing two pages; the revised Opposition Brief (ECF Doc. 150) is missing two *different* pages. To avoid confusion, citations to the Opposition Brief are made by ECF Document and page number.

misreading of *Snyder v. Fantasy Interactive, Inc.*, No. 11 Civ. 3593, 2012 WL 569185 (S.D.N.Y. Feb. 9, 2012).  Her contention is belied by both the text of the SCA and the contrary holdings of four Courts of Appeals.  Plaintiff has not identified a single one of her emails stored on a communications storage "facility" that was improperly accessed by a Fox Defendant, and thus cannot state a claim under the SCA.

*Third*, Plaintiff has not alleged the kind of "extreme and outrageous" conduct required to state an IIED claim.  Plaintiff does not contend that any of the private investigators or men in black SUVs who purportedly surveilled her actually approached or threatened her in any way.  As for Plaintiff's baseless speculation that she may have been recorded undressing in her office, no New York state court has held that a standard office could be deemed a "fitting room" under Gen. Bus. L. § 395-b, nor has the one federal district court that has considered this issue.  *See Pellier v. British Airways, PLC.*, No. 02 Civ. 4195, 2006 WL 132073, at *13-14 (E.D.N.Y. Jan. 17, 2006).  Neither set of allegations rises to the level needed to state an IIED claim under New York law.

**ARGUMENT**

**I. Plaintiff Has Not Plausibly Alleged An Interception Of Any Communication As Required To State A Violation Of The Wiretap Act**

Plaintiff has not alleged a single fact showing that anyone, much less any Fox Defendant, used a device to intercept any of her wire, oral or electronic communications while in transit, as needed in order to state a Wiretap Act claim.  Rather, Plaintiff points to the wrong pleading standard—referencing *Conley v. Gibson*, 355 U.S. 41 (1957) (overruled by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Iqbal*), ECF Doc. 147 at 8—and relies on sweeping generalizations that "surreptitiously collected" information was "digitally weaponiz[ed]" by the Fox Defendants in "unbelievably extreme, outrageous, defamatory discrediting campaigns

against" her, *id*. at 3.  She elaborates that "the illegal gathering of information was disseminated via online social media campaigns using sock puppet media accounts." *Id*. at 9.  But even though Plaintiff contends that there were "*hundreds of thousands* of fake social media accounts aimed at attacking, harassing, eroticizing and threatening her," *id*. at 5 (emphasis added), she does not give *even one* example of an account that allegedly used intercepted information to do so.[2]  And while she claims that allegedly intercepted information was "placed on articles in both 'real' websites and custom-prepared, fake news sites created by Fox News," *id*. at 9, she does not offer *even one* example of a news article, on *any* kind of news site, that used the fruits of a supposed wiretap.

Instead, Plaintiff returns to her discredited allegation that the Block tweets "support[] the claim that Fox News was surveilling Ms. Tantaros and disseminating her personal information." *Id*. at 10.  But other than faulting her prior counsel for "not properly explain[ing]" the Block tweets and Fox Defendants' counsel for "trying to confuse the Court," *id*., she never explains how the Block tweets could plausibly be evidence of wiretapping when Mr. Block repeatedly tweeted the same images *before* and *after* the phone calls she alleged in her initial Complaint.[3]  The Amended Complaint makes only conclusory allegations about the Block tweets and conspicuously does not mention the dates of any allegedly intercepted communications.

---

[2] As shown in the Fox Defendants' Motion for Sanctions, Mr. Block's tweets about Tantaros were laudatory fan messages.  *See* ECF Doc. Nos. 20-17, 20-18.

[3] Compare, for example, Compl. ¶ 59 & Ex. FF (alleging June 17, 2016 conversation about moving to Colorado and Block tweet about "Elk in Colorado" the following day) and ECF Doc. 20-9 at 1-3 (showing Mr. Block tweeted multiple, similar images before Plaintiff's alleged conversation, including the *same* image and message on May 22, 2016).  The Court has held that Plaintiff's elimination of the bulk of the Block allegations from the Amended Complaint "obviate[d] the need for this Court to impose sanctions."  Mar. 16, 2018 Order [ECF Doc. 146] at 9-10.  Plaintiff's brazen announcement that she "does not in any way abandon" those demonstrably false allegations, ECF Doc. 147 at 10, exploits this Court's equanimity and may justify reconsideration of that ruling.

Without any well-pled fact supporting her conclusory allegation of interception, Plaintiff resorts to "sheer possibility, otherwise known as conjecture" to support her wiretapping claims. *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 526 (S.D.N.Y. 2013).  These allegations are legally irrelevant (as well as groundless) because Plaintiff must allege actual interception; she cannot rest on speculation that her communications might have been intercepted based on mere "technological feasibility."  *Molefe v. Verizon New York, Inc.*, No. 14 Civ. 1835, 2015 WL 1312262, at *4 (S.D.N.Y. Mar. 24, 2015).  Plaintiff cannot avoid this requirement by claiming that, unlike the *pro se* plaintiff in *Molefe*, she was "targeted" by Fox News "for wrongful reasons."  ECF Doc. 147 at 16.  An alleged *motive to intercept* Plaintiff's communications for use in a punitive negative media campaign cannot substitute for facts showing *actual interception*, especially since Plaintiff has not identified any publication of a purportedly intercepted communication.  *See also Campbell v. Aduddell*, No. 11 Civ. 1413, 2014 WL 4659364 (N.D.N.Y. Sept. 17, 2014); *Martinez v. Queens Cty. Dist. Atty.*, No. 12 Civ. 6262, 2014 WL 1011054 (E.D.N.Y. Mar. 17, 2014), *aff'd*, 596 F. App'x 10 (2d Cir. 2015).[4]

Boiled down to their essence, Plaintiff's allegations are all variations on a theme of purported "technological feasibility":

**The alleged capabilities of the BlackBerry operating system.**  Plaintiff says it is "common knowledge" that "the Blackberry *could* be used as a surreptitious surveillance device."

---

[4] Plaintiff's efforts to distinguish *Campbell* and *Martinez* are also off the mark.  In *Campbell*, the court dismissed the plaintiff's Wiretap Act claim because the plaintiff had not submitted *facts* plausibly "link[ing] any of the defendants" with the incidents complained of.  *Campbell,* 2014 WL 4659364, at *9.  The Amended Complaint similarly lacks any *fact* linking Fox News Defendants to her allegations.  As to *Martinez*, the court's dismissal of plaintiff's § 1983 claim was based on plaintiff's failure to "provide the factual basis for his belief that his phone and internet services were tapped" and reliance on "conclusory allegations masquerading as factual conclusions"—factual deficiencies mirroring those of the Amended Complaint, albeit with respect to a different legal claim.  *Martinez*, 2014 WL 1011054, at *14-15 (internal quotation marks and citation omitted).

- 4 -

ECF Doc. 147 at 11 (emphasis added).  But even assuming that this conclusory allegation were true,[5] the technological feasibility of conducting electronic surveillance, which Plaintiff concedes was "'a capability that would have existed in every Blackberry device,'" *id.*, cannot substitute for a plausible factual allegation that a Fox Defendant actually conducted such surveillance.

*The alleged laptop malware.*  Although this allegation does not appear in the Complaint, the Amended Complaint, or even in Cycura's "Forensic Assessment Remarks" (ECF Doc. 52-45), Plaintiff now claims that the firewall on her laptop was "manually removed" and speculates that malware "had to have been placed on the laptop deliberately for the purpose of accessing the information on the device remotely and in real time." ECF Doc. 147 at 9.  Even this surmise, however, suggests only the *possibility* of interception, not that any interception actually occurred, much less that any such interception was performed by the Fox Defendants.  Plaintiff claims that "the full Cycura report" would reveal "how Fox accessed Tantaros' laptop," but she has not produced the report or any other evidence that her communications were intercepted, preferring "to save the full Cycura report for trial." *Id.*  Plaintiff is not entitled to an inference that the *undisclosed* Cycura report would contain facts supporting interception of her communications by the Fox Defendants that do not appear in any of the *disclosed* Cycura materials that purport to summarize the report.  *See* ECF Doc. 52-45; ECF Doc. 124-3; ECF Doc. 124-4; ECF Doc. 125-1.  Indeed, three sets of attorneys who previously represented her—Mr. Burstein, Morgan Lewis and Mr. Ekeland—apparently reviewed "the full Cycura report" and chose not to rely upon it.

---

[5]     Our research has identified articles about only social media *applications*, not employer system *administrators*, who are known to have exploited this alleged capability.  *See, e.g.*, T. Koen, *Your Social Media Apps are Spying on You; Here's How to Get Your Privacy Back*, INSIDE BLACKBERRY (June 20, 2016) (describing utility that "tracks your applications and notifies you when an app is accessing your camera, turning your microphone on, sending a text message, or accessing your contacts or location."), *available at* http://blogs.blackberry.com/ 2016/06/your-social-media-apps-are-spying-on-you-heres-how-to-get-your-privacy-back/.

*The alleged CCTV microphones.* Plaintiff asserts that the Fox CCTV system allegedly installed in her office entailed not only "cameras," as alleged in the Amended Complaint, Am. Compl. ¶¶ 34–35, but "microphones" as well, ECF Doc. 147 at 4, thus allowing the collection of "audio . . . imagery," *id*. at 12, in purported violation of the Wiretap Act.[6] Again, this allegation—which, contrary to Plaintiff's contention, does not appear in the shareholder derivative complaint[7]—does not identify *any* purportedly intercepted communication. In order to state a claim under the Wiretap Act, Plaintiff must do more than speculate that it might have been technologically *possible* for the Fox Defendants to monitor her office conversations; she must allege facts plausibly supporting a claim that they actually did so.

In sum, none of Plaintiff's convoluted explanations of the purported "technological feasibility" of intercepting her communications plausibly pleads a violation of the Wiretap Act by the Fox Defendants.

## II. Plaintiff Has Not Plausibly Alleged Unauthorized Access To Any Stored Communication As Required To State A Violation Of The SCA

Plaintiff invites the Court to disregard the plain text of the SCA and to flout the rulings of four federal Courts of Appeals by holding that an SCA claim may be based upon alleged unauthorized access to electronic communications stored "on a plaintiff's personal computers," ECF Doc. 147 at 12, rather than on "a facility through which an electronic communication service is provided," 18 U.S.C. § 2701(a). Her invitation rests on a misreading of *Snyder*, 2012

---

[6] The Wiretap Act does not regulate video surveillance where there is no audio interception. *See*, *e.g.*, *United States v. Biasucci*, 786 F.2d 504, 508-509 (2d Cir. 1986); *United States v. Larios*, 593 F.3d 82, 90 (1st Cir. 2010).

[7] As quoted in Plaintiff's Amended Complaint, the shareholder derivative complaint does not refer to microphones at all, but alleges only that "executives spoke of how Ailes 'instructed Fox's head of engineering, Warren Vandeveer, to install a CCTV system that allowed Ailes to monitor Fox *offices*, studios, greenrooms, the back entrance, and his home.'" Am. Compl. ¶ 34 (quoting Derivative Compl. ¶ 130; emphasis added in Amended Complaint).

WL 569185, at *1, which held that the plaintiffs had stated a claim for unauthorized access to their electronic communications stored on Skype, "a computer program that allows users to send instant messages to each other," by alleging that the defendants had "accessed [the plaintiffs'] Skype accounts." Unlike Plaintiff, the *Snyder* plaintiffs *did not* allege that the defendants had accessed their personal computers; thus, the *Snyder* decision applies the SCA only to communications stored on Skype, "'a facility through which an electronic communication service is provided,'" *id*. at *3 (quoting SCA), and is fully consistent with the rulings of the Third, Fifth, Ninth and Eleventh Circuits. *See* Fox Defendants' Motion [ECF Doc. 143] at 16-17 (citing cases). Plaintiff's reliance on *Penrose Computer Marketgroup, Inc. v. Camin*, 682 F. Supp. 2d 202, 210 (N.D.N.Y. 2010) and *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 555 (S.D.N.Y. 2008) is equally misplaced, for those cases held that SCA claims were stated where the defendants allegedly accessed a "personal email account" and a "Hotmail account," respectively, not a personal computer or other device.

Because there is no liability under the SCA for unauthorized access to personal computers or devices, Plaintiff's repeated (and incorrect) refrain that counsel for Fox Defendants has somehow "conceded" or "admitted" that Fox "wiped" her Fox email account from the BlackBerry it issued to her for business use is entirely beside the point. ECF Doc. 147 at 2, 10, 11, 16. A BlackBerry is not a communications "facility," and access to the BlackBerry that Fox itself issued to Plaintiff—even if assumed to be unauthorized—cannot, as a matter of law, violate the SCA. The same is true for Plaintiff's assertion that the Fox Defendants put "a rare malware" on her personal computer, which is also not a communications "facility." ECF Doc. 147 at 12.

Stripped of these irrelevant claims, Plaintiff does not plausibly allege that the Fox Defendants ever accessed emails in her Gmail account, which unlike emails on her laptop or

BlackBerry, are stored in a communications "facility."  Plaintiff's threadbare mantra that the Fox Defendants had the "means and motive" to hack her Gmail account, ECF Doc. 147 at 9, does not suffice to allege that they ever did so.  Her Opposition Brief (but not her Amended Complaint) alludes to having "in her possession hundreds of emails produced by Fox from both Tantaros' Gmail and another personal email," ECF Doc. 147 at 16, implying that Fox somehow obtained them improperly.  Although these emails are "in her possession" because they were "produced by Fox" in its arbitration against her, tellingly, she does not submit *any* of them or otherwise explain how *any* of them might betray signs of computer hacking.  In fact, Fox produced 134 emails sent to or from Plaintiff's personal email accounts and *all* of them were either (i) produced from Plaintiff's own Fox email account, *see* Reply Declaration of Linda C. Goldstein ¶ 3; (ii) produced from the Fox email accounts of Fox employees who corresponded with Plaintiff on her personal email accounts, *id*. ¶ 4; or (iii) sent to Fox by the men who Plaintiff falsely accused of sexual harassment, when Fox was investigating her accusations, *id*. ¶ 5.  The Amended Complaint does not allege—and this Court should not infer—that *any* email produced by Fox in the arbitration was hacked.

In the end, Plaintiff falls back on the speculation that *if* Fox had access to her computer after September 28, 2015, it "would have known her password universally, including [the] password to her Gmail."  ECF Doc. 147 at 17.  And *if* Fox had her Gmail password, it *might have* accessed her Gmail account.  At best, this is "sheer possibility, otherwise known as conjecture," and cannot give rise to an SCA claim.  *JBCHoldings*, 931 F. Supp. 2d at 526.[8]  Plaintiff's insistence that "the information disseminated through hundreds of thousands of sock

---

[8] Plaintiff's attempt to distinguish *JBCHoldings* on the ground that the defendant was alleged to have violated the Computer Fraud and Abuse Act, rather than the SCA, is a distinction without a difference.  ECF Doc. 147 at 15.  Both statutes regulate unauthorized access to electronic data, and claims under both statutes are subject to the pleading requirements of *Iqbal*.

puppet accounts" provides "the instances where Fox News accessed her . . . personal email account," ECF Doc. 147 at 17, is belied by the fact that she has not pointed to *one* tweet or *one* post, by Mr. Block or by anyone else, reflecting hacked information.  This unsubstantiated allegation, like the rest of Plaintiff's speculative ramblings, is not enough to state an SCA claim.

### III. Plaintiff Has Not Alleged Extreme And Outrageous Conduct Sufficient To State An IIED Claim

Plaintiff's Opposition Brief confirms that she also cannot satisfy the stringent requirements of an IIED claim under New York law, even if her baseless allegations of physical and video surveillance are all assumed to be true.

First, the alleged use of an investigative firm for physical surveillance does not amount to "extreme and outrageous" conduct.  For example, in *Guzman v. Bevona*, No. 92 Civ. 1500, 1995 WL 110584, at *1, 6 (S.D.N.Y. Mar. 15, 1995), the court dismissed an IIED claim based on the retention of private investigators who "took positions outside Plaintiff's apartment building, made inquiries of his neighbors, placed a newspaper against his door, and rang his apartment bell and asked the person who responded without opening the door whether a fictitious person lived in the apartment" because these allegations "fall[] short of New York's strict standard."  Here, by contrast, the alleged surveillance by Bo Dietl's employees was so unobtrusive that Plaintiff did not even become aware of it until she read about it in the New York Times.

Next, Plaintiff alleges that she saw "men in tinted SUVs following her, parking outside, or driving by her apartment and her vacation home."  ECF Doc. 147 at 18.  This is not "extreme and outrageous" conduct because she does not allege that any of these drivers menaced her, approached her or interfered with her in any way, unlike in *Flamm v. Van Nierop*, 56 Misc. 2d 1059, 1060, 291 N.Y.S.2d 189 (Sup. Ct. Westchester Cty. 1968) (physical surveillance with threatening conduct survived dismissal).  Curiously, Plaintiff relies upon a criminal case, *United*

*States v. Curley*, No. S1 08 Cr. 404, 2009 WL 10688209, at *1-2 (S.D.N.Y. July 14, 2009), to support her IIED claim, but *Curley* only underscores how anodyne Plaintiff's allegations are; there, the defendant was found guilty of "threatening to kill [the victim] and leave her in a pool of blood; telling her that he had found a place where he could kill her and no one would hear her scream," and placing a device on her car so that he could "kill [her] or have [her] killed."

Next, alleged video surveillance by an employer, even if conducted in areas where employees opt to change their clothes, is not "extreme and outrageous" conduct sufficient to state an IIED claim. *See Pellier*, 2006 WL 132073, at *13-14 (plaintiff's allegations that employer installed surveillance system in her office knowing "she used her office to change clothes," and "forc[ing] her to do so by failing to provide adequate female changing facilities," were not "severe enough to allow recovery for IIED" as a matter of law). Plaintiff's reference to *Doe v. Kaiser*, No. 06 Civ. 1045, 2007 WL 2027824, at *2 (N.D.N.Y. July 9, 2007), has no bearing whatsoever on the propriety of alleged *workplace* video surveillance, because it involved the alleged installation of a "micro-cam video camera and transmission and recording system" in the bedroom closet doorway of a married couple by an electrician they had hired.

## CONCLUSION

Plaintiff's outrageous allegations of criminal wiretapping and computer hacking by the Fox Defendants should never have been filed in a court of law. The fact that none of the many attorneys Plaintiff consulted would sign the Amended Complaint does not relieve Plaintiff of the obligation to allege plausible facts supporting her claims. She has utterly failed to meet that standard, and the Amended Complaint should therefore be dismissed with prejudice.

Dated: New York, New York
April 6, 2018

Respectfully submitted,

DECHERT LLP

By:   */s/ Linda C. Goldstein*
      Andrew J. Levander
      Linda C. Goldstein
      Nicolle L. Jacoby
      Benjamin M. Rose

1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3817
Fax: (212) 698-0684

*Attorneys for Defendants Fox News Network, LLC and Irena Briganti*