```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: MAY 18 2018
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
ANDREA K. TANTAROS, *an individual*,

                Plaintiff,

      -against-

FOX NEWS NETWORK, LLC, ROGER AILES,
WILLIAM SHINE, IRENA BRIGANTI,
PETER A. SNYDER, DISRUPTOR, INC.,
and JOHN DOE(S) 1–50,

                Defendants.
------------------------------------x

<u>MEMORANDUM DECISION
AND ORDER</u>

17 Civ. 2958 (GBD)

GEORGE B. DANIELS, United States District Judge:

    Plaintiff Andrea K. Tantaros, *pro se*, brings this action against her former employer, Fox News Network, LLC, as well as several current and former Fox News employees, and a private contractor allegedly hired by Fox News. (*See* Am. Compl., ECF No. 124-2.) She claims, among other things, that Defendants hacked, or ordered others to hack, Plaintiff's personal computer and work-issued cellphone and used information from her confidential communications to harass her. (*See generally id.*) Plaintiff also claims that Defendants physically surveilled her and secretly recorded her at work without her consent. (*Id.*) Plaintiff claims that Defendants did so in response to her making repeated allegations of sexual harassment against senior Fox News executives. (*See id.*)

    Plaintiff asserts claims under the federal Wiretap Act, 18 U.S.C. § 2511, against all Defendants for allegedly electronically surveilling her personal communications. (Am. Compl. at 33–34.) She also asserts claims against Defendants Fox News, the late Roger Ailes,[1] and former Fox News

---

[1] After Defendant Roger Ailes's death in May 2017, Plaintiff, then represented by counsel, voluntarily dismissed all claims against him, (ECF No. 33), and moved to join his estate as a defendant in this action. (*See* ECF No. 92.) Now that she is appearing *pro se*, Plaintiff has renewed her motion to join the Estate of Roger Ailes (the "Estate") as a defendant. (*See* ECF Nos. 148, 151.) Ailes's former counsel notes that, as of March 27, 2018, the Estate has not been served with either pleading in this case, (*see* Letter to this Court from Peter E. Calamari dated Mar. 27, 2018, ECF No. 153, at 1), and Plaintiff has not provided this Court with any

executive William Shine for allegedly directing others to unlawfully access Plaintiff's electronic devices to view her emails, text messages, and other communications, in violation of the Stored Communications Act, 18 U.S.C. § 2701. (*Id.* at 34–35.) Finally, Plaintiff asserts claims under New York law against all Defendants for intentional infliction of emotional distress based on Defendants' alleged illegal electronic and physical surveillance of her, and their use of fake Twitter accounts to communicate to Plaintiff that she was being watched. (*Id.* at 35.)

Defendants Fox News and Irena Briganti (the "Fox News Defendants"), Shine, and Peter Snyder and Disruptor, Inc. (the "Snyder Defendants"), move separately, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's amended complaint for failure to state a claim upon which relief can be granted.[2] (*See* Shine Mot. to Dismiss, ECF No. 139, at 1; Fox News Defs. Mot. to Dismiss, ECF No. 142, at 1; Snyder Defs. Mot. to Dismiss, ECF No. 144, at 1.) Plaintiff filed a memorandum of law in opposition to Defendants' motions to dismiss, in which she largely repeats the same factual allegations asserted in her amended complaint. (*See generally* Pl.'s Mem. in Opp'n to Mot. to Dismiss ("Opp'n"), ECF No. 147.)

Defendants' motions to dismiss are GRANTED.

---

evidence to the contrary. As the amended complaint was filed on January 29, 2018, the time for such service to be effected has expired. *See* Fed. R. Civ. P. 4(m). Moreover, for the reasons explained below, Plaintiff's amended complaint fails to state a claim as to Defendant Ailes. *See infra* Part III. Accordingly, Plaintiff's claims against Ailes are dismissed, rendering moot Plaintiff's renewed motion to join the Estate as a defendant.

[2] Plaintiff's initial complaint, filed by her first attorney, was dismissed after Plaintiff decided to proceed *pro se* with an amended complaint. (*See* Order dated Feb. 8, 2018, ECF No. 134, at 2.) Plaintiff's second set of attorneys filed the proposed amended pleading on her behalf. (*See* Letter to this Court from Christopher A. Parlo dated Jan. 29, 2018, ECF No. 124, at 1.) Accompanying Plaintiff's proposed amended pleading was a letter signed by her stating that the amended complaint "contain[s] additional information [not pled in the initial complaint] and additional details . . . to better explain [her] case." (Letter to this Court from Andrea Tantaros dated Jan. 29, 2018, ECF No. 124-1, at 1.)

I. **FACTUAL ALLEGATIONS**

Plaintiff is a former anchor, host, and political analyst for Fox News. (Am. Compl. ¶ 17.) Plaintiff claims that for many years, she and other female employees at Fox News faced "rampant" sexual harassment from senior executives, including Roger Ailes, the company's former chairman and chief executive officer.[3] (*Id.* ¶¶ 3, 26, 65.) Plaintiff alleges that on August 4, 2015, while she was walking to a taping of a Fox News program, Ailes "looked [her] up and down and smirked, '[w]e need to get you a tighter dress.'" (*Id.* ¶ 26.) Plaintiff responded by telling Ailes that the dress had been provided by Fox News's wardrobe department and that "if [he] ha[d] a problem with it, [he] should take it up with them [sic]." (*Id.*) From 2015 through April 2016, Plaintiff filed several complaints with Defendant William Shine, alleging harassment, retaliation, and a hostile work environment at Fox News. (*Id.* ¶¶ 31, 62.) At or about that time, Shine held the title of senior executive vice president of Fox News. (*Id.* ¶ 20.) Plaintiff claims that Shine served as "Ailes' [sic] primary enforcer and enabler, particularly with respect to retaliation against women who complained about sexual harassment." (*Id.*)

A. **Electronic and Physical Surveillance**

Plaintiff claims that Defendants targeted her for electronic and physical surveillance after she lodged complaints of sexual harassment against Ailes and other Fox News executives. For example, Plaintiff believes that Fox News hacked her personal computer and gained unauthorized access to her Gmail account. (*Id.* ¶¶ 28–30.) Plaintiff further alleges that on August 6, 2015—two days after Ailes commented on Plaintiff's outfit—Fox News asked her, as well as other employees, to provide their personal laptop computers to the company's IT and digital department so that the computers could be

---

[3] Plaintiff previously filed an action in state court against Fox News and other defendants, alleging sexual harassment by Ailes and another Fox News employee. (*See* Compl., ECF No. 5, ¶ 9.) Those claims are now in arbitration and are not the subject of this lawsuit. (*See id.* ¶ 9–10; Am. Compl. ¶ 8.)

3

formatted for use during a "Live Tweet Session" being held during one of the presidential debates. (*Id.* ¶ 26.) Plaintiff claims that "[s]hortly after that time period," she began receiving notices from Gmail alerting her to the fact that "someone had logged into her account." (*Id.* ¶ 28.) The emails were allegedly received between 12 p.m. and 1 p.m., when Plaintiff was hosting her live, on-air Fox News program and could not change her password to prevent access by unauthorized users. (*Id.*) Plaintiff alleges that her receipt of the Gmail notifications was "extremely stressful and distracting" and that the notifications were deliberately sent at those times to "throw [Plaintiff] off her game in front of millions of viewers." (*Id.*)

Plaintiff alleges that a forensic examination of her laptop computer revealed malware "likely giving whomever placed it the ability to access her communications, documents, and personal email, including gmail [sic]."[4] (*Id.* ¶ 29.) The amended complaint cites the following "technical and procedural irregularities" noted in the forensic report:

- During forensic analysis, Malicious software was found in the downloads directory and according to the run activity history, had been executed on the system. This suggests the capability of remote access or monitoring of Ms. Tantaros' communications.[5]

- Multiple wireless network connections to differing access points were seen in the logs on Ms. Tantaros' laptop, indicating a potential attack against the machine using compromised or rogue access Wifi access points. Other than the Fox News Debate Tweet exclusion, Ms. Tantaros' laptop was utilized at her residence in a "desktop" capacity, which eliminates public Wifi hotspots as items on this list.

---

[4] Plaintiff claims in her opposition papers that the complete forensic report is "lengthy and incredibly complex to the lay-person [sic]" and that "it outlines . . . very technical findings [as to] how Fox accessed [Plaintiff's] laptop." (Opp'n at 9.) Plaintiff, however, has not cited any more specific findings relating to how Fox News may have obtained, or actually did obtain, access to Plaintiff's laptop, nor has she submitted the full report to this Court.

[5] Plaintiff alleges in her opposition papers that Fox News "gained access to her personal computer and all of her passwords, manually removed her firewall, and placed malware on her computer." (Opp'n at 9); *see Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

- If any agent at Fox News had access to her computer for system updates, or any other reason at any time, between September 28, 2015 and April 25, 2016, then they would have known her password universally.

(*Id.* ¶ 30.)

Plaintiff also believes that after she was suspended from Fox News for making complaints of sexual harassment, Fox News attempted to "wipe" her work-issued Blackberry device and delete email messages contained on the device.[6] (*Id.* ¶ 31.) Plaintiff alleges that a forensic examination of her Blackberry device confirmed that Fox News, as administrator of the network and device, had "the ability to" wipe her device remotely. (*Id.* ¶ 32.) According to Plaintiff, the same forensic examination revealed that Fox News was using an "outdated operating [system] of the Blackberry that enabled them to turn on the microphone and camera of the device at will without the knowledge or consent of the person who had the Blackberry in his or her possession." (*Id.* ¶ 33.)

Plaintiff alleges further, "[u]pon information and belief," that Defendant Roger Ailes surreptitiously recorded Fox News employees, including Plaintiff, without their consent with "audio and . . . hidden cameras" in their offices, as well as during a "bi-annual trunk show" conducted by Fox News's wardrobe department. (*Id.* ¶¶ 35–36.) In support of this allegation, Plaintiff claims that it is "common knowledge among [Fox News] employees that there were cameras throughout the interior of the Fox News building." (*Id.* ¶ 34.) She also cites the complaint from a recently settled shareholder action brought against Fox News's parent company, 21st Century Fox, which alleged that "Ailes 'instructed Fox's head of engineering . . . to install a CCTV system that allowed Ailes to monitor *Fox offices*[,] studios, greenrooms, the back entrance[,] and his home.'" (*Id.*; *see also id.* ¶ 4.)

---

[6] Plaintiff alleges that throughout her tenure with Fox News, employees' Blackberry devices were serviced and maintained by an individual who claims on his online LinkedIn profile that he has completed several courses in hacking. (Am. Compl. ¶ 27.)

5

Plaintiff asserts that, in addition to being placed under electronic surveillance by Fox News, she was also physically surveilled. For example, she alleges that since the summer of 2015, she has observed black SUVs driving by and parked outside her New York City residence and her vacation home. (*Id.* ¶¶ 37–38.) Plaintiff states that on one occasion in 2016, she "easily recognized" the driver of one of the SUVs as being a member of Ailes's personal security detail. (*Id.* ¶ 38.) Plaintiff also alleges that Fox News contributor and former NYPD detective Bo Dietl admitted to a media outlet that he was hired by Fox News to "spy on" Plaintiff and "dig up dirt" on her and other Ailes accusers. (*Id.* ¶¶ 2, 40.) Plaintiff alleges, "[u]pon information and belief," that Fox News is still employing private investigators to surveil her. (*Id.* ¶ 40.)

## B. Internet-based Harassment

Plaintiff alleges that in response to her allegations of sexual harassment, she was also targeted for intimidation and smear campaigns by Fox News, Ailes, and their affiliates operating out of an entity known as The Black Room.[7] (*Id.* ¶¶ 41–43.) For instance, Plaintiff alleges "[u]pon information and belief" that Fox News published her home address, after which she received threatening letters to both her New York City residence and her vacation home. (*Id.* ¶ 43.) Plaintiff claims that the number of letters she received increased after she stopped working at Fox News and that one letter contained comments such as "[n]obody liked you at Fox," which, in Plaintiff's view, reveals the sender's identity as a Fox News employee. (*Id.*) Plaintiff also believes she was the subject of "upset[ting]" online click-bait advertisements purchased by Fox News and several "unflattering

---

[7] Plaintiff alleges that The Black Room, created by Ailes in or around 2011 to conduct public relations and surveillance campaigns, is located on the fourteenth floor of the Newscorp Building in New York City. (*Id.* ¶¶ 41, 44.) Plaintiff believes that information obtained from Plaintiff's confidential communications was placed in articles on "real websites" and "fake news sites created by ... [The] Black Room['s] employees and [Fox News's] Media Relations Department, lead [sic] (and driven) by [Defendant] Irena Briganti." (Opp'n at 9.) In fact, Plaintiff asserts, Briganti is "an active participant in [The] Black Room[']s operations." (Am. Compl. ¶ 48.)

6

pieces" published in blogs allegedly operated by Ailes associates.[8] (*Id.* ¶¶ 44, 50, 76.) In addition, Plaintiff alleges "[u]pon information and belief" that Fox News doctored and manipulated images of her to make her appear "overweight or out of shape" and circulated them online. (*Id.* ¶ 69.)

Finally, Plaintiff believes that The Black Room enlisted Defendant Peter Snyder, his former company, New Media Strategies ("NMS"), and his current company, Defendant Disruptor, Inc., to target Plaintiff for retaliation through online intimidation and smear campaigns. (*Id.* ¶ 51.) Such campaigns allegedly involved the use of fake social media accounts to defame, discredit, gaslight, and otherwise influence the public perception of their intended victims.[9] (*Id.*) According to the amended complaint, Snyder revealed to Plaintiff, once a personal friend of his, that in order to initiate these types of campaigns, Ailes would call Shine with a "target," and then Shine would call Snyder to "make some noise" and "stir up thousands of social media accounts against the target." (*Id.* ¶ 55.)

Plaintiff alleges that shortly after she came forward to Fox News executives, including Shine, with allegations of sexual harassment, she noticed an "enormous uptick in highly sexual or grossly offensive posts" on her Twitter, Facebook, and Instagram social media accounts. (*Id.* ¶ 62.) Plaintiff observed that the comments were posted from accounts that had few followers and were mostly following Fox News employees, as well as from accounts with few followers but whose posts nonetheless garnered a disproportionately high number of "likes." (*Id.*) These characteristics

---

[8] Click-bait refers to "something (such as a headline) designed to make readers want to click on a hyperlink especially when the link leads to content of dubious value or interest." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/clickbait (last visited May 14, 2018).

[9] The amended complaint defines the term "gaslighting" to mean "the manipulation of someone by psychological means into questioning their own sanity." (Am. Compl. ¶ 51.)

led Plaintiff to believe that the accounts targeting her were fake "sock puppet" accounts operated and controlled by the Snyder Defendants.[10] (*Id.* ¶¶ 62–63.)

In addition, Plaintiff claims that the sock puppet accounts referenced private "information only someone with access to [Plaintiff'] communications would have." (*Id.* ¶ 62.) For example, one such account, identified as belonging to an individual named Daniel Wayne Block (the "Block account"), posted messages referencing a move that Plaintiff was considering making to Colorado, a fact that Plaintiff had privately communicated to just two individuals. (*Id.*) Another message from the Block account, referencing a film titled The Black Scorpion, was posted after Plaintiff communicated with a friend who was bitten by a scorpion.[11] (*Id.*)

Plaintiff connects the Snyder Defendants to the online intimidation and smear campaigns initiated against her by citing a magazine article from 2017. (*Id.* ¶ 63.) According to the article, Fox News previously engaged NMS to create and operate a series of websites to market Fox News hosts and correspondents in an "overtly sexist" manner.[12] (*Id.*) One such website hosted a blog entitled "Girls of Fox News," which contained suggestive screenshots and videos of Fox News employees

---

[10] Sock puppet accounts refer to "false online identit[ies] used for deceptive purposes." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/sock%20puppet (last visited May 14, 2018).

[11] Plaintiff's first complaint offers other examples of posts from the Block account that she claims were used to harass and intimidate her. (*See* Opp'n at 10.) For instance, Plaintiff claims that on June 8, 2016, she spoke with a friend about taking a trip to Charleston, South Carolina. (Compl. ¶ 55.) The following day, the Block account posted a Tweet with a picture of a tree and a caption that read "Angel Oak Charleston, S.C." (*Id.*) Plaintiff also asserts that in May and June of 2016, she regularly spoke on the telephone with a male friend who called her "Baby Bunny" and that throughout that time, "there were several Tweets from the Block account with pictures of rabbits." (*Id.* ¶ 58.)

[12] Plaintiff claims that after Snyder stepped down from his role as chief executive officer of NMS in 2011, he formed Disruptor, which Plaintiff alleges, upon information and belief, still has an active contract with Fox News. (Am. Compl. ¶ 51.)

"crossing their legs or appearing to make kissing gestures."[13] (*Id.*) As further evidence of Snyder being behind the harassment campaign aimed at Plaintiff, she alleges that Snyder is employed by Fox News as an on-air "contributor," a position for which he is paid an annual salary of approximately $183,000—well over the typical on-air contributor's salary of $50,000 per year. (*Id.* ¶ 51.) Plaintiff alleges that despite his high salary, Snyder does only between ten and twelve on-air appearances each year, each lasting about six minutes. (*Id.*)

## II.    LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires pleading facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated differently, the factual allegations pleaded "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must therefore plead facts sufficient to "nudge[] [her] claims across the line from conceivable to plausible." *Id.* at 570.

A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.*; *see also Targum v. Citrin*

---

[13] The amended complaint describes several Fox News employees identified by the blog, some of whom had allegedly accused Ailes of sexual harassment, but it does not appear that Plaintiff herself was among those identified. (Am. Compl. ¶¶ 64–66.)

9

*Cooperman & Co., LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013). In deciding a motion brought under Rule 12(b)(6), the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the non-moving party's favor. *See Ahmad v. Morgan Stanley & Co.*, 2 F. Supp. 3d 491, 495 (S.D.N.Y. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

*Pro se* litigants are generally "entitled to some latitude in meeting these requirements, as [their complaints] are held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Martinez v. Ravikumar*, 536 F. Supp. 2d 369, 370 (S.D.N.Y. 2008) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir. 1997)). Nonetheless, to withstand a motion to dismiss, "a *pro se* plaintiff must still plead sufficient facts to state a claim that is plausible on its face." *Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 450 (S.D.N.Y. 2012) (internal quotation marks and citation omitted). "Even from pro se plaintiffs, bald assertions and conclusions of law are not adequate." *Ruotolo v. Fannie Mae*, 933 F. Supp. 2d 512, 524 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough 'a court must accept as true all of the allegations contained in a [*pro se*] complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'") (quoting *Iqbal*, 556 U.S. at 678).

### III. <u>PLAINTIFF'S AMENDED COMPLAINT FAILS TO STATE A CLAIM</u>

The Fox News Defendants, Defendant Shine, and the Snyder Defendants move separately, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's amended complaint for failure to state a claim upon which relief can be granted. Their motion papers offer a number of different reasons why Plaintiff's claims should be dismissed, though the principal argument advanced is the same: the amended complaint fails to support each of the claims asserted

10

with specific, non-conclusory facts, as required under the Supreme Court's decisions in *Twombly* and *Iqbal*. (*See* Shine Mem. in Supp. of Mot. to Dismiss ("Shine Mem."), ECF No. 140, at 5–9; Fox News Defs. Mem. in Supp. of Mot. to Dismiss ("Fox News Mem."), ECF No. 143, at 13–19; Snyder Defs. Mem. in Supp. of Mot. to Dismiss ("Snyder Mem."), ECF No. 145, at 11–21.)

Plaintiff's amended complaint is based primarily on speculation and conjecture. Moreover, she fails to adequately make out the basic elements of her claims. Accordingly, the amended complaint is DISMISSED.

### A. The Wiretap Act

The amended complaint asserts claims under the federal Wiretap Act against all Defendants for physically and electronically surveilling Plaintiff and using the fruits of that surveillance to "emotionally torture" her. (Am. Compl. at 33–34.)

Subject to certain exceptions not applicable here, the federal Wiretap Act makes it unlawful to "intentionally intercept, endeavor to intercept, or procure any other person to intercept" a wire, oral, or electronic communication, or to use the contents of any such communication "knowing or having reason to know that the information was obtained in violation of [the Act]." *See* 18 U.S.C. § 2511(1)(a), (c). The Wiretap Act permits individuals whose wire, oral, or electronic communications have been unlawfully intercepted, or used in a manner that violates the Act, to maintain a civil cause of action against any person or entity responsible for such conduct. *See id.* § 2520(a).

"Intercept" is defined by the statute to mean "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *Id.* § 2510(4). Courts in this circuit, and elsewhere, have construed the term "intercept" narrowly to require that the interception of an electronic communication be contemporaneous with

the transmission of that communication. *See Zaratzian v. Abadir*, No. 10 Civ. 9049 (VB), 2014 WL 4467919, at *6 (S.D.N.Y. Sept. 2, 2014) (collecting cases from the Third, Fifth, Ninth, and Eleventh Circuits), *aff'd*, 694 F. App'x 822 (2d Cir. 2017); *see also Directv, LLC v. Wright*, No. 15 Civ. 474 (FPG), 2016 WL 3181170, at *5 (W.D.N.Y. June 3, 2016) ("[A]n interception requires a capture of the communication while it is in transit."); *Snyder v. Fantasy Interactive, Inc.*, No. 11 Civ. 3593 (WHP), 2012 WL 569185, at *2 (S.D.N.Y. Feb. 9, 2012) ("Courts addressing the meaning of 'intercept' narrowly define it to include only 'acquisitions of communication contemporaneous with transmission, not storage.'") (quoting *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 139 n.11 (E.D.N.Y. 2010)).

Defendants correctly argue that dismissal of Plaintiff's wiretap claim is appropriate because Plaintiff has failed to allege a basic element of this cause of action: an actual interception of her wire, oral, or electronic communications. (Shine Mem. at 10; Fox News Mem. at 14; Snyder Mem. at 11–12.) Plaintiff alleges that shortly after she tendered her personal computer to Fox News's IT department to configure it for use during a Live Tweet Session, she began receiving notifications that "*someone* had logged into her [Gmail] account." (Am. Compl. ¶ 28 (emphasis added).) She also claims that a subsequent forensic examination of her laptop "found that malware *had been placed* on [her] laptop, likely giving *whomever placed it* the *ability* to access her communications, documents, and personal email, including gmail [sic]." (*Id.* ¶ 29 (emphases added).) Plaintiff claims that the same forensic examination revealed that the malware found on her laptop "suggests the *capability* of remote access or monitoring of [Plaintiff's] communications." (*Id.* ¶ 30(1) (emphasis added).)

With respect to Plaintiff's work-issued Blackberry, Plaintiff alleges that a forensic examination of that device found that Fox News, as administrator of the network and device, "ha[d] the *ability*" to erase messages from her Blackberry remotely. (*Id.* ¶ 32 (emphasis added).) Plaintiff

12

also alleges that the same forensic examination showed that Fox News "was using an outdated operating [system] . . . that *enabled them* to turn on the microphone and camera of the device at will without the knowledge or consent of the person who had the Blackberry in his or her possession." (*Id.* ¶ 33 (emphasis added).)

These allegations fail to state a claim under the Wiretap Act because they do not allege that any Defendant *actually* intercepted, or even tried to intercept, *any* of Plaintiff's communications. Even if Fox News or another Defendant was responsible for installing malware on Plaintiff's personal computer—a conclusion for which there is scant factual support—Plaintiff's allegations at most support an inference that Defendants had the *capability* to intercept her communications. Such allegations, however, are insufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer *possibility* that a defendant has acted unlawfully.") (emphasis added); *see also Molefe v. Verizon New York, Inc.*, No. 14 Civ. 1835 (LTS) (GWG), 2015 WL 1312262, at *4 (S.D.N.Y. Mar. 24, 2015) (dismissing wiretap claim because, notwithstanding "the technological feasibility of the activities Plaintiff allege[d], [he] fail[ed] to provide a factual basis for a finding that *his* phone and internet services were tapped") (internal quotation marks and citation omitted); *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 526 (S.D.N.Y. 2013) (dismissing federal Computer Fraud and Abuse Act claim where the pleadings were "couched in terms of sheer possibility, [and] conjecture"). In addition, even if Defendants did, in fact, gain access to Plaintiff's personal computer or Blackberry device, there is *no* allegation that any communications were intercepted contemporaneously with when they were made. *See, e.g., Snyder*, 2012 WL 569185, at *2 (dismissing Wiretap Act claim where the plaintiff pled "no facts suggesting that Defendants accessed their communications during transmission").

Nor is there any non-conclusory allegation to support Plaintiff's claim that the Snyder Defendants used information obtained from Plaintiff's communications to harass her.[14] (*See* Am. Compl. ¶¶ 62–63). Plaintiff claims that the sock puppet social media accounts that targeted her online, including the Block account, referenced information that could have only been obtained from her confidential communications. (*Id.* ¶ 62). Plaintiff, however, fails to plead *any* facts connecting *the Snyder Defendants*—or any Defendant for that matter—to an alleged sock puppet account that allegedly harassed Plaintiff.[15] Plaintiff's singular allegation that "the trail of 'sock puppet' . . . accounts lead directly to Snyder" is conclusory and thus insufficient to withstand a motion to dismiss.[16] *See Iqbal*, 556 U.S. at 679 ("[P]leadings that . . . are no more than conclusions, are not entitled to the assumption of truth.").

Plaintiff's conclusory allegations concerning Defendant Ailes's "surreptitious[] recording" of Plaintiff through a CCTV system are similarly lacking. (*Id.* ¶¶ 34–35.) According to the amended complaint, Ailes had a CCTV system installed at Fox News that allowed him to monitor "*offices*[,]

---

[14] In her amended complaint, Plaintiff asserts claims under the Wiretap Act against all Defendants. (*See* Am. Compl. at 33–34.) In her opposition papers, however, Plaintiff claims that the Snyder Defendants "ha[ve] not been accused of violating the Wiretap Act[.]" (Opp'n at 7.) Nonetheless, this Court addresses Plaintiff's claims as initially pled.

[15] Defendants maintain that the Block account is not a fictitious sock puppet account, but rather the personal Twitter account belonging to a real individual living in Gainesville, Florida. (*See* Fox News. Mem. at 2.) In fact, Defendants have proffered an affidavit executed by an individual named Daniel Wayne Block, who avers that all messages sent by the Block account were sent by him and that he has never met or had any contact with Defendants. (*See* Affidavit of Daniel Wayne Block dated Apr. 26, 2017, ECF No. 20-1, ¶¶ 1, 3, 4–5.) Moreover, as Defendants claim, a review of the Block account's posts shows that the images and messages that Plaintiff believed to be targeted at her were actually images and messages that the Block account had posted repeatedly, including *before* Plaintiff purportedly had the conversations she believes were monitored. (*See* Fox News. Mem. at 2; Declaration of Benjamin M. Rose dated May 24, 2017, Exs. 9–16, ECF Nos. 20-9–20-16.)

[16] Plaintiff alleges that Snyder is compensated by Fox News as an on-air contributor at a salary far exceeding the typical on-air contributor's salary. (Am. Compl. ¶ 51.) While perhaps suggestive of undisclosed work Snyder was asked to perform on behalf of Fox News, these facts do nothing to "nudge[] . . . across the line from conceivable to plausible" Plaintiff's claim here that the Snyder Defendants were responsible for operating or controlling sock puppet accounts to harass Plaintiff. *Twombly*, 550 U.S. at 570.

14

studios, and greenrooms." (*Id.* ¶ 34.) Plaintiff claims "upon information and belief" that Ailes recorded her in her office and during the Fox News wardrobe department's bi-annual trunk show "through audio and . . . hidden cameras." (*Id.* ¶¶ 35–36.) Again, however, Plaintiff pleads no facts to support this belief, much less ones to make her unsubstantiated allegations rise "above the speculative level." *Twombly*, 550 U.S. at 555; *see also Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006) ("[A]llegations pled on 'information and belief' [must be] accompanied by a statement of the facts upon which the belief is founded.") (internal quotation marks and citation omitted). Moreover, even assuming that recording equipment was installed in *Plaintiff's* office and in the locations where the bi-annual trunk show were held, Plaintiff does not allege that any of her communications were actually intercepted, as required by the statute.

Plaintiff's allegation that she was physically surveilled fares no better. Plaintiff's sole allegation with respect to physical surveillance is that she observed black SUVs driving by and parked outside her New York City residence and her vacation home, and that on one occasion, she recognized one of the drivers as a member of Ailes's personal security detail. (Am. Compl. ¶¶ 37–38.) However, the Wiretap Act does not prohibit physical surveillance. *See* 18 U.S.C. § 2510(4) (defining "intercept" to mean "the aural or other acquisition of the contents of any wire, electronic, or oral communication *through the use of any electronic, mechanical, or other device*.") (emphasis added). Moreover, Plaintiff does not allege that either the individual she recognized from Ailes's security detail, or any other driver of a black SUV, intercepted a wire, electronic, or oral communication of hers, as is required to state a claim under the Wiretap Act. *See id.* § 2511(1).

Accordingly, Plaintiff's Wiretap Act claim is DISMISSED.

### B. Stored Communications Act

The amended complaint asserts claims under the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, against Defendants Fox News, Ailes, and Shine for "directing a person paid . . . by Fox News to hack [Plaintiff's] personal computer and electronics" to gain access to her private emails, text messages, and other communications. (Am. Compl. at 34.)

The purpose of the SCA is "to prevent [computer] hackers from obtaining, altering[,] or destroying certain stored electronic communications." *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 507 (S.D.N.Y. 2001). Towards that end, the SCA, as relevant here, makes it unlawful to "intentionally access without authorization a facility through which an electronic communication service is provided . . . and thereby obtain[] . . . access to a wire or electronic communication while it is in electronic storage in such [a] system[.]" 18 U.S.C. § 2701(a). "Electronic storage" is defined to include "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." *Id.* § 2510(17); *see also id.* § 2711(1) (making the Wiretap Act's definitions applicable to the SCA). Like the Wiretap Act, the SCA authorizes a private right of action by individuals aggrieved by a violation of the statute, provided that the violation was committed intentionally or knowingly. *See id.* § 2707(a).

Defendants contend that Plaintiff's SCA claim must be dismissed because the SCA does not apply to communications stored on personal devices like computers or cellphones. (Shine Mem. at 11–12; Fox News Mem. at 16–17.) Recognizing that the Second Circuit has yet to speak on this issue, Defendants cite decisions from the Third, Fifth, Ninth, and Eleventh Circuit Courts of Appeals, as well as from two courts in this district, so holding. (*See id.*) Defendants also argue that dismissal of Plaintiff's SCA claim is warranted because the amended complaint fails to plausibly allege facts

showing that any Defendant unlawfully accessed Plaintiff's emails, text messages, or other communications stored on her personal computer or work-issued Blackberry device. (Shine Mem. at 12; Fox News Mem. at 17–19.)

Even if one were to ignore the overwhelming weight of authority holding that the SCA does not apply to communications stored on personal devices, Plaintiff has failed to allege that Defendants unlawfully accessed *any* communications stored on such devices. For the reasons already stated, vague, speculative, and conclusory allegations concerning malware allegedly found on Plaintiff's personal computer and Fox News's purported ability to access or monitor communications on Plaintiff's Blackberry are insufficient to state such a claim. With respect to her Gmail account, Plaintiff believes that "someone" accessed her account without authorization, but she does not allege which of the Defendants, if any, actually did so. (Am. Compl. ¶ 28.) Moreover, she does not claim that *anyone*—neither Ailes, Shine, nor anyone else paid by Fox News—obtained access to any of her email messages, as is required to state a claim under the SCA. *See* 18 U.S.C. § 2701(a).

Nor does Plaintiff provide factual support for her conclusory assertion that Ailes and Shine directed a person paid by Fox News to hack Plaintiff's personal computer and electronic devices. (Am. Compl. at 34.) Plaintiff claims that Snyder once revealed to her that he would conduct intimidation and smear campaigns on behalf of Fox News at the direction of Ailes and Shine. (*Id.* ¶ 55.) Plaintiff, however, offers *no* facts to plausibly suggest that Ailes, Shine, or anyone else employed by Fox News enlisted Snyder—or anyone else for that matter—to hack or otherwise illegally access *Plaintiff's* personal electronic devices. Because Plaintiff does not allege, other than in conclusory terms, that any Defendant accessed any communication stored on her personal computer or Blackberry without authorization, Plaintiff's SCA claim is DISMISSED. *See Molefe*,

2015 WL 1312262, at *3 (dismissing claim under the SCA where the plaintiff "provide[d] no factual basis regarding how or why Verizon transferred [his] files, nor [did] he explain the factual basis for his belief that Verizon performed any transfer that may have occurred.").

### C. Intentional Infliction of Emotional Distress

Plaintiff's final claim is for intentional infliction of emotional distress, asserted against all Defendants for allegedly "violat[ing] federal criminal statutes in using illegal electronic surveillance of Plaintiff as part of a vicious social media campaign[,] which also included the use of fake Twitter accounts to communicate to Plaintiff that she was being surveilled." (Am. Compl. at 35.) To state a claim for the tort of intentional infliction of emotional distress ("IIED") under New York law, a plaintiff must show: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999). "[T]he standard for stating a valid claim of intentional infliction of emotional distress is 'rigorous, and difficult to satisfy.'" *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (quoting *Howell v. New York Post Co., Inc.*, 612 N.E.2d 699, 702 (N.Y. 1993)). Indeed, the plaintiff must show that the defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Stuto*, 164 F.3d at 827 (internal quotation marks and citation omitted).

Defendants correctly argue that Plaintiff's IIED claim should be dismissed because she has failed to plausibly allege facts tying any of the Defendants to the conduct that she claims caused her injury. (Shine Mem. at 12–13; Fox News Mem. at 19–21; Snyder Mem. at 19–20.) For the reasons already stated, Plaintiff has not alleged sufficient, non-conclusory facts showing that Defendants violated either the Wiretap Act or the SCA, much less that they did so with intent to cause Plaintiff

"severe emotional distress." *Stuto*, 164 F.3d at 827. Moreover, Plaintiff has not alleged any facts to support her conclusory assertion that she suffered "severe emotional distress, requiring medical treatment and medication," as required to state a claim for IIED. (Am. Compl. at 35.); *See Medcalf v. Walsh*, 938 F. Supp. 2d 478, 490 (S.D.N.Y. 2013) (dismissing IIED claim where the complaint did not make "any non-conclusory allegation that [the Plaintiff] suffered severe emotional distress"); *Lyman v. City of New York*, No. 96 Civ. 2382 (PKL), 1997 WL 473976, at *3 (S.D.N.Y. Aug. 20, 1997) (dismissing IIED claim where plaintiff alleged "in a conclusory manner that as a result of [defendant's] conduct she has suffered 'severe emotional distress . . . and substantial emotional anguish'"); *Klein v. Metro. Child Servs., Inc.*, 954 N.Y.S.2d 559, 562 (App. Div. 2d Dep't 2012) (dismissing IIED claim where "the cause of action . . . states little more than the conclusion that 'plaintiff suffered extreme and grievous mental distress as a result of the extreme and outrageous behavior of the defendants.'").

Accordingly, Plaintiff's IIED claim is DISMISSED.

### IV. CONCLUSION

Defendants' motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, (ECF Nos. 139, 142, and 144), are GRANTED.

The Clerk of Court is directed to close those motions, and this case, accordingly.

Dated: May 18, 2018
      New York, New York

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge

19